UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
<u>FOR IMPROPER VENUE PURSUANT TO FRCP 12(b)(3)</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Entropic Cannot Meet the "Difficult" Standard to Establish a Lack of Corporate Separateness Between CCI and Its Subsidiaries ......................................1

        1. CCI Never Exercised Improper Control Over Its Subsidiaries....................2

        2. CCI's Subsidiaries Followed Corporate Formalities ..................................4

        3. CCI's Subsidiaries Do Not Carry Out Business Activities In CCI's Name ............................................................................................................5

    B. Venue is Improper as to CCI Because It Does Not Have Regular and Established Places of Business In This District .......................................................7

        1. Spectrum, Not CCI, Is Associated With the Website and Buildings That Offer Spectrum Services in This District ............................................7

        2. CCI Has No Agents Conducting Business in the District ...........................7

        3. CCI Has Not Ratified Any Place of Business In This District ....................9

III. CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agis Software Development LLC v. Google LLC*,
  2022 WL 1511757 (E.D. Tex. May 12, 2022) ......................................................................... 10

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
  6 F.4th 1283 (Fed. Cir. 2021) ........................................................................... 5, 8, 9, 10

*Bd. Of Regents v. Medtronic PLC.*,
  No. 17-CV-0942, 2018 WL 4179080 (W.D. Tex. July 19, 2018) ........................................ 1, 5

*Bobby Goldstein Productions, Inc. v. Habeeb*,
  No. 21-CV-1924-G, 2022 WL 1642466 (N.D. Tex. May 24, 2022) ........................................ 9

*Charles v. Charles*,
  No. 21-CV-2061, 2022 WL 4747499 (S.D. Tex. Sept. 30, 2022) ............................................. 8

*E. Texas Med. Ctr. Reg'l Healthcare Sys. v. Slack*,
  916 F. Supp. 2d 719 (E.D. Tex. 2013) (Gilstrap, J.) ................................................................. 8

*Entropic Communications, LLC v. DirecTV, LLC et al.*,
  No. 22-CV-0075, Dkt. 109, (E.D. Tex. Oct. 24, 2022) (Gilstrap, J.) ................................. 7, 10

*Interactive Toybox, LLC v. The Walt Disney Co.*,
  No. 17-CV-1137, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ................................ 1, 2, 5, 6

*IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*,
  No. 11-CV-0575, 2012 WL 13012617 (E.D. Tex. Sept. 26, 2012) .......................................... 2

*L.B. Benon Family Ltd. P'ship v. Wells Fargo Bank, N.A.*,
  SA-21-CA-01115, 2022 WL 16825204 (W.D. Tex. Nov. 7, 2022) .......................................... 8

*MDSave, Inc. v. Sesame, Inc.*,
  No. 21-CV-01338, 2023 WL 353998 (W.D. Tex. Jan. 11, 2023) ........................................... 10

*Montes v. Charter Comms., Inc.*,
  No. 21-CV-0489 (S.D. Tex.) ..................................................................................................... 9

*Neria v. Dish Network L.L.C.*,
  No. 19-CV-00430, 2020 WL 3403074 (W.D. Tex. June 19, 2020) ......................................... 8

*Parallel Network Licensing LLC v. Arrow Elecs., Inc.*,
  No. 21-CV-0714, 2022 WL 1597364 (E.D. Tex. May 19, 2022) ............................................. 6

██████████████████████████████

*Soverain IP, LLC v. AT&T, Inc.*,
    No. 17-CV-0293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) ..........................................1, 4

*United States ex rel. Reddell v. DynCorp Int'l, LLC*,
    No. 1:14-CV-86, 2019 WL 12875442 (E.D. Tex. Mar. 1, 2019) .............................................4

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..................................................................................................................4

