**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>     Plaintiff,<br><br>        v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>     Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S OPPOSED MOTION**
**TO CONSOLIDATE THIS ACTION WITH NO. 2:23-CV-00052-JRG**
**AND TO AMEND THE CASE SCHEDULE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    BACKGROUND ..................................................................................................2

    A.    The First Action .....................................................................................2

    B.    The Second Action...................................................................................3

II.    STATEMENT OF THE ISSUES.........................................................................4

III.    LEGAL STANDARDS .......................................................................................4

    A.    The Court May Exercise Its Discretion and Consolidate Actions That Involve Common Questions of Law or Fact...................................................4

    B.    Claim Splitting.........................................................................................5

    C.    Issue Preclusion .......................................................................................6

IV.    ARGUMENT ......................................................................................................7

    A.    Consolidation Of the First Action With the Second Action Is Appropriate ...........7

        1.    Factors 1 & 2:  The First and Second Action are Pending Before this Court and the Parties are Identical ...............................................7

        2.    Factor 3:  The Law and Facts Substantially Overlap Between the Actions ..............................................................................7

        3.    Factor 4:  Trying the Cases Separately Presents a Risk Of Jury Confusion and Prejudice to the Defendant ...................................9

        4.    Factor 5:  Without Consolidation, There Will Be Substantial Inefficiencies..............................................................................10

            (a)    Trying the First and Second Actions Separately Makes It Likely That the Parties Will Be Forced To Litigate the Possibility of Claim Splitting in the Second Action .....................11

            (b)    Trying the First and Second Actions Separately Also Makes It Likely That the Parties Will Be Forced To Litigate the Possibility of Issue Preclusion in the Second Action....................12

    B.    A Short Delay Of the First Action Will Not Prejudice Entropic Because It Is Offset By Expedited Resolution Of the Second Action........................................14

V.    CONCLUSION...................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Acumed LLC v. Stryker Corp.*,
  525 F.3d 1319 (Fed. Cir. 2008)...................................................................5

*Adaptix, Inc. v. AT&T Mobility LLC*,
  No. 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015)....................................5, 11

*Arctic Cat, Inc. v. Polaris Indus. Inc.*,
  No. 13-cv-3579 ...............................................................................8

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
  C.A. No. 12-CV-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014)............................15

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-CV-618-JRG-JDL, 2017 WL 131587 (E.D. Tex. Jan. 13, 2017).......................6, 12

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) ...............................................................4

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ...............................................................6

*DynaEnergetics Europe GMBH v. Hunting Titan, Inc.*,
  No. 6:20-cv-00069-ADA, 2020 WL 3259807 (W.D. Tex. June 16, 2020) ...........................8

*Dupont v. S. Pac. Co.*,
  366 F.2d 193 (5th Cir. 1966) ...............................................................4

*Entropic Communications, LLC v. Comcast Corporation, et al.*,
  No. 2:23-cv-1050 (C.D. Cal.) ............................................................1, 3

*Entropic Communications, LLC v. Cox Communications, Inc., et al.*,
  No. 2:23-cv-01049, (C.D. Cal) ..........................................................1, 3

*Exmark Manufacturing Company Inc. v. Briggs & Stratton Power Products*
  *Group, LLC*, 879 F.3d 1332 (Fed. Cir. 2018) ...........................................9

*Greatbatch Ltd. v. AVX Corp.*,
  No. 13-cv-723-LPS, 2018 WL 1568872 (D. Del. Mar. 30, 2018)...........................10

*Hillman Group, Inc. v. Keyme, LLC*,
  2:19-CV-00209-JRG, 2020 WL 6938441 (E.D. Tex. Oct. 23, 2020)
  (Gilstrap, J.) .......................................................................4, 8, 9, 14

*Holmes v. City of San Antonio Airport*,
   No. 5:21-cv-00267-OLG, 2021 WL 2878548 (W.D. Tex. Apr. 26, 2021)...............................5

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
   585 F. Supp. 2d 623 (D. Del. 2008)......................................................................................13

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
   752 F. App'x 1024 (Fed. Cir. 2018) ......................................................................................12

*Innovation Scis., LLC v. HTC Corp.*,
   No. 4:19-CV-00752, 2020 WL 2320056 (E.D. Tex. May 11, 2020).......................................5

*Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*,
   No. 13-cv-4863, 2020 WL 1491142 (N.D. Ill. March 27, 2020)..........................................13

*In re Air Crash Disaster at Fla. Everglades on Dec. 29*, 1972,
   549 F.2d 1006 (5th Cir. 1977) ...............................................................................................4

*In re Longi*,
   759 F.2d 887 (Fed. Cir. 1985)................................................................................................2

*Ohio Willow Wood Co. v. Alps South, LLC*,
   735 F. 3d 1333 (Fed. Cir. 2013)...........................................................................................13

*Ollnova Techs. Ltd. v. ecobee Techs., ULC*
   2:22-CV-00072-JRG, 2023 WL 2871051 (E.D. Tex. Apr. 10, 2023) ....................................7

*Puig v. Citibank, N.A.*,
   514 F. App'x 483 (5th Cir. 2013) ........................................................................................15

*Senju Pharm. Co., Ltd. v. Apotex Inc.*,
   746 F.3d 1344(Fed. Cir. 2014)...............................................................................................6

*SimpleAir, Inc. v. Google LLC*,
   884 F.3d 1160 (Fed. Cir. 2018)..................................................................................6, 11, 12

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
   778 F.3d 1311 (Fed. Cir. 2015)..............................................................................................6

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*,
   751 F.3d 684 (5th Cir. 2014) .............................................................................................6, 7

*VirnetX, Inc. v. Cisco System, Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)..............................................................................................9

**Other Authorities**

37 C.F.R. § 1.321(c)(3) ................................................................................................12

Fed. R. Civ. P. 42 .................................................................................................1, 4, 15

Fed. R. Civ. P. 16(b)(4) ...............................................................................................15

Local Civil Rule CV-7(a)(1) ..........................................................................................4

Restatement (Second) of Judgments .........................................................................5, 6

Defendant Charter Communications, Inc. ("CCI" or "Defendant") moves to consolidate and extend the Docket Control Order set in the above-captioned case (the "First Action") with the pending related action, *Entropic Communications, LLC v. Charter Communications, Inc.*, No. 2:23-CV-00052 (E.D. Tex.) (Gilstrap, J.) (the "Second Action"), pursuant to Federal Rule of Civil Procedure (the "Rules") 42(a).[1]  Plaintiff Entropic Communications, LLC ("Entropic") opposes modifying the Court's scheduling order to permit consolidation.[2]

The Second Action is based on U.S. Patent Nos. 11,381,866 (the "'866 Patent") and 11,399,206 (the "'206 Patent"), which were issued from a continuation of the application asserted in this First Action, issued as U.S. Patent 9,210,362 (the "'362 Patent").  Thus, the First and Second Actions share much common ground.  They both involve patents in the same patent family, with the same specification, same inventors, with similar claims against the same Defendant and the same accused products.  Without consolidation, there will be substantial inefficiencies, risk of inconsistent outcomes, needless litigation over claim splitting and issue preclusion and risk of jury confusion in a trial in the Second Action which may have to account for events that occurred in the First Action.  Accordingly, Defendant respectfully requests consolidation of the two actions to avoid claim splitting and duplicative pre-trial and trial proceedings and later disputes over issue

---

[1] Defendant maintains that consolidation is only appropriate if the Court modifies the existing trial schedule to provide sufficient time to exchange contentions and interrogatories, and claim construction followed by expert discovery.  Defendant respectfully submits that it would be prejudiced by requiring it to litigate the two new patents on the existing schedule in this case.

[2] Plaintiff, clearly understanding the relatedness of the patents, recently asserted all ***three*** of the patents in the First and Second Actions together (1) in a single case against Comcast Corporation (and related entities), ***and*** (2) in a single case against Cox Communications, Inc. (and related entities).  *See Entropic Communications, LLC v. Comcast Corporation, et al.*, No. 2:23-cv-1050 (C.D. Cal.), Dkt. 1 (Entropic's complaint against Comcast defendants filed February 10, 2023, asserting the '361, '866, and '206 Patents, among others); *see also Entropic Communications, LLC v. Cox Communications, Inc., et al.*, No. 2:23-cv-01049, (C.D. Cal)., Dkt. 1 (Entropic's complaint against the Cox defendants filed February 10, 2023, and asserting the '361, '866, and '206 Patents, among others).

