UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Civil Action No. 2:22-cv-00125-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF`S RESPONSE TO DEFENDANT'S OPPOSED MOTION
TO CONSOLIDATE THIS ACTION WITH NO. 2:23-CV-00052-JRG
<u>AND TO AMEND THE CASE SCHEDULE</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ...................................................................................................................3

      1.      At this stage, it is impossible to assess whether consolidation will promote efficiency ................................................................................................................4

      2.      Consolidation would prejudice Entropic and give an unfair advantage to Charter .7

           a.      Consolidation would force Entropic to choose between an unworkable trial or cutting claims it should be entitled to present .................................9

           b.      Consolidation would substantially delay trial ...........................................10

III.   CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*AGIS Software Development LLC v. Waze Mobile Ltd.*,
    No. 2:19-CV-00359-JRG, 2022 WL 1608047 (E.D. Tex. May 20, 2022) ...................... 1, 4

*Broadcom Corp. v. Commonwealth Sci.*,
    No. 6:09 CV 513, 2010 WL 11440940 (E.D. Tex. Jan. 7, 2010) ........................................ 4

*Contentguard Holdings, Inc. v. Google, Inc.*,
    Nos. 2:14-cv-00061-JRG, Nos. 2:13-cv-01112, 2014 WL 1477670 (E.D. Tex. Apr. 15,
    2014) ............................................................................................................................... 3

*Garrity Power Servs. LLC v. Samsung Elecs. Co. Ltd.*,
    No. 2:20-cv-269 (E.D. Tex. Dec. 10, 2021) ................................................................... 10

*Hillman Grp., Inc. v. Keyme, LLC*,
    Nos. 2:19-CV-00209-JRG, 2:20-CV-00070-JRG, 2020 WL 6938441 (E.D. Tex. Oct. 23,
    2020) ........................................................................................................................... 8, 9

*Holmes v. City of San Antonio Airport*,
    No. 5:21-cv-00267-OLG, 2021 WL 2878548 (W.D. Tex. Apr. 26, 2021) ........................ 4

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
    No. 2:21-CV-00113-JRG, 2022 WL 17484264 (E.D. Tex. July 7, 2022) ...................... 10

*Richard v. Doe*,
    No. CIV. A. 93-0590, 1994 WL 66745 (E.D. La. Feb. 23, 1994) ...................................... 4

*Smartflash LLC v. Google, Inc.*,
    No. 6:14-cv-435, 2014 WL 11071872 (E.D. Tex. July 7, 2014) .................................. 2, 4

*Solas OLED Ltd. v. Samsung Display Co., Ltd.*,
    No. 2:19-CV-00152-JRG, 2020 WL 4040716 (E.D. Tex. July 17, 2020) ...................... 10

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896648 (E.D. Tex. Dec. 18, 2019) .............. 3, 9

*United Servs. Auto Ass'n v. Wells Fargo Bank, N.A.*,
    414 F. Supp.3d 947 (E.D. Tex. 2019) ........................................................................... 3, 9

*Whiteman v. Pitrie*,
    220 F.2d 914, 918 (5th Cir. 1955) .................................................................................... 3

**Statutes and Rules**

Fed. R. Civ. P. 41 .................................................................................................................... 3

**Other**

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:23-cv-00052, Dkt. No. 16, MOTION TO DISMISS FOR IMPROPER VENUE (E.D. Tex. May 5, 2023)................................................5

## INTRODUCTION

Charter's Motion to Consolidate (the "Motion") [ECF Dkt. No. 99] should be denied because the two cases are at very different stages. Entropic staggered the cases by design so that it could ensure both cases would be manageable from a discovery, claim construction, and trial perspective. Specifically, in this case (the "First Action"), the *Markman* hearing is set for June 13, 2023, discovery closes on July 21, 2023, and trial is set for December 4, 2023. In the new case, *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:23-CV-00052 (E.D. Tex.) (Gilstrap, J.) (the "Second Action"), Charter has not disclosed its defenses and has not responded to Entropic's factual allegations. There is no schedule—no infringement contentions, no invalidity contentions, no proposed terms for construction, no *Markman*, and no trial date. Discovery has not opened, nor has the Court set a scheduling conference. It would be extraordinarily prejudicial to Entropic to reset the case schedule of the First Action in an effort to combine two cases so differently situated. *See e.g.*, *AGIS Software Dev. LLC v. Waze Mobile Ltd.*, No. 2:19-CV-00359-JRG, 2022 WL 1608047, at *4 (E.D. Tex. May 20, 2022). Further, there is no reason that nearly the same efficiencies cannot be achieved by treating the Second Action as just that— a second case, where relevant discovery from the First Action can be incorporated, and relevant claim constructions can be recognized.

