# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Civil Action No. 2:22-cv-00125-JRG |
| Plaintiff | **JURY TRIAL DEMANDED** |
| v. | |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

## CHARTER'S BRIEF IN OPPOSITION TO ENTROPIC'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. § 101

**TABLE OF CONTENTS**

I.   RESPONSE TO ENTROPIC'S STATEMENT OF ISSUES .................................................. 1

II.  RESPONSE TO ENTROPIC'S STATEMENT OF UNDISPUTED FACTS ........................ 1

III. LEGAL STANDARD ........................................................................................................ 1

IV.  ARGUMENT ..................................................................................................................... 2

    A.   '690 Claims 1, 7–9, 15–16 Are Directed To Abstract Ideas............................................ 2

    B.   '008 Claims 1–6 And '826 Claims 1–4, 6, 8–9 Are Directed To Abstract Ideas ............ 5

    C.   '362 Claims 11 and 12 Are Directed To An Abstract Idea.............................................. 8

    D.   '682 Claims 1–3 Are Directed To An Abstract Idea ....................................................... 10

V.   CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)............................................................................... 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) ............................................................................................... 1

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
  841 F.3d 1288 (Fed. Cir. 2016) ............................................................................ 11

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018)..................................................................... 1, 5, 6

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ......................................................................... 3, 6

*CardioNet, LLC v. InfoBionic, Inc.,*
  No. 2020-2123, 2021 WL 5024388 (Fed. Cir. Oct. 29, 2021)................................ 8

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016).......................................................................... 1, 6

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016)............................................................................. 2

*First-Class Monitoring, LLC v. United Parcel Serv. of Am*
  389 F. Supp. 3d 456 (E.D. Tex. 2019). ............................................................. 3, 6

*In re Jobin,*
  811 F. App'x 633 (Fed. Cir. 2020) ................................................................ 10, 11

*In re TLI Commc'ns LLC Pat. Litig.,*
  823 F.3d 607 (Fed. Cir. 2016).................................................................. 5, 6, 7, 9

*Infernal Tech., LLC v. Sony Interactive Ent. LLC,*
  No. 2:19-CV-00248-JRG, 2021 WL 405813 (E.D. Tex. Feb. 3, 2021) .................... 2

*Intell. Ventures II LLC v. FedEx Corp.,*
  No. 2:16-CV-00980-JRG, 2019 WL 2297048 (E.D. Tex. Mar. 29, 2019).............. 2

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)................................................................................... 10

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)..................................................................................... 7

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017)..................................................................................... 7

Each of the claims at issue in Entropic's Motion for Summary Judgment of Validity Under 35 U.S.C. § 101 (Dkt. 181, "Motion" or "Mot.") is directed to abstract ideas like receiving, transmitting, analyzing, generating, selecting, determining, and reporting of data. The Federal Circuit and this District have repeatedly found such claims to be ineligible for patenting under 35 U.S.C. § 101. Accordingly, Charter respectfully requests that the Court deny Entropic's Motion.

## I.      RESPONSE TO ENTROPIC'S STATEMENT OF ISSUES

Whether the Court should enter summary judgment that the challenged claims are directed to a patent-ineligible concept under *Alice* step one.

## II.     RESPONSE TO ENTROPIC'S STATEMENT OF UNDISPUTED FACTS

1–2.     Undisputed.

## III.    LEGAL STANDARD

The two-step test in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) governs. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept" or to an abstract idea. *Id.* at 218. *Second*, if the claim is directed to an abstract idea, then the court evaluates whether there is an "inventive concept." *Id.* at 217. Entropic's motion is directed only at the first *Alice* step, which involves looking at the claim's "character as a whole" to determine whether its "focus" is "directed to" an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351, 1353 (Fed. Cir. 2016). A claim may fail step one even if it recites elements that are not strictly abstract (*e.g.*, transmitting a signal via a radio transmitter). *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018).

The Federal Circuit has explained that collecting and analyzing data are abstract ideas. *See Elec. Power*, 830 F.3d at 1353–54. "Information as such is an intangible [and] we have treated collecting information, including when limited to particular content (which does not change its

1

character as information), as within the realm of abstract ideas." *Id.* ("[A]nalyzing information by steps people go through in their minds, or by mathematical algorithms, without more," are "mental processes within the abstract-idea category."). Claims directed to generic computer components instead of reciting specific improvements in computer capabilities are also abstract under *Alice* step one. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016).

