# EXHIBIT D

Page 1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

ENTROPIC COMMUNICATIONS, LLC,

    Plaintiff,    Case No.

  vs.    2:22-cv-00125-JRG

CHARTER COMMUNICATIONS, INC.,

    Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE VIDEO DEPOSITION OF

JOHN HOLOBINKO

August 23, 2023

9:00 a.m. Central

Stenographically Reported By:

Deanna Amore - CRR, RPR, CSR - 084-003999

Page 34

1  is it fair to say that there's a carrier signal and
2  then a modulated signal?
3     A.  No.  It's the carrier that's modulated.
4     Q.  I don't know if this is right or wrong,
5  but it's something we can talk to the jury about if
6  it's right.
7         When you say "a carrier that's modulated,"
8  does the word "modulated" mean slightly changed?
9     A.  Yes.  And there can be many attributes of
10 that change.  One attribute would be frequency.  In   11:27:47
11 advanced modulation schemes, such as OFDM and
12 OFDMA, the phase of the signal and the amplitude of
13 the signal are also part of it or they can be the
14 primary parts of it but the FM -- with the F being
15 a fixed carrier for that signal.
16    Q.  With respect to a probe that's being
17 transmitted on a carrier, would you consider the
18 modulation scheme to be a parameter associated with
19 the transmission of that probe?
20    A.  Yes.                        11:28:52
21    Q.  So is it fair to say that with respect to
22 a probe that's being transmitted on a carrier, the
23 parameters of the carrier are associated with the
24 transmission of that probe; is that fair?
25    A.  Yes.

Page 35

1     Q.  Now, you talked about -- you used the word
2  "form," the "form of the probe."  What did you mean
3  by that?
4     A.  The form of the probe would be as it's
5  described in -- by the Court.  So it would be the
6  parameters of the probe that are defined by the
7  probe request.
8     Q.  So whatever parameters are in the probe
9  request that are used to define the probe, those
10 parameters relate to the form of the probe?   11:31:04
11    A.  That's correct.
12    Q.  Now, if you look at claim 1, it says
13 element -- do you have claim 1 in front of you?
14    A.  Yeah, just a second.  I am going to get
15 exactly to the right spot.  Yes.
16    Q.  So if you look at claim 1, Element (a), it
17 says "receiving in a first node."
18        Just backing up a step, a node is a
19 technical way of, at least in the context of this
20 case, referring to a device in the network; right?   11:32:11
21    A.  I wouldn't hazard a different definition
22 than what is in the patent itself which is referred
23 to.
24    Q.  Is there a plain meaning of the word
25 "node" that you could explain to the jury so that

Page 36

1  they could understand what a node is in the context
2  of this claim?
3     A.  Generically, in the context of this claim,
4  it would be any device attached to the network that
5  communicated with other devices.
6     Q.  And that includes the cable headend?
7  That's a node?
8     A.  No, a cable headend is a location where
9  there are many different pieces of equipment.
10    Q.  Is the CMTS a node on a network?    11:33:24
11    A.  A CMTS might or might not be a node on a
12 network depending upon the context.
13    Q.  How could the CMTS be connected to the
14 network but not be a node on the network?
15    A.  If it were a requestor of something, it
16 would be possible to be a requestor, but, generally
17 speaking, let's say that it's a node on a network.
18    Q.  What do you mean by a "requestor"?
19    A.  Well, a cable TV system is a one-to-many
20 network.                         11:34:06
21    Q.  And how does that explain what a requestor
22 is and why is a requestor not a node?
23        MS. ALLOR:  Object to form.
24        THE WITNESS:  It's kind of obvious to anyone
25 who's a POSITA.

