**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Civil Action No. 2:22-cv-00125-JRG |
| Plaintiff | **JURY TRIAL DEMANDED** |
| v. | |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

**CHARTER'S BRIEF IN OPPOSITION TO ENTROPIC'S MOTION FOR**
**SUMMARY JUDGMENT OF VALIDITY UNDER 35 U.S.C. §§ 102 AND 103**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  RESPONSE TO ENTROPIC'S STATEMENT OF THE ISSUES ....................................... 1

III.  RESPONSE TO ENTROPIC'S STATEMENT OF UNDISPUTED FACTS....................... 2

IV.  LEGAL STANDARD........................................................................................... 4

    A.  Anticipation Under 35 U.S.C. § 102................................................................. 4

    B.  Obviousness Under 35 U.S.C. § 103 ................................................................ 4

    C.  Summary Judgment Can Be Defeated By Relying On Credible And Well-
    Supported Expert Testimony .......................................................................... 5

V.  ARGUMENT ..................................................................................................... 5

    A.  Entropic's Motion As To '362 Claims 11–12 In View Of Zhang And/Or Favrat
    Should Be Denied ......................................................................................... 6

        1.  Entropic Should Be Precluded From Making Its Belated Argument
        Regarding The "Mixer Module" in '362 Claim 11 ................................ 6

        2.  Zhang Clearly Discloses A "Mixer Module," And Entropic Cites No
        Expert Testimony (Or Any Evidence) To The Contrary............................ 7

    B.  Genuine Disputes Of Material Fact Preclude Summary Judgment For Entropic
    In All Other Respects.................................................................................... 10

        1.  '362 Claim 11 In View Of Dauphinee ................................................ 10

        2.  '775 Claims 18–19 In View Of Dong and Brooks.............................. 11

        3.  '008 Claims 1–2 In View of Coyne And Narita.................................... 13

    C.  Entropic Is Not Entitled To A Blanket Declaration Of Validity Based On
    Alleged "Gaps" In Dr. Goldberg's Testimony ............................................... 14

VI.  CONCLUSION................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016) ............................................................... 11

*Cioffi v. Google, Inc.*,
  No. 2:13-CV-00103-JRG-RSP, 2017 WL 490367 (E.D. Tex. Jan. 9, 2017), ........................... 4

*EVM Sys., LLC v. Rex Med., L.P.*,
  No. 6:13-CV-184-RWS, 2015 WL 4911090 (E.D. Tex. Aug. 17, 2015) ............................ 4, 6

*Google Inc. v. Intellectual Ventures II LLC*,
  701 Fed. Appx. 946 (Fed. Cir. 2017) ......................................................... 8

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ............................................................................ 4

*GTX Corp. v. Kofax Image Prods.*,
  571 F. Supp. 2d 742 (E.D. Tex. 2008) ..................................................... 7, 9

*In re Bond*,
  910 F.2d 831 (Fed. Cir. 1990) ............................................................... 8

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009) ............................................................... 8

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) .......................................................... 12, 13

*Ivera Med. Corp. v. Hospira, Inc.*,
  801 F.3d 1336 (Fed. Cir. 2015) ............................................................... 4

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ......................................................................... 12

*Maxell, Ltd. v. Apple Inc.*,
  No. 5:19-cv-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ............................. 4

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003) ............................................................... 4

*Navico Inc. v. Garmin Int'l, Inc.*,
  No. 2:16-CV-190-JRG-RSP, 2017 WL 3816110 (E.D. Tex. Aug. 16, 2017) .......................... 5

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd*,
   No. 6:18-CV-00388-RWS, 2018 WL 10126729 (E.D. Tex. Oct. 25, 2018) ............................ 9

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
   No. 2:15-CV-349-JRG (E.D. Tex. Feb. 14, 2017) .................................................................... 5

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
   87 F. Supp. 3d 1263 (N.D. Cal. 2015) .................................................................................... 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   593 F.3d 1325 (Fed. Cir. 2010) ............................................................................................ 11

*TriMed, Inc. v. Stryker Corp.*,
   608 F.3d 1333 (Fed. Cir. 2010) ............................................................................................ 12

