# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:22-cv-00125-JRG |
| CHARTER COMMUNICATIONS, INC. | ) ) | ████████████ |
| Defendant. | ) ) ) | |

## CHARTER'S OPPOSITION TO ENTROPIC'S MOTION TO STRIKE
## OPINIONS OF CHRISTOPHER BAKEWELL

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES......................................................................................... ii

GLOSSARY ................................................................................................................. iv

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ............................................................................................. 1

III.   LEGAL STANDARD....................................................................................... 2

IV.   BAKEWELL'S REBUTTAL OPINIONS ARE RELIABLE AND ADMISSIBLE ......... 3

      A.    Bakewell's Opinions On ████████████ Are Reliable And Admissible ....................................................................................... 3

      B.    Bakewell's Opinions On ████████████ Are Reliable And Admissible ....................................................................................... 6

      C.    Bakewell's Rebuttals To Dell's ████████ Theory Are Reliable And Admissible .......................................................................... 7

      D.    The '682 Patent ................................................................................... 9

V.    ENTROPIC'S MOTION TO STRIKE SHOULD BE DENIED....................................... 9

      A.    There Is No Basis To Exclude The ████████████████ ........ 10

      B.    There Is No Basis To Exclude The ████████████ .................. 13

VI.   CONCLUSION.............................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846-LHK, 2016 WL 524904 (N.D. Cal. Feb. 10, 2016)....................................3

*Aptargroup, Inc. v. Summit Packaging Sys., Inc.*,
  No. 94 C 2304, 1996 WL 114781 (N.D. Ill. Mar. 14, 1996), *aff'd,* 178 F.3d
  1306 (Fed. Cir. 1998)................................................................................................6

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014)...................................................................................4

*Barrett v. Atl. Richfield Co.*,
  95 F.3d 375 (5th Cir. 1996) .....................................................................................11

*Beneficial Innovations, Inc. v. Advance Publ'ns, Inc.*,
  No. 2:11-cv-229-JRG-RSP, 2014 WL 12603495 (E.D. Tex. July 9, 2014) ............................5

*Broadcom Corp. v. Emulex Corp.*,
  2011 WL 13133846 (C.D. Cal. Aug. 2, 2011)...........................................................7

*ClearPlay, Inc. v. Dish Network, LLC*,
  No. 2:1-cv-00191, 2023 WL 185434 (D. Utah Jan. 13, 2023) .................................4

*Equistar Chems. LP v. Westlake Chem. Corp.*,
  No. 6-16-cv-68-JRG-RSP, 2016 WL 4410006 (E.D. Tex. Jan. 16, 2016) ............................13

*Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group*,
  *LLC*,
  879 F.3d 1332 (Fed. Cir. 2018)................................................................................8

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-cv-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) ............................4, 13

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341,1353 (Fed. Cir. 1999)...................................................................3, 4

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
  581 U.S. 360 (2017)..................................................................................................6

*LaserDynamics v. Quanta Comput., Inc.*,
  No. 2:06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011)................................4

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003)................................................................................2

*Micro Chem., Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003)...................................................................................3

*Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.*,
    No. 2:12-cv-832-JRG-RSP, 2014 WL 5816106 (E.D. Tex. Nov. 7, 2014)............................7

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ....................................................................................2

*Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*,
    No. A-19-CV-00696-RP, 2022 WL 1014139 (W.D. Tex. Apr. 5, 2022)..........................8, 13

*Sinclair Ref. Co. v. Jenkins Petrol. Process Co.*,
    289 U.S. 689 (1933)...................................................................................................4

*SSL Servs., LLC v. Citrix Sys., Inc.*,
    No. 2:08-CV-158-JRG, 2012 WL 1995514 (E.D. Tex. June 4, 2012) ....................................4

*TQP Dev., LLC v. Merrill Lynch & Co.*,
    No. 2:08-CV-471-WCB, 2012 WL 3283354 (E.D. Tex. Aug. 10, 2012)...............................6

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
    No. 2:17-CV-00042-RWS-RSP, 2019 WL 6002202 (E.D. Tex. May 1, 2019) .................4, 9

*Wapp Tech Ltd. P'ship v. Seattle SpinCo, Inc.*,
    No. 4:18-CV-469, 2021 WL 391302 (E.D. Tex. Feb. 4, 2021)..............................................12

