UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**CHARTER'S OPPOSITION TO ENTROPIC'S
MOTION TO STRIKE OPINIONS OF STEVEN GOLDBERG**

i

**TABLE OF CONTENTS**

I. LEGAL STANDARD ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................... 1

    A. The Court Should Not Strike Dr. Goldberg's Opinions That Reference The Court's Claim Construction Along With Other Evidence ................................................. 1

    B. Dr. Goldberg Does Not Impermissibly Use Hindsight ..................................................... 4

        1. '362, No Hindsight ..................................................................................................... 4

        2. '775, No Hindsight ..................................................................................................... 7

        3. '008 and '826, No Hindsight ..................................................................................... 8

    C. There Will Be No Jury Confusion From Dr. Goldberg's Consideration Of Li In Opining That Zhang Discloses The "Mixer Module" Of '362 Claims 11–12 ................. 9

    D. The Court Should Not Strike Dr. Goldberg's Opinions Under Local Patent Rule 3-3 ............................................................................................................................. 12

III. CONCLUSION ..................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Better Mouse Co. v. SteelSeries ApS*
   No. 2:14-cv-198-RSP, 2016 WL 3611560 (E.D. Tex. Jan. 5, 2016) ......................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................................ 1

*Elekta Ltd. v. ZAP Surgical Sys., Inc.*,
   — F.4th —, 2023 WL 6152418 (Fed. Cir. Sept. 21, 2023) ....................................................... 5

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008) ............................................................................................... 3

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ................................................................................................. 1

*In re Omeprazole Pat. Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007) ............................................ 5

*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ......................................... 1

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ................................................................ 4

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ................................................................................................... 1

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*,
   No. 6:18-CV-00388-RWS (LEAD), 2018 WL 10126729 (E.D. Tex. Oct. 25, 2018) ............. n.7

*Randall Mfg. v. Rea*,
   733 F.3d 1355 (Fed. Cir. 2013) ............................................................................................... 5

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
   No. 6:11-CV-455, 2013 WL 5934471 (E.D. Tex. Sept. 11, 2013) ......................................... n.7

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
   No. 9:06-CV-151, 2009 WL 5842062 (E.D. Tex. Mar. 30, 2009) .......................................... 13

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
   No. 4:18-cv-474, 2020 WL 1275786 (E.D. Tex. Mar. 17, 2020) ............................................ 12

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
   164 F.3d 605 (Fed. Cir. 1999) ................................................................................................. 3

*Ziilabs Inc. v. Samsung Elecs. Co.*,
  No. 2:14–cv–203–JRG–RSP, 2015 WL 7303352 (E.D. Tex. Aug. 25, 2015) .......................... 12

**Rules**

Fed. R. of Evid. 702 ............................................................................................................. 1

The Court should deny Entropic's motion to strike Paragraphs 65–67, 74, 77, 79–80, 83, 195–209, 254–55, 270, 289, 292–93, 316–24, 348, 351, 389–93, 422, 434, 454, 480–81, 494, 507, 516, 520, 529, 534, 539, 542, 551–58, and 573 of Dr. Goldberg's opening report and Paragraphs 14, 36, and 45 of his supplemental report (Dkt. 168, "Motion" or "Mot."). Dr. Goldberg adheres to the Court's claim construction and will do so before the jury, he does not provide hindsight opinions, and his use of a single unelected state-of-the-art reference to show background will not confuse the jury. The Court also should not exclude Dr. Goldberg's opinions under Local Patent Rule 3-3.

## I. LEGAL STANDARD

Expert testimony is admissible if it is both relevant and reliable. Fed. R. of Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)), *aff'd*, 564 U.S. 91 (2011).

