# EXHIBIT J

```
                                                              Page 1
 1           IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF TEXAS
 3                     MARSHALL DIVISION
 4     ENTROPIC COMMUNICATIONS,
 5     LLC,
 6              Plaintiff,      Case No.
 7       vs.                    2:22-cv-00125-JRG
 8     CHARTER COMMUNICATIONS,
 9     INC.,
10              Defendant.
11     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
12
13
14             REMOTE VIDEO DEPOSITION OF
15                   RICHARD A. KRAMER
16
17
18                   August 24, 2023
19                   10:08 a.m. Central
20
21
22
23           Stenographically Reported By:
24     Deanna Amore - CRR, RPR, CSR - 084-003999
25
```

Page 2

1   APPEARANCES OF COUNSEL
    (All Participants Appeared Remotely.)
2
    On Behalf of the Plaintiff, ENTROPIC
3   COMMUNICATIONS, LLC:
4       K&L GATES LLP
        CONNOR MEGGS
5       70 West Madison Street
        Suite 3300
6       Chicago, Illinois 60602
        connor.meggs@klgates.com
7
    On Behalf of the Defendant, CHARTER COMMUNICATIONS,
8   INC.:
9       ARNOLD & PORTER
        MARC COHN
10      601 Massachusetts Avenue NW
        Washington, D.C. 20001
11      marc.cohn@arnoldporter.com
12
    ALSO PRESENT:
13      Tim Tupiak, Legal Videographer
        Matthew Laurence, Concierge-Technician

Page 3

1           I N D E X
2   WITNESS                    EXAMINATION
3   RICHARD A. KRAMER
4       EXAMINATION BY MR. COHN         6
5       EXAMINATION BY MR. MEGGS      133
6           EXHIBITS
7   Exhibit 1    U.S. Patent 8,223,775    8
8   Exhibit 2    U.S. Patent 9,210,362    8
9   Exhibit 3    Richard Kramer Curriculum   8
10              Vitae
11  Exhibit 4    Materials Considered to    8
12              Expert Report of Dr.
13              Richard Kramer
14  Exhibit 5    Dong - U.S. Patent       8
15              Application 2004/0160945;
16              CHARTER_ENTROPIC00381592-
17              1607
18  Exhibit 6    Brooks - U.S. Patent      9
19              Application 2001/0039600;
20              CHARTER_ENTROPIC00217633-
21              -646
22  Exhibit 7    Zhang - U.S. Patent       9
23              6,704,372
24  Exhibit 8    Favrat U.S. Patent        9
25              7,265,792

Page 4

1           EXHIBITS
2   NUMBER       DESCRIPTION           PAGE
3   Exhibit 9    Li - U.S. Patent         9
4               Application 2007/0098089;
5               CHARTER_ENTROPIC00035923-
6               939
7   Exhibit 10   Dauphinee U.S. Patent     9
8               7.522.901;
9               CHARTER_ENTROPIC00380676-
10              681
11  Exhibit 11   8.11.2023 Expert Rebuttal   9
12              Report of Richard A.
13              Kramer
14  Exhibit 12   Errata to Expert Report    10
15              of Dr. Richard A. Kramer
16  Exhibit 13   Asserted Patents Claim    11
17              Language
18  Exhibit 14   7.12.2023 Deposition      83
19              Transcript of Curtis
20              Ling, Ph.D.
21  Exhibit 15   October 1989 Networking   103
22              Working Group Internet
23              Engineering Task Force;
24              ENTROPIC_CHARTER0018562-
25              677

Page 5

1       THE VIDEOGRAPHER:  Good morning.  We are going
2   on the record.  The time is 10:08 a.m. Central Time
3   on August 24, 2023.
4       Quality of recording depends on quality of
5   camera and Internet connection of participants.
6   What is heard from the witness and seen on the
7   screen is what will be recorded.
8       Audio and video recording will continue to
9   take place unless both parties agree to go off the
10  record.                        10:08:18
11      This is Media Unit No. 1 in the
12  video-recorded deposition of Dr. Richard Kramer,
13  taken in the matter of Entropic Communications, LLC
14  versus Charter Communications, Incorporated, filed
15  in the United States District Court for the
16  Eastern District of Texas Marshall Division,
17  Case No. 2:22-cv-00125-JRG.
18      My name is Tim Tupiak.  I'm the
19  videographer.  The court reporter is Deanna Amore.
20  We are both with the firm Veritext Legal Solutions.   10:08:53
21      I am not related to any party in this
22  action, nor am I financially interested in the
23  outcome.
24      If counsel will now state their
25  appearances and affiliations for the record,

Page 14

1  approximately 10.  There's also been -- for
2  validity, I worked with the patent owners.  Some of
3  those have been -- I have helped address just
4  giving my technical opinions during, like, the
5  patent owner response, and so some of those were
6  dealt with at that level, and then -- or I've
7  written testimony on behalf of the patent holder.
8      Q.  In terms of your involvement in IPRs
9  before the patent office, how many times have you
10  rendered an opinion that patent claims were          10:20:02
11  unpatentable as opposed to patentable?
12      A.  As far as the numbers of matters I worked
13  on, it's about 50/50 split.  Again, some of this
14  stuff didn't see the light of day because -- but
15  the -- as far as the number of IPRs I've done, it
16  would probably be around maybe ten.
17      Q.  Have you testified in front of a jury
18  before in a patent case?
19      A.  No, sir, never.
20          (Stenographer clarification.)              10:20:45
21      THE WITNESS:  I believe I said ten.
22          And that ten doesn't represent some things
23  that -- where there was never a declaration ever
24  issued.  The ten -- there's a broader number than
25  ten where both for the patent owner and for the

