# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Civil Action No. 2:22-cv-00125-JRG |
| Plaintiff | **JURY TRIAL DEMANDED** |
| v. | |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | █████████████ |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE OPINIONS OF DR. KEVIN ALMEROTH

## <u>TABLE OF CONTENTS</u>

I.      Almeroth's Opinions on the ███████████ Are Relevant ..........................1

II.     Almeroth's Opinions On Non-Infringing Alternatives Are Proper .....................................4

III.    Almeroth Properly Applied The Court's Claim Construction ...............................................8

        A.      Adherence To The Court's Claim Construction Order................................................8

        B.      Reliance On Inventor Testimony ..............................................................................9

        C.      Almeroth Did Not Import Limitations From The Specification...........................10

IV.     Reliance on Documents Purportedly Not "Timely Disclosed"...........................................13

V.      CONCLUSION...............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aptargroup, Inc. v. Summit Packaging Sys., Inc.*,
  No. 94 C 2304, 1996 WL 114781 (N.D. Ill. Mar. 14, 1996) ............................................. 5, n.7

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ................................................................................................. 7

*Ariad Pharm., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ............................................................................................... 2

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015) ............................................................................................... 5

*Beneficial Innovations, Inc. v. Advance Publications, Inc.*,
  No. 2:11-CV-229-JRG-RSP, 2014 WL 12603494 (E.D. Tex. July 7, 2014) ........................... 4

*Echologics, LLC v. Orbis Intelligent Sys., Inc.*,
  Case No.: 21-cv-01147-H-AHG, 2023 WL 2752861 (S.D. Cal. Mar. 27, 2023) ..................... 9

*Equistar Chems., LP v. Westlake Chem. Corp.*,
  No. 6:14CV68, 2016 WL 4375955 (E.D. Tex. Feb. 26, 2016) ............................................... 11

*Fuji Elec. Corp. of Am. v. Fireman's Fund Ins.*,
  No. 9:05CV27, 2005 WL 5960354 (E.D. Tex. Nov. 21, 2005) ........................................... 1, 8

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-cv-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) ................................... 7

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) ............................................................................................ 6, 7

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008) ............................................................................................... 9

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
  581 U.S. 360 (2017) ................................................................................................................. 5

*Lawyers' Fund for Client Prot. of the State of N.Y. v. Bank Leumi Trust of N.Y.*,
  94 N.Y.2d 398 (2000) .............................................................................................................. 2

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ............................................................................................... 1

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 23, 2013) ........................................ 2

*Pers. Audio, LLC v. Togi Ent., Inc.*,
   No. 2:13-CV-13-JRG-RSP, 2014 WL 4403186 (E.D. Tex. Sept. 5, 2014) ............................... 3

*Sinclair Ref. Co. v. Jenkins Petrol. Process Co.*,
   289 U.S. 689 (1933) ............................................................................................................... 6

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
   926 F.2d 1161 (Fed. Cir. 1991) .............................................................................................. 6

*TQP Dev., LLC v. Merrill Lynch & Co.*,
   No. 2:08-CV-471-WCB, 2012 WL 3283356 (E.D. Tex. Aug. 10, 2012) ................................. 4

*Varta Microbattery Gmbh v. Audio P'ship PLC*
   No. 2:21-CV-00400-JRG-RSP, 2023 WL 5434853 (E.D. Tex. Aug. 23, 2023) .................... n.9

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
   164 F.3d 605 (Fed. Cir. 1999) ................................................................................................ 9

The Court should deny Entropic's motion to exclude certain opinions of Charter's technical expert, Kevin Almeroth.  Entropic's complaints are based on misunderstandings of the law and mischaracterizations of Almeroth's opinions.  While Entropic's motion may raise issues for cross-examination, Almeroth's opinions are relevant and should be admitted. *See Fuji Elec. Corp. of Am. v. Fireman's Fund Ins.*, No. 9:05CV27, 2005 WL 5960354, at *3 (E.D. Tex. Nov. 21, 2005) ("[O]bjections to bases and sources of an expert's opinion affect the weight not admissibility."); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

## I.   Almeroth's Opinions on the ███████████████ Are Relevant

Entropic challenges Almeroth's opinions that the '690, '008, '826, and '682 patents are ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████. (*See* Dkt. 175 at 1.) Entropic's motion should be denied.

