UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>█████████<br><br>**JURY TRIAL DEMANDED** |

**CHARTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE
ENTROPIC'S IMPROPER SECONDARY CONSIDERATIONS POSITIONS**

**I.      THE COURT SHOULD STRIKE ENTROPIC'S SUPPLEMENTAL SECONDARY CONSIDERATIONS POSITIONS**

Entropic does not contest that: (a) Entropic bears the burden of production as to secondary considerations; (b) it failed to address secondary considerations (at all) in its opening expert reports; and (c) it only addressed secondary considerations in its rebuttal reports for the first time. These facts alone warrant striking Entropic's secondary considerations positions.

But, to be sure, Entropic's gamesmanship with respect to its secondary considerations positions started long before its expert reports with its untimely interrogatory responses and supplementations and unprepared Rule 30(b)(6) deponent. Entropic does not dispute that: (a) its December 2022 interrogatory response on this topic included only a bare list of secondary considerations, with no evidence or explanation provided; (b) its July 19, 2023 30(b)(6) witness on this topic testified Entropic had no non-privileged information beyond the December 2022 interrogatory response; (c) its July 21, 2023 interrogatory supplement on this topic added four pages of new information with citations to more than 50 documents despite the fact that all of the Charter documents in the supplement had been produced at least six weeks earlier (from January to June 2023); and (d) Entropic did not make a single supplementation prior its July 21 interrogatory response. For these additional reasons, Entropic's secondary considerations presentation at trial should, at most, be limited to its original interrogatory response (as confirmed by its 30(b)(6) testimony) and to whatever was said in its opening expert reports. (Mot. at 9–10.)

**A.      Entropic Was Required To Address Secondary Considerations In Its _Opening_ Expert Reports But It Chose Not To**

Entropic's Opposition does not dispute Charter's showing that Entropic was required to address secondary considerations in its opening reports. (Mot. at 8.) The burden of production is clearly on the plaintiff, particularly as Charter raised a *prima facie* case of invalidity in its contentions served long ago. Entropic's failure warrants exclusion for at least three independent

reasons. *First*, it is beyond dispute that Entropic had secondary considerations positions at least as early as December 2022. (Dkt. 171-7.) Yet, Entropic intentionally made no attempt to address those positions anywhere in its opening expert reports as it was required to do. *Second*, Entropic's reliance on purportedly belated document productions is baseless. It is undisputed that 51 of the 53 documents cited in Entropic's July 21, 2023 supplemental interrogatory response had been in its possession for a month (and in some instances much longer).[1] Entropic makes no attempt to explain why it did not once supplement its secondary considerations interrogatory at any time prior to the last day of fact discovery when it had the vast majority of these documents for months. *Third*, if Entropic was capable of supplementing its interrogatory response on July 21, 2023, then it was equally capable of having its experts render opinions on secondary considerations in their opening reports filed on the same date, but it chose to omit any such discussion from those reports.

Nor does Charter's expert's response to Entropic's untimely disclosed expert opinions make Entropic's failure harmless or not prejudicial to Charter. *See Semcon IP Inc. v. MediaTek USA Inc.*, No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871, at *5 (E.D. Tex. Feb. 28, 2018) (striking rebuttal expert report on secondary considerations where plaintiff "did not disclose the facts it already had knowledge of upon which it would rely" and "left [Defendant] without an adequate means to develop a response, including any response that would require discovery").

As Entropic did not address secondary considerations in its opening reports despite having the burden of production, the opinions presented for the first time *in rebuttal* should be stricken.

---

[1] Charter had completed production of the purportedly last-minute documents by June 6, 2023, more than six weeks before Entropic supplemented its interrogatory response, with some produced as early as January and March 2023. In fact, **all but two of the 53 documents** cited in the supplement had been produced to—or, in the case of Entropic's own documents, available to—Entropic by June 23, 2023, nearly a month before the supplement. The remaining two third-party documents were produced July 12, 2023. (Long Decl. at ¶¶ 3–11.)

2

**B.     Entropic's Repeated Failure To Comply With Its Non-Expert Discovery Obligations Was Prejudicial And Separately Warrants Granting Charter's Motion**

As detailed above, Entropic had almost all of the cited documents in its possession for months and did not make a single supplementation of its December 2022 interrogatory response. Instead, Entropic waited until July 21, 2023—two days after its 30(b)(6) witness on secondary considerations and the last day of fact discovery—to finally supplement its secondary considerations positions. Entropic should have supplemented its interrogatory response before the July 19, 2023 30(b)(6) deposition on this topic and certainly sooner than the last day of discovery. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1372 (Fed. Cir. 2021) ("Rule 26(e) expressly requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, must be corrected or supplemented to reflect those changes.").

Entropic's argument that any prejudice to Charter from its untimely non-expert disclosures was cured when Charter's expert, Dr. Goldberg, served his August 14 supplemental expert report addressing secondary considerations is incorrect. Dr. Goldberg's supplement in no way cures Entropic's failure. No amount of expert supplementation can replace the *fact* discovery that was denied to Charter by Entropic's tactics. Charter was unable to examine Entropic's 30(b)(6) witness—or any fact witness—on the secondary considerations contentions Entropic provided for the first time on the last day of fact discovery. Entropic's argument that prejudice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ fails for the same reason. (Opp. at 9–10.) Entropic's position would mean that no untimely disclosure could be prejudicial, which is simply not the case.

**C.     Entropic's Other Excuses For Its Failures Are Baseless**

The Court should reject Entropic's additional excuses as discussed below.

3

*First*, Entropic's characterization of the issue as a ▮▮▮▮▮▮▮▮▮▮ deposition and Entropic's supplemental interrogatory response ignores its *repeated failures to provide the information to Charter anytime in the preceding <u>eight months</u>*. (*See* Opp. at 9.) Charter requested discovery on secondary considerations in November 2022. (*See* Dkt. 171-6.) Entropic waited to provide a substantive response until the final day of fact discovery in July 2023 (*see* Dkt. 171-2) and two days after the testimony of Entropic's 30(b)(6) witness. This certainly was not the timely supplementation based on newly-learned information required by Federal Rule of Civil Procedure 26(e).

*Second*, the result of ▮▮▮▮▮▮ 30(b)(6) testimony combined with Entropic's interrogatory supplementation two days later is not harmless, as Entropic argues, because it deprived Charter of discovery into Entropic's supplemental secondary considerations contentions. Entropic argues that the 30(b)(6) witness could not have testified on these contentions because the documents underlying the supplement were designated Attorneys' Eyes Only under the Protective Order. (Opp. at 9.) By its own admission, however, about a quarter of the documents cited in its supplement were *undesignated or were otherwise publicly available* (*id.* at 7), and Entropic never explains why its 30(b)(6) witness could not have testified about those materials. Regardless, the witness should have been prepared to say that Entropic relies on more information than the original interrogatory response, and that he cannot testify about it because it is highly confidential.[2]

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

*Third*, Entropic asserts that the timing of ███████ deposition—two days before the close of fact discovery—"███████████████████████████ While Charter did request a postponement of the original May 12, 2023 date, it did so **because Entropic had delayed providing discovery**, and Charter could not depose the 30(b)(6) witness until documents relating to the corporate testimony had been provided. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████) The deposition was postponed ███████████████████

████████████████████████ In any event, the timing of ███████ deposition in the overall schedule is of no moment. What matters is that it occurred only two days before Entropic added facts and arguments to its interrogatory response, which Entropic surely knew about when ███████ was deposed. As the 30(b)(6), therefore, Entropic had to prepare the witness on these facts and arguments. *See Semcon IP Inc.*, 2018 WL 4501871, at *4 (striking portions of an expert's report regarding secondary considerations; "[I]t is simply not credible that [plaintiff] suddenly decided to rely on secondary considerations during or shortly after [a fact] deposition."); *Function Media, L.L.C. v. Google, Inc.*, No. 2:07–CV–279–CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) ("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject.").

## II. CONCLUSION

For the foregoing reasons, and as set forth in Charter's motion (Dkt. 171), the Court should strike Entropic's secondary considerations positions in its supplemental response to Interrogatory No. 15 and in the rebuttal expert reports of Dr. Kramer, Dr. Pooley, and Mr. Holobinko.

| | |
|---|---|
| Dated: October 3, 2023 | Respectfully submitted,<br><br>*/s/Daniel Reisner by permission Elizabeth Long*<br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>Email: ddacus@dacusfirm.com<br><br>Daniel L. Reisner<br>David Benyacar<br>Elizabeth Long<br>Albert J. Boardman<br>Melissa Brown<br>Jacob Bass<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York, 10019-9710<br>Telephone: (212) 836-8000<br>Email: daniel.reisner@arnoldporter.com<br>Email: david.benyacar@arnoldporter.com<br>Email: elizabeth.long@arnoldporter.com<br>Email: albert.boardman@arnoldporter.com<br>Email: melissa.brown@arnoldporter.com<br>Email: jacob.bass@arnoldporter.com<br><br>Marc A. Cohn<br>Amy L. DeWitt<br>Paul I. Margulies<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>Email: marc.cohn@arnoldporter.com<br>Email: amy.dewitt@arnoldporter.com<br>Email: paul.margulies@arnoldporter.com<br><br>**Attorneys for Defendant**<br>**Charter Communications, Inc.** |


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served October 3, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Elizabeth Long
Elizabeth Long