# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, *Plaintiff*, v. CHARTER COMMUNICATIONS, INC., *Defendant*. | Civil Action No. 2:22-cv-00125 **JURY TRIAL DEMANDED** |

**ENTROPIC'S SUR-REPLY OPPOSING CHARTER'S MOTION TO STRIKE DR. KRAMER'S OPINIONS**

### a. Dr. Kramer's Opinions Allegedly Concerning the Customer Service Agreements

Charter's reply focuses exclusively on Dr. Kramer's statement that Charter "maintains ownership" over the equipment that it leases to customers. *See* Dkt. 217 ("Reply") at 1. Charter offers no reason why Dr. Kramer may not testify i) that Charter leases equipment to its customers; and ii) that Charter requires its customers to sign a contract to use the Accused Services and Charter equipment. Not only are these facts, as opposed to legal opinion; they are facts that Charter has admitted in deposition testimony and in interrogatory responses. *See* Dkt. 196 ("Opp.") at 2–3. Similarly, Charter has not offered any reason why Dr. Kramer may not testify to the fact evidence in ¶¶ 89 and 222 of his infringement report, where he notes that Charter assists its customers with installation, performs quality assurance testing prior to deployment, and services equipment to resolve service issues. This evidence is basic factual testimony upon which Dr. Kramer relies to support his opinion that Charter is the entity that infringes the patents-in-suit. Therefore, at least this testimony must be admitted.

As to Dr. Kramer's statements that Charter retains ownership of the equipment it leases to customers, this hardly requires any legal expertise or any analysis of the contract terms. That is just what a lease is—something that would be readily apparent to anyone who has ever leased an apartment or a rental car. A lay witness could readily testify to this basic fact under FED. R. EVID. 701. Thus, it is equally appropriate for Dr. Kramer—who has years of experience in the cable industry—to offer similar testimony. Charter asserts that "whether a contract involving a 'lease' results in 'ownership' being retained by Charter is a legal conclusion," but it cites nothing in support of that assertion.

### b. Dr. Kramer's Opinions Regarding Charter's Knowledge

Charter completely mischaracterizes Dr. Kramer's statements about Charter's knowledge of the Patents-in-Suit and possible infringement. In Charter's view, Dr. Kramer opines "that Charter knew of the '775 and '362 patents 'at least' nine and six plus years before." Reply at 2. But Charter has invented this testimony by taking two words from Dr. Kramer's report and placing them out of context. Here is what Dr. Kramer actually said: "Charter has had knowledge of the resulting infringement of the '775 Patent at least as of July 17, 2012 (the issue date of the '775 Patent, if not earlier) and certainly no later than April 27, 2022, the filing date of the complaint in this litigation." Ex. H[1], Kramer Op. Rep. ¶ 93.

Charter next asserts that Dr. Kramer "cannot render opinions about whether Charter intended those actions would constitute patent infringement." Reply at 2. But this is not what Dr. Kramer opined, nor is it what the law requires. Inducement of infringement under § 271(b) requires only knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB SA*, 563 US 754, 766 (2011). Once served with the complaint in this case, Charter indisputably had that requisite knowledge. Therefore, Dr. Kramer should be allowed to testify that Charter has been inducing its customers to infringe, at least as of that date.

### c. Dr. Kramer's Opinions Regarding Joint Infringement

Charter fails to address any of the arguments in Entropic's opposition brief. Charter does not address i) the case law confirming that Entropic was not required to disclose a joint infringement theory in its contentions; ii) Federal Circuit precedent that joint infringement is simply a form of direct infringement (which Entropic undeniably disclosed in its contentions); iii)

---

[1] Entropic is now including the full copy of Dr. Kramer's Opening Report on Infringement as Exhibit H to the Declaration of James Shimota submitted with this Sur-Reply since the full version was not included with Charter's opening brief. *See* Dkt. 167-2, Ex. A.

2

Charter's failure to show how it would be prejudiced; or iv) that Dr. Kramer may rely on his technical analysis of Charter documents to opine that Charter directs or controls its users (*see* Kramer Op. Rep. ¶¶ 242–244). Charter's only argument on reply is to observe that *one* of the cases cited by Charter involved a motion to amend contentions, as opposed to a motion to strike expert reports. *See* Reply at 3. But *Eon Corp.* and *Fenner* stand for the broader point that infringement contentions "are not the forum for explaining issues such as joint liability, mastermind, or indirect infringement." *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379, 2012 WL 12911055, *3 n.2 (E.D. Tex. Aug. 10, 2012); *see also Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). Therefore, there is nothing improper about Dr. Kramer's opinions.

        d.      **Dr. Kramer's Opinions Regarding Secondary Considerations**

Charter first asserts that Entropic "does not provide a single example where [Dr. Kramer] even attempts to establish such a nexus," but then in the very next sentence Charter acknowledges that Dr. Kramer's opines that "Charter's 1Gbps modems require the use of the technology claimed in the '775 Patent in order to achieve 1Gbps speeds." Reply at 3–4 (quoting Kramer Reb. Rep. ¶ 84). The nexus is ***right there***, tying evidence relating to 1Gbps speeds to the claims of the '775 Patent. Charter attempts to hand-wave Dr. Kramer's opinions by arguing there is "[n]o explanation of why the '775 patent permits faster operation, much less why it is the '775 patent specifically that permits speeds to reach 1 Gbps." Reply at 4. But Charter ignores the section of Dr. Kramer's opening report where he provides over four pages of technical analysis explaining why the '775 Patent is necessary for achieving 1Gbps speeds. *See* Kramer Op. Rep. ¶¶ 70–85. Charter also

ignores the fact that Dr. Kramer supported his opinions regarding nexus by citing to Charter documents and the testimony of Ray Farhat regarding packet bypassing.[2] *See* Opp. at 9.

Charter's complaint that its own documents and Mr. Farhat's testimony do not "have anything to do with the '775 Patent" is misguided. *See* Reply at 4. While these technical sources do not mention the '775 Patent by name, Dr. Kramer explicitly links the technology discussed in them to the patented invention, and to Charter's ability to achieve 1Gbps speed. *See* Kramer Op. Rep. ¶¶ 77–81, 85. His detailed technical opinions provide an ample basis for his opinions on secondary considerations and nexus. Charter's disagreement with these opinions is a matter for cross-examination, not for exclusion.

e. **Dr. Kramer's Deposition Testimony Regarding the "Zhang" Reference**

Charter's Reply fails to address the critical fact. Charter's own expert Dr. Goldberg admitted in his report that "the specification of Zhang does not use the term 'mixer' in connection with its frequency block down converters" and that Zhang instead performs downconversion by using a multiplier. *See* Dkt. 196-8 (Ex. G), Goldberg Op. Rep. ¶¶ 391–392. Dr. Kramer is not *responding* with a new opinion; he is simply agreeing regarding what Dr. Goldberg opined. It is not the law that one expert cannot be aware of what his counterpart has said; it is a nonsensical proposition for which Charter cites no case law.

f. **Conclusion**

For the reasons above, the Court should deny in its entirety Charter's motion to strike opinions of Dr. Kramer.

---

[2] This corresponds to the claim element of the '775 Patent "the DOCSIS MAC processor configured to process downstream PDU packets and forward the processed packets directly to the data networking engine." '775 Patent, cl. 18.

4

| | |
|---|---|
| Dated: October 10, 2023 | Respectfully submitted,<br><br>*/s/ James A. Shimota*<br>James Shimota<br>Jason Engel<br>George Summerfield<br>Katherine L. Allor<br>Samuel P. Richey<br>Ketajh Brown<br>**K&L GATES LLP**<br>70 W. Madison Street, Suite 3300<br>Chicago, IL 60602<br>Tel: (312) 807-4299<br>Fax: (312) 827-8000<br>jim.shimota@klgates.com<br>jason.engel@klgates.com<br>george.summerfield@klgates.com<br>katy.allor@klgates.com<br>samuel.richey@klgates.com<br>ketajh.brown@klgates.com<br><br>Nicholas F. Lenning<br>Courtney Neufeld<br>**K&L GATES LLP**<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104-1158<br>Tel: (206) 623-7580<br>Fax: (206) 623-7022<br>nicholas.lenning@klgates.com<br>courtney.neufeld@klgates.com<br><br>Darlene Ghavimi<br>Matthew A. Blair<br>**K&L GATES LLP**<br>2801 Via Fortuna, Suite 650<br>Austin, Texas 78746<br>Tel: (512) 482-6800<br>darlene.ghavimi@klgates.com<br>matthew.blair@klgates.com<br><br>Christina N. Goodrich<br>Connor J. Meggs<br>**K&L GATES LLP**<br>10100 Santa Monica Blvd., 8th Floor<br>Los Angeles, CA 90067<br>Tel: (310) 552-5031 |

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via the Court's CM/ECF system on all counsel of record on this tenth day of October, 2023.

*/s/ James A. Shimota*
James A. Shimota