## I. INTRODUCTION

Entropic Communications, LLC ("Entropic") argues that venue is proper in this district because "the activities and employees of CCI's subsidiaries [are] imputed to" Charter Communications, Inc. ("CCI"). Dkt. 68 at 1. Entropic cannot meet the "difficult" imputation standard because CCI maintains all corporate formalities as a parent and manager of its subsidiary LLCs, including Spectrum Gulf Coast, LLC ("SGC"), a separate and distinct subsidiary that operates and leases or owns the properties in this district that are identified in the Second Amended Complaint ("SAC"). Opening Br., Dkt. 61 at 2-10. Entropic asks the Court to disregard CCI's corporate form based on the theories of "lack of separateness," "ratification," and "agency." Dkt. 68 at 3-4, 22-29. In doing so, Entropic blends these distinct legal theories, fails to set forth any legal standards applicable to the lack of separateness or ratification theories (*id.* at 4), and misrepresents facts to urge the Court to impute SGC's conduct to CCI. There is no evidence that would permit the Court to find a lack of corporate separateness, that CCI ratified any property in this district, or that an agency relationship exists between CCI and its subsidiaries (or employees of its subsidiary Charter Communications, LLC ("CC LLC")). This Court should therefore grant CCI's Motion.

## II. ARGUMENT

### A. Entropic Cannot Meet the "Difficult" Standard to Establish a Lack of Corporate Separateness Between CCI and Its Subsidiaries

"Except where corporate formalities are ignored and an alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative." *Bd. Of Regents v. Medtronic PLC.*, No. 17-CV-0942, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018). "There must be a plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Interactive Toybox, LLC*

*v. The Walt Disney Co.*, No. 17-CV-1137, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018). This is a "difficult standard" to meet, and "[s]ettled law always presumes that corporations exist as separate entities." *Soverain IP, LLC v. AT&T, Inc.*, No. 17-CV-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017); *Interactive Toybox*, 2018 WL 5284625, at *3. Entropic contends, in effect, that an alter ego relationship exists because (1) CCI purportedly holds itself out as "One Charter"—a term created by Entropic, and (2) the various subsidiaries are "fiction[al,]" "shell LLCs," with "no independent existence." Dkt. 68 at 1-3, 5-15, 29 & 10 n.3-4. In determining whether corporate formalities have been ignored and an alter ego relationship exists, courts undertake a rigorous analysis. *See* Dkt. 61 at 17-18 (collecting cases). Entropic makes no effort to satisfy this standard.

    **1.  CCI Never Exercised Improper Control Over Its Subsidiaries**

  Entropic's principal argument is that CCI has "complete, direct control over each subsidiary" such that the "activities and employees of the subsidiaries are attributable to CCI" because CCI is the manager of the subsidiary LLCs. Dkt. 68 at 5-8. The fact that CCI was designated as a manager under LLC agreements does not convert the relationship between CCI, as manager, and the managed LLC into that of an alter ego. *See* Dkt. 61 at 7-9, 11-12, 14-15, 18. That is precisely how LLCs are designed to operate. *Id.* at 7-9, 18. Entropic has not cited any evidence that CCI was improperly appointed as manager of SGC (or any other subsidiary) or that CCI or any of its officers has acted beyond its authority as a "manager" as dictated by the relevant LLC agreements or pursuant to the Delaware LLC Act. *See* Dkt. 61 at 8, 18; *IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*, No. 11-CV-0575, 2012 WL 13012617, at *3 (E.D. Tex. Sept. 26, 2012) (rejecting argument that parent-defendant "must control [its subsidiary-LLC that conducts business in this district] because" the parent-defendant manages "its subsidiary"

███████████████████████████████████

where there was "no evidence that the control exerted by [the parent-defendant] is greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

Entropic also asserts without basis that CCI "dictate[s] the allocation of Spectrum employees to its various subsidiaries." Dkt. 68 at 26. ████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████. Dkt. 61 at 4-7; Dkt. 61-4, Ex. 2, Proost Dep., 72:7-21; Dkt. 61-6, Ex. 4, Boglioli Dep., 36:12-16, 51:20-25 (████████████████████████████), 72:3-73:22, 75:12-76:14. Next, Entropic argues that "CCI's department heads have the power to hire, fire, and direct the work of employees," but the very testimony it quotes explains that the "department heads" are "employees of Charter Communications, LLC" and that he is uncertain what "authority they have as officers of [CCI]." *See* Dkt. 68 at 12-13. The same witness had already explained that CCI's officers or directors ***do not*** participate in the hiring and firing of any employees, including any employees in this district. *See* Dkt. 61 at 14-15 (collecting testimony that CCI is not involved in the hiring and firing of any CC LLC employees); Dkt. 61-6 Ex. 4, Boglioli Dep., 47:8-48:24 (testifying that to the extent any CCI officers are involved in the hiring and firing of employees, which is "doubt[ful]," such conduct would be in their role with CC LLC, *not* with CCI). In any event, Entropic does not even suggest any of this violates governing Delaware corporate law or the applicable agreements.

Finally, there is nothing improper about the fact that CCI, as manager, signed agreements on behalf of SGC (or other managed LLCs) because the SGC LLC Agreement ████████ ████████████████████████████████. *See* Dkt. 61-10, Ex. 8, SGC LLC Agmt., § 4(a)(iii). Entropic does not argue that CCI acted beyond the scope of this provision by signing any document as manager of any subsidiary. Further, it is a "well established principle" of

-3-

corporate law "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998); *United States ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-CV-86, 2019 WL 12875442, at *7 (E.D. Tex. Mar. 1, 2019) (same); Dkt. 68-2, Entropic's Ex. A, Proost Dep., 48:14-49:4 (███████████████████████████████████████).

### 2. CCI's Subsidiaries Followed Corporate Formalities

Although Entropic, like CCI's subsidiaries, is a Delaware LLC, it misunderstands the "corporate" and "legal formalit[ies]" required to form and maintain an LLC. *See* Dkt. 61 at 7-9 (explaining the purpose and formation of an LLC under the Delaware LLC Act); Dkt. 68-2, Entropic's Ex. A, Proost Dep., 46:1-18. For example, Entropic incorrectly suggests that an alter ego relationship exists because CCI's subsidiaries do not hold meetings and corporate records are maintained "under a single management system for all subsidiaries." Dkt. 68 at 13-14. The Delaware LLC Act does not require any annual or monthly member or manager meetings. Dkt. 61 at 8. Nothing requires CCI, as a parent entity, to have separate document management systems for each and every subsidiary. And, "even if a parent corporation controls a subsidiary's operations," which CCI does not, or if "venue-related discovery revealed an interdependence" between CCI and its subsidiaries, a "subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness," which Entropic fails to prove here. *Soverain IP, LLC*, 2017 WL 5126158, at 1 (citations omitted). In any event the corporate documents for each entity are "physically separated in different files" and CCI's records are maintained separate from its LLC subsidiaries.[1] Dkt. 61-4, Ex. 2, Proost Dep., 60:5-61:8; *see* Dkt. 61 at 10.

---

[1] Entropic states that "CCI is listed as the custodian of nearly all the technical documents" produced by CCI in this case. Dkt. 68 at 9, 13; Dkt. 74 (Entropic's supplemental brief correcting

Entropic also relies on the fact that there is an overlap in officers or directors between CCI and its subsidiaries, and points to agreements signed by the same person in different capacities and on behalf of different entities as evidence of a purported lack of corporate separateness. Dkt. 68 at 6-9, 11-13. This argument fails to take into consideration that "[e]ven 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Interactive Toybox*, 2018 WL 5284625, at *3.

### 3. CCI's Subsidiaries Do Not Carry Out Business Activities In CCI's Name

Entropic contends that CCI holds itself out as Spectrum, but it has no answer to the fact that its subsidiaries' "use of the common or generic name [Spectrum] on the exterior of [the subsidiary's buildings], as well as the press release announcing the business," cannot support venue where, as here, the corporate formalities between related companies remain intact. *Medtronic*, 2018 WL 4179080, at *2. Entropic also relies on statements by CCI explaining the unremarkable fact that, through its subsidiaries, it offers services to the public under the Spectrum brand. *See* Dkt. 68 at 14-15. For example, Entropic relies on CCI's annual report which says "[w]e . . . serv[e] more than 32 million customers . . . through our Spectrum brand" and explains that "'Charter,' 'we,' 'us' and 'our' refer to Charter Communications, Inc. and its subsidiaries." Dkt. 68-12, Entropic's Ex. K at i & 1. Courts and people alike understand that many services are provided through a corporation's subsidiaries. *Andra Grp., LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1288 (Fed. Cir. 2021) (the "use of 'we' does not convey that 'we' means" the parent, but" could "include the individual subsidiary brands").

---

this statement). That is not true, and Gregory Greene is the custodian of the document cited by Entropic. *See* Dkt. 68 at 9 (citing Dkt. 68-29); *see* Brown Reply Declaration, ¶¶ 6-7.

Entropic also relies on web sites using the "www.spectrum.com" URL as evidence that there is only "One Charter." Dkt. 68 at 15. All this shows, however, is the fact that services are provided under the Spectrum brand, not "Charter Communications, Inc." or even "Charter," confirming the fact that CCI's subsidiaries do not hold themselves out as CCI.

Lastly, Entropic argues CCI "represents [] to the federal government" that "Charter is one enterprise and that CCI provides the accused products and services." Dkt. 68 at 16-18. In reality, Charter repeatedly explained that it provided these services through its subsidiaries. Dkt. 68 at 16-17 (citing Dkt. 68-15, Entropic's Ex. N (referring to CCI as "the ultimate controlling entity" and showing a partial corporate structure)); Dkt. 68 at 17 (quoting from CCI filing that refers to CCI "together with its controlled subsidiaries")[2]; Dkt. 68 at 18 (quoting from another CCI filing that states CCI provides services "through its operating subsidiaries").[3]

If CCI's generic statements concerning the services provided by its subsidiaries were sufficient to pierce the corporate veil, no major corporation in the United States would be able to function without a wholesale reorganization. *See Interactive Toybox*, 2018 WL 5284625, at *4 (rejecting alter ego theory where "evidence [did] not establish" that parent ignored "the corporate formalities" or exerted "such a level of control" based on public documents wherein the parent-

---

[2] Entropic fails to provide the full quote for this filing, which also includes: "Charter admits that Charter Communications, Inc., together with its controlled subsidiaries, is a holding company whose principal asset is a controlling equity interest in Charter Communications Holdings, LLC, an indirect owner of Charter Communications Operating, LLC under which substantially all of the operations reside." *Compare* Dkt. 68 at 1, 17 *with* Ex. 13, ITC Submission, ¶ 15.

[3] As for Entropic's reliance on CCI's pleadings in *Rockstar* or *Bear Creek Techs.*, *see* Dkt. 68 at 17-18, these are from 2014 and 2011, respectively, before CCI even owned any Time Warner Cable entities, including SGC. *See* https://ir.charter.com/news-releases/news-release-details/charter-communications-merge-time-warner-cable-and-acquire. And, "[v]enue is determined by the facts and situation as of the date suit is filed." *Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, No. 21-CV-0714, 2022 WL 1597364, at *3 (E.D. Tex. May 19, 2022).

defendant stated, among other things, it is "home" to "a leading retail business," *i.e.*, the branded-store subsidiary).

### B. Venue is Improper as to CCI Because It Does Not Have Regular and Established Places of Business In This District[4]

#### 1. Spectrum, Not CCI, Is Associated With the Website and Buildings That Offer Spectrum Services in This District

CCI has no physical place of business in this district. Thus, Entropic contends that CCI carries out its business in this district by imputing the presence of SGC to CCI. *E.g.*, Dkt. 68 at 21-22 (arguing that "CCI has touted publicly" the services offered in Spectrum stores). For the reasons stated above, those arguments should fail. Entropic cites this Court's decision in *Entropic Communications, LLC v. DirecTV, LLC et al* ("*DirecTV*") to argue that CCI carries out business at the Spectrum stores in this district because each location displays the Spectrum logo and offers services under the Spectrum brand. Dkt. 68 at 21-22 (citing *DirecTV*, No. 22-CV-0075, Dkt. 109, at 7 (E.D. Tex. Oct. 24, 2022) (Gilstrap, J.)). CCI, however, does not own or lease any physical locations anywhere in Texas; those four locations are owned or leased and operated by SGC. Dkt. 61 at 13. And, unlike *DirecTV*, all of the evidence shows use of the Spectrum brand, and not any "Charter" or CCI-specific brand: there are *no* locations in this district that bear the "Charter" name, and the *Spectrum* website (not the Charter website) identifies the *Spectrum* services that are offered at the *Spectrum* stores in this district. *Cf. DirecTV*, at 7-8.

#### 2. CCI Has No Agents Conducting Business in the District

Entropic argues that CCI has a regular and established place of business based on an agency relationship and because CCI has purportedly "represented" that "when a customer walks into a **Spectrum** store or has a **Spectrum** technician install equipment at their home, that customer is

---

[4] CCI denies that it committed any acts of infringement and focuses its arguments on Entropic's failure to establish that CCI has a regular and established place of business in the district. *See* Dkt. 61 at 12 n.9.

interacting with an employee/agent of" CCI. Dkt. 68 at 26 (emphases added); *id.* at 23-26. Yet, Entropic cites no evidence for this statement and fails to explain how the Spectrum brand is synonymous with CCI, other than to ask that the Court pierce the corporate veil and find that CCI is the alter ego of its subsidiaries. For the reasons above, the Court should reject that argument.[5]

As for the agency theory, Entropic contends that CCI has the "right to direct or control the employees' actions," and that CCI officers "can direct the work of the employees," because CCI is a designated manager under LLC agreements.[6] Dkt. 68 at 23-24. As explained, nothing in the record suggests that the relationship between CCI and SGC (or any other subsidiary) is anything other than that between a parent and subsidiary or a LLC manager and a managed LLC. *See* § II.A, *supra*; *see* Dkt. 61 at 14-15; *E. Texas Med. Ctr. Reg'l Healthcare Sys. v. Slack*, 916 F. Supp. 2d 719, 722 (E.D. Tex. 2013) (Gilstrap, J.) (rejecting agency relationship "based merely on" a "corporate relationship"); *Charles v. Charles*, No. 21-CV-2061, 2022 WL 4747499, at *4 (S.D. Tex. Sept. 30, 2022) (same); *L.B. Benon Family Ltd. P'ship v. Wells Fargo Bank, N.A.*, SA-21-CA-01115, 2022 WL 16825204, at *4 (W.D. Tex. Nov. 7, 2022) (no agency relationship where there the parties shared the same office, CFO, and management team and a "contractual relationship" was the only supporting evidence). Here, too, Entropic misrepresents that CCI or its officers, acting as CCI, hire and fire employees, which is "directly contradicted" by CCI's corporate representatives. *See* § II.A, *supra*; Dkt. 61 at 14-15; *Andra Grp.*, 6 F.4th at 1288-89.

---

[5] Entropic argues that the same facts in support of the first *Cray* factor to support the second *Cray* factor. Dkt. 68 at 22-23. As explained in CCI's opening brief and again above, the Court should reject this argument.
[6] "Texas law does not presume agency and the party asserting agency has the burden of proving it." *Neria v. Dish Network L.L.C.*, No. 19-CV-00430, 2020 WL 3403074, at *5 (W.D. Tex. June 19, 2020).

Entropic repeats its imputation arguments and relies on public documents to aver that CCI "manifested its consent that the employees act" on its behalf by "representing to the public that the employees work for CCI." Dkt. 68 at 24. Entropic does not cite any authority for the proposition that acknowledging the existence of employees who support the Spectrum brand is a manifestation "of consent" for CC LLC employees to act on CCI's behalf. *Bobby Goldstein Productions, Inc. v. Habeeb*, No. 21-CV-1924-G, 2022 WL 1642466, at *4 (N.D. Tex. May 24, 2022) (setting forth the two ways in which "manifestation of consent" may be demonstrated). In any event, as discussed, the documents cited by Entropic "are documents covering all of" the Spectrum brand; and any reference to "we" does not mean CCI "could include the individual subsidiary[ies]" providing services under the Spectrum brand[7] *Andra Grp.*, 6 F.4th at 1288.

Lastly, Entropic does not explain how "**Spectrum** employees" consented "to act as the agents of CCI" or how CCI consented to have them act on its behalf by their signing an arbitration agreement or using a Spectrum website to apply for jobs. Dkt. 68 at 25 (emphasis added). Nor do the LinkedIn profiles matter, *id.* at 25-26, because Entropic does not contend that any of these individuals work or operate out of any property listed in the SAC, as is required under *Cray*.[8]

### 3. CCI Has Not Ratified Any Place of Business In This District

---

[7] Entropic cites documents from wrongful death case to argue that CCI "acknowledged" that its employee Brian Anderson was an "agent." Dkt. 24-25 (citing *Montes v. Charter Comms., Inc.*, No. 21-CV-0489 (S.D. Tex.)). However, CCI did not "acknowledge" anything. The plaintiff alleged that Anderson was an "agent." *Montes*, No. 21-CV-0489 (S.D. Tex.), Dkt. 1-1 at ECF p. 11. CCI had no need to dispute that fact at the pleading stage and instead merely argued that the plaintiff "failed to plead facts establishing that Anderson was negligent" because as a purported agent he "did not owe [the plaintiff] an individual duty." *Id.*, Dkt. 1, ¶¶ 12-14. In any event, Entropic itself acknowledges that Anderson was employed by CC LLC, and not CCI. *See* Dkt. 68 at 25 n.14.

[8] Entropic wrongly asserts, without evidence, that "CCI has given their employees no reason to believe they work for anyone but CCI." Dkt. 68 at 26. Employees receive paychecks or W-2 from different subsidiaries – not CCI. Dkt. 61-4, Ex. 2, Proost Dep., 83:17-84:23; *see e.g.*, Ex. 14 (███████████████████).

-9-

Relying on many of the same arguments, Entropic argues that CCI ratified the Spectrum store locations in this district because visitors to the Spectrum website or stores "believe that the **Spectrum**-branded stores and **Spectrum** services are provided by CCI." Dkt. 68 at 26-27 (emphases added). Entropic provides no support for this statement and cannot show that CCI ratified any store in this district because CCI has maintained the corporate forms and thus, the "shared use" of "Spectrum" "does not detract from the separateness of [its] business." *Andra Grp*, 6 F.4th at 1290. And, to analyze whether CCI ratified any stores in this district, which it has not, courts weigh many considerations, which Entropic does not address. *Id.* at 1289-90. Contrary to Entropic's suggestion (Dkt. 68. at 28-29), and discussed above, the formation and execution of an LLC agreement *alone* does not support the conclusion that CCI has ratified any Spectrum store as its own. Here, unlike in *DirecTV* or *Agis Software Development LLC v. Google LLC*, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022), all of the job listings and advertisements here are offered under the Spectrum-brand and Spectrum is the "provider" of all services "in all interactions with" customers such that there was "never any suggestion that anyone other than [Spectrum] was providing the service." *MDSave, Inc. v. Sesame, Inc.*, No. 21-CV-01338, 2023 WL 353998, at *5 (W.D. Tex. Jan. 11, 2023) (distinguishing *Agis* and granting motion to dismiss for improper venue); *cf. Agis*, 2022 WL 1511757, at *18 (finding Google ratified location because "by [its] own admission, '[Customers] are not even aware of CTDI,'" its alleged agent); *cf. DirecTV*, at 10-11 (finding the defendant "adopted and ratified" locations based on the company's DISH-branded website offering DISH service packages and authorized retailers of DISH-branded products, among other DISH-branded information). The Court should therefore grant CCI's motion.

### III.   CONCLUSION

For the reasons stated above, and for the reasons set forth in Defendant CCI's opening brief, the Court should grant Defendant's Motion to Dismiss the SAC.

Dated: March 9, 2023

Respectfully submitted,

*/s/ Deron R. Dacus*

Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Palak Mayani Parikh
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: albert.boardman@arnoldporter.com
Email: melissa.brown@arnoldporter.com
Email: palak.mayani@arnoldporter.com

**Attorneys for Defendant**
**Charter Communications, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 9, 2023.

/s/ Deron R. Dacus
Deron R. Dacus

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 36) entered in this case on August 10, 2022.

/s/ Deron R. Dacus
Deron R. Dacus