preclusion and res judicata on a schedule that does not prejudice Defendant's ability to prepare for whatever new issues the patents in the Second Action may present.[3]

The June 13 claim construction hearing is imminent in the First Action, followed by the close of fact discovery a month later and then expert discovery, followed by the pretrial process and trial in the beginning of December.  The Second Action, on the other hand, has just begun.  In order for the cases to be consolidated, Defendant submits that the current trial schedule would need slight modification to allow for exchange of contentions and claim construction of the new patents prior to picking up claim construction and expert discovery before trial.   (*See* Dkt. 89). Consolidation and a short extension of the current schedule (by five months) will promote judicial efficiency by providing time to effectuate the orderly and efficient coordination of both actions. Any prejudice that may be claimed by Entropic from a brief delay of the First Action is offset by an ***earlier*** resolution of the Second Action and far more efficient resolution of the two actions. Furthermore, Entropic, a non-practicing entity, only seeks monetary damages.  Defendant has submitted a proposed consolidated schedule as Exhibit 1 that would allow the parties to be ready for trial in both actions on or around May 1, 2024, with a consolidated claim construction hearing in or about September, at the Court's convenience.

## I.    BACKGROUND

### A.    <u>The First Action</u>

Entropic commenced the First Action on April 27, 2022 based on the '362 Patent, and five other patents, seeking monetary damages for alleged patent infringement.  (*See* Dkt. 1.)  The '362 Patent issued from a continuation of application No. 13/952,871, which itself was a continuation

---

[3] One such issue is obviousness-type double patenting over the earlier issuing patents in the same family.  *See In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985).

-2-

of application No. 12/762,900, now U.S. Patent No. 8,526,898.  (*See* Second Amended Complaint ("SAC") dated January 10, 2023, Ex. D, Dkt. 53-4.)  The named inventors are Madhukar Reddy, Curtis Ling, and Timothy Gallagher.  (*Id.*)  Although Entropic filed two Amended Complaints in the First Action, it never amended the complaint to assert the related '866 or '206 Patents, both of which issued in July 2022.

**B.** **The Second Action**

On February 10, 2023, exactly one month after Entropic filed a Second Amended Complaint in the First Action, Entropic commenced multiple litigations against certain cable industry entities.  In the *Comcast* and *Cox* cases (*see* Note 2 *supra*), filed on February 10, 2023, Entropic asserted the '362 Patent **_and_** the '866 and '206 Patents in a single action.  *See Comcast*, No. 2:23-cv-1050 (C.D. Cal.), Dkt. 1, ¶ 1 (asserting the '361, '866, and '206 Patents, among others); *Cox Comms.*, No. 2:23-cv-01049, (C.D. Cal)., Dkt. 1, ¶ 1 (asserting the '361, '866, and '206 Patents, among others).  Here, however, Entropic commenced the Second Action seeking monetary damages for alleged patent infringement and identified the First Action as a related action in the Civil Cover Sheet.  (*See* Second Action, Dkts. 1, 1-1.)  Entropic filed an Amended Complaint on April 19, 2023 and has never attempted to serve Defendant with a copy of the Complaint or the Amended Complaint.[4]  (*See* Second Action, Dkt. 11.)

The Amended Complaint in the Second Action asserts two patents issued from the same patent family as the '362 Patent.  The '866 Patent and the '206 Patent are both continuations from a series of straight continuation applications leading back to Application No. 12/762,900, the same ultimate parent of the '362 Patent asserted in the First Action.  (*See* Second Action, Dkt. 11-1 ('866

---

[4] Although Entropic never served Defendant, Defendant ultimately decided to appear on its own and move to dismiss the Second Action (Second Action, Dkt. 13) and now moves to consolidate these actions.

Patent); Dkt. 11-3 ('206 Patent).)   The named inventors are the same as in the First Action–

Madhukar Reddy, Curtis Ling, and Timothy Gallagher.  (*Id.*)

## II.     STATEMENT OF THE ISSUES

Pursuant to Local Civil Rule CV-7(a)(1), the issues to be decided by the Court in

connection with this Motion is whether the Court will exercise its discretion:

1.     to consolidate this First Action with the Second Action for pre-trial and trial

purposes pursuant to Rule 42(a); and

2.     modify the current schedule to allow time for the efficient coordination of the two

proceedings.

## III.    LEGAL STANDARDS

### A.     The Court May Exercise Its Discretion and Consolidate Actions That Involve Common Questions of Law or Fact

Under Rule 42(a), the Court has discretion to consolidate actions where the actions

"involve a common question of law or fact."  *Hillman Group, Inc. v. Keyme*, LLC, 2:19-CV-

00209-JRG, 2020 WL 6938441, at *2 (E.D. Tex. Oct. 23, 2020) (Gilstrap, J.) (citing Rule 42(a)

and *Dupont v. S. Pac. Co.*, 366 F.2d 193, 195-96 (5th Cir. 1966)).  A "trial court's managerial

power is especially strong and flexible in matters of consolidation."  *Ctr. for Biological Diversity,

Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 432 (5th Cir. 2013) (quoting *In re Air Crash Disaster at

Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977)). "Courts 'are urged to

make good use of Rule 42(a)' to 'expedite the trial and eliminate unnecessary repetition and

confusion.'" *Hillman*, 2020 WL 6938441, at *2 (quoting *Dupont*, 366 F.2d at 195-96).

"Courts should consider the following five factors in determining whether consolidation is

appropriate: (1) whether the actions are pending in the same court; (2) whether there are common

parties; (3) whether there are common questions of law or fact; (4) whether there is risk of

prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy." *Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267-OLG, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021).  Each of these factors weighs heavily in favor of consolidation.

In addition to these factors, and to be considered as part of the fifth factor—promoting judicial economy—without consolidation there is a significant risk that additional litigation will be required in the Second Action to resolve disputes over claim splitting and issue preclusion.

### B.  <u>Claim Splitting</u>

"It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together." *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *11 (E.D. Tex. May 12, 2015) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).  "Claim splitting is just a sub-species of the doctrine of claim preclusion and is designed to protect the defendant from being harassed by repetitive actions based on the same claim." *Id.* (internal quotation marks and citation omitted).  "In the context of claim splitting, the analysis requires only the assumption that the first suit was finally decided." *Id.*

"When a case turns on general principles of claim preclusion, the law of the regional circuit in which the district court sits applies." *Innovation Scis., LLC v. HTC Corp.*, No. 4:19-CV-00752, 2020 WL 2320056, at *2 (E.D. Tex. May 11, 2020) (citing *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008)).  The "test for claim preclusion in the Fifth Circuit has four elements: (1) the parties in the later action are identical to, or in privity with, the parties in the earlier action; (2) the judgment in the earlier case was rendered by a court with proper jurisdiction;

-5-

(3) there has been a final judgment on the merits; and (4) the earlier case and later case involve the same cause of action." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018) (citing *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010)).

In patent cases such as this one, the determination of the fourth element of claim preclusion, that is "whether a particular cause of action in a patent case is the same as or different from another cause of action[,] has special application to patent cases, and" Federal Circuit law applies to the issue. *Id.* (alteration omitted; quoting *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014)). Federal Circuit law "generally follow[s] the Restatement (Second) of Judgments . . . [ ] which defines a cause of action based on the transactional facts from which it arises." *Id.* (citations omitted). "In a patent suit, essential transactional facts include both the asserted patents and the accused activity[,]" and "[i]f the overlap between the transactional facts of the suits is substantial, the later action should ordinarily be precluded." *Id.* (citations omitted). "However, what facts make up a transaction in a given case 'is not capable of a mathematically precise definition.'" *Id.* (quoting Restatement § 24 cmt. b).

### C.    Issue Preclusion

"In patent infringement cases, regional circuit law governs the question of whether issue preclusion applies. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). Issue preclusion is an equitable doctrine that "prohibits a party from seeking another determination of the litigated issue in the subsequent action." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 2014). "Issue preclusion applies when (1) the identical issue was previously adjudicated; (2) the issue was fully and fairly litigated; (3) the determination of the issue was necessary to the resulting judgment; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair." *Chrimar*

*Sys., Inc. v. Adtran, Inc.*, No. 6:15-CV-618-JRG-JDL, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017) (citing *State Farm*, 751 F.3d at 689).

## IV.    ARGUMENT

### A.    Consolidation Of the First Action With the Second Action Is Appropriate

#### 1.    *Factors 1 & 2:  The First and Second Action are Pending Before this Court and the Parties are Identical*

The first two considerations for consolidation are satisfied here:  (1) both the First and Second Actions are pending before this Court; and (2) the parties in both actions are identical.

#### 2.    *Factor 3:  The Law and Facts Substantially Overlap Between the Actions*

There are unquestionably common questions of law and fact—the third consideration for consolidation—between the two actions that render consolidation appropriate if not necessary.

*First*, as described above and below, because the '362 Patent (First Action), and the '866 and '206 Patents (Second Action) share the same inventors, specifications, and some common prosecution history, the intrinsic evidence for all three of these patents will be nearly identical, and should be heard together at a single claim construction hearing.  *Ollnova Techs. Ltd. v. ecobee Techs., ULC*, 2:22-CV-00072-JRG, 2023 WL 2871051, at *2 (E.D. Tex. Apr. 10, 2023) ("Intrinsic evidence is the primary resource for claim construction" (citation omitted)).  Further, both actions accuse the same products of infringing similar patent claims necessarily resulting in similar infringement and invalidity allegations across the two cases.[5]

---

[5] Although everything points to near identity among these three patents, presumably Entropic will attempt to argue there are some differences—otherwise it would not have bothered to file the Second Action.  Defendant needs discovery to learn whatever these to-be asserted differences are to prepare for the Second Action.

_Second_, not only are the inventors of the '362, '866, and '206 Patents identical, but the complaints include the same definitions for "Accused Products" and "Accused Services,"[6] and Defendant anticipates that document discovery and individuals with knowledge about the relevant patents, "Accused Products," and "Accused Services" will be nearly the same in both the First and Second Actions.  Duplicative depositions and other discovery would be unnecessarily "repetitious" and inefficient.  *See Hillman*, 2020 WL 6938441, at *3 (granting consolidation where actions "involve the same parties" and "the same 'Accused Products.'"); *Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-cv-3579 JRT/FLN, 2015 WL 2242071, at *4 (D. Minn. Feb. 11, 2015) (recommending consolidation, finding "it is clear that [two] cases will raise common questions of law and fact" because the patents were from the same patent family, have the same inventors, and "the same documents will have to be produced, the same witnesses will have to be deposed, and the same products will be at issue"), *report and recommendation adopted as modified*, 2015 WL 2242069, at *2 (D. Minn. May 12, 2015); *DynaEnergetics Europe GMBH v. Hunting Titan, Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *5 (W.D. Tex. June 16, 2020) (transferring for consolidation where "the noted similarities combined with the shared inventors, parties, technology, product, and field are significant[,]" and finding "a likelihood of substantial overlap exists between the two cases").  Consolidating these cases would hopefully allow witnesses to be

---

[6] The First and Second Action use "Accused Products" and "Accused Set Top Boxes" interchangeably.  There are no differences between the products accused to infringe.  *Compare* First Action, SAC, ¶ 11 (defining "**Accused Services**" as "cable television and internet services" and "**Accused Products**" as "Spectrum 100-series STBs, Spectrum 200-series STBs, Spectrum 101-series STBs, Spectrum 201-series STBs, Spectrum 110-series STBs, Spectrum 210-series STBs, the Arris DCX3600 STB, and products that operate in a similar manner"), *with* Second Action, Am. Compl., ¶ 27 (defining "**Accused Services**" as "cable television and internet services" and "**Accused Set Top Boxes**" as Spectrum 100-series STBs, Spectrum 200-series STBs, Spectrum 101-series STBs, Spectrum 201-series STBs, Spectrum 110-series STBs, Spectrum 210-series STBs, the Arris DCX3600 STB, and products that operate in a similar manner")

deposed only once and "conserve party and judicial resources, and avoid repetitious litigation"—
the fifth consideration for consolidation.  *Hillman*, 2020 WL 6938441, at *1.

### 3.    *Factor 4:  Trying the Cases Separately Presents a Risk Of Jury Confusion and Prejudice to the Defendant*

Without consolidation, there is a risk of juror confusion and resultant prejudice to
Defendant because a jury in the Second Action would likely have the difficult task of trying to
account for events that occurred in the First Action.  For example, if the '362 Patent is invalidated
over the prior art (and the '206 or '866 Patents are not ruled invalid under the doctrine of issue
preclusion), a jury in a trial in the Second Action would need to focus only on the differences
between the invalidated claims and the asserted claims in the related patents.  Otherwise, there
would be a risk of inconsistent outcomes between the First Action, which in this hypothetical
would result in a finding that the common elements of the claims in the '362 Patent were in the
prior art, and the Second Action, which would reach the opposite conclusion.

By way of another example, if the '362 Patent is invalidated or found not to be infringed
in a trial in the First Action, practicing its claims would be a noninfringing alternative to the '206
or '866 Patents.  The jury in the Second Action would have to understand that the value (if any)
of the claims of the '206 or '866 Patents is *only* the extent to which they cover some feature apart
from the '362 Patent.[7]  This would be further complicated by any appeal of the First Action during

---

[7] Because the claims in the Second Action provide only minor variations to the claimed subject
matter in the First Action (*see* claim charts, Exhibit 2), consolidation will allow the parties to
properly apportion damages, as required by Federal Circuit jurisprudence*.  See VirnetX, Inc. v.
Cisco System, Inc*., 767 F.3d 1308, 1326 (Fed. Cir. 2014).  Entropic cannot claim the value of the
features covered by the '362 Patent if it has been invalidated or found not to be infringed.
Defendant must be allowed to present evidence on those features that existed in the prior art or
determined not to infringe the '362 Patent, and are therefore not attributable to claimed invention
in the Second Action.  *See Exmark Manufacturing Company Inc. v. Briggs & Stratton Power
Products Group, LLC*, 879 F.3d 1332, 1351-52 (Fed. Cir. 2018) (finding district court committed

the pendency of the Second Action.  The *Greatbatch* case highlights the challenges that may arise should the cases not be consolidated.  *See Greatbatch Ltd. v. AVX Corp.*, No. 13-cv-723-LPS, 2018 WL 1568872, at *3-5 (D. Del. Mar. 30, 2018).  There, the case was tried to a jury while there was an outstanding appeal pending as to the patentability of certain asserted claims stemming from an IPR challenge.  The defendant was unable to present evidence of noninfringing alternatives to the jury because at that time, the Federal Circuit had not yet confirmed the PTAB's decision that certain asserted claims were invalid.  *Id.* at *3.  The district court granted a new trial on damages because the existence of a noninfringing alternative—made possible by the post-trial invalidation of claims covering the same technology—was "a fact question that should be decided by a jury, which necessitates a retrial of damages."  *Id.* at *4.  Here, consolidation is necessary to avoid a similar outcome and to avoid wasting the Court's (and future juries) time and resources with new trials.

Alternatively, if the First Action were to result in a finding of infringement and a damages award on the '362 Patent, there would be a risk of impermissible double-recovery in the Second Action that would require (1) the jury in the Second Action navigating a confusing comparison of the scope of the claims and recovery in the First Action against what Entropic seeks in the Second Action (assuming any such recovery is permissible), and (2) the Court to adjudicate claims of issue preclusion that would necessarily arise.  *See* IV.A.4(b), *infra*.

### 4.     *Factor 5:    Without Consolidation, There Will Be Substantial Inefficiencies*

As explained above, there are substantial overlaps in factual and legal issues concerning the '362 Patent and the '866 and '206 Patents which will result in inefficiencies if the First and

---

error by excluding accused infringer's evidence of prior art demonstrating that aspects of the claimed invention were in the prior art, as that evidence is relevant to Georgia Pacific Factor 9).

Second Actions are not consolidated. *See* IV.A.2, *supra*. Furthermore, in addition to these inefficiencies, if these cases are tried separately, there will be further waste of judicial resources because of the need to address claim splitting and issue preclusion questions that will be generated as a result of trying these cases separately.

> **(a)      Trying the First and Second Actions Separately Makes It Likely That the Parties Will Be Forced To Litigate the Possibility of Claim Splitting in the Second Action**

Even a cursory review of the four factors the Court must consider for claim splitting demonstrates the likelihood of a claim splitting defense in the Second Action.

<u>*First*</u>, there can be no dispute that the parties to the First and Second Actions are the same. *See SimpleAir*, 884 F.3d at 1165. <u>*Second*</u>, there is no reason at this point to doubt that any judgment in the First Case "was rendered by a court with proper jurisdiction."[8] *Id*. <u>*Third*</u>, if the actions are not consolidated, there will be "a final judgment on the merits" in the First Action, subject to an appeal, before final adjudication of the Second Action.[9] *Id*.

<u>*Fourth*</u>, both cases are likely to involve the "the same cause of action." *Id*. Where "different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *SimpleAir*, 884 F.3d at 1169; *id.* at 1166. Patent claims that are "patentably indistinct are essentially the same." *Id.* at 1169. For "continuation patents," a "terminal disclaimer does not conclusively show that the claim scope of a parent patent and a child patent is the same," but "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant,

---

[8] Defendant reserves its rights to seek appellate review of the Court's decision denying the motion to dismiss for improper venue. *See* Order dated May 3, 2023, Dkt. 91 (filed under seal).

[9] As noted, when considering claim splitting, the Court is permitted to assume that the "first suit was finally decided." *Adaptix*, 2015 WL 12696204, at *11.

thought the claims in the continuation lacked a patentable distinction over the parent." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1034 (Fed. Cir. 2018) (quoting *SimpleAir*, 884 F.3d at 1168).

The patentee has conceded that the '866 and '206 Patents are both "patently indistinct" from the 9,100,622 patent, a common ancestor.  Moreover, a comparison of the claims of the '866 and '206 Patents (Second Action) with the '362 Patent (First Action) demonstrates a likelihood that they will be found to be patently indistinct and that Entropic may need to file additional terminal disclaimers if it wants to avoid invalidity for obviousness-type double patenting.[10]  *See* Exhibit 2.

The Court need not determine at this stage that the claims are in fact patently indistinct to determine that consolidation is warranted to avoid additional litigation over this readily foreseeable, and easily avoidable, issue.

> **(b)      *Trying the First and Second Actions Separately Also Makes It Likely That the Parties Will Be Forced To Litigate the Possibility of Issue Preclusion in the Second Action***

Consolidation is also appropriate because it will obviate the need to later litigate the issue of issue preclusion between the First and Second Actions.  As with claim splitting, even a cursory review of the four factors applicable to issue preclusion demonstrates the likelihood that Entropic or Defendant will argue issue preclusion will apply.  Both cases may involve "the identical issue" given the similarity of the claims.  *See Chrimar Sys.*, 2017 WL 131587, at *1.

---

[10] *See* 37 C.F.R. § 1.321(c)(3) ("A terminal disclaimer, when filed to obviate judicially created double patenting" must "[i]nclude a provision that any patent granted on that application . . . shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting.")

The *claims* need not be identical for the First and Second Actions, although the charts in Exhibit 2 show they are nearly identical, to involve "the identical issue" and trigger application of issue preclusion.  The Federal Circuit explained:  "Our precedent does not limit collateral estoppel to patent claims that are identical.  Rather, it is the identity of the issues that were litigated that determines whether collateral estoppel should apply."  *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F. 3d 1333, 1342 (Fed. Cir. 2013).

Issue preclusion could apply to infringement, invalidity, and damages.  For example, if the First Action results in a damages award on the '362 Patent, there would be a risk of impermissible double-recovery if the Second Action also results in a damages award on the related '866 and '206 Patents.  *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 633 (D. Del. 2008) (imposing issue preclusion on damages claim because "the same infringing sales of the same infringing products under the '080 patents have already been tried in relation to the '436 patent."); *Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*, No. 13-cv-4863, 2020 WL 1491142, at *7 (N.D. Ill. March 27, 2020) ("Therefore, the Court finds that collateral estoppel precludes Kolcraft from relitigating reasonable royalty damages in this case given the jury's damage award in the '993 patent case.").  The timing of an appeal on the First Action would further complicate litigation of the Second Action because the "application of collateral estoppel" to prevent a double-recovery does not mean that the Court will preclude plaintiff from attempting to seek damages during the pendency of the appeal in the first action.  *See Kolcraft*, 2020 WL 1491142, at *7 ("[B]ecause Kolcraft has not yet collected on the judgment in the '993 case, the Court agrees with Kolcraft that a determination concerning how to address the potential double recovery is premature.")

As with claim splitting, the Court need not determine at this stage that issue preclusion applies to determine that consolidation is warranted to avoid additional litigation to determine this issue.[11]

**B.     A Short Delay Of the First Action Will Not Prejudice Entropic Because It Is Offset By Expedited Resolution Of the Second Action**

Defendant proposes a short delay of five months in the First Action to allow for the necessary and efficient consolidation of both actions.   A proposed consolidated schedule is attached hereto as Exhibit 1.

Entropic will not be prejudiced by a short delay in the trial date of the First Action because Entropic only seeks monetary damages, and not injunctive relief, in both actions.   *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-CV-1107 (GMS), 2014 WL 1369721, at *4 (D. Del. Apr. 7, 2014) (collecting cases for the proposition that because the plaintiff "is a non-practicing entity, any prejudice that may result from a stay can be remedied by monetary damages." (quoting *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-cv-309-SLR, 2013 WL 1489003, at *2 (D. Del. Apr. 11, 2013))).   Furthermore, it is Entropic, not Defendant, that dictated the timing of the Second Action.[12]   In any event, any prejudice claimed by a delay of the First Action is offset by a ***faster*** resolution of the Second Action, which is what Defendant proposes in Exhibit 1.  *Hillman*, 2020 WL 6938441, at *3 (consolidating cases involving the same parties and accused products where asserted patents were from the same patent family, finding that consolidation would "conserve party and judicial resources by simplifying the issues before the

---

[11] Whichever party prevails on an issue in the First Action is likely to argue that issue preclusion will apply to the Second Action resulting it what is currently avoidable judicial inefficiency.

[12] Entropic chose to file the Second Action and delay service rather than assert the '866 and '206 Patents in the First Action, which it could have in January 2023 when it filed the Second Amended Complaint.

-14-

Court and avoiding repetitious litigation" and "[a]lthough consolidation will delay resolution of the claims in the -209 case, this is offset by expediting resolution of the claims in the -70 case").

Defendant respectfully suggests that a modification of the scheduling order is required to allow for discovery, exchange of contentions, and claim construction submissions for the Second Action to align with the current status of the First Action.  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause standard" requires a showing that "deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *Puig v. Citibank, N.A.*, 514 F. App'x 483, 487–88 (5th Cir. 2013) (citation omitted).  Good cause exists here.

The parties cannot meet the current deadlines in the First Action if they are also applied to the Second Action because many of them have already passed.  A modified, consolidated scheduling order will preserve the parties' and Court's resources by providing sufficient time for the parties to efficiently complete discovery and claim construction in the consolidated action.  A modified schedule would also provide the parties with the time needed to prepare and present ***all*** claims relevant to the '362, '866, and '206 Patents within a single claim construction hearing, a single set of expert reports, *Daubert* briefing, summary judgment motions, *in limine* motions, and trial.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this Motion and issue an order pursuant to Rule 42 consolidating this First Action with the Second Action for all purposes, with the First Action serving as the lead action, and enter an amended Consolidated Scheduling Order substantially similar to the proposed order attached to this Motion as Exhibit 1.

Dated: May 11, 2023

Respectfully submitted,

/s/  Daniel L. Reisner

Daniel L. Reisner
David Benyacar
Amy DeWitt
Elizabeth Long
Albert J. Boardman
Melissa Brown
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: amy.dewitt@arnoldporter.com
Email:  elizabeth.long@arnoldporter.com
Email:  albert.boardman@arnoldporter.com
Email:  melissa.brown@arnoldporter.com

Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

**Attorneys for Defendant**
**Charter Communications, Inc.**

-16-

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 11, 2023.

*/s/  Daniel L. Reisner*
Daniel L. Reisner

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h).  Counsel for Plaintiff Entropic Communications, LLC indicated that it opposes modifying the Court's scheduling order to permit consolidation and therefore opposes the relief sought in this motion.

*/s/  Daniel L. Reisner*
Daniel L. Reisner