The Second Action is so new that there are insufficient facts to inform the consolidation analysis. The two patents in the new case include 158 claims between them. It is yet to be determined how many claims will be asserted, what specific claims will be asserted, whether the products and services at issue will be identical, what prior art Charter will rely upon beyond what is already in the present case, what claim terms Charter will present for construction, and what indefiniteness positions it will take on the new patents. Without these facts, the Motion forces the

1

Court to speculate regarding what efficiencies might be gained. Entropic is mindful not to waste judicial resources, but it is far from clear what would be gained by consolidation. Efficiency considerations at this stage actually favor maintaining the present trial schedule. Settlement of claims is the ultimate efficiency; and keeping the crucible of a December 2023 trial date maximizes chances of a settlement by forcing sober assessment of risks on both parties. And that compulsory risk assessment might very well obviate the need for any second trial.

While the benefits are speculative at best, the harms are clear: consolidation would prejudice Entropic two ways. First, consolidation would force Entropic to cram more patents and more claims into a case schedule and trial that will already be chock-full—there are presently six asserted patents that are each technically dense and complex. Meanwhile, the two patents in the Second Action have 158 claims between them. Because of the breadth of infringement across the two cases, Entropic **intentionally chose not** to attempt to add the two newly-issued patents to this case—recognizing this Court's expectations for limiting asserted claims and trial times. The prejudice to Entropic of forcing too much material into discovery, claim construction, and trial is significant and unfair because Entropic bears the burden of proof. *See Smartflash LLC v. Google, Inc.*, No. 6:14-cv-435, 2014 WL 11071872, at *1 (E.D. Tex. July 7, 2014) (whether consolidation will result in prejudice or unfair advantage to either party is one of two main factors to be analyzed).

Second, Entropic would be prejudiced by delay. The Motion asks for a four-month delay[1] of a case in which only one of six asserted patents is in the same family as those in the Second Action. In the First Action, the parties are on the verge of claim construction and near the end of

---

[1] Charter's motion says five months, *see* ECF Dkt. No. 99 at 19; but the attached schedule proposes a four month delay to substantially all deadlines, with trial moving from December to April. *See id.*, Ex. 1 at 2. Entropic assumes the reference to five months is an error.

2

fact discovery. Tacking on a four-month delay to a case at this stage is not nothing, and it is prejudicial to Entropic. On the other hand, it does not prejudice Charter to let the cases progress in the ordinary course. This Court is accustomed to cases between the same parties being handled in waves, and well-suited to avoid inconsistent outcomes. To suggest otherwise is to assume the Court cannot look back to its own decisions a few months earlier and assess the applicability of its rulings. This Court is also familiar with claim splitting and issue preclusion—if those issues were to even arise, which at this point is speculative at best. Entropic should not be forced into delaying a case well underway, and cramming two cases together that are more manageable on their own individual tracks.

As a result, Entropic respectfully requests the Court deny the Motion and permit the First Action and Second Action to progress as they will.

## **ARGUMENT**

Where actions involve a common question of law or fact, "the court *may* . . . consolidate the actions." *Contentguard Holdings, Inc. v. Google, Inc.*, Nos. 2:14-cv-00061-JRG, Nos. 2:13-cv-01112, 2014 WL 1477670, at *4 (E.D. Tex. Apr. 15, 2014) (quoting Fed. R. Civ. P. 41(a)) (emphasis in original)). This rule "is permissive and vests a purely discretionary power in the district court." *Id.* (quoting *Whiteman v. Pitrie*, 220 F.2d 914, 918 (5th Cir. 1955)).

Here, Entropic does not dispute that the cases involve at least some common questions of law and fact. The same is true for many cases the Court handles in waves. *See, e.g.*, *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896648 (E.D. Tex. Dec. 18, 2019) (concerning the '605 and '681 patents); *United Servs. Auto Ass'n v. Wells Fargo Bank, N.A.*, 414 F. Supp. 3d 947 (E.D. Tex. 2019) (concerning the '571 and '090 patents). But there is much more to the question of consolidation here. The two additional factors—(1) whether consolidation would prevent unnecessary cost or delay, thus promoting judicial

efficiency; and (2) whether consolidation will result in prejudice or unfair advantage to either party—weigh strongly against consolidation here.[2] This is because it is impossible, at this stage, to determine whether consolidation will promote any efficiency that cannot be gained by the Court's normal handling of the Second Action, and because Entropic would suffer significant prejudice.

> 1. *At this stage, it is impossible to assess whether consolidation will promote efficiency.*

Consolidation is inappropriate, and typically denied, where cases "are at different stages of preparedness for trial." *AGIS Software Dev.*, at *4 (quoting *Smartflash LLC*, at *1). This factor thus "favors consolidation when it will improve efficiency for either the court or the parties, but weighs against consolidation that will delay existing trial settings." *Smartflash LLC*, at *1(citing *Broadcom Corp. v. Commonwealth Sci.*, No. 6:09 CV 513, 2010 WL 11440940 (E.D. Tex. Jan. 7, 2010); *Richard v. Doe*, No. CIV. A. 93-0590, 1994 WL 66745, at *1 (E.D. La. Feb. 23, 1994)). This makes sense. When cases are at substantially different stages, there is little efficiency to be gained.

Here, the cases are an extreme example—the Second Action is so new that it is actually impossible to determine whether consolidation will promote judicial efficiency because critical facts are unknown. No scheduling conference has occurred, discovery is not open, and no infringement contentions have been served. What is more, Charter has not identified any prior art because it has not served invalidity contentions (or even asserted an invalidity defense). The only

---

[2] Charter uses a five-factor test from a Western District of Texas case about a car crash. *See* ECF Dkt. No. 99 at 9-10, citing *Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267-OLG, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021). The only real difference is whether it is the same court and parties, neither of which is under dispute.

4

thing that has happened is Charter's Motion to Dismiss for Improper Venue, *see* Second Action, ECF Dkt. No. 16, which is identical to a motion this Court already denied. *See* ECF Dkt. No. 91.

In sum, the Second Action has barely begun. Nothing meaningful has been developed, other than Charter's decision to raise an already-decided issue. *See id.* As mentioned, although the two asserted patents are continuations from the same family, they together have 158 claims, including 12 independent claims—compared to only 2 asserted claims in the '362 patent. Presently Entropic is evaluating how many of those claims will be asserted, and Charter presumably also does not know whether it will raise new prior art (or new combinations) without knowing what claims are asserted. And, of course, the parties cannot know what terms, if any, will be at issue for claim construction, nor does either party know what new discovery will be necessary. Charter's own Motion concedes discovery will be required to know what differences there are between the two cases. *See* ECF No. 99 at 12 n.5.

The supposed efficiencies Charter advances are therefore speculative—or outright illusory. For example, Charter asserts that the patents "should be heard together at a single claim construction hearing." *Id.* at 12. But without knowing what claim terms will be presented in the Second Action, there is no reason to suppose a single claim construction hearing would be more efficient. In fact, the opposite could be true: by having the terms at issue for the '362 patent addressed in First Action's claim construction hearing in less than two months, it very well might provide guidance to the parties as to claim construction proceedings in the Second Action. And there is no reason that the Court cannot use its own analysis and ruling from the First Action to consider the similarities or differences in the constructions at issue. Further, Charter's own delay has all but ruled out that efficiency. Charter initially met and conferred with Entropic on this

motion on April 21, 2023. It then waited until May 11, 2023 to file it—meaning briefing could not be completed until days before the scheduled *Markman* hearing.

As to discovery, Charter also asserts that "document discovery and individuals with knowledge . . . will be nearly the same" such that "[d]uplicative depositions and other discovery would be unnecessarily 'repetitious' and inefficient." *Id.* at 13. This is despite claiming on the previous page that Charter "needs discovery" on the new patents. *Id.* at 7 n.5. But most importantly, Charter's assertion ignores reality. Depositions are ongoing. By the time the Motion is briefed and decided, a significant portion of the already-scheduled fact depositions will have occurred without the new patents from the Second Action having been included. Based on the current schedule, more than ten and as many as fifteen or more party and third-party witnesses will have been deposed by the end of June 2023, including at least one named inventor of the '362, '866, and '206 patents. Those witnesses will have to be deposed on the new patents, whether or not consolidation is granted. And, to the extent document production, interrogatories, depositions, or any other discovery from the First Action is relevant to the Second Action, there are mechanisms the parties can discuss to prevent re-doing the discovery. As with claim construction, it is possible that with the First Action being as advanced as it will be when discovery in the Second Action opens, the parties can take an even more focused path such that discovery is more efficient with the cases separated. It simply is not the case that consolidation will certainly lead to efficiencies.

On balance, this factor weighs against consolidation because Charter is seeking the delay of a case months from trial in order to accommodate a case in its infancy for efficiency gains that are anything but certain. While Charter, without knowing what claims are asserted, believes the cases can be consolidated with only a four month delay, Entropic believes this suggested schedule is unrealistic. For one, Charter's proposed schedule has Entropic serving its infringement

6

contentions on June 21, 2023—a mere seven days after the Motion will even be fully briefed. Giving Entropic such short notice for service of its final infringement contentions is prejudicial on its own. Apparently presuming Entropic will issue its discovery requests on those newly asserted claims that same day, and then Charter will substantially complete its productions on the day its responses are due, Charter has set the date for substantial completion of document productions for July 21, 2023. Charter's schedule does not include dates for an exchange of terms or constructions, or the Joint Claim Construction and Prehearing Statement, but Charter presumably expects the default schedule to be heavily compressed because it proposes opening claim construction briefs be filed a mere three weeks after Charter's invalidity contentions. Charter also gives the parties zero time for discovery on the newly-asserted claims before claim construction, despite asserting in its brief that it "needs discovery to learn whatever these to-be asserted differences [between the '362 patent and the '866 and '206 patents] are to prepare for the Second Action." *Id.* at 7 n.5.

In sum, Charter's schedule is radically optimistic at best and likely unworkable. To accommodate the new patents, significantly more time may (and likely will) be needed, for both Entropic and Charter—further underscoring the speculative nature of Charter's proposal. The greatest efficiency is staying the course with each case on its natural track.

    2. *Consolidation would prejudice Entropic and give an unfair advantage to Charter.*

Shoehorning these cases together would prejudice Entropic in two ways. First, it would override Entropic's deliberate choice to separate these cases based on the practical realities of working up and trying this number of technically complex patents to a jury in a single case. Second, it would delay Entropic's day in court by at least four months, but likely much more.

7

> a) *Consolidation would force Entropic to choose between an unworkable trial or cutting claims it should be entitled to present.*

This is a large, complicated case involving sophisticated technologies and services. There already are six patents in the First Action—only one of which shares a specification with those in the Second Action. There already are five patent families in the First Action, each involving different technology. Knowing the resources that would be required to work through discovery, coordinate expert reports, progress through pretrial, and prepare for trial, Entropic intentionally separated its infringement allegations to ensure it would have the knowledgeable team members available for these critical stages. There already is a substantial amount of ground to cover, and complex technical issues in the work up to and for the jury to grapple with, in the one week typically provided by this Court for trial. Adding another two patents—with 158 claims together and numerous limitations not present in the '362 patent—forces Entropic into a position it seeks to avoid: either cut claims or patents (that it otherwise would have been able to proceed with), or risk facing resource constraints that prejudice its ability to prepare and then inundating, or under-educating, the jury in the limited time available (or simply running out of time). Either option gives an unfair advantage to Charter—essentially rewarding their extensive infringement.

This is why Charter's repeated citation to *Hillman Grp., Inc. v. Keyme, LLC*, Nos. 2:19-CV-00209-JRG, 2:20-CV-00070-JRG, 2020 WL 6938441 (E.D. Tex. Oct. 23, 2020), is not on point. That case involved key-making machines. The trial was completed—from jury selection to jury verdict after deliberation—in six (6) trial days, *after it was consolidated*. Each side appears to have had one technical expert witness for all six (6) asserted patents. There was one accused product. With the more mechanical technology at issue in *Hillman*, it allowed the plaintiff to have been fully capable of presenting its consolidated case to the jury within the normal prescribed time periods. That is not the case here. Here, there will be numerous technical expert witnesses

8

(Entropic alone has disclosed 8 technical witnesses under the protective order) testifying as to Charter's accused services and products that span set-top boxes, cable modems, and cable modem termination systems ("CMTSs").

Entropic understood these practical realities and chose to deliberately structure these cases based on the Court's established procedures and schedules, including the fast pace of discovery, expert reports, pretrial, and limited trial time. Consolidating these cases—increasing the number of patents from six to eight—would, as a practical matter, force Entropic to proceed with less claims than it otherwise would. That was not true in *Hillman*. Indeed, in *Hillman*, it was the *plaintiff* moving to consolidate, not the defendant, so the only assessed prejudice was to the defendant, which the Court found would be eliminated by the extension of time to litigate the new patents. Here, Entropic filed separate, staggered cases on separate patents, as others have done, in order to manage its cases efficiently and present its claims to a jury with sufficient time. *See, e.g.*, *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896648 (E.D. Tex. Dec. 18, 2019) (concerning the '605 and '681 patents); *United Servs. Auto Ass'n v. Wells Fargo Bank, N.A.*, 414 F. Supp.3d 947 (E.D. Tex. 2019) (concerning the '571 and '090 patents). Entropic plans to fully utilize its team in the lead up and through the proscribed trial time with the existing patents. But Charter seeks to overrule Entropic's case management decisions in order to forcibly consolidate eight patents into one case, which it undoubtedly believes will be to its benefit. This prejudice alone is sufficient to deny consolidation. *See Contentguard Holdings, Inc.*, 2014 WL 1477670, at *4.

      b) *Consolidation would substantially delay trial.*

The delay itself also is prejudicial. While Charter maligns Entropic as a "non-practicing entity" that "only seeks monetary damages, and not injunctive relief," ECF Dkt. No. 99 at 19, this Court "has repeatedly" rejected Charter's argument that a delay in monetary damages by a non-

9

practicing entity is not prejudicial. *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00113-JRG, 2022 WL 17484264, at *2 (E.D. Tex. July 7, 2022); *see also Solas OLED Ltd. v. Samsung Display Co., Ltd.*, No. 2:19-CV-00152-JRG, 2020 WL 4040716, at *2 (E.D. Tex. July 17, 2020). Instead, this Court has found a delay in recovering for the infringement of patent rights is "far from non-prejudicial." *Koninklijke*, at *2 (quoting *Garrity Power Servs. LLC v. Samsung Elecs. Co. Ltd.*, No. 2:20-cv-269, Dkt. No. 227 at 3 n.1 (E.D. Tex. Dec. 10, 2021)). Here, the speculative efficiencies offered by consolidation—particularly given that multiple *Markman* proceedings are a practical certainty if Charter believes construction is required—are far outweighed by the prejudice to Entropic of delaying its trial date. And while Charter proposes a four-month delay, as addressed above, this schedule (set without even the benefit of asserted claims) is likely to quickly prove unworkable. The delay is likely to be longer. That prejudice also is entitled to weight, especially considering the gains

## CONCLUSION

Consolidating a case months from trial with a case still in the pleading stage makes little sense. The alleged efficiencies are speculative at best, and many are simply impossible given the timing of this motion. Entropic also would suffer significant prejudice from being forced to jam another two patents into an already-full case while also suffering delay to its day in court. The Court should decline to exercise its discretion to consolidate these cases.

Dated: May 31, 2023                                      Respectfully submitted,

                                                         */s/ James Shimota by permission Wesley Hill*
                                                         James Shimota - LEAD ATTORNEY
                                                         Jason Engel
                                                         George Summerfield
                                                         **K&L GATES LLP**

10

70 W. Madison Street, Suite 3300
Chicago, IL 60602
Jim.shimota@klgates.com
Jason.engel@klgates.com
George.summerfield@klgates.com

Nicholas F. Lenning
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
nicholas.lenning@klgates.com

Darlene Ghavimi
Matthew Blair
**K&L GATES LLP**
2801 Via Fortuna
Suite #650
Austin, Texas 78746
Darlene.ghavimi@klgates.com
Matthew.blair@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on the 31st day of May, 2023.

>                             */s/ Wesley Hill*
>                             Wesley Hill