"*Alice* Step One presents purely a question of law." *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 WL 2297048, at *12 (E.D. Tex. Mar. 29, 2019) (Gilstrap, J.). However, step two presents questions of fact. *See Infernal Tech., LLC v. Sony Interactive Ent. LLC*, No. 2:19-CV-00248-JRG, 2021 WL 405813, at *3 (E.D. Tex. Feb. 3, 2021) (Gilstrap, J.). Therefore, if the Court denies Entropic's instant Motion, then *Alice* step should go to the jury.

## IV.    ARGUMENT

### A.    '690 Claims 1, 7–9, 15–16 Are Directed To Abstract Ideas

The '690 patent is directed to "receiver-determined probes" used for network diagnostics. In the prior art, a network node would request a probe from another node, which would then send the probe. These probes had a predetermined form that the requesting node compared to a reference to determine characteristics of the communications channel (*e.g.*, noise, interference, etc.) (Ex. C[1] ('690 patent) at col. 1:48–57.) In contrast to prior art probes, which were pre-determined, the '690 patent's probes are determined by information in the probe request. (Ex. C at col. 2:3–19.)

'690 claim 1 begins with a first node "receiving . . . a probe request," but it does not specify what sends the probe request to the first node. The probe request must include information (a first set of parameters) specifying a second node and a "payload" for the probe that is being requested. The next step is "determining a second plurality of parameters" of the requested probe, but it does

---

[1] Exhibits A and B were filed with Entropic's opening motion (Dkt. 181).

not specify what determines these parameters. A probe is then generated in accordance with both sets of parameters, but there is no recitation of what generates the probe. The probe is then transmitted from the first node to the second node.

The Court has defined "probe" not terms of what it is ("a signal"), but in terms of how it will later be used ("transmitted to a network node that the network node can compare to a reference signal having a known form in order to determine characteristics of the channel on which the signal was transmitted"). (Dkt. 123 at 42.) The generating of such a "signal" and sending it around a network so it can be compared is merely an abstract idea. (*See* Dkt. 181-2, Ex. A at 74 (¶ 214).)

Entropic states that the patent "allow[s] the node sending the probe to receive and obey instructions determining the nature of one or more probe parameters." (Mot. at 7.) But, generating a probe by receiving and obeying instructions determining the nature of that probe involves nothing more than abstract data processing. Entropic suggests the probe has a concrete purpose, *e.g.*, for determining characteristics of a communications channel, but this is not recited anywhere in the claim. And while the term "probe," as construed, refers to a "signal" that is capable of being used in such a manner, there is no claim element requiring anything be done with the probe whatsoever, other than transmitting it to another node on the network.

Claims directed to sending, receiving, analyzing, and responding to information are not eligible for patenting. *See Elec. Power*, 830 F.3d at 1353 (holding that "collecting information, analyzing it, and displaying certain results of the collection and analysis" is an abstract idea); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (receiving a request and transmitting a response is abstract). In *First-Class Monitoring, LLC v. United Parcel Serv. of Am.*, the claims recited a "process of requesting, collecting, analyzing, and transmitting information,"

which was an abstract idea that "reaches any method of requesting and receiving information that uses the short message service protocol." 389 F. Supp. 3d 456, 467 (E.D. Tex. 2019).

The asserted '690 claims recite receiving parameters regarding how to generate and transmit a signal (the probe), determining some additional parameters relating to how to generate and transmit that signal, and generating and transmitting the signal according to those parameters. The fact that the abstract idea is limited to network probes which may or may not later be used to determine the characteristics of a communications channel is irrelevant, as "limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016). As confirmed by Charter's expert, Dr. Goldberg, the asserted '690 claims are directed to nothing more than the abstract idea of generating a signal based on other information and sending the signal around nodes in a network. (Dkt. 181-2, Ex. A at 72–76 (¶¶ 210–21).)

The abstract nature of these claims is confirmed by the fact that they are performed by generic computing devices. (*See* Dkt. 181-2, Ex. A at 74–76 (¶¶ 216–18).) Entropic's expert defined a "node" in claim 1 as "***any device*** attached to the network that communicated with other devices." (Ex. D (Holobinko Tr.) at 36:3–5;[2] *see also* Ex. C at col. 4:10–24 (a node can be a computer, television, speaker, media playing device, or network interface).) Beyond the generic idea of a "node," the '690 patent broadly states that its methods can be implemented on: "desktop, laptop and notebook computers; handheld computing devices . . . ; mainframes, supercomputers, workstations or servers; or ***any other type of special-purpose or general-purpose computing devices***." (Ex. C at col. 10:33–11:8.) "If a claimed invention only performs an abstract idea on a

---

[2] Emphasis is added herein unless otherwise indicated.

generic computer, the invention is directed to an abstract idea at step one [of *Alice*]." *BSG Tech*, 899 F.3d at 1285; *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).

Accordingly, Entropic's Motion should be denied as to the asserted '690 claims.

**B.      '008 Claims 1–6 And '826 Claims 1–4, 6, 8–9 Are Directed To Abstract Ideas**

The asserted '008 and '826 claims (which share a common specification) recite systems and methods that do nothing more than receive a signal, digitize the signal, extract information from the signal, analyze the signal and send information based on that analysis back to the source of the signal. The abstract nature of these claims is highlighted by the simplicity of '008 Figure 1B, which is an example of "the invention" (Ex. E ('008 patent), col. 2:1–3):



(Ex. E at Figure 1B.) The figure shows receiving a signal "S" on the left, digitizing the signal using an "RF Receive Front-end," and using a "channelizer" to (i) send some of the signal to a data processor 156 to recover data from the signal and (ii) send some of the signal to a monitor 154 to be analyzed. Information based on the analysis is then sent back ("To Tx 152") to the source of the signal. (*See* Ex. E at col. 3:5–4:50; Dkt. 181-2, Ex. A at 108 (¶ 337); Dkt. 181-3, Ex. B at 22 (¶ 55).) The claims of the patents track the figure. (Ex. E at col. 7:15–8:4; Ex. F ('826 patent) at col. 7:33–55.) The Federal Circuit has found claims directed to sending/receiving, analyzing, and

responding to information to be ineligible for patenting. *See Elec. Power*, 830 F.3d at 1353; *buySAFE*, 765 F.3d at 1355; *First-Class Monitoring*, 389 F. Supp. 3d at 467.

In addition, an "invention is directed to an abstract idea at step one [of *Alice*]" if the claimed invention "only performs an abstract idea on a generic computer." *BSG Tech*, 899 F.3d at 1285; *In re TLI*, 823 F.3d at 612 (where such components lack "any meaningful limitations," they are "merely a conduit for the abstract idea"). The asserted '826 claims are performed by "one or more circuits of a receiver coupled to a television and data service provider headend." (Ex. F at col. 7:34–35; Dkt. 181-2, Ex. A at 108 (¶ 338).) The asserted '008 claims are performed on an analog-to-digital converter, a signal monitor, a data processor, and a channelizer. (Ex. E at col. 7:15–32; Dkt. 181-2, Ex. A at 109 (¶ 341); *see also* Dkt. 181-3, Ex. B at 24 (¶ 58).) These are just functional blocks that could be accomplished by any number of means, including generic computing devices that are well understood, routine, and conventional. (Ex. E at col. 6:50–56 ("A typical combination of hardware and software may be ***a general-purpose computing system with a program or other code that, when being loaded and executed, controls the computing system such that it carries out the methods described herein***."); Ex. F at col. 6:67–7:6 (same); Dkt. 181-2, Ex. A at 108–09 (¶¶ 338, 341); Dkt. 181-3, Ex. B at 24 (¶ 58).)

Entropic argues that the asserted '008 and '826 claims meet *Alice* step one because the specification describes advantages of remote spectrum monitoring. (Mot. at 11.) This is not sufficient. The claims recite generic functional boxes that fail to give any indication of how the method provides an improvement to remote monitoring or to the functionality of any network, system, or device. (Dkt. 181-2, Ex. A at 107–08 (¶¶ 335–36), 108–09 (¶ 340); Dkt. 181-3, Ex. B at 23–24 (¶ 57).) In fact, the specification's single passage on prior art says only that it was " too costly and impractical" without explaining how or why. (Ex. E at col. 1:42–45.) The idea of

"remote spectrum monitoring" was already known, as stated in U.S. Patent No. 5,874,992

("Caporizzo"):

> A system for determining the quality of data received by settop terminals including at least one settop terminal which analyses each data packet received by the settop terminal and determines whether the received data packet includes errors. The bit error rate is continually calculated, monitored and stored. When the bit error rate exceeds a predetermined threshold, the settop terminal generates a warning signal for transmission to the headend, which diagnoses the problem.

(Ex. G (Caporizzo) at Abstract.) Caporizzo already described the benefits of uninterrupted service

and reduced truck rolls (maintenance calls) that Entropic now asserts it invented. (*Id*. at col. 3:3–

44 ("The system of the present invention detects problems with the CATV transmission network

5 ***before a subscriber is aware of the problem***" and therefore does not need to call the cable

company to dispatch a technician); *id.* at col. 6:40–43 ("[T]he CATV network provider will be

able to diagnose and correct many CATV system faults even before subscribers notice a

degradation in service."); Dkt. 181-2, Ex. A at 91–92 (¶ 270), 110 (¶ 345); Dkt. 181-3, Ex. B at 16

(¶ 36).)

  *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), cited by Entropic,

is inapposite, because in that case the patent described actual differences between the invention

and the prior art, whereas the '008/'826 specification does not include any disclosure of how the

claimed system/method differ from the prior art, nor does it discuss the purported advantages over

the prior art in concrete terms. (Dkt. 181-2, Ex. A at 108–09 (¶ 340); Dkt. 181-3, Ex. B at 23–24

(¶ 57)); *see In re TLI*, 823 F.3d at 613 (finding patent ineligible claims that were "not directed to

a solution to a 'technological problem'" and that did not "attempt to solve 'a challenge particular

to the Internet'"); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed.

Cir. 2019) (distinguishing *Visual Memory* because the asserted patent "fails to provide any

technical details for the tangible components, . . . instead predominately describ[ing] the system

and methods in purely functional terms" and finding asserted claim was "directed to the abstract idea of 'collecting, analyzing, manipulating, and displaying data'").

### C. '362 Claims 11 and 12 Are Directed To An Abstract Idea

'362 claim 11 recites a method involving a "wideband receiver system" that performs the steps of downconverting a television signal, digitizing the TV signal, selecting the TV channels the viewer is interested in (the "desired" channels), and outputting those desired channels. (*See* Ex. H ('362 patent) at col. 12:37–53.) Selecting "desired" television channels from among a larger number of "desired and undesired channels" is an abstract idea. (Dkt. 181-2, Ex. A at 142–43 (¶¶ 457–61).)

Claims directed to the idea of filtering out portions of a signal have been found ineligible for patenting. In *CardioNet, LLC v. InfoBionic, Inc.*, No. 2020-2123, 2021 WL 5024388, at *2 (Fed. Cir. Oct. 29, 2021), the claim recited sensing a cardiac signal, identifying heart beats in the cardiac signal using a filter, and outputting information corresponding to the identified heartbeats. The Federal Circuit ruled that "filtering patient heartbeat signals to increase accuracy" was an abstract idea. *Id.* at *4. Similarly, the asserted '362 claims are directed to selecting desired channels from a larger group of channels, which is the same as filtering the channels to the desired ones.

Moreover, each of the '362 claim steps is performed by generic components. The specification explains that the first claim step, "downconverting, by a mixer module . . ." (Ex. H at col. 12:39–42) is performed by "conventional" components in the prior art. (*Id.* at col. 1:46–52; Dkt. 181-2, Ex. A at 143–44 (¶ 464)). The same is true of the analog-to-digital conversion step (Ex. H at col. 12:43–47), which the specification explains is performed not just by conventional analog to digital converters (ADCs), but by *less sophisticated* ADCs than those required by other wideband receivers (*id.* at col. 2:20–27; Dkt. 181-2, Ex. A at 144 (¶ 465)). Next, the step reciting the abstract idea of selecting (filtering for) the desired channels is said to be performed by generic

"digital circuitry."[3] (Ex. H at col. 12:48–50.) So too is the following step of "outputting" those desired channels. (*Id.* at col. 12:51–53). And lest there be any doubt, the step of outputting to a demodulator—and claim 12's addition that this output be "serial"—is also admittedly conventional: "The . . . channels will be sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface ***according to commonly known methods*** . . . ." (*Id.* at col. 6:55–58.) Such attempts to surround an abstract idea (filtering) with generic/conventional components performing their generic/conventional functions does not transform the abstract idea into patentable subject matter. *In re TLI*, 823 F.3d at 611–12 (holding that, despite reciting "concrete, tangible components . . . the recited physical components merely provide a generic environment in which to carry out the abstract idea").

Entropic argues that Dr. Goldberg "overgeneralize[d]" the claim by "divorcing the verbs of the claims" from the remainder of the claim limitations. (Mot. at 12–13.) For the reasons explained above, he did no such thing. He analyzed each claim as a whole before concluding under *Alice* step one that the claims were "directed to the abstract idea of processing and digitizing a received television signal and outputting channels of the digitized signal." (Dkt. 181-2, Ex. A at 142–43 (¶¶ 458–61).) He then performed an analysis under *Alice* step two before concluding that "nothing in [the claims] supplies [an] inventive concept to transform the claims into a patent-eligible application of the abstract idea of processing and digitizing a received television signal and outputting channels of the digitized signal." (*Id.* at 143–45 (¶¶ 462–68).)

---

[3] The selecting step was not only generic but also conventional, as the Zhang prior art reference discloses digital circuitry for selecting desired channels from undesired channels. (Dkt. 181-2, Ex. A at 144 (¶ 466); Ex. I (Zhang) at col. 3:60–4:12.)

### D.      '682 Claims 1–3 Are Directed To An Abstract Idea

'682 claim 1 generally recites: (i) determining the signal-to-noise ratio (SNR) of a number of cable modems (Ex. J ('682 patent) at col. 8:3–6); (ii) assigning each cable modem to a group based on its SNR (*id.* at col. 8:7–9); (iii) generating an SNR-related "metric" for each group (*id.* at col. 8:10–14); (iv) determining how to communicate with the cable modems in each group based on the SNR metric for that group, and then (v) communicating with each group accordingly (*id.* at col. 8:15–23). The focus of this claim is the abstract idea of grouping cable modems based on their SNRs and then communicating with the cable modems in the same group in the same way. (*See* Dkt. 181-2, Ex. A at 171 (¶ 560).) "An SNR is the ratio of the signal level to the noise level. The higher the SNR the greater the ratio of signal to noise. Greater signal and less noise is better, as noise interferes with the ability to understand or properly interpret the signal that is received." (Dkt. 97-8 at 40 (¶ 86).) As such, SNR is simply an indication of how well a cable modem hears. Grouping cable modems by how well they hear, and then communicating with all the cable modems in a group based on their common hearing ability, is nothing but an abstract idea. (Dkt. 181-2, Ex. A at 171–72 (¶¶ 560–64).)

The Federal Circuit has held that the collection, organization, and grouping of data are among the "hallmark of claims directed to abstract ideas." *In re Jobin*, 811 F. App'x 633, 637 (Fed. Cir. 2020). In *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), the Federal Circuit observed that the claim at issue required the "functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records'" without sufficiently describing "how to achieve these results in a non-abstract way." *Id.* at 1337. Similarly, in *Jobin*, the Court found that, despite the challenged claim's "expansive language and its recitation of servers and databases, [the challenged claim] is, at bottom, directed to the collection, organization, grouping, and storage of data using techniques such as conducting a survey or

10

crowdsourcing." *Jobin*, 811 F. App'x at 637. Here, the asserted claims recite the functional, results-oriented steps of "determining," "assigning," "generating," "selecting," and "communicating"—solely to "group" cable modems based on their SNR—without any detail as to how these results are achieved in a non-abstract way. (Dkt. 181-2, Ex. A at 172 (¶¶ 564–66).) Accordingly, the asserted claims of the '682 patent are directed to only an abstract idea.

Entropic argues that "[t]he claimed subject matter 'purposefully arranges the components in a distributed architecture to achieve a technological solution to a technological problem specific to computer networks.'" (Mot. at 15–16 (quoting *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016)).) This is false. The distribution of the cable modems is not "arranged" or changed in any actual, physical way. Only an abstract "grouping" of cable modems is determined. Moreover, the *Amdocs* case is inapposite for several reasons. First, the portion of *Amdocs* that Entropic quotes relates to *Alice* step two, not step one. *See Amdocs*, 841 F.3d at 1300. Second, the challenged claim in *Amdocs* was "tied to a specific structure of various components (network devices, gatherers, ISMs, a central event manager, a central database, a user interface server, and terminals or clients)." *Id.* at 1301. The '682 claims are not tied to any specific structures. Third, the challenged claim "depends upon a specific enhancing limitation that necessarily incorporates the invention's distributed architecture—an architecture providing a technological solution to a technological problem." *Id.* Here, there is no purposeful arrangement of various components—every step of the asserted claims is performed by a conventional component of a cable network. (*See* Dkt. 181-2, Ex. A at 172–73 (¶¶ 567–68).)

## V.   CONCLUSION

Charter respectfully requests that the Court deny Entropic's motion for summary judgment.

Dated:  September 25, 2023

Respectfully submitted,

*/s/Daniel Reisner by permission Elizabeth Long*
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: albert.boardman@arnoldporter.com
Email: melissa.brown@arnoldporter.com
Email: jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Email: marc.cohn@arnoldporter.com
Email: amy.dewitt@arnoldporter.com
Email: paul.margulies@arnoldporter.com

***Attorneys for Defendant***
***Charter Communications, Inc.***

12

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served September 25, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Elizabeth Long
Elizabeth Long

13