Page 37

1  BY MR. COHN:
2     Q.  Can you explain that?  Since you're an
3  expert, and I'm not, can you explain how a
4  requestor is not a node?
5     A.  Nodes are considered elements within the
6  network itself.  The CMTS talks to nodes.  So in
7  the -- let me pause for one second.
8     Q.  Sure.
9     A.  So, I guess, for the purposes of this
10 discussion, I would go and say that the CMTS can be   11:35:45
11 a node.
12    Q.  In what circumstances would a CMTS not be
13 a node?
14    A.  Well, I think that if we're talking about
15 communications between nodes, it is possible for
16 the CMTS to be a node in that context.
17    Q.  Does the node have to be able to transmit
18 and receive information on the network?
19    A.  Yes.
20    Q.  And if a node is only receiving and not   11:36:47
21 transmitting, you wouldn't call it -- if a device
22 on the network is only receiving information and
23 never transmitting it to the network, you wouldn't
24 call that a node.  Is that what meant by receiver?
25    A.  I'd say that's yes.

10 (Pages 34 - 37)

Page 114

```
 1              C E R T I F I C A T E
 2
 3       I, DEANNA AMORE, a Shorthand Reporter and
 4  notary public, within and for the State of
 5  Illinois, County of DuPage, do hereby certify:
 6       That JOHN HOLOBINKO, the witness whose
 7  examination is hereinbefore set forth, was first
 8  duly sworn by me and that this transcript of said
 9  testimony is a true record of the testimony given
10  by said witness.
11       I further certify that I am not related to
12  any of the parties to this action by blood or
13  marriage, and that I am in no way interested in the
14  outcome of this matter.
15
16       IN WITNESS WHEREOF, I have hereunto set my
17  hand this 28th day of August 2023.
18
19
20       _____
21          Deanna M. Amore, CRR, RPR, CSR
22
23
24
25
```

Page 115

```
 1  KATHERINE L. ALLOR
 2  katy.allor@klgates.com
 3          August 28, 2023
 4  Entropic Communications v Charter Communications, Inc., Et Al
 5   8/23/2023, John Holobinko (#6067725)
 6    The above-referenced transcript is available for
 7  review.
 8    Within the applicable timeframe, the witness should
 9  read the testimony to verify its accuracy. If there are
10  any changes, the witness should note those with the
11  reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13  Deponent and Errata and return to the deposing attorney.
14  Copies should be sent to all counsel, and to Veritext at
15  cs-ny@veritext.com.
16
17   Return completed errata within 30 days from
18  receipt of testimony.
19    If the witness fails to do so within the time
20  allotted, the transcript may be used as if signed.
21
22       Yours,
23       Veritext Legal Solutions
24
25
```

Page 116

```
 1  Entropic Communications v Charter Communications, Inc., Et Al
 2  John Holobinko (#6067725)
 3           E R R A T A  S H E E T
 4  PAGE_____ LINE_____ CHANGE_____
 5  _____
 6  REASON_____
 7  PAGE_____ LINE_____ CHANGE_____
 8  _____
 9  REASON_____
10  PAGE_____ LINE_____ CHANGE_____
11  _____
12  REASON_____
13  PAGE_____ LINE_____ CHANGE_____
14  _____
15  REASON_____
16  PAGE_____ LINE_____ CHANGE_____
17  _____
18  REASON_____
19  PAGE_____ LINE_____ CHANGE_____
20  _____
21  REASON_____
22
23  _____   _____
24  John Holobinko                   Date
25
```

Page 117

```
 1  Entropic Communications, Llc v. Charter Communications, Inc., Et Al
 2  John Holobinko (#6067725)
 3          ACKNOWLEDGEMENT OF DEPONENT
 4    I, John Holobinko, do hereby declare that I
 5  have read the foregoing transcript, I have made any
 6  corrections, additions, or changes I deemed necessary as
 7  noted above to be appended hereto, and that the same is
 8  a true, correct and complete transcript of the testimony
 9  given by me.
10
11  _____   _____
12  John Holobinko                   Date
13  *If notary is required
14       SUBSCRIBED AND SWORN TO BEFORE ME THIS
15       _____ DAY OF _____, 20___.
16
17
18            _____
19            NOTARY PUBLIC
20
21
22
23
24
25
```