**TABLE OF EXHIBITS[1]**

| Exhibit | Description |
|---|---|
| A | Opening Expert Report of Dr. Steven H. Goldberg Regarding Invalidity, served on July 21, 2023. Dkt. 170-2. |
| B | Supplemental Expert Report of Steven H. Goldberg Regarding Invalidity, served on August 14, 2023. Dkt. 170-3. |
| C | U.S. Patent No. 7,522,901 ("Dauphinee") (CHARTER_ENTROPIC00380676). Dkt. 170-5.[2] |
| D | Excerpts of the deposition transcript of Dr. Steven H. Goldberg, dated August 22, 2023. Dkt. 170-4.[3] |
| E | Excerpts of the deposition transcript of Dr. Richard A. Kramer, dated August 24, 2023. |

---

[1] Exhibits A–D were filed with Entropic's motion for summary judgment of validity under 35 U.S.C. §§ 102 and 103 (Dkt. 170).

[2] Entropic references Dauphinee as Ex. C in its opening motion. *See, e.g.,* Dkt. 170 at Table of Exhibits. However, Entropic filed that exhibit with a slipsheet designating it as Ex. D. Dkt. 170-5. For the sake of clarity in this response, Dauphinee is referenced as "Dkt. 170-5."

[3] Entropic references the deposition transcript of Dr. Goldberg as Ex. D in its opening motion. *See, e.g.,* Dkt. 170 at Table of Exhibits. However, Entropic filed that exhibit with a slipsheet designating it as Ex. C. Dkt. 170-4. For the sake of clarity in this response, the deposition transcript of Dr. Goldberg is referenced as "Dkt. 170-4."

Charter respectfully submits this Opposition to Entropic's motion for summary judgment of validity under 35 U.S.C. §§ 102 and 103 ("Motion" or "Mot.").

## I.     INTRODUCTION

Entropic's Motion on '362 claims 11–12 in view of Zhang reflects a bizarre twist in Entropic's case—the single claim element addressed in its Motion (the "mixer module") was not addressed in its expert's report, while the only elements addressed in its expert's report (the "selecting" step and the "serial interface") are not addressed in Entropic's Motion. The result of this tactic is that Entropic relies solely on attorney argument without citing any evidence to rebut the testimony of Charter's expert, Dr. Goldberg. Accordingly, there are no issues for a jury to resolve as to Zhang's anticipation of '362 claims 11–12. Not only should Entropic's Motion be denied, but these claims should be found invalid on summary judgment as set forth in Charter's motion for summary judgment of invalidity. Dkt. 173. Entropic's Motion in all other respects relies on nothing more than attacking straw man arguments. In other words, Dr. Goldberg does not say what Entropic says he says. Accordingly, Entropic's Motion should be denied *in toto*.

## II.    RESPONSE TO ENTROPIC'S STATEMENT OF THE ISSUES

Entropic's statement of the issues is argumentative. Below is a neutral recitation of the issues to be decided, all of which should be answered "no" for reasons discussed herein. Charter addresses the '362 patent first, as it moved for summary judgment of invalidity of that patent.[4]

1.   Whether the Court should grant summary judgment that '362 claims 11–12 are not invalid under §§ 102/103 in view of Zhang alone or in combination with Favrat?

---

[4] Entropic's "Conclusion" requests summary judgment of validity as to claim 11 of the '690 patent, but that patent is not mentioned anywhere else in Entropic's Motion, including in the statement of issues. Therefore, the Motion should be denied as to claim 11 of the '690 patent.

2.   Whether the Court should grant summary judgment that '775 claims 18–19 are not invalid under §§ 102/103 in view of Dong and Brooks?

3.   Whether the Court should grant summary judgment that 008 claims 1–2 are not invalid under §§ 102/103 in view of Coyne and Narita?

4.   Whether the Court should grant summary judgment that '008 claims 1–6; '826 claims 1, 6, and 8–9; and '682 claims 1–3 are not invalid as a result of Entropic's Motion To Strike Dr. Goldberg's opinions Dkt. 168?

## III.   RESPONSE TO ENTROPIC'S STATEMENT OF UNDISPUTED FACTS

Entropic's proposed undisputed facts are not "proper summary judgment evidence" per Local Rule CV-56(d), because they do not recite facts on which the Court could base a ruling. Instead, Entropic states that "Expert A opined X" or "Expert B opined Y." Although there is generally no dispute about what the experts said, these "facts" do not go to the merits of the issues. Entropic had to propose actual substantive facts to support its argument—facts that could support a decision by the Court—not just references to who said what. As such, Entropic's motion is flawed and should be denied for failing to comply with Local Rule CV-56.

1–4.   Undisputed.

5.   Disputed. Dr. Goldberg's opinions regarding the invalidity of '775 claims 18 and 19 in view of Dong and Brooks also include ¶¶ 46–48 (Dkt. 170-2), which Entropic does not include in its proposed Undisputed Fact No. 5.

6.   Disputed. At ¶ 46 of his report, Dr. Goldberg does not merely opine that certain functions of Brooks "could be integrated" into Dong, as Entropic alleges. *Id.* Dr. Goldberg explains his opinion that a POSITA would consider the combined features to be "well known to the industry far in advance of the priority date of this patent," and he explains why a POSITA would see the

2

features in Brooks as appropriate for use in Dong. *Id.* He also provides detailed examples supporting this opinion in footnote 4 of his report. *Id.*

7. Disputed. Dr. Goldberg's opinions regarding the invalidity of '008 claims 1–2 in view of Coyne, Narita, and Caporizzo also include ¶¶ 244–47 (*id.*), which Entropic does not include in its proposed Undisputed Fact No. 7.

8. Undisputed, with the understanding that Dr. Goldberg's discussion of the signal monitor of '008 claim 1 is not the only instance in which he discusses Narita and Coyne.

9. Undisputed.

10. Disputed. Dr. Goldberg's opinions regarding the invalidity of '682 claims 1–2 in view of Thibeault and Prodan '242 also include ¶ 540 (*id.*), which Entropic does not include in its proposed Undisputed Fact No. 10.

11. Disputed. Dr. Goldberg's opinions regarding the invalidity of '682 claim 3 in view of Thibeault, Prodan '242, and Prodan '921 also include ¶¶ 552–558 (*id.*), which Entropic does not include in its proposed Undisputed Fact No. 11.

12. Disputed. Dr. Goldberg's opinions regarding the invalidity of '362 claims 11–12 in view of Zhang and Favrat also include ¶¶ 374–75 (*id.*), which Entropic does not include in its proposed Undisputed Fact No. 12.

13. Disputed. Dr. Goldberg asserts that Zhang describes the claimed "mixer module" because Zhang's reference to multiplying one signal by another is an explicit reference to a mixer module as understood by a POSITA, and he points to Li as evidence in support of his opinion because Li describes mixers as components that multiply two signals together. *Id.* at ¶¶ 391–93. In addition, Entropic refers to Zhang and Li in reference to the '775 patent, but this appears to be a mistake, as Dr. Goldberg does not discuss Zhang or Li in reference to the '775 patent.

14.     Disputed because the citation is incorrect. Dr. Goldberg's opinions regarding the invalidity of the '362 patent under §§ 102/103 in view of Dauphinee (and other art) are provided in ¶¶ 425–455 of his report, whereas the passage cited by Entropic (¶¶ 456–469) relates to subject matter eligibility under § 101 and is not relevant to the present Motion.

## IV.   LEGAL STANDARD

### A.     Anticipation Under 35 U.S.C. § 102

Anticipation is a fact question, and summary judgment of validity is not appropriate when a reasonable jury could conclude based on the record evidence that the prior art anticipates the claims. *Cioffi v. Google, Inc.*, No. 2:13-CV-00103-JRG-RSP, 2017 WL 490367, at *2 (E.D. Tex. Jan. 9, 2017), *report and recommendation adopted*, No. 2:13-CV-103-JRG-RSP, 2017 WL 478051 (E.D. Tex. Feb. 6, 2017); *EVM Sys., LLC v. Rex Med., L.P.*, No. 6:13-CV-184-RWS, 2015 WL 4911090, at *3–4 (E.D. Tex. Aug. 17, 2015); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1221 (Fed. Cir. 2003).

### B.     Obviousness Under 35 U.S.C. § 103

Obviousness is a legal question based on underlying facts. *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015). These include the *Graham* factors: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) secondary considerations of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). Genuinely conflicting evidence about the factual inquiries underlying obviousness precludes summary judgment. *EVM Sys.*, 2015 WL 4911090, at *4; *Maxell, Ltd. v. Apple Inc.*, No. 5:19-cv-00036-RWS, 2020 WL 8269548, at *4 (E.D. Tex. Nov. 11, 2020) (denying summary judgment in view of "conflicting evidence" on obviousness).

### C.      Summary Judgment Can Be Defeated By Relying On Credible And Well-Supported Expert Testimony

Charter's reliance on its expert, Dr. Goldberg, should be sufficient to defeat the instant Motion, because any disputes of fact involve weighing expert testimony and are the proper subject of cross examination.[5] It is well-settled that a supported expert opinion on invalidity is typically sufficient evidence for a reasonable jury to return a verdict in a party's favor. *See, e.g., Saint Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-CV-349-JRG, Dkt. 421 at 7–8 (E.D. Tex. Feb. 14, 2017); *Navico Inc. v. Garmin Int'l, Inc.*, No. 2:16-CV-190-JRG-RSP, 2017 WL 3816110, at *3 (E.D. Tex. Aug. 16, 2017), *report and recommendation adopted*, No. 2:16-CV-190-JRG-RSP, 2017 WL 3837282 (E.D. Tex. Aug. 31, 2017).

## V.      ARGUMENT

As to the invalidity of '362 claims 11–12 in view of Zhang and/or Favrat, there is no conflicting evidence presented by Entropic for a jury to consider—it has no expert opinion on which to rely because its expert, Dr. Kramer, did not address the lone claim element discussed in its Motion. And indeed Entropic does not cite to Dr. Kramer at all in discussing '362 and Zhang. Entropic's Motion is built solely on mischaracterizing Charter's expert, Dr. Goldberg, whose report plainly belies what Entropic says about it. Without any expert testimony of its own to support its arguments, Entropic's Motion should be denied, and Charter's motion for summary judgment that '362 claims 11–12 are invalid in view of Zhang should be granted (Dkt. 173).

As to all the other challenged claims, Entropic and Charter present genuine disputes of material fact from their experts and the record, which preclude summary judgment of no invalidity.

---

[5] Because Entropic does not cite *any* expert testimony to support the validity of '362 claims 11–12 in view of Zhang and/or Favrat, summary judgment of invalidity should be granted as to those claims, as set shown in Charter's motion relating thereto. Dkt. 173.

*See EVM Systems*, 2015 WL 4911090, at *3–4 (denying summary judgment of no anticipation in view of "conflicting evidence" which is "best left for the trier of fact.").

### A.    Entropic's Motion As To '362 Claims 11–12 In View Of Zhang And/Or Favrat Should Be Denied

Charter moved for summary judgment that '362 claim 11 is invalid in view of Zhang and that '362 claim 12 is invalid in view of Zhang alone or combination with Favrat. Dkt. 173. Entropic's Motion does nothing to undermine Charter's motion, which should be granted. Entropic's Motion addresses only the "mixer module" of claim 11, but Entropic's expert, Dr. Kramer, addressed only the "selecting" step of claim 11.[6] It is not surprising, therefore, that Entropic fails to cite its expert even once as to Zhang. In the face of Dr. Goldberg's testimony and the language of Zhang itself, Entropic's reliance only on attorney argument is not sufficient to establish summary judgment of validity, and Entropic's Motion should be denied.

### 1.    Entropic Should Be Precluded From Making Its Belated Argument Regarding The "Mixer Module" in '362 Claim 11

One would expect in a lawsuit seeking $1.6 billion dollars of damages that plaintiff's validity expert would identify all the claim elements that he believes are missing from defendant's anticipation references. Nothing material would be left off the table, at least not on purpose. Yet here, after Dr. Goldberg opined that Zhang disclosed every element of '362 claim 11, Dr. Kramer disputed ***only*** the "selecting" element. It is safe to conclude, therefore, that Dr. Kramer agreed with Dr. Goldberg as to the other claim elements, or else he would have said so.

Entropic must have felt that Dr. Kramer's opinions were wanting, because it now argues without evidence that Zhang is missing the "mixer module." This new argument should not be

---

[6] Ex. E (Kramer Tr.) at 87:17–89:7 ("Q. And you don't discuss any of the other elements of claim 11 besides 11d [the selecting step] in [your report]; correct? A. I'm going by the headings. . . . That appears to be correct.").

permitted, because a party cannot avoid summary judgment based only on unsupported attorney arguments. *See GTX Corp. v. Kofax Image Prods.*, 571 F. Supp. 2d 742, 747 (E.D. Tex. 2008). Charter's expert, Dr. Goldberg, has provided unchallenged testimony, and as a result, there are no unresolved issues for a jury to consider. Accordingly, '362 claim 11 should be found invalid on summary judgment, as set forth in Charter's motion for summary judgment of invalidity. Dkt. 173.

### 2.    Zhang Clearly Discloses A "Mixer Module," And Entropic Cites No Expert Testimony (Or Any Evidence) To The Contrary

Entropic presents the Court with a complete fiction when it states that "Dr. Goldberg acknowledges Zhang does not explicitly disclose a mixer module." Mot. at 17. Dr. Goldberg acknowledged that Zhang did not use the word "mixer," but stated that Zhang still expressly described a "mixer module" using terms a POSITA would understand to mean the same thing:

> Zhang discloses that down converter 210 downconverts the frequencies of the RF channel in the received RF signal by multiplying the RF signal "to a lower frequency band." Id., 3:35–37. In my opinion, ***multiplying an RF signal by a reference signal (local oscillator) is known in the art as 'mixing.'***

Dkt. 170-2 at ¶ 392.[7] He concludes that "Zhang's frequency block down-converters ***are mixers (or mixer modules)*** within the meaning of the '362 patent." *Id.* at ¶ 393. Entropic's attempt to cast these opinions aside in a single sentence of its Motion—***without even citing them***[8]—is disingenuous. This is particularly true because Entropic's expert did not dispute that Zhang discloses a mixer module, and Entropic does not cite a shred of evidence in the Motion to undermine Dr. Goldberg. Therefore, Entropic's Motion should be denied, and summary judgment for Charter that Zhang discloses a mixer module should be granted. *See, e.g., Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 911 (Fed. Cir. 2022) (reversing summary judgment of no

---

[7] Emphasis is added herein unless otherwise indicated.

[8] Entropic cites only ¶ 391 of Dr. Goldberg's report and ignores ¶¶ 392 and 393 in which he explains why Zhang expressly describes a mixer module. Mot. at 17.

anticipation; "Drawing all justifiable inferences in [Defendant's] favor, as we must at the summary judgment stage, [the witness] testimony is also reasonably understood as merely observing that RFID for Dummies does not disclose MSBs in those terms, not that it fails to disclose them altogether." (quoting *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) ("[An anticipatory prior art] reference need not satisfy an *ipsissimis verbis* test.")); *Google Inc. v. Intellectual Ventures II LLC*, 701 Fed. Appx. 946, 953 (Fed. Cir. 2017) ("To anticipate a patent, a reference 'need not satisfy an *ipsissimis verbis* test.' . . . The Board needed to show that its anticipation determinations were not based purely on a word search for 'logical operators.'" (internal citation omitted)); *Takeda Pharm. Co. v. TWi Pharms., Inc.*, 87 F. Supp. 3d 1263, 1277 (N.D. Cal. 2015) ("A prior art reference is anticipatory regardless of the specific words used, as long as it discloses the substance of each element of the claimed invention. *In re Bond*, 910 F.2d 831, 832–33 (Fed. Cir. 1990) (the elements need not satisfy 'an *ipsissimis verbis* test' to be expressly anticipating).").

Entropic's Motion quotes Dr. Goldberg's deposition, in which he states he is not relying on an "inherent" anticipation theory. Mot. at 17 (citing Dkt. 170-4 (Goldberg Tr.) at 210:3–9, 203:24–204:24, 205:22–206:20). Quite right: because the mixer module is expressly disclosed in Zhang, Dr. Goldberg had no need to resort to inherency. At the deposition, Dr. Goldberg made it absolutely clear that the "frequency block down converter" of Zhang, which "multiplied" one signal with another (Zhang 3:30–36), would be understood by a POSITA to be a "mixer" as recited in '362 claim 11. *See* Dkt. 170-4 (Goldberg Tr.) at 206:7–12 ("***If you say a block down converter, you're talking about the use of a mixer***."), 204:8–205:9 ("a POSITA would have understood that ***a down converter 210, in the architecture taught by Zhang, would be implemented as a mixer***…. But I would strongly state that ***when you use the term 'block down converter,' it was strong -- it would be understood as a mixer***."), 207:3–18 ("**Q.** But you wouldn't necessarily have to use a

mixer. You're just saying it would be exceedingly well-known? A. ***I'm telling you here if you didn't use a mixer, I don't know what you use****. . . . A mixer produces a multiplying function. So a mixer does a multiplication. It multiplies the two signals together. Now, it turns out it does other things. But if you want to -- **in my mind as a person of ordinary skill-in-the-art, if you said analog multiplier, that gets implemented as a mixer.**").) This Court held that a party cannot "survive summary judgment by offering unsupported attorney argument and conclusive expert statements." *GTX Corp.*, 571 F. Supp. 2d at 747. Dr. Goldberg's opinions in his report and at deposition that Zhang discloses a mixer module, unrebutted by any expert, fatally undermine Entropic's Motion.

Entropic then attacks Dr. Goldberg's reliance on Favrat and Li. It is unclear why Entropic even mentions Favrat, which Dr. Goldberg relies on for claim 12, not claim 11. As to Li, Entropic contends that "Dr. Goldberg provides no opinion that [Li] discloses this claim element ***in its entirety***." Mot. at 18. This is an irrelevant smokescreen. Dr. Goldberg cited Li as an example of a mixer that performs multiplication, to support his opinion that a POSITA would understand that Zhang's disclosure of signals being "multiplied" together in the block down-converters is an express reference to a mixer. It is of no moment that Li does not disclose other aspects of the claim element (*e.g.*, a plurality of television channels), because that is not why Dr. Goldberg cited Li. At deposition, Dr. Goldberg was again clear: "I think Li -- Li was used -- and if you'll look at the last sentence in 393, Li was used as support to, quote/unquote, and I quote from my report, confirms my understanding that Zhang's frequency block converter are mixers or mixer modules within the meaning of the '362 patent. That's how Li was used." Dkt. 170-4 (Goldberg Tr.) at 214:20–215:1; *see also Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd.*, No. 6:18-CV-00388-RWS, 2018 WL 10126729, at *1 (E.D. Tex. Oct. 25, 2018) ("To the extent [the expert] relies on unelected prior art references to provide background information relevant to the '449 patent, the

state of the art, or establishing what one skilled in the art would have known at the time of the invention, he may discuss unelected prior art.").

Entropic's assertion that "[i]f all of this is confusing, it is" applies only to its own Motion. Zhang describes a mixer module to a POSITA, and Dr. Goldberg explained where and how—evidence that is unrebutted. Entropic's Motion should be denied, and Charter's motion that '362 claims 11 and 12 are invalid in view of Zhang and/or Favrat should be granted.

### B.   Genuine Disputes Of Material Fact Preclude Summary Judgment For Entropic In All Other Respects

#### 1.   '362 Claims 11-12 In View Of Dauphinee

Entropic argues that '362 claim 11-12 cannot be anticipated/obvious in view of Dauphinee, again based on alleged lack of a "mixer module" in Dauphinee. Mot. at 19–20. Dr. Goldberg's opinions on Dauphinee are in the alternative—they are based on Entropic's interpretation of the claims as apparent from its infringement contentions. Dr. Goldberg believes the digital tuner in the Charter products does ***not*** meet the "downconverting, by a mixer module . . ." limitation of '362 claim 11, but, if it does, then the digital tuner in Dauphinee would also meet the same claim element. Dkt. 170-2 at ¶ 436. He points to Entropic's allegation that the "digital domain" tuner referenced in its infringement allegations (below) includes a mixer that performs downconversion:



*Id.* at ¶ 435. The "mixer" is denoted by the symbol of an "X" inside a red circle. Dkt. 170-4 (Goldberg Tr.) at 247:24–248:6 ("the symbol for a mixer even has an X, it looks like multiplying").

Dr. Goldberg's opinions should be fair game for explaining to the jury why Entropic's reading of its patent for purposes of infringement would result in invalidation of that patent, and his description of Dauphinee's digital tuner can be subject to cross-examination if Entropic believes it is deficient. Entropic's Motion should be denied as to Dauphinee.

### 2.    '775 Claims 18–19 In View Of Dong and Brooks

Entropic argues that claims 18 and 19 of the '775 patent are valid due to a purported lack of evidence regarding motivation to combing Dong with Brooks. Mot. at 11–14. As an initial matter, Dr. Goldberg does not rely solely on combining Dong with Brooks to invalidate '775 claims 18–19; he also argues invalidity based on Dong alone. *See* Dkt. 170-2 at ¶¶ 49 ([18pre]), 53 ("Dong similarly discloses this limitation [18a]"), 59 & 68 ("It is therefore my opinion that Dong discloses or renders this limitation [18b] obvious."), 73 ("Dong discloses or renders this limitation [18c] obvious"), 76 ("Dong discloses or renders this limitation [19] obvious"). "[A] patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016); *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1336–37 (Fed. Cir. 2010) (affirming an invalidity judgment where claims were held obvious over a single reference). Because Entropic's Motion does not address Dr. Goldberg's anticipation and single-reference obviousness opinions as to Dong, there can be no summary judgment that claims 18–19 of the '775 patent are valid.

Turning to the merits of Entropic's specific attack on Dong plus Brooks, Dr. Goldberg provided a sufficient rationale for combining them in his report. *See* Dkt. 170-2 at ¶ 64 (describing the advantage of "allow[ing] the MAC functions to be programmed to support evolving standards (e.g., DOCSIS)" on a cable modem to circumvent "expensive hardware upgrades," which was "well known to the industry[.]"). Indeed, Dr. Goldberg specifically addressed the need to upgrade

11

cable modems remotely to limit costs as well as the well-known techniques (as exemplified in Brooks) to address that need. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp."). Dr. Goldberg confirmed his rationale for combining Dong and Brooks in detail during his deposition:

> I'm reading from paragraph 64. And I was just pointing out that this is where I focus on a motivation. A POSITA's motivation to combine these two references. A POSITA would understand that this ability to program the MAC functions to support evolving standards, and then I skip down to the next sentence, a POSITA would understand that this remote programmability functionality to deliver software upgrades could easily be integrated into the DOCSIS interface of Dong. Remote software upgrades were well known to the industry far in advance of the priority date of this patent.

Dkt. 170-4 at 101:3–101:16 (describing Dkt. 170-2 at ¶ 64). Dr. Goldberg also provided, in his footnote 4, additional reasons why it would have been obvious to modify Dong in view of Brooks, given that "many home computers were using remote software updates at least as early as 1997" and other reasons. *Id.* ¶ 64 n.4.

Entropic simply disagrees with Dr. Goldberg's conclusion, but there is plenty of evidence provided on which a jury could find a rationale to combine Dong with Brooks. *See TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010) (When "determine[ing] whether there was an apparent reason to combine . . . [w]hat a reference teaches, whether there is a trend or demand in the relevant marketplace or design community, the background knowledge of one of skill in the art—these are all questions reserved for the finder of fact." (quotations and citations omitted)).

Entropic's argument is not supported by *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014), its primary cited case. *InTouch* was decided on appeal after a complete

record had been made at trial, which is a very different posture than summary judgment. Additionally, even if *InTouch* was deemed relevant, the circumstances in this case differ significantly. For example, the expert in *InTouch* made numerous failures that Entropic does not even allege have been made by Dr. Goldberg: "Dr. Yanco's testimony was plagued with numerous problems, including her failure to: (1) identify sufficient reasons or motivations to combine the asserted prior references; (2) focus on the relevant time frame of 2001; or (3) consider any objective evidence of nonobviousness." *Id.* at 1348–49. The court also noted that the expert "opined that the references were like separate pieces of a simple jigsaw puzzle, [and] she did not explain what reason or motivation one of ordinary skill in the art at the time of the invention would have had to place these pieces together." *Id.* By contrast, Dr. Goldberg provided ample reasons in his report to combine the art, which he intends to explain to the jury at trial.

Accordingly, Entropic's Motion as to the '775 patent should be denied.

### 3.    '008 Claims 1–2 In View of Coyne And Narita

Entropic argues that claims 1 and 2 of the '008 patent are valid because Dr. Goldberg purportedly provides no motivation to combine Coyne and Narita to satisfy the "signal monitor" element. Mot. at 14–15. As an initial matter, Dr. Goldberg does not rely solely on the combination of Coyne and Narita to show obviousness of this element; he also opines that Coyne itself inherently discloses the "signal monitor" element. Dkt. 170-2 at ¶ 260. Accordingly, even if Entropic's arguments about Coyne and Narita are accepted, claims 1–2 would still not be valid, and Charter can challenge them at trial in view of Coyne. Entropic's Motion should thus be denied.

Contrary to what Entropic says, Dr. Goldberg provides opinions on combining Coyne with Narita. He testified at deposition that while he did not "explicitly" use the words "motivation to combine" in regards to Coyne and Narita, his report does explain why one would have combined them, *e.g.*, because Narita focuses on "very much the same problem" addressed in Coyne (Dkt.

13

170-2 at 150:6–7), they are "both focused on the same signal areas" (*id.* at 150:10–11); and they are both "focused on the same area of technology" (*id.* at 150:11–12). These opinions are sufficient to permit Dr. Goldberg to testify at trial on a motivation to combine Coyne and Narita.

Accordingly, Entropic's motion should be denied.

### C.   Entropic Is Not Entitled To A Blanket Declaration Of Validity Based On Alleged "Gaps" In Dr. Goldberg's Testimony

Entropic's Motion also seeks summary judgment of no invalidity based on purported "crucial gaps" in Dr. Goldberg's testimony, which it argues in its Motion to Strike. Mot. at 11. Entropic cites cases for the proposition that expert testimony is necessary in cases involving complex technology, but Entropic's argument goes too far. Not every issue in a case with complex technology necessarily requires expert testimony, and Entropic fails to connect the passages of Dr. Goldberg's report that it seeks to strike with specific arguments that require expert testimony. Some claim elements can be shown clearly and convincingly in the prior art without expert testimony, particularly when the prior art uses the exact same words as the claim. For example, Zhang expressly describes a "wide band" receiver and it does not take an expert to show that this meets the "wide band" receiver element of '362 claim 11. Because Charter could still satisfy its burden of proof without Dr. Goldberg on many issues, and because Entropic never shows how any of the testimony it seeks to strike would render any specific issues suitable for summary judgment, Entropic's Motion should be denied.

### VI.   CONCLUSION

Charter respectfully requests that the Court deny Entropic's Motion.

Dated:  September 25, 2023

Respectfully submitted,

*/s/Daniel Reisner by permission Elizabeth Long*
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: albert.boardman@arnoldporter.com
Email: melissa.brown@arnoldporter.com
Email: jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Email: marc.cohn@arnoldporter.com
Email: amy.dewitt@arnoldporter.com
Email: paul.margulies@arnoldporter.com

*Attorneys for Defendant*
*Charter Communications, Inc.*

15

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served September 25, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Elizabeth Long*
Elizabeth Long