## **GLOSSARY**

| Term | Description |
|------|-------------|
| CM | Cable Modem |
| CMTS | Cable Modem Termination System |
| ██████ | ████████████████ |
| ████ | ████████████ |
| NIA | Non-Infringing Alternative |
| STB | Set-Top Box |
| '775 patent | Asserted U.S. Patent No. 8,223,775 |
| '008 patent | Asserted U.S. Patent No. 8,792,008 |
| '826 patent | Asserted U.S. Patent No. 9,825,826 |
| '362 patent | Asserted U.S. Patent No. 9,210,362 |
| '682 patent | Asserted U.S. Patent No. 10,135,682 |
| '690 patent | Asserted U.S. Patent No. 8,284,690 |

## I.      INTRODUCTION

The Court should deny Entropic's motion to exclude certain opinions of Charter's damages expert, Christopher Bakewell. *First*, Entropic's *Daubert* motion demonstrates a misunderstanding of the nature of a rebuttal report generally, and Bakewell's rebuttal to the opinions of Entropic's expert Stephen Dell, specifically. Bakewell's rebuttal opinions relating to ████████████, in the context of criticizing Dell's royalty theories, are reliable and admissible. *Second*, Entropic's motion to strike two spreadsheets related to ████████████" should be denied because Bakewell was properly responding to a damages theory revealed for the first time in Dell's expert report, and Entropic's motion to strike a ████████████ should be denied because Entropic was aware of Charter's use of the ████████████), and Charter's position that the █████ was a non-infringing alternative. Further, given that Dell had multiple opportunities to supplement his opinions, and Entropic made the strategic decision not to depose Bakewell, Entropic has not shown any prejudice warranting exclusion.

## II.      BACKGROUND

On July 21, 2023, Entropic served the report of its damages expert, Stephen Dell, in which Dell opined that Entropic was entitled to no less than █████. On August 11, 2023, Bakewell served his rebuttal report. Among his opinions, Bakewell criticized Dell's lack of analysis regarding mitigation or product substitution at length, dedicating over 20 pages of his report identifying failures in Dell's approach. (Ex. AD[1] ¶¶ 224–68.) As one of his many rebuttals to Dell's royalty theories (some of which involve projections up to ████████████), Bakewell criticizes Dell for assuming ████████████████████████ ██████████████████ and ████████████████████

---

[1] "Ex." refers to Exhibits to the Declaration of Elizabeth Long In Support Of Charter's Opposition To Entropic's Motion To Strike Opinions Of Christopher Bakewell, filed herewith.



(*Id.* ¶ 667 (emphasis in original).) Bakewell provides an extensive rebuttal to Dell's opinions for each of the asserted patents. (*Id.* ¶¶ 287–589.) For each asserted patent, Bakewell adjusts Dell's royalties, and " ███████████████████████████████████

███████████████████████████████████████████████

███████████████████ Bakewell then takes this ████████████ and extensively ██████

████████████████████████████████████████████████

██  ████████████ Entropic elected not to depose Bakewell on the opinions set forth in his rebuttal report. (Ex. AE at 1.) Since his opening report, Dell has served two supplemental reports on August 29, 2023, and September 19, 2023. (Long Decl. ¶ 32.)

## III.   LEGAL STANDARD

In a jury trial, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system . . . . Thus, while exercising its role as a [gatekeeper], a trial

court must take care not to transform a *Daubert* hearing into a trial on the merits.") (quoting Fed. R. Evid. 702 advisory committee note).

## IV.    BAKEWELL'S REBUTTAL OPINIONS ARE RELIABLE AND ADMISSIBLE

At the outset, Entropic's motion demonstrates a fundamental misunderstanding of Bakewell's opinions. To be clear, the opinions Entropic is seeking to exclude are being offered in rebuttal to Dell's analysis, particularly Dell's failure to consider key information about the relevant market or factors affecting Charter's options under Dell's various royalty theories. In quantifying his adjustments and/or corrections to Dell's royalty amounts, Bakewell does not rely on the presence of NIAs. Within this context, as detailed below, none of Entropic's purported bases for exclusion have merit, and its motion should be denied.

### A.    Bakewell's Opinions On ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Reliable And Admissible

Entropic first complains about whether Bakewell properly examined the availability of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Contrary to Entropic's suggestion, the Federal Circuit has not held as a matter of law that "[a]n alternative product offered by a third-party cannot be a non-infringing alternative it if only later became licensed or adjudged as non-infringing." (*Id.* at 2 (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015)). As one court found, "*Astrazeneca* cannot be read more broadly than affirming the district court's factual finding that a non-infringing alternative was unavailable on the facts in that case." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2016 WL 524904, at *8 (N.D. Cal. Feb. 10, 2016). In *Grain Processing*, the Federal Circuit explained that "[t]he critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period.'" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341,1353 (Fed. Cir. 1999); *see also Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119,

1122 (Fed. Cir. 2003) ("In *Grain Processing*, this court reaffirmed its earlier precedent stating that a technology not on the market at the time of infringement can, in certain circumstances, constitute an available, noninfringing alternative.").

The consideration of available non-infringing alternatives through the damages period is also consistent with the well-established "book of wisdom" principle, which provides that reasonable royalty damages can be informed by post-negotiation information. *See Sinclair Ref. Co. v. Jenkins Petrol. Process Co.*, 289 U.S. 689, 698 (1933); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014); *see also Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016) (denying motion to strike Bakewell's "reliance on post-infringement evidence to support his opinions about the pre-infringement hypothetical negotiation"). There is no dispute that ███████████ were sold during the damages period claimed by Entropic, and Bakewell correctly used the Book of Wisdom to consider facts and events occurring during that period. *See SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-CV-158-JRG, 2012 WL 1995514, at *3 (E.D. Tex. June 4, 2012) (denying motion to strike damages expert's opinions on NIAs "on the market during the period of infringement");[2] *Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-CV-00042-RWS-RSP, 2019 WL 6002202, at *1 (E.D. Tex. May 1, 2019) ("Whether an alternative is commercially acceptable is a highly factual inquiry. In this case, the jury should determine this issue."); *ClearPlay, Inc. v. Dish Network, LLC*, No. 2:1-cv-00191, 2023 WL 185434, at *4 n.50 (D. Utah

---

[2] Entropic's attempt to distinguish *SSL* by citing the expert's reliance on "numerous documents" falls short. (Dkt. 174 at 4 n.3.) As explained below, Bakewell cited record evidence, and his reliance on that evidence is a matter for cross-examination, not exclusion. Likewise, this is not the situation that was presented in *LaserDynamics v. Quanta Comput., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011). There, the expert offered only "speculation" on NIAs based on prior art. Here, Bakewell properly rebuts Dell's opinions by pointing to the ███████ as a product substitute/non-infringing alternative during Dell's shifting damages periods.

Jan. 13, 2023) (noting that argument of whether expert properly considered NIA that was not available until six years after the hypothetical negotiation "goes to the weight of [the expert's] opinions, not the opinions' admissibility").

Next, Entropic complains that Bakewell has not sufficiently cited to evidence supporting availability. (Dkt. 174 at 3–4). *First*, Entropic suggests that Bakewell performed no analysis regarding the timing of the hypothetical negotiation. (*Id.*) However, Bakewell's report includes timelines of relevant events for each asserted patent, including the hypothetical negotiation (Ex. AD ¶¶ 226, 177, 179, 182, 184 187), and, as Entropic itself notes, Bakewell relied on Charter's Response To Interrogatory No. 18 in support of his opinions. (Dkt. 174 at 4.) In that response, Charter clearly states that it ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

*Second*, Bakewell, as Charter's damages expert, is not proffering a technical opinion on whether ████████████ infringe. Rather, as Entropic acknowledges, Charter's technical expert Dr. Almeroth opines that ██████████████████████████. (Dkt. 174 at 5; *see also* Ex. AG ¶¶ 100–144.) As Federal Rule of Evidence 703 permits, "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." *See, e.g., Beneficial Innovations, Inc. v. Advance Publ'ns, Inc.*, No. 2:11-cv-229-JRG-RSP, 2014 WL 12603495, at *3 (E.D. Tex. July 9, 2014) (rejecting plaintiff's argument that the opposing damages expert "assumes without any competent basis that the prior art references are non-infringing alternatives" and finding that "[p]laintiff's issues go to the correctness of [the expert's] positions, including the sufficiency of the evidence . . . ."). Entropic had every opportunity to explore the

basis for Bakewell's opinions but made the strategic decision not to take his deposition. Any issues Entropic has with the evidence Bakewell relies on is properly the source of cross-examination, not exclusion. *See, e.g.*, *TQP Dev., LLC v. Merrill Lynch & Co.*, No. 2:08-CV-471-WCB, 2012 WL 3283354, at *2 (E.D. Tex. Aug. 10, 2012) (denying motion to exclude damages expert opinion on non-infringing alternatives as long as "methodology was reliable and reproducible").

**B.  Bakewell's Opinions On ████████████████ Are Reliable And Admissible**

Relying largely on attorney argument and hypotheticals, Entropic claims that ████████
████████████████████████████████████████████████████████████

(Dkt. 174 at 6.) Entropic, however, relegates key distinguishing information to a footnote. (*Id.* at 7 n.6.) That is, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*See Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374–75, 377 (2017) (faulting the Federal Circuit's "misstep in [its] logic," and clarifying that "[a]s a result [of Patent Exhaustion], the sale [of a patented item] transfers the right to use, sell, or import [that item]." … "Once a patentee decides to sell—whether on its own or through a licensee—that sale exhausts its patent rights, regardless of any post-sale restrictions the patentee purports to impose, either directly or through a license."). As one district court found, "[d]evices produced by a third party licensee of the patentee, such as those produced by Cap & Seal, are considered to be acceptable non-infringing substitutes." *Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94 C 2304, 1996 WL 114781,

at *5 (N.D. Ill. Mar. 14, 1996), *aff'd,* 178 F.3d 1306 (Fed. Cir. 1998) (citing *Pall Corp. v. Micron Separations, Inc.*, 66 F.2d 1211, 1222 (Fed. Cir. 1995); *see also Broadcom Corp. v. Emulex Corp.*, 2011 WL 13133846, at *3 (C.D. Cal. Aug. 2, 2011) (finding a factual issue existed on lost profits where accused infringer argued, among other things, that it "could have purchased non-infringing current steering circuitry from a Broadcom-licensed supplier"). Further, Entropic cites no evidence from ███████ or legal support for its claims that ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████) However, even if it did, the proper recourse is to challenge any alleged deficiencies on cross-examination, not to seek to "transform a *Daubert* hearing into a trial on the merits." *Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.,* No. 2:12-cv-832-JRG-RSP, 2014 WL 5816106, at *1 (E.D. Tex. Nov. 7, 2014).

    **C.**    **Bakewell's Rebuttals To Dell's** ███████████ **Theory Are Reliable And Admissible**

As noted above, many of Bakewell's rebuttal opinions are directed to Dell's incomplete and inaccurate modeling of a market ██████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ Bakewell also criticizes Dell for failing to provide support for the opinion that any ████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████

Entropic, ignoring the context of Bakewell's opinions, sets up a strawman by arguing that

Bakewell was required to ████████████████████████████████████████████████████████

████████████████████ This would be necessary if Bakewell was offering an affirmative royalty

opinion that relied on the price differential ████████████████, but that is not what Bakewell

proffers in this case (nor is he required to as a rebuttal expert). *See Rex Real Est. I, L.P. v. Rex Real*

*Est. Exch. Inc.*, No. A-19-CV-00696-RP, 2022 WL 1014139, at *2 (W.D. Tex. Apr. 5, 2022) ("A

'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial

report.") As made clear by his report, Bakewell is properly pointing out facts and evidence that

economists and damages experts would consider (and which Dell chooses to ignore).

Entropic grossly understates Bakewell's opinions by claiming ████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████ Notably, Entropic points to no portion of Bakewell's report in making its claim

and, as noted above, Bakewell engages in a lengthy and substantive *Georgia-Pacific* analysis. (*See*

Ex. AD ¶¶ 599-668.) Because Bakewell does not offer an affirmative royalty opinion, Entropic's

reliance on *Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*,

879 F.3d 1332 (Fed. Cir. 2018) is completely misplaced. In that case, the Federal Circuit found

---

[3] *E.g.*, Dell █████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████████████████

that the patentee's damages expert—who had the burden of proof—offered a royalty rate "plucked . . . out of nowhere." *Id.* at 1331. Here, Bakewell is offering no affirmative rate, but is permissibly and reliably responding to Dell's opinions. In short, Entropic hasn't identified any opinion by Bakewell that "vigorous cross-examination" won't cure. *See Traxcell*, 2019 WL 6002202, at *1 ("To the extent that issues exist in Honegger's opinions, the Court concludes that these issues would be more appropriately addressed on cross-examination.").

### D. The '682 Patent

Entropic's argument regarding the '682 patent is easily addressed. As Entropic acknowledges, Bakewell relied on the opinions of Charter's expert Dr. Almeroth (Dkt. 174 at 1) and also relied on Charter's interrogatory responses, both of which were based on Entropic's then-existing infringement contentions. (*See* Ex. AD ¶ 251.) Dr. Almeroth qualified his opinions when he served his report on ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ ███████████████

████████████████████████████████████████████████.

## V.   ENTROPIC'S MOTION TO STRIKE SHOULD BE DENIED

As set forth in detail below, there are no grounds to exclude two spreadsheets produced by Charter providing ████████████████████████████████████████████

████████████████. Entropic never raised any issues when it received the documents, it never asked for a deposition related to the documents, never sought to amend Dell's expert report in light of the information, and chose not to depose Bakewell and inquire about his reliance on the three documents. Entropic's motion should be denied.

**A.** **There Is No Basis To Exclude The** ███████████ **Spreadsheets**

**1.** **Pertinent Factual Background**

At the outset of discovery, Charter served an interrogatory asking Entropic to ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ In all of its

responses, Entropic never articulated a damages theory ███████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████

Contrary to Entropic's claim that it ███████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████.[4] Further, none of

the deposition topics relating to ████████████ that Entropic points to (Dkt. 174 at 12) sought

---

[4] ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████

information regarding the number of ██████████████████ [5] During the deposition of Charter's corporate representative on those topics, Entropic never asked a single question regarding the ████████████████████████████████████████████████████ ██████████████████████████████████████████████) At no point during fact discovery did Entropic (i) complain that Charter had not produced ███████████ ███████████████████████ (ii) articulate that such subscriber information was necessary for Entropic's damages claim, or (iii) seek a meet and confer regarding information relating to the number of ███████████████████████. (Long Decl. ¶¶ 21–29, Ex. AT.)

Not until Entropic's service of the Dell damages report did Entropic claim it was entitled to damages based on █████████████." In his report, Dell calculates ██████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████

### 2.   Exclusion Is Not Warranted

The Fifth Circuit applies a four-factor test to determine the admissibility of expert testimony relying on information that was not timely disclosed: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Barrett v. Atl. Richfield Co.*,

---

[5] ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

95 F.3d 375, 380 (5th Cir. 1996). As set forth below, none of Entropic's complaints amount to a basis for exclusion, and all factors weigh in favor of Charter.

  **Explanation for the Alleged Failure to Provide Discovery.** As described above, Entropic never disclosed its "████████████████████████ before the service of the Dell report. The timing of the production of the documents, which was created with rebuttal expert work, was substantially justified. *See Wapp Tech Ltd. P'ship v. Seattle SpinCo, Inc.*, No. 4:18-CV-469, 2021 WL 391302, at *3 (E.D. Tex. Feb. 4, 2021) (finding defendant's disclosure of 843 documents and a new witness with rebuttal expert reports proper after defendants "learned information about [p]laintiff's damages model from their [opening] damages report"). Considering how the information demonstrates the flaws in Dell's analysis and his overstatement of royalties, there would be no reason for Charter to ████████████████████████████████

████████████████████████

  **Prejudice/Continuance.** Entropic's only claimed prejudice based on the spreadsheets is that ███████████████████████████████████████████████████████

██████████████████████████████ Entropic's claim is belied by (i) its agreement to take multiple depositions (including of Charter witnesses) after the close of fact discovery, including *after* the service of Dell's report, with the understanding Dell could supplement his opinions, *see, e.g.*, Dkt. 136, Dkt. 153, and (ii) Entropic's strategic decision not to depose Bakewell. Entropic is free to question the basis for Bakewell's reliance on the information and

---

[6] Entropic makes up an argument whole-cloth when it claims Charter produced ████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

opinion during cross-examination at trial. *See Equistar Chems. LP v. Westlake Chem. Corp.*, No. 6-16-cv-68-JRG-RSP, 2016 WL 4410006, at *3 (E.D. Tex. Jan. 16, 2016) (denying motion to strike opinions that relied on information not produced during fact discovery, finding that any perceived deficiencies in the expert's report could be sufficiently addressed "through the use of vigorous cross-examination").[7] In contrast, Charter would be significantly prejudiced if it could not rebut Dell's overstated, inflated royalties.

**Importance of the Testimony.** Entropic does not address the importance of the evidence, and therefore has waived any argument. Based on Dell's inclusion of ▌▌▌▌▌▌▌▌▌▌▌▌



▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Dell has overinflated his damages. Charter's information is necessary and important, as it provides an accurate count of products actually accused, and is important to rebut Dell's disproportionate damages calculations. *See, e.g., Rex Real Estate,* 2022 WL 1014139, at *3 (denying motion to strike where the expert's "report includes new evidence for the stated goal of 'show[ing] methodological flaws' in [the opposing expert's report to cast doubt on his "ultimate conclusions").

**B.      There Is No Basis To Exclude The ▌▌▌▌▌▌▌▌**

**1.      Pertinent Factual Background**

As Entropic concedes, during fact discovery Charter disclosed ▌▌▌▌▌▌



▌▌▌▌▌▌▌▌▌▌▌▌ Dr. Almeroth also opined that "Charter

---

[7] In addition to the spreadsheets, Bakewell also relies on interviews with Charter employees ▌▌ ▌▌▌▌ (Ex. AD ¶ 479). *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *3 (E.D. Tex. Jan. 9, 2016) ("The details of Dr. Beckmann's conversations with Genband employees (and the clarity with which he recalls them) may be fertile ground for cross examination. However, his reliance on such conversations does not provide a basis to strike his testimony.") (cleaned up).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ )  ████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

Bakewell, in rebutting Dell's opinions, determined that ███████████████████████████

███████████████████████████████████████████████████

████   Bakewell criticized Dell for not ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████   In providing his adjustments to Dell's royalties for the three patents, Bakewell

states that Dell's royalty ██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

### 2.      Exclusion Is Not Warranted

**Explanation For The Alleged Failure To Provide Discovery.** During discovery, Charter

produced ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[8] Dell's first supplemental report, served August 29, 2023, refers to Boglioli's deposition several
times, but not to any testimony regarding ████████ . (*See* Ex. AO  ¶¶ 54, 73–74.)



**Prejudice/Continuance.** Again, Entropic claims ███████ prejudice because ████

████████████████████████████████████████████████████████████████████

████ Dr. Almeroth opined on the ████████████████████████████████████, and

Entropic had every opportunity to test that at Dr. Almeroth's deposition. Entropic also had an

opportunity to depose, and did depose, Charter witnesses ████████████████████ (*infra*),

████████████████████████████████. (*See* Ex. AP at 65:5–15; Ex. AR at 89:14–90:8.)

**Importance Of The Evidence.** Entropic does not address the importance of the evidence,

and therefore has waived any argument. The information is important to damages, and particularly

demonstrates the unreasonableness of Dell's royalty opinions based on comparative technology

available to Charter at the time of the hypothetical negotiation.

## VI.    CONCLUSION

For the reasons stated herein, Charter respectfully requests that the Court deny Entropic's

motion to strike paragraphs ¶¶ 234-40, 242-43, 250-51, 253-68, 426, 476-79, 492, 594-95, 596,

649, 651, 667, Exhibit 1.0, and Exhibit 4.0 of the rebuttal report of Christopher Bakewell.

Dated: September 25, 2023

Respectfully submitted,

*/s/ Daniel Reisner by permission Elizabeth Long*
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email:  ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email:  daniel.reisner@arnoldporter.com
Email:  david.benyacar@arnoldporter.com
Email:  elizabeth.long@arnoldporter.com
Email:  albert.boardman@arnoldporter.com
Email:  melissa.brown@arnoldporter.com
Email:  jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Email:  marc.cohn@arnoldporter.com
Email:  amy.dewitt@arnoldporter.com
Email:  paul.margulies@arnoldporter.com

***Attorneys for Defendant***
***Charter Communications, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served September 25, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Elizabeth Long*
Elizabeth Long