## II. ARGUMENT

### A. The Court Should Not Strike Dr. Goldberg's Opinions That Reference The Court's Claim Construction Along With Other Evidence

Consistent with the Court's Order, Dr. Goldberg will not contradict the Court's claim constructions, refer to the parties' claim construction positions, or mention any portion of the claim construction order, other than the definitions adopted by the Court, in the presence of the jury. *See* Dkt. 123 at 64; Court MIL No. 17. Accordingly, there is no basis for striking the statements identified in Entropic's Motion (*see* Mot. at 5–8), let alone the entirety of Paragraphs 65–67, 77,

79–80, 83, 348, 351, 434, 480–81, 507, 516, 520, 534, 542, and 573 of Dr. Goldberg's opening report[1] and Paragraph 14 of his supplemental report.[2] In addition, though Dr. Goldberg will not discuss the rationale of the Court's Markman Order on direct at the jury trial, his opinions about the Order may be cited to the Court in summary judgment motions or other motions involving non-jury issues. Therefore, the following paragraphs should not be stricken:

¶¶ 65–67:  Dr. Goldberg acknowledges that the Court's construction of DOCSIS MAC and DOCSIS Controller is "plain and ordinary meaning," and he applies what he believes that meaning to be. Dr. Goldberg cites the rationale of the Court's Markman Order, but he relies on other evidence as well. Therefore, striking these paragraphs wholesale is not appropriate. As to the Court's Markman Order, Dr. Goldberg will not discuss it on direct at the jury trial.

¶ 77: Dr. Goldberg simply recites the Court's construction of the "completely partitioned" claim element. There is nothing improper with either expert citing the Court's constructions.

¶¶ 79–80, 83: Dr. Goldberg cites the rationale of the Court's Markman Order to support his opinion, but he will not discuss the Court's Markman Order on direct at the jury trial. Further, his opinions based on his expertise as a POSITA should not be stricken.

¶¶ 348, 351: Dr. Goldberg cites the rationale of the Court's Markman Order to support his opinion, but he will not discuss the Court's Markman Order on direct at the jury trial. His opinion in these paragraphs based on his expertise as a POSITA, however, should not be stricken.

---

[1] See Dkt. 168-2, Ex. A at 28–29, 32–34, 110–12, 135, 148, 155–56, 159–61, 165, 167, 174–75 (¶¶ 65–67, 77, 79–80, 83, 348, 351, 434, 480–81, 507, 516, 520, 534, 542, 573). Exhibits A–F were filed with Entropic's opening motion (Dkt. 168).

[2] See Dkt. 168-4, Ex. C at 8–9 (¶ 14).

¶ 434: Dr. Goldberg provided this paragraph to preserve Charter's ability to appeal the Court's claim construction. He will not testify as to this paragraph at the jury trial, but it might be cited in briefing to the Court on non-jury issues. It should not be summarily stricken.

¶¶ 480–81:  These paragraphs do not even reference claim construction. Entropic argues that Dr. Goldberg improperly engages in claim construction by relying on inventor testimony to narrow the scope of the claims (Mot. at 8), but he does no such thing. The claim terms at issue were to be given their plain meaning, and Dr. Goldberg cites the inventor testimony to support his views as to what that plain meaning is. *See* Dkt. 168-2, Ex. A at 148 (¶ 480 ("My opinion is confirmed by the testimony of inventors of the '362 Patent."), ¶ 481 ("During his deposition, Mr. Gallagher confirmed that the architecture disclosed in the '362 Patent was not meant to digitize the entire spectrum received at the RF input . . . .")). The Federal Circuit has held this to be appropriate. *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008) (holding that inventor testimony "may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art"); *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) (explaining that "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims").

¶¶ 507, 516: Dr. Goldberg cites the rationale of the Court's Markman Order to support his opinion, but he will not discuss the Court's Markman Order on direct at the jury trial. His opinion in this paragraph based on his expertise as a POSITA, however, should not be stricken.

¶ 520: Dr. Goldberg does not address claim construction in this paragraph or take any positions contrary to the Court's construction.

¶¶ 534, 542: Dr. Goldberg states that he has "for the purposes of my analysis of the prior art, adopted the Court's interpretation" of the claim, even though he respectfully disagrees with it. He will not express any such disagreement on direct at the jury trial, but it might be relevant to non-jury issues presented to the Court.

¶ 573: Dr. Goldberg cites the rationale of the Court's Markman Order to support his opinion, but he will not discuss the Court's Markman Order on direct at the jury trial. His opinion in this paragraph based on his expertise as a POSITA, however, should not be stricken.

¶ 14: Dr. Goldberg cites the rationale of the parties and the Court's Markman Order to support his opinion, but he will not discuss the parties' positions or the Court's Markman Order on direct at the jury trial. His opinion in this paragraph based on his expertise as a POSITA, however, should not be stricken.

### B. Dr. Goldberg Does Not Impermissibly Use Hindsight

While factfinders should be cautious of hindsight bias, they must not be "den[ied] . . . recourse to common sense . . . ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). Dr. Goldberg's appeal to common sense does not impermissibly use hindsight, and the Court should deny Entropic's motion to strike Paragraphs 67, 74, 254–55, 292–93, and 389–90.

#### 1. '362, No Hindsight

Entropic asserts that the Court should strike Paragraphs 389–90 because Dr. Goldberg improperly relies on the '362 patent with hindsight to interpret U.S. Patent No. 6,704,372 ("Zhang") as disclosing "desired" and "undesired" television channels. Mot. at 10–11. Entropic's argument is a disagreement on the merits, not an attack on the admissibility of Dr. Goldberg's opinions. Moreover, Entropic's argument is completely unsupported, contradicted by the record, its expert, and its own briefing, and defies all common sense.

4

*First*, Entropic's assertion that it was improper for Dr. Goldberg to consider whether Zhang was similar to the '362 patent in his invalidity analysis is sheer nonsense. Mot. at 10–11. In the quoted deposition passage, Dr. Goldberg explains that Zhang describes "almost directly what '362 says," which is exactly what Dr. Goldberg should look for in a proper invalidity analysis. *Id.* To suggest this is improper is contrary to basic patent law. *See, e.g.*, *In re Omeprazole Pat. Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007) ("An anticipation analysis requires a comparison of the construed claim to the prior art."); *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, — F.4th —, 2023 WL 6152418, at *3 (Fed. Cir. Sept. 21, 2023) (holding that obviousness requires consideration of "differences between the prior art and the claims at issue" among other things) (quoting *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013)).

*Second*, Entropic states that Zhang "contains no such disclosure" of desired and undesired television channels (Mot. at 10), but Entropic does not include a citation to any evidence. It cannot cite its expert, Dr. Kramer, because he provides no such opinion in his report. *See* Ex. G at ¶¶ 120–27. By contrast, Dr. Goldberg quotes directly from Zhang. As to "television channels," Zhang states that the signals include "**terrestrial TV systems, cable systems, etc.**" Dkt. 168-2, Ex. A at 122 (¶¶ 389–90 (quoting Zhang at 3:10–14)).[3] This opinion should not be stricken based solely on unfounded attorney argument. As to "desired" and "undesired," Dr. Goldberg quotes Zhang's description of "selecting" a subgroup of channels $D_1$ to $D_m$ from a larger group of channels $C_1$ to $C_n$ using a "digital selector," and then only outputting the selected $D_1$ to $D_m$ channels for further processing. *See id.* at 122, 125–27 (¶¶ 389–90, 401–06); *see also* Ex. H (Zhang) at col. 3:66–4:2 ("Still referring to FIG. 2, an nxm digital selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then **selects one or more of the RF channels $D_1$ to $D_m$ from one or more**

---

[3] Emphasis is added herein unless otherwise noted.

5

*of the digital RF channels $C_1$ to $C_n$*."), col. 8:62–63 ("selecting one or more selected RF channels from at least one of the digital RF channels"), col. 4:12–13 ("The m selected RF channels are then fed into respective demodulators . . . ."), Figs. 2, 5, 6, 7. It does not take hindsight or expertise to see that Zhang's selected $D_1$ to $D_m$ channels were "desired" and the remaining channels in $C_1$ to $C_n$ that were not selected were "undesired." Dr. Goldberg's deposition is consistent with his report. *See* Ex. I (Goldberg Tr.) at 216:3–16 ("I think a person of ordinary skill-in-the-art would understand [from Zhang at 6:18–34 and Fig. 6] the ones you selected were the desired ones and the other ones were undesired. You didn't need them.").

*Third*, Entropic's assertion that Zhang "contains no such disclosure" (Mot. at 10) is also contradicted by its own expert. In a particularly disingenuous gambit that gives only lip service to Entropic's need to assert that Zhang lacks a claim element, Dr. Kramer's report includes a statement that Zhang is missing the "selecting" step, **but Dr. Kramer does not actually render that opinion**. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Nowhere does his report state that claim 11 is limited to hundreds of channels, and he readily admitted at deposition there was no such limitation and that the '362 patent describes an example of "wideband" that involves only 10 channels.[4] Ex. J (Kramer Tr.) at 17:7–22; *see also* Ex. K ('362 patent) at col. 4:22–25, 5:43–44, Fig. 2. Dr. Kramer's opinion, therefore, is simply that Zhang might be difficult to implement

---

[4] Dr. Kramer put up no fight at deposition on this point, even though it contradicted the fundamental premise of his only opinion on validity in view of Zhang. Ex. J at 17:2–22 ("Q. And the total of 80 megahertz [which is 10 channels] is an example of a wideband, is that right? A. I think that's a good way of putting it. It's an example.").

with hundreds of channels, but this has nothing to do with whether Zhang describes the "selecting" element.[5]

*Fourth*, Entropic's argument is also contrary to its motion for summary judgment of validity in view of Zhang, which does not dispute that Zhang describes selecting desired and undesired television channels.[6]

Accordingly, Entropic's effort to strike Dr. Goldberg's opinions is based on a desperate and disingenuous portrayal of the record. The Motion should be denied.

### 2. '775, No Hindsight

Entropic asks the Court to strike Paragraphs 67 and 74 because Dr. Goldberg does not include a cite to U.S. Patent No. 2004/0160945 A1 ("Dong") for his conclusion "that [in Dong] packet forwarding functionality could be identified as a MAC function" and that a POSITA would understand that the processed downstream packets could be forwarded to the data networking engine "without the involvement of DOCSIS controller." Mot. at 9; Dkt. 168-2, Ex. A at 29 (¶ 67). According to Entropic, this indicates an impermissible use of hindsight. Not so. Earlier in the same section of his report, Dr. Goldberg relies on Dong to establish that "a POSITA would understand

---

[5] Dr. Kramer's opinion on the feasibility of Zhang is also contradicted by the fact that Zhang describes processing more channels (35) than the '362 patent's 10-channel example; therefore, whatever the '362 patent's receiver can do, so can Zhang's. *Compare* Ex. H at col. 6:18–34, Fig. 6 ("A single multichannel RF signal can have multiple separate RF signals, e.g., 35 RF channels $C_1$ to $C_{35}$ per multi-channel RF signal."), *with* Ex. K at col. 4:22–25 ("In this example, the number of available channels in BW1 120 is assumed to be 10 with each channel occupying an 8 MHz bandwidth for a total of 80 MHz."); *see also* Dkt. 168-2, Ex. A at 119–29 (¶¶ 377–411).

[6] Entropic's summary judgment motion on validity of '362 in view of Zhang addresses only the "mixer module" element. Thus, Entropic argues three different claim elements in three different places and with no overlap: the "desired" and "undesired" television channels in the instant Motion, the "mixer module" in its summary judgment motion, and the "selecting" step in Dr. Kramer's report (but, as discussed, not really). None of these arguments, however, is supported by a shred of evidence.

7

that a features [sic] contained in a DOCSIS MAC processor would be accomplished by the cable modem functionality in the DOCSIS Interface." *Id.* at 27 (¶ 62 (citing Dong at ¶ 0046)). Dr. Goldberg similarly uses Dong to conclude that a "POSITA would understand that the DOCSIS Interface of Dong would also contain the DOCSIS Controller functions taught in the '775 Patent." *Id.* (¶ 63 (citing Dong at ¶¶ 0043, 0046)). Therefore, the DOCSIS Interface of Dong includes both DOCSIS MAC and DOCSIS Controller functionality, and "packets could be forwarded to the data networking engine without the involvement of the DOCSIS Controller by a 're-definition' of functional ownership." *Id.* at 28–29 (¶¶ 65–66 (citing the "plain and ordinary meaning" of DOCSIS MAC and DOCSIS Controller)). Dr. Goldberg's additional citations to Entropic's claim construction expert's declaration, the Court's claim construction order, and the '775 Patent are merely used to support the propositions Dr. Goldberg previously established through the Dong prior art reference. Entropic's remaining argument as to Paragraph 67 attacks Dr. Goldberg's choice of phrasing in his report, not its substance, and goes to the weight of the evidence rather than its admissibility. Mot. at 9.

### 3.    '008 and '826, No Hindsight

Entropic also argues that the Court should strike Paragraphs 254–55 and 292–93 from Dr. Goldberg's expert report because he allegedly relies on the '008 and '826 patents in hindsight to show that U.S. Patent No. 2007/0286311 A1 ("Coyne") discloses television channels. Mot. at 10. But Dr. Goldberg cites examples from Coyne that a POSITA would have understood to disclose "an entire television spectrum." For example, Coyne discloses a combiner which combines incoming RF signals to "a wide-band or ultra-wideband spectral space, and outputs them to an analog-to-digital converter." Dkt. 168-2, Ex. A at 86 (¶ 251). The converter provides "a digital representation of the combined signal" to a channelizer, which creates channel outputs. *Id.* If the channelizer is used to produce multiple channel outputs, "each may span any desired portion of

the ***entire frequency spectrum of interest***." *Id.* (¶ 252). The passbands of all filters within the channelizer "span the ***complete spectrum of interest***." *Id.* (¶ 253). And Coyne provides that "[s]ome embodiments of the invention may provide wideband (e.g., up to 512 MHz) or ultrawideband (e.g., up to 2 GHz) communications capability," which Dr. Goldberg observed overlap with the same frequencies used by the television spectrum, which go from about 50 MHz to 1 GHz. *Id.* at 87 (¶¶ 254–55). As Dr. Goldberg explained in his deposition:

> [Coyne] talked about a very wide range of signals. And a person of ordinary skill-in-the-art would understand television is structured that way. . . . [Coyne] is not limited to being implemented in any particular setting. . . . [I]t's got a channelizer . . . . And then it talks about the frequency ranges that aren't military, ***that are commercial***, and are other, and talks about those frequency ranges. ***So there's pretty good guidance that it would be applicable for TV or cable. . . . To a person of ordinary skill.***

Exhibit I at 163:6–164:9. Coyne does not limit its application to particular types of signals. *See id.* at 154:1–9 ("[E]mbodiments of the invention may be employed in ***any setting*** in which a system adapted to perform both ***signal detection and communications functions is useful such as for commercial and/or civil uses***."). The fact that the '008 patent covers a frequency range within the range disclosed by Coyne therefore confirms what a POSITA would have already understood from Coyne itself. *See* Dkt. 168-2, Ex. A at 87 (¶ 254 ("A POSITA would understand that the 'complete spectrum of interest' [from Coyne] includes the 'entire television spectrum' claimed by the '008 Patent.")).

   **C. There Will Be No Jury Confusion From Dr. Goldberg's Consideration Of Li In Opining That Zhang Discloses The "Mixer Module" Of '362 Claims 11–12**

The Court should deny Entropic's motion to strike Paragraphs 389–93 from Dr. Goldberg's report. Entropic contends that the jury will be confused by his reference to U.S. Patent Application Publication No. 2007/0098089 A1 ("Li"). Mot. at 11–12. As an initial matter, Paragraphs 389–91 do not even mention Li; they describe only Zhang. *See* Dkt. 168-2, Ex. A at 122 (¶¶ 389–91). As

9

to Paragraphs 392–93, Dr. Goldberg points to Li as evidence of the state of the art and knowledge of a POSITA at the time, which confirms his own independent understanding that Zhang's discussion of signals being "multiplied" together refers to the operation of a "mixer module." *Id.* at 123–24 (¶¶ 392–93). Dr. Goldberg is permitted to consider Li to support his opinions of Zhang, because Li "can legitimately serve to document the knowledge that skilled artisans would bring to bear in reading the prior art . . . ." *Ariosa v. Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015).[7]

Contrary to Entropic's Motion (Mot. at 12), Li is ***not*** "an asserted reference to be combined with Zhang" but is instead "a state-of-the-art reference." Dr. Goldberg opines that "claim 11 is invalid in view of [only] Zhang," and that "a POSITA would have understood that down converter 210, in the architecture taught by Zhang, would be implemented as a mixer . . . ." Dkt. 168-2, Ex. A at 119, 122–23 (¶¶ 376, 391–92). Dr. Goldberg confirmed at his deposition that the "frequency block down converter" of Zhang, which "multiplied" one signal with another (Ex. H at 3:30–36), would be understood by a POSITA to be a "mixer" as recited in '362 claim 11.[8]

---

[7] *See also Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, No. 6:18-CV-00388-RWS (LEAD), 2018 WL 10126729, at *1 (E.D. Tex. Oct. 25, 2018) ("To the extent [the expert] relies on unelected prior art references to provide background information relevant to the '449 patent, the state of the art, or establishing what one skilled in the art would have known at the time of the invention, he may discuss unelected prior art."); *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2013 WL 5934471, at *1 n.1 (E.D. Tex. Sept. 11, 2013) ("[T]his Order is not intended to limit the parties' use of other patents, publications, or instrumentalities for purposes other than as prior art, such as, for example, the level of ordinary skill in the art, background of the technology at issue, or a motivation to combine references.").

[8] *See* Ex. I at 206:7–12 ("***If you say a block down converter, you're talking about the use of a mixer.***"), 204:8–205:9 ("[A] POSITA would have understood that ***a down converter 210, in the architecture taught by Zhang, would be implemented as a mixer*** . . . . But I would strongly state that when you use the term 'block down converter,' it was strong -- it would be understood as a mixer."), 207:3–18 ("Q. But you wouldn't necessarily have to use a mixer. You're just saying it would be exceedingly well-known? A. ***I'm telling you here if you didn't use a mixer, I don't know what you use***. . . . A mixer produces a multiplying function. So a mixer does a multiplication.

10

In his report, Dr. Goldberg cited Li as an example of a mixer that performs multiplication, to support his opinion that a POSITA would understand that Zhang's disclosure of signals being "multiplied" together in the block down-converters is an express reference to a "mixer." Dr. Goldberg explained this at deposition: "I think Li -- Li was used -- and if you'll look at the last sentence in 393, Li was used as support to, quote/unquote, and I quote from my report, confirms my understanding that Zhang's frequency block converter are mixers or mixer modules within the meaning of the '362 patent. That's how Li was used." Ex. I at 214:20–215:1.

Dr. Goldberg's use of Li spans only two paragraphs and confines Li to a state-of-the-art reference confirming that a POSITA would have interpreted Zhang's downconverter 210 as a mixer. This limited use of a single reference to show the state of the art and/or the knowledge of a POSITA does not risk jury confusion. The court's ruling in *Better Mouse Co. v. SteelSeries ApS*, cited by Entropic, is inapposite because "the patentee's expert will not be prepared to address the unelected patent and patent applications at trial." No. 2:14-cv-198-RSP, 2016 WL 3611560, at *1 (E.D. Tex. Jan. 5, 2016). In this case, by contrast, Entropic's experts rebutted Dr. Goldberg's opinions on Li in their reports and will be prepared to address this issue at trial. *See* Ex. G at ¶¶ 8, 52, 119–20, 128, 157. Entropic also deposed Dr. Goldberg on the issue. *See* Ex. I at 213:23–215:7. There is, therefore, no authority supporting Entropic's motion to strike Paragraphs 389–93, which the Court should deny.

---

It multiplies the two signals together. Now, it turns out it does other things. But if you want to -- ***in my mind as a person of ordinary skill-in-the-art, if you said analog multiplier, that gets implemented as a mixer***.").

### D. The Court Should Not Strike Dr. Goldberg's Opinions Under Local Patent Rule 3-3

Entropic asserts that the Court should strike Paragraphs 207–08, 270, 289, 293, 422, 454, 494, 529, 539, and 555 of Dr. Goldberg's opening report and Paragraphs 36 and 45 of his supplemental report for offering opinions on the motivation to combine prior art references beyond those in Charter's invalidity contentions. Mot. at 15–17. It is undisputed that Charter's invalidity contentions include discussion of the motivation to combine for each disclosed combination of prior art.[9] *See* Dkt. 168-5, Ex. D; Mot. at 16. But Entropic contends that the motivations disclosed in Charter's invalidity contentions are general, and Charter failed to disclose "specifically ***why*** a POSITA would be motivated to combine these references." Mot. at 17. Entropic's argument amounts to a belated challenge to Charter's invalidity contentions themselves. Entropic could have raised its objection as early as September 2022, but it chose to wait over a year and until after expert reports were served. The Court should deny Entropic's motion to strike on this basis alone. *See Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14–cv–203–JRG–RSP, 2015 WL 7303352, at *1 (E.D. Tex. Aug. 25, 2015) (denying motion to strike expert reports because "to the extent Defendants' 3–3 disclosures are deficient, the Court finds [Plaintiff] waived any such objections by waiting nearly seven months to act"). Moreover, "[c]ontentions are not intended to require a party to set forth a *prima facie* case, they need only provide fair notice." *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-cv-474, 2020 WL 1275786, at *4 (E.D. Tex. Mar. 17, 2020) (internal quotations omitted). Charter's invalidity contentions provided Entropic fair notice that a POSITA would be motivated to combine these references, and Entropic had adequate opportunity to explore those theories.

---

[9] Only Paragraphs 207–08 and 555 are associated with undisclosed combinations of prior art.

In any event, to the extent there was any failure under Local Rule 3-3, the Court should not exclude these paragraphs under the *Tyco* factors. *See Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:06-CV-151, 2009 WL 5842062, at *2 (E.D. Tex. Mar. 30, 2009). Motivations to combine are a vital aspect of Charter's invalidity case, and Entropic has not suffered unfair prejudice. Entropic's experts rebutted Dr. Goldberg's report, and Entropic had the opportunity to depose Dr. Goldberg about his opinions and prepare for trial. As an example, Entropic cites to Paragraph 422 in Dr. Goldberg's opening report to suggest that Entropic was prejudiced by Dr. Goldberg's opinion that a POSITA would have been motivated to combine Zhang and Favrat to reduce power consumption. Mot. at 18. But Charter disclosed in its initial invalidity contentions in September 2022 that it believed a POSITA would have been motivated to combine Zhang and Favrat such that claim 12 of the '362 patent is obvious. *See* Dkt. 168-6, Ex. E at 89–90.

There is simply no prejudice attendant to any violation of Local Rule 3-3 (assuming for the sake of argument there was one) because the experts have fully joined issue regarding motivations to combine. Thus, Entropic's motion to strike these paragraphs should be denied.

Entropic also contends that the Court should strike Paragraphs 195–209, 316–24, and 551–58 because they discuss combinations of prior art not properly disclosed in Charter's invalidity contentions. Mot. at 13–15. Paragraphs 195–209 and 321–24 are associated with claims that Entropic has represented it no longer asserts in this litigation. *See* Ex. L (August 17, 2023 email from Entropic's counsel) (dropping claim 11 of the '690 patent and claim 7 of the '826 patent); Dkt. 168-2, Ex. A at 68–72, 104 (¶¶ 195–209, 321–24). In any event, the Court should decline to strike Paragraphs 195–209, 316–24, and 551–58 under the *Tyco* factors. The Ciciora, DOCSIS 2.0, Payne, and Prodan '921 references provide support for the only 102/103 grounds in Dr. Goldberg's

13

report as to claim 11 of the '690 patent; claims 4, 6, and 7 of the '826 patent; and claim 3 of the '682 patent. The evidence is therefore "vital" to Charter's 102/103 defense—especially as to asserted claims 4 and 6 of the '826 patent and claim 3 of the '682 patent. Entropic has not suffered unfair prejudice because these references were disclosed in Charter's invalidity contentions (Mot. at 14) and Entropic was able to rebut Dr. Goldberg's expert report, depose him on these issues, and prepare its responses for trial.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Entropic's motion to strike the opinions of Dr. Goldberg.

| | |
|---|---|
| Dated: September 25, 2023 | Respectfully submitted,<br><br>*/s/Daniel Reisner by permission Elizabeth Long*<br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>Email: ddacus@dacusfirm.com<br><br>Daniel L. Reisner<br>David Benyacar<br>Elizabeth Long<br>Albert J. Boardman<br>Melissa Brown<br>Jacob Bass<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York, 10019-9710<br>Telephone: (212) 836-8000<br>Email: daniel.reisner@arnoldporter.com<br>Email: david.benyacar@arnoldporter.com<br>Email: elizabeth.long@arnoldporter.com<br>Email: albert.boardman@arnoldporter.com<br>Email: melissa.brown@arnoldporter.com<br>Email: jacob.bass@arnoldporter.com<br><br>Marc A. Cohn<br>Amy L. DeWitt<br>Paul I. Margulies<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>Email: marc.cohn@arnoldporter.com<br>Email: amy.dewitt@arnoldporter.com<br>Email: paul.margulies@arnoldporter.com<br><br>**Attorneys for Defendant**<br>**Charter Communications, Inc.** |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served September 25, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Elizabeth Long
Elizabeth Long