Page 15

1  defendants where I've worked on other matters,
2  that's a broader number than ten.  I don't know
3  what it is, but it's probably 50.  I could be
4  wrong.
5  BY MR. COHN:
6      Q.  All right.  Let's look at the '362 patent,
7  No. 2.
8      A.  Okay.
9      Q.  This patent is titled "Wideband Tuner
10  Architecture."                                      10:21:55
11      Do you see that?
12      A.  Yes, sir.
13      Q.  And the term "wideband" is used in both
14  the specification and in the claims of this patent;
15  right?
16      A.  For instance, it's in the title, and it's
17  in the claims, a wideband receiver system, and
18  it's, for instance, in the abstract.
19      Q.  And when you say "in the abstract," you
20  don't mean conceptually, you mean in reality, it's  10:22:19
21  in a portion of the patent called the abstract; is
22  that correct?
23      A.  On the front page of the patent, thank
24  you, Item No. 57.
25      Q.  Aren't always as familiar as we are with

Page 16

1  these things.
2          The term "wideband" in the '362 patent is
3  not given a special definition in that patent; is
4  that correct?
5      A.  What do you mean by "special definition"?
6      Q.  Is there a passage of the '362 patent that
7  provides a definition of wideband?
8      A.  As one skilled in the art in reading
9  wideband, there is the discussion about the fact
10  that, for example, in column 4, that the frequency  10:23:14
11  bandwidth spectrum could be any -- any portion.
12          In column 5, there's a discussion, for
13  example, with respect to bandwidth, UBW1, for
14  instance, the frequency spectrum, that it would be
15  understood that it could comprise all available
16  channels that exist in a license frequency spectrum
17  to provide system flexibility, and it can also be
18  all receivable channels within a geographical area.
19          So as one skilled in the art, one would
20  appreciate that wideband would include at least it  10:24:09
21  is a broader term than full band and would include
22  full.
23      Q.  Wideband is not limited to full band.
24  That's correct; right?
25      A.  Wideband is a broader term.  It would

Page 17

1  include full.
2      Q.  And wideband would include bandwidth less
3  than full band; correct?
4      A.  Under the umbrella it could include full
5  band.  It could include something less than full
6  band.
7      Q.  One of the examples given of widebands
8  within the '362 patent is 80 megahertz bandwidth;
9  is that correct?
10      A.  Can you show me where?                     10:25:10
11      Q.  My browser just burped.
12          I believe it's column 2.  I'm sorry.  It's
13  column 4, approximately line 22.  It says "In this
14  example, a number of available channels in BW1 is
15  assumed to be 10 with each channel occupies an
16  8 megahertz bandwidth for a total of 80 megahertz."
17          Do you see that?
18      A.  I do see that.
19      Q.  And the total of 80 megahertz is an
20  example of a wideband; is that right?              10:26:03
21      A.  I think that's a good way of putting it.
22  It's an example.
23      Q.  Would a bandwidth incoming to the system
24  described in the '362 patent of only 8 megahertz be
25  considered a wideband?

Page 142

1  subscriber would be again the same. So there
2  wouldn't be any undesired channels, and it's being
3  selected from undesired.
4       BY MR. MEGGS:
5       Q. And then what happens when n is greater
6  than m?
7       MR. COHN: Same objections.
8       THE WITNESS: So n could be any number, and so
9  then it would be some sort of a selection of n is
10 greater than m.                          16:42:26
11      MR. MEGGS: No further questions.
12      MR. COHN: Okay. I don't have any questions.
13 I object to that entire redirect as outside of
14 scope of his report and outside of scope of my
15 questioning, but I don't have any questions.
16      MR. MEGGS: Your objection is noted, sir, but
17 I obviously disagree.
18      THE VIDEOGRAPHER: Are we ready to go off the
19 record?
20      MR. COHN: We sure are.              16:42:50
21      THE VIDEOGRAPHER: We are going off the record.
22 The time is 4:42 p.m. This concludes today's
23 testimony by Rich Kramer. The total number of
24 media unit used was six and will be retained by
25 Veritext Legal Solutions. Thank you.

Page 143

1           C E R T I F I C A T E
2
3       I, DEANNA AMORE, a Shorthand Reporter and
4  notary public, within and for the State of
5  Illinois, County of DuPage, do hereby certify:
6       That RICHARD A. KRAMER, the witness whose
7  examination is hereinbefore set forth, was first
8  duly sworn by me and that this transcript of said
9  testimony is a true record of the testimony given
10 by said witness.
11      I further certify that I am not related to
12 any of the parties to this action by blood or
13 marriage, and that I am in no way interested in the
14 outcome of this matter.
15
16      IN WITNESS WHEREOF, I have hereunto set my
17 hand this 28th day of August 2023.
18
19
20  _____
21      Deanna M. Amore, CRR, RPR, CSR
22
23
24
25

Page 144

1  CONNOR MEGGS
2  connor.meggs@klgates.com
3           August 28, 2023
4  Entropic Communications v Charter Communications, Inc., Et Al
5  8/24/2023, Richard Kramer (#6067726)
6     The above-referenced transcript is available for
7  review.
8     Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 cs-ny@veritext.com.
16
17  Return completed errata within 30 days from
18 receipt of testimony.
19  If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22         Yours,
23         Veritext Legal Solutions
24
25

Page 145

1  Entropic Communications v Charter Communications, Inc., Et Al
2  Richard Kramer (#6067726)
3        E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23 _____   _____
24 Richard Kramer             Date
25