Entropic's challenge is premised on the argument that Almeroth was required to do an element-by-element infringement analysis. (*See id.* at 1–2 (citing cases relating to proving *infringement* based on standard essentiality).) But Entropic cites no case, nor any contractual language of the ████████████████████████████████████████ ███████████████████████████████████████████ superfluous under New York law, ████████████████████████████████████████████████ ███████████████████████████████████████████). For an invention to

---

[1] Exhibits A–J were filed with Entropic's opening motion (Dkt. 175).
[2] "Ex." refers to Exhibits to the Declaration of Elizabeth Long In Support Of Charter's Opposition To Entropic's Motion To Strike Opinions of Kevin Almeroth, filed herewith.

be "described" requires a disclosure of "all its claimed limitations." *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1353 (Fed. Cir. 2010) (en banc) ("a written description of the invention" requires disclosure of "all its claimed limitations"). The same cannot be true for the "essential for compliance" clause. *Lawyers' Fund for Client Prot. of the State of N.Y. v. Bank Leumi Trust of N.Y.,* 94 N.Y.2d 398, 404 (2000) ("Bank Leumi's interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation.").

Almeroth's opinions are admissible because they will help the jury decide whether

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ "[E]ssentiality" merely requires showing there is no practical way to comply with the Specifications without infringing Entropic's patents. *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *1 (W.D. Wash. Apr. 23, 2013) ("Patents that are essential to the standard (in that they must be practiced to accomplish the standard) are called standard essential patents."). ███████████

███████████████████████████████████████████████████████

Almeroth's patent-specific analysis began with an assessment of the patent as a whole, claim 1 of each respective patent, and the accused devices. (Ex. L ¶¶ 31–34, 42–47, 62–65; Dkt. 97-8 ¶¶ 85–97[3].) He then assessed the essentiality of the entirety of each respective claim 1 based on Entropic's infringement contentions.  (Ex. L ¶¶ 35–41, 48–61, 66–73.[4])

**'682 patent.**  Almeroth's analysis focused on ████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[3] This was incorporated by reference into Almeroth's opinions. (Ex. L ¶ 62.)
[4] At the time of his opening report, Entropic's experts had not yet served their infringement reports.

██████████████████████████████) He analyzed various claim limitations, identified the

implicated standards (*id.* ¶¶ 67–69) and concluded that ████████████████████████

████████████████████ Entropic complains that ██████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████, nor is it necessary for

Almeroth's testimony to be admissible. *Pers. Audio, LLC v. Togi Ent., Inc.*, No. 2:13-CV-13-JRG-

RSP, 2014 WL 4403186, at *2 (E.D. Tex. Sept. 5, 2014) (testimony about secondary

considerations admissible despite not using the word "nexus").

**'008 and '826 patents.**   Entropic alleges that Almeroth failed to address various

limitations. (Dkt. 175 at 4.) However, Almeroth analyzed the claims, █████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████Further, while he need not have opined that ████████████████

████████████████ as Entropic contends (Dkt. 175 at 4), he does cite to a ████████████████ stating

just that. (██████████████████████████████████████████████████████

█████████████████████████████████████████

**'690 patent.**   Almeroth's opinions show that Entropic based its infringement contention

on the use of ████████████████████████████████████████████. (Ex. L ¶¶ 35–

41.) Almeroth need not opine that ███████████████████" for his testimony to be admissible.

Even if Almeroth's opinions were deemed insufficient on their own to draw conclusions

on standard essentiality, they would nevertheless still be relevant and admissible because, as discussed in Charter's contemporaneously filed opposition to Entropic's motion for summary judgment regarding the ███████████████████, there is ample of evidence of record for a jury to consider together with Almeroth's opinion. *TQP Dev., LLC v. Merrill Lynch & Co.*, No. 2:08-CV-471-WCB, 2012 WL 3283356, at *3 (E.D. Tex. Aug. 10, 2012) (finding failure to address "particular factors" goes to "the weight of the expert's testimony, not its admissibility" and admitting the testimony "to the extent it may assist the jury in understanding" related issues).

Finally, Entropic complains that Almeroth only addresses claim 1 of the '682 and '690 patent. (Dkt. 175 at 2, 5.) Almeroth analyzed each of the asserted ***patents***—focusing on the first claim of each—because the ████████████████████████████████████████ ███████████████████████████████████ And even if not, Almeroth's opinions on the claims he analyzed would remain reliable, relevant, and helpful to the jury. *Beneficial Innovations, Inc. v. Advance Publications, Inc.*, No. 2:11-CV-229-JRG-RSP, 2014 WL 12603494, at *1 (E.D. Tex. July 7, 2014).

## II.   Almeroth's Opinions On Non-Infringing Alternatives Are Proper

Entropic accuses devices that rely exclusively on ███████████ of infringement. *See, e.g.,* Ex. L ¶ 101.) ████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████, Entropic seeks to strike Almeroth's opinions. (Dkt. at 6–9.) All of Entropic's arguments should be rejected.

*First*, Entropic takes issue with Almeroth ██████████████████████ ████████████████████████████████████████████

---

[5] ████████████████████████████████████████.

████████████████████████████████████ According to Entropic, as Almeroth

purportedly opines that ████████████████████████████████████████

████████████████████████████████████ Entropic's argument fails for at least

two reasons. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. *Impression Prod., Inc. v. Lexmark Int'l, Inc.*,

581 U.S. 360, 374–75, 377 (2017) ("Once a patentee decides to sell—whether on its own or

through a licensee—that sale exhausts its patent rights, regardless of any post-sale restrictions the

patentee purports to impose, either directly or through a license."); *see also* Ex. L ¶¶ 120–135

(opining as to exhaustion). Here, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. Second, independent of any exhaustion, Entropic's argument is

contrary to Federal Circuit precedent, which has held that licensed products can also be non-

infringing alternatives. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222–23 (Fed. Cir.

1995) (finding that third-party products that became licensed could be considered non-infringing

alternatives); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015)

(summarizing *Pall*: "an accused alternative product offered by a third party could not be considered

as a non-infringing alternative before the patentee and the third party voluntarily settled their

litigation"); *Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94 C 2304, 1996 WL 114781,

at *5 (N.D. Ill. Mar. 14, 1996) ("Devices produced by a third-party licensee of the patentee . . . are

---

[6] ████████████████████████████████████

████████████████████████████████████

considered to be acceptable non-infringing substitutes.").

Entropic relies on a statement in *SmithKline* that "by definition, noninfringing products do not represent an embodiment of the invention." (Dkt. 175 at 6 (citing *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991)).) However, Entropic takes this dicta out of context, ignoring that the quote is a rebuttal to plaintiff's argument that non-infringing alternatives need not have all patented features to be considered in a lost-profits analysis. *SmithKline,* 926 F.2d at 1166. Indeed, the *SmithKline* Court recognized the importance of considering "the realities of the marketplace," which weighs in favor of recognition of ████████████████████. *See id.* There is no reason why Almeroth should be prevented from labeling ███████████████████████████████."[7]

*Second*, Entropic argues that ██████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████. However, Almeroth's opinions are still relevant and should not be stricken. As the Federal Circuit explained, "The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period.'" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341,1353 (Fed. Cir. 1999). Moreover, the consideration of available non-infringing alternatives through the damages period is also consistent with the well-established "book of wisdom" principle, which provides that reasonable royalty damages can be informed by post-negotiation information. *See Sinclair Ref. Co. v. Jenkins Petrol. Process Co.,* 289 U.S. 689, 698 (1933); *Aqua Shield v. Inter*

---

[7] Entropic suggests that Dr. Almeroth's opinions would be permissible if he used the phrase ████████████████████████████████████████████ (Dkt. 175 at 6.) Contrary to this assertions, there are no legal "magic words" and courts have used terms such as "noninfringing substitutes." *AptarGroup*, 1996 WL 114781 at *5. If the Court believes a change in terminology would better aid the jury, it would not require striking Dr. Almeroth's opinions.

*Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014); *see also Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016) (denying motion to strike Bakewell's "reliance on post-infringement evidence to support his opinions about the pre-infringement hypothetical negotiation"). It is undisputed that ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.

*Third*, Entropic seeks to preclude Almeroth's opinions as to the use of ███████████

████████████████████████████ Almeroth has no such opinions and the motion is moot. In his opening report, which was based on Entropic's infringement contentions, Almeroth noted that, ████████████████████████████████████████████████

████████████████████████████." (Ex. L ¶ 136.) His opinions in this paragraph pertain only to ████████████████████████████████████████████████

███████████ of infringing the '682 patent.

*Fourth*, Entropic complains that Almeroth ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. The availability of a non-infringing alternative is a factual question and there is ample evidence of record from which the jury could conclude that products with █████████ chips were available to Charter. *See Grain Processing Corp.*, 185 F.3d at 1353 (whether a non-infringing alternative is "in fact 'available'" and whether "consumers would consider [it] an acceptable substitute" are questions of fact). For example, Charter's witnesses testified that it has used products ████████████

████████████████████████████████████████████████████████████████'s



█████. Regardless, Almeroth does cite to evidence supporting availability of ██████ in his Background regarding those products. (*See, e.g.,* Ex. L ¶ 104 ████████

████████) Ultimately, Entropic's disagreement is with Almeroth's conclusion and the factual assumptions underlying it, and thus goes to the weight his testimony should be given rather than admissibility. *ActiveVideo v. Verizon Communs.*, Inc., 694 F.3d 1312 (Fed. Cir. 2012) (Disagreements as to expert's conclusions and factual assumptions "go to the weight to be afforded the testimony and not its admissibility."); *Fuji Elec. Corp. of Am,* 2005 WL 5960354, at *3 ("[O]bjections to bases and sources of an expert's opinion affect the weight not admissibility."). Thus, Entropic's motion should be denied.

## III.   Almeroth Properly Applied The Court's Claim Construction

### A.   Adherence To The Court's Claim Construction Order

Entropic argues that "[t]here are three instances where Dr. Almeroth violates the Court's [claim construction] order" to avoid mentioning claim construction positions or portions of the Court's claim construction order before the jury. (Dkt. 175 at 9.) Almeroth's opinions do not violate any prohibition on mentioning these "in the presence of the jury" and, consistent with the Court's Order (Dkt. 123 at 64), Almeroth will not do so. Accordingly, there is no basis for striking the statements identified by Entropic (Dkt. 175 at 9), let alone the entirety of paragraphs 142, 351, and 356 of Almeroth's rebuttal report.

### B.   Reliance On Inventor Testimony

Entropic argues that Almeroth improperly relies on inventor testimony to determine the scope of certain claim terms. (Dkt. 175 at 10–11.) He did not rely on inventor testimony to construe the claim terms. However, inventor testimony "may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 & n.5 (Fed. Cir. 2008); *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims."). Almeroth appropriately cited the inventor testimony because it is consistent with and confirms his opinions. *Echologics, LLC v. Orbis Intelligent Sys., Inc.*, Case No.: 21-cv-01147-H-AHG, 2023 WL 2752861, at *6 & n.1, *7–8 (S.D. Cal. Mar. 27, 2023) (finding expert opinion created a genuine dispute of material fact, despite "opin[ing] as to the meaning of" a claim term based on inventor testimony, so as to preclude summary judgment).

**Rebut. Rep. ¶¶ 199–200**: Almeroth explains that

He does not generate or apply his own "construction," as Entropic contends.

**Rebut. Rep. ¶ 337**: Almeroth relies on the patent specification to understand the scope of

(*Id.* ¶¶ 332–336.) He then cites

At his deposition, Almeroth explained



███████████████████████████████████████ .

**Rebut. Rep. ¶¶ 345–346**: Almeroth relies on the patent specification as identifying that "[t]he ability to independently upgrade the different functionalities of a chip is one of several 'objectives' of the '775 patent." (Ex. O ¶ 345 (quoting '775 patent at 1:19, 1:30–40, 3:58–62).) He then cites ████████████ as consistent with that stated objective. (*See id.*)  He does not use ██ ██████████████████████████ of a claim term, as Entropic contends.

**Rebut. Rep. ¶ 368**: Almeroth relies on the patent specification to understand the scope of "configured to process downstream PDU packets and forward the processed packets directly to the [DNE] without the involvement of the DOCSIS controller." (Ex. O ¶ 361 (quoting '775 patent at 3:11–20, 4:49–53, Fig. 1).) He then cites ██████ testimony as confirming non-infringement, which was also supported by documents and testimony from ████████████████████ ████████████████████████████

**Rebut. Rep. ¶¶ 408–410**: Almeroth relies on the patent specification to understand the scope of the term "wideband." (Ex. O ¶¶ 403–404 (quoting '362 patent at 1:18–23, 2:14–27, 2:31–42, 3:9–15).) Almeroth goes on to explain that ████████████████████████████ ████████████████████████████ (*Id.* ¶ 406.) He cites the testimony of Mr. Gallagher, ████████████████████, as well as ██████████████████ and documents and testimony from ████████ as illustrating this well-known difference. (*See id.* ¶¶ 407–411.)  He does not use their testimony for claim construction, as Entropic contends.

## C.    <u>Almeroth Did Not Import Limitations From The Specification</u>

At no point does Almeroth attempt to narrow certain claim terms by importing limitations from the specification, as Entropic contends. (Dkt. 175 at 11–13.) Almeroth repeatedly affirmed that he applied the Court's constructions and, for all other claim terms, applied its plain and ordinary meaning. (Ex. O ¶¶ 6, 13.) Entropic's motion is focused on the weight of Almeroth's

opinions, rather than their admissibility. *See, e.g., Equistar Chems., LP v. Westlake Chem. Corp.*,
No. 6:14CV68, 2016 WL 4375955, at *3 (E.D. Tex. Feb. 26, 2016) (Challenge to whether opinions
"are consistent with the court's claim construction opinion" does not "rise to the level of
establishing an analytical gap" preventing admissibility.).

> **Rebut. Rep. ¶¶ 333–336**: As an initial matter, contrary to Entropic's assertion, Almeroth
does not opine that the term ███████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ In any event, Entropic points to Almeroth's
rebuttal of opinions from the interpretation of its own expert, Dr. Kramer, that the asserted claims
do not require a ████████████████████████████████████████████
████████████ However, as Almeroth explained, Dr. Kramer appears to have misunderstood
the thrust of Charter's non-infringement positions. (*Id.*) According to Almeroth, ████████
████████████████████████████████████████████████████████
████████████ In explaining his opinions, Almeroth did not import a limitation from the
specification requiring that the term ████████████████████████████████████
████████ Rather, Almeroth explained that a product cannot perform ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████ He bases his
opinions on evidence from cable network technology, including technology mentioned in the '775
patent. (*Id.* ¶ 334.) But he does not import limitations from the specification. Indeed, where

Almeroth discusses the '775 patent, it is largely in rebuttal to Dr. Kramer's own interpretation of the patent. (*See, e.g.,* Ex. O ¶¶ 335–336 ███████████████████████████████████

███████████████████████████████████████████████████.").

**Rebut. Rep. ¶ 351**: Almeroth does not incorporate functions discussed in the specification to narrow the meaning of "DOCSIS controller." Instead, Almeroth faults Dr. Kramer because he identified the ████████████████████████████████ but failed to identify any evidence supporting this assertion. (*See* Ex. O ¶ 350.) Almeroth then explains that the ████

████████████████████████████████████████████████████████

████████████████████████████████████ Thus, for a controller to be a DOCSIS controller, it must perform DOCSIS control functions. Almeroth again faults Dr. Kramer for failing to identify any evidence indicating that the █████████████████████████████

██████████████████████████

**Rebut. Rep. ¶ 385:** Almeroth neither attempts to narrow the meaning of ██████████ nor ██████████ Charter's claim construction argument. (*See* Dkt. 175 at 12–13.) As an initial matter, as noted above, Almeroth repeatedly states that he applied the Court's claim construction, specifically for this patent. (Ex. O ¶¶ 6, 13, 42, 370, 377.) In any event, Almeroth was not construing the term ██████████ in Paragraph 385. Instead, he was rebutting Dr. Kramer's opinion that, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Contrary to Entropic's contention, Almeroth's opinion actually reflects his adherence to the Court's construction: ████████████████████████

████████████████████████████████████████████████████████)

While the Court surely rejected a construction *requiring* that "the data networking engine cannot

share any connecting circuitry, data paths, or memory devices" (Dkt. 123 at 17), Almeroth's

opinion in his report is that the *way* the accused chips share functionality means that their accused

████████████████████████████████████████████████████████████████████████████████

████████████████████ Notably, Entropic has not moved to strike those paragraphs.

## IV.     Reliance on Documents Purportedly Not "Timely Disclosed"

Entropic seeks to strike four paragraphs of Almeroth's supplemental report because of

reliance ████████████████████████████████████████████████████ (Dkt. 175 at 13–

14.) The Court should deny this relief.

**Almeroth Supp. ¶¶ 11, 20.** Almeroth is responding to Souri's supplemental opinions as

to ██████████████████████, which is accused of infringing the '682 patent. ████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████ Pursuant to Rule 26(e), Charter promptly

supplemented its interrogatory response on August 10 and provided a witness to testify on the

issue on August 11. Separately, pursuant to a joint motion to amend the Docket Control Order,

granted by this Court, the parties agreed that "Entropic may serve a ***five (5) page*** supplemental

report on infringement from Dr. Shukri Souri as to the ***'008 Patent***." (Dkt. 153 at 2 (emphasis

added); *see also* Dkt. 154 (granting amendment).) Despite this, on August 29, Dr. Souri served a

***sixteen*** page supplemental report on infringement, including seven full pages devoted to the ***'682***

***patent***, rather than the '008 patent, as agreed. (Ex. R at  8–14.[8])

In his supplemental report, Dr. Souri for the first time cast doubt on ████████████

████████████████████████████████████████████████████████████████████████████████

---

[8] Rather than seeking to strike Dr. Souri's additional pages and opinions, and in light of evolving
facts with respect to ████████████████████████, Almeroth instead responded in his own
permitted supplement.

███████████████████████████████████████████████████

███████, Charter gathered it and produced it on September 7. Entropic made no earlier request for it. Almeroth similarly discussed with █████████ some of the concerns raised for the first time in Dr. Souri's supplemental report. Given the compressed timeline, of less than ten days between Dr. Souri's note of a █████████████████ and the production of two documents, a supplemental discovery response by Charter, and opinions dependent on a conversation with ███ █████████ they should be considered timely. Moreover, this information is important to Charter given that Entropic and its expert have attempted to introduce a baseless credibility issue as to whether ████████████████████████. There is also no undue prejudice to Entropic. Entropic complains that "Charter delayed until long after the deposition" of its corporate witness (Dkt. 175 at14) , but, as noted above, that witness testified two days ████████████. Moreover, Entropic never requested additional deposition testimony, from █████████ or anyone else, which Charter could have provided.[9] And, although Entropic requested and served an additional supplemental infringement report on September 19, it did not request to supplement opinions █████████. Under these circumstances, this information and Almeroth's opinions relying on them are substantially justified and harmless. Finally, even if the Court were to preclude reliance on the two Charter documents, its supplemental interrogatory response, and a conversation with █████████ that Entropic complains of (Dkt. 175 at 14–15), that would not necessitate striking the entirety of these paragraphs, as they contain opinions not dependent on this information.

---

[9] Entropic cites to *Varta Microbattery Gmbh v. Audio P'ship PLC*, but in that case plaintiff "sought to depose" the witness "as early as March," long before the opposing party's expert report was served. No. 2:21-CV-00400-JRG-RSP, 2023 WL 5434853, at *4 (E.D. Tex. Aug. 23, 2023). Here, Entropic never sought to depose any witness on these issues and Charter disclosed its information promptly once it was requested via Dr. Souri's supplemental report.

**Almeroth Supp. ¶¶ 28–29.**  Entropic first complains that Charter never produced this publicly available document (Dkt. 175 at 15), but it was actually introduced into the case by Entropic's own expert, Mr. Dell, in his July 21 report to support his opinion as to the ██████████ ████████████████████████████████████████████████ purportedly attributable to the '362 patent. (Ex. S ¶ 265 & n.454 (citing document for ████████████).) As such, there is no basis to strike reliance on the document. Almeroth's opinion concerning the document is also timely. At Entropic's deposition of ████████████████████████████████████, on September 6, the witness testified that, even with the alleged features of the '362 patent, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Given this testimony, Mr. Dell's basis for ████████████████████████████ and it was timely for Almeroth to address it three days later in his supplemental report. Entropic claims that it is ████████████████ ████████████████████████████████████████████ (Dkt. 175 at 15), but it is Entropic who first identified the document and took the deposition of ████████. Moreover, Entropic subsequently served supplemental reports of both Mr. Dell and Dr. Kramer on September 29, but declined to address this document further. As such, Almeroth's opinions relying on this document are substantially justified and harmless.

## V.    CONCLUSION

For the reasons stated herein, Charter respectfully requests that the Court deny Entropic's motion to strike the expert opinions of Kevin Almeroth.

Dated:  September 25, 2023

Respectfully submitted,

*/s/ Daniel Reisner by permission Elizabeth Long*
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: albert.boardman@arnoldporter.com
Email: melissa.brown@arnoldporter.com
Email: jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Email: marc.cohn@arnoldporter.com
Email: amy.dewitt@arnoldporter.com
Email: paul.margulies@arnoldporter.com

***Attorneys for Defendant***
***Charter Communications, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served September 25, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Elizabeth Long*
Elizabeth Long