**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | |
| *Plaintiff*, | Civil Action No. 2:22-cv-00125-JRG |
| v. | **JURY TRIAL DEMANDED** |
| CHARTER COMMUNICATIONS, INC., | ▓▓▓▓▓▓▓▓▓▓ |
| *Defendant*. | |

**ENTROPIC'S MOTION TO STRIKE**
**THE EXPERT REPORT OF DAVID O. TAYLOR**

I.    **INTRODUCTION**

Plaintiff Entropic Communications, LLC ("Entropic") respectfully moves to strike the Expert Report of David O. Taylor "("Report"), designated by Charter Communications, Inc. ("Charter") as an expert. Professor Taylor is a lawyer, not a technical or financial expert. Precedent indicates this Court is understandably and correctly skeptical of legal experts. In the present case, Professor Taylor's "opinions" are very sparse—of the 211 paragraphs of his report, at most eight (8) of them even purport to offer opinion. *See* Ex. A (Expert Report of David O. Taylor), ¶¶ 120, 124, 126, 127, 149, 178, 203, 207. The remainder of the report is simply qualifications and legal principles, followed by a parroting of Charter's view of the "facts"—120 of the total 211 paragraphs begin by reciting "I understand that . . ." and then either parrot alleged facts nearly copied-and-pasted from Charter's interrogatory responses, or repeat the opinions of Charter's technical expert Dr. Almeroth. In summary, the report is a paradigmatic example of a "mouthpiece expert" serving no purpose other than reciting Charter's legal defenses and theory of the case.

Moreover, the report should be excluded not only for the type of "opinion" offered, but also because the conclusions themselves are legally so faulty they cannot survive *Daubert*. The Report offers conclusions on two issues. The first is Professor Taylor's opinion that Charter's conduct was protected by a license. Ex. A, ¶¶ 112–150. Professor Taylor concludes that Charter ███████████████████████████████████████████████████████████████████████. *Id.* ¶ 150. But that agreement is strictly limited in scope—it applies to ████████████████████████████████████████████████████████████ ████████████████████████ Professor Taylor performs ***zero analysis*** of any kind on that limitation, yet concludes Charter does not infringe anyway. He provides no view of what he is assuming the limitation means, nor any connection to such a view of the facts of the case (such as

what the actual allegations of infringement are directed at). This offers the jury nothing to work with, and no methodology without analysis can survive *Daubert*. (The real reason the analysis is absent is that no infringement allegation in the case is an implementation required by any standard; the CableLabs agreement is inapplicable.)

Turning to remainder of the Report, it addresses non-infringing alternatives. Here, Professor Taylor offers conclusory opinions that are clearly matters for economists: █████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

¶¶ 179, 208. None of this is testimony permissible for a legal expert, but worse it is contrary to law. The non-infringing alternatives the Report is founded upon are the patentee MaxLinear's own products. Legally this cannot be so. For each relevant patent, infringement began when MaxLinear owned the patents, before Entropic acquired them. Thus, MaxLinear would have been the counterparty at the hypothetical negotiation for all the relevant patents opined upon. The patentee's own products are not non-infringing alternatives, which by definition must be competing products. Professor Taylor analyzes none of this in his report. Indeed, his report contains zero economic analysis at all, save for his ultimate conclusions. The failure to do so renders any opinions so unreliable they must be stricken as contrary to the law.

In summary, the Report should be stricken for all the reasons underlying the skepticism this Court and others bring to "legal expert" opinions:

- The Report is not based on any relevant scientific, technical, or other specialized knowledge.

- The Report usurps the jury's role to weigh the evidence, draw inferences, and assess witness credibility, simply offering a lawyer's view of the relevant law and his legal conclusions therefrom.

- The Report is not based on reliable principles and methods; to the contrary fundamental legal flaws infect each of the two principle conclusions offered (███████████ and non-infringing alternatives).

As a result, Professor Taylor's entire report should be stricken as unreliable and inadmissible under Rule 702 of the Federal Rules of Evidence.

## II.    ARGUMENT

### A. Professor Taylor's Expert Report contains legal conclusions, which are inadmissible.

Professor Taylor's Report reads like a legal brief, devoid of technical analysis and filled with legal conclusions.[1] The Report provides an "overview of relevant legal principles," explaining the meaning of exhaustion, license, and acceptable non-infringing substitutes or alternatives. *See* Ex. A, pp. 17–20. Professor Taylor states he ████████████████████████████ ██████████████████" but fails to identify what role the Report serves. Ex. A, ¶ 28. The reality is that the Report does nothing more than set Professor Taylor up as a vessel through which Charter intends to relay its defenses to the jury, with the addition of the Professor's ultimate opinion that Charter wins.

Professor Taylor's Report consists of two arguments: (1) license and (2) non-infringing alternatives. The way the Report itself describes this analysis—in the table of contents and

---

[1] Professor Taylor's conclusory statement that he does █████████████████████████████████████ cannot shield his report from Entropic's Motion to Exclude. Ex. A, ¶¶ 29, 35. Indeed, Professor Taylor's need to repeatedly caution the reader that legal opinion are not really being offered is indicative of the problem.

headers—is revealing that this is nothing more than summarizing Charter's defenses and offering the conclusion Charter wins:

- Section IV.B, the license issue, is titled: 

- Sections IV.C and IV.D address non-infringing alternatives before (IV.C) and after (IV.D) the patents were transferred to Entropic. They are titled:

The titles are quite honest—the Report simply summarizes a lawyer's evaluations of Charter's defenses. However, "[t]he danger of allowing an expert to simply summarize evidence provided to the expert by the party that retained him is, of course, that the expert will become a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted 'expertise.'" *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, No. 2:16-CV-198-WCB, 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017).

    i.    **Professor Taylor's "analysis" regarding Charter's license defense is inadmissible.**

Whether the Patents-in-Suit are covered by

"Whether [a license] is ambiguous is itself a question of law for the court to decide." *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-cv-00014, 2019 WL 1216478, at *2 (E.D. Tex. Feb. 12, 2019) (quoting *Wease v. Ocwen Laon Servicing, L.L.C.*, No. 17-10574, 2019 WL 97372, at *3 (5th Cir. 2019). And "[i]f the Court finds the [license] ambiguous, its correct reading presents a jury question." *Plastronics Socket Partners*, 2019 WL

1216478, at *2. However, Professor Taylor's Report does not allow the trier of fact to reach its

own conclusion. Professor Taylor states in a single paragraph that ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Ex. A, ¶ 113. In the

same paragraph, the Report concludes ████████████████████████████

████████████████████████████████████████████████

██████████████████." *Id.* This is nothing but an announcement of what the contract

means and the legal implications for parties like Charter and others.

To be clear, the Report is not impermissible merely because it touches on legal issues or

reaches a conclusion. It is impermissible because the Report does not provide the jury with any

tools to determine whether Charter's license defense is valid. Instead, Professor Taylor supplants

the role of the Court and jury by concluding in a scant two paragraphs that: ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████).

Ex. A, ¶¶ 120–22 (citing Almeroth Report). *Ipso facto* this then results in Professor Taylor's

ultimate conclusion: ████████████████████████████████████████

████████████████████████████████ ¶ 49. Professor Taylor provides no

input on whether the Patents-in-Suit fall within the meaning of ████████████████████

████████████████████████ *See* Ex. A, ¶ 121; contract language

quoted at ¶ 66. Nor could he—this is simply not fair game for a legal expert. These conclusions are reserved for the Court or the jury to make.

Based off these alleged sublicenses, the Report goes even further to conclude that █████ ████████████████████████████████████████████████ To ensure there's no doubt regarding Professor Taylor's conclusion, he adds: "████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████ *Id.*, ¶ 150 n.7. The Court should exclude Professor Taylor's Report on the ground that it is nothing more than legal conclusions offering no opinions useful to the trier of fact, and offering conclusions squarely usurping the Court's and/or jury's roles.

### ii.     Professor Taylor's "analysis" of non-infringing alternatives is inadmissible.

Professor Taylor's Report also offers the legal conclusion that MaxLinear's products and services qualify as available non-infringing alternatives. *See* Ex A, §§ IV.C and IV.D. Professor Taylor offers no analysis—he simply again walks through Dr. Almeroth's expert report. He states: (1) "I understand" that the ████████████████████████████████████████; (2) "I understand" that ███████████ are key to Entropic's allegations of infringement (with no analysis of what "key" means nor why that matters); (3) "I understand" that the █████████ would provide substantially similar functionality as the ████████████ and (4) "I understand that the use of ██████████████████████████████████████ would have been feasible non-infringing alternatives." *Id.*, ¶¶ 158–60 and 176. The citations to Dr. Almeroth's expert report constitute the extent of Professor Taylor's "analysis."

Any opportunity that Professor Taylor had to expand on Dr. Almeroth's expert report was avoided. For instance, Professor Taylor concludes, with no citation, no further explanation, and no economic analysis, that ██████████████████████████████████████████

██████████████████████████████████.” Ex. A, ¶ 204. Professor Taylor understands that the ██████████████████████████ would have been a feasible non-infringing alternative ████ ████████████ *Id.*, ¶ 205. However, Professor Taylor ***does not define what the "relevant times" are or when they began***—which of course matters very much for the hypothetical negotiation. Similarly, Professor Taylor states ███████████████████████████████ ████████████████████████████████████████████████████████”

*Id.*, ¶ 208. However, Professor Taylor again does not state when the hypothetical negotiation would have occurred and which parties would be subject to this negotiation. Because Professor Taylor provides no analysis, relies solely on Dr. Almeroth's Report as his source of analysis, and reiterates Charter's view of the "facts," the Court should exclude Professor Taylor's Report.

But most importantly, Professor Taylor's conclusions regarding acceptable or next-best non-infringing alternatives are contrary to law. Entropic's damages in this case are solely based— and have always been solely based—on a reasonable royalty, not lost profits. *See, e.g.*, Compl. ¶¶ 42, 52, 62, 72, 82, 92. As this Court has explained, "the concept of an 'acceptable non-infringing alternative' relates to a lost-profits damage model." *Salazar v. HTC Corp.*, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018). "But 'acceptable non-infringing alternatives' don't play the same role in a reasonable-royalty determination." *Id.*; *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038509, at *10 (N.D. Cal. Apr. 27, 2021) ("Noninfringing alternatives play a fundamentally different role in lost profit and reasonable royalty analysis."). This is because, as the Court knows, a reasonable royalty is calculated by constructing a hypothetical negotiation to determine the royalty that the parties would have agreed to had they negotiated an agreement just before infringement began. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 n.13 (Fed. Cir. 1995). Thus, next-best non-infringing alternatives

come into play where relevant to that hypothetical negotiation, including for example the Ninth and Tenth *Georgia-Pacific* factors, *see Salazar*, 2018 WL 2033709 at *3 (quoting *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)); *Droplets*, 2021 WL 9038509, at *10 ("Non-infringing alternatives are relevant to two factors: first, they help value the invention, and second, they may limit the infringer's willingness to pay in a hypothetical negotiation"), or where the presence of an alternative would affect the bargaining power of the parties, and thus affect the reasonable royalty rate that would have resulted from the hypothetical negotiation, *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996). That is, the relevant question of any alternative is judged at the time of the hypothetical negotiation, considering all the facts and circumstances including who the parties to the negotiation would have been.

The Report offers no analysis, at all, of the applicable hypothetical negotiation dates. Nor does the Report analyze who is the hypothetical licensor at such times. Instead, Professor Taylor's entire opinion on the subject is that ███████████████████████████████████████ ████████████████████████████████████████████████████████████." Ex. A, ¶¶ 179, 208. No dates are given and no counterparty is discussed. This fault alone renders the Report inherently unreliable.

However, the consequences of this omission present a much more dire error. The patentee's own product obviously is not a "non-infringing alternative" relevant to the hypothetical negotiation, as its presence does not impact the price of the royalty and it, by definition, is not an 'alternative.' *See, e.g.*, Ex. A, ¶ 40 (correctly noting that a non-infringing alternative is one that ██████████████████████████") (quoting *Grain Processing Corp. v. Am. Maize-Prod. Co.*,

185 F.3d 1341, 1351 (Fed. Cir. 1999)) (emphasis added); *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017) ("The correct inquiry under *Panduit* is whether a non-infringing alternative would be acceptable **compared to** the patent owner's product . . . ."); *Grain Processing*, 185 F.3d at 1351 ("[O]nly by comparing the patented invention to its next-best available alternative(s) . . . can the court discern the market value of the patent owner's exclusive right . . . .").[2] MaxLinear—not Entropic—owned the relevant patents at the time infringement began, and thus MaxLinear itself would be the licensor in the hypothetical negotiation. The dates of first infringement for all asserted patents but one (the '682 patent) occurred prior to the patents being assigned to the plaintiff, Entropic Communications LLC.[3] This is not disputed by Professor Taylor nor any other expert. For the '682 patent, MaxLinear products cannot be an alternative because it is not disputed that MaxLinear makes no product providing or underlying the accused technology. MaxLinear at most provides components for cable modems, not for the infrastructure elements (called CMTS) that execute every claimed step in the '682 Patent.[4] Because MaxLinear is the patentee in the hypothetical negotiation, and its own products

---

[2] *See also Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222 (Fed. Cir. 1995) (concluding that the requirement of a lack of noninfringing alternatives for lost profits is "readily met" "[i]n a market with only two suppliers, the patentee and the infringer").

[3] Entropic has alleged the following hypothetical negotiation dates: in or about 2013 for the '775 Patent, March 2023 for the '682, December 2015 for the '362, late 2018 or early 2019 for the '008 and '826 Patents, and July 2018 for the '690 Patent. ██████████████████████████████████████████████ Thus, Entropic could only be a party to the hypothetical negotiation of the '682. Nothing in the record disputes this and Professor Taylor fails to address this crucial point.

[4] Professor Taylor's report contains zero analysis of the patent claims and whether the ████████ ██████ are even capable of performing the asserted claims (at a minimum they cannot for the '682 patent, as well as incidentally the '690 patents), or somehow exhausting the patents. This total lack of analysis is yet another reason Professor Taylor's report must be stricken. To the extent Professor Taylor simply relies on a technical expert for such conclusions, then again the Report offers nothing of use to the Court or jury and therefore is inappropriate material for an expert in the law.

plainly are not a "non-infringing alternative" to itself in a negotiation, Professor Taylor's opinion must be stricken as wrong and contrary to law.

**B. Professor Taylor lacks the qualifications to form these opinions.**

Professor Taylor is not an expert in technical or economic subjects. He is a lawyer, an expert in law, and does not allege otherwise. *See* Ex. A, pp. 5–9 (listing qualifications). The only mention of experience outside of his role as an attorney was working for National Instruments as an Applications Engineer for a single year. *Id.*, p. 5. The Federal Circuit has held that "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance*, 550 F.3d at 1363.[5] Here, the Report is caught between a rock and a hard place—either it offers nothing more than the technical expert Dr. Almeroth can give, in which case it represents an absence of opinion, or it goes beyond Dr. Almeroth, in which case it strays beyond Professor Taylor's expertise and/or invades the exclusive province of the Court and the jury. The latter runs the danger that testimony would "serve[] only to cause mischief and confuse the factfinder." *Id.* at 1362.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Sundance*, 550 F.3d at 1365, n.8 (quoting *Daubert*, 509 U.S. at 595). This is especially true here where the lines are blurred with what constitutes Professor Taylor's analysis and what is a mere recitation of Dr. Almeroth's expert report. *See* Ex. B (Almeroth Report), ¶ 4. "This concern is further compounded where the purported witness is an attorney." *Sundance*, 550 F.3d at 1365, n.8. Although Professor Taylor has experience in intellectual property law, none of Professor Taylor's qualifications show that he is qualified to testify on technical matters. This is directly relevant to Professor Taylor's Report because he provides his opinion on the interpretation

---

[5] *See id.* at 1363 (collecting cases).

of the ███████████████████ and whether Charter was protected by such license, as addressed above. This is precisely the problem with "mouthpiece experts" that collect and present the case to the jury. That is the role of lawyers, but not lawyers inside the witness stand.

The same concerns are implicated when the Report strays into economic analysis. Professor Taylor is not an economic expert and does not appear to claim otherwise. Yet the Report offers direct opinions on matters of competition and economics, *e.g.*,:



Ex. A, ¶ 179. Thus, the Report demonstrates another flavor of the danger of legal experts. And this is why "the Federal Circuit has counseled against reliance on so-called 'patent law experts.'" Order on Motion to Strike, *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33, at *4 (E.D. Tex. Jan. 8, 2016); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991 n.4 (Fed. Cir. 1995) ("[a] patent law expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all'). Cloaked with the designation as "expert," Professor Taylor could provide testimony to the jury that has no relation to his expertise.

### C. Professor Taylor's reasoning lacks any methodology, instead it simply parrots facts from documents and witnesses.

Professor Taylor's Report also is not "the product of reliable principles and methods." FED. R. EVID. 702(c). *Daubert* mandates "that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). Professor Taylor's Report "do[es] nothing more than parrot facts from the documents and witnesses." Mem. Opinion & Order, *U.S. Auto. Assoc. v. Wells Fargo*

*Bank, N.A.*, No. 2:18-CV-00366, at *4 (E.D. Tex. Dec. 18, 2019). Because "[t]he majority of [Professor Taylor's Report] contains no expert analysis that would 'help the trier of fact to understand the evidence or to determine a fact in issue,'" the Report should be excluded. *Id.* at *5.

### i. Professor Taylor has no basis to include the Patents-in-Suit within the DOCSIS License Agreements.

As discussed above in Section II(A)(i) at pp. 4–6, Professor Taylor does not analyze whether the infringement allegations implicate anything standards-essential such that the ███████ ████████████ could even conceivably be applicable. Instead, Professor Taylor merely recites the conclusions Dr. Almeroth reached in his report without any further analysis. For instance, the definition of ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ Ex. A, ¶ 66. Professor Taylor states that he understands each of the patents are either ███████████████████████████████████ ████████████████████████ based off Dr. Almeroth's conclusions. Ex. A, ¶ 117. Professor Taylor never made the determination whether this use was "solely to the extent necessary" to conform to the Specifications. He offers no statements as to how he would understand that requirement, or how he would apply such an understanding to the allegations of infringement. Similarly, ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Ex. A, ¶ 68. Professor Taylor fails to mention whether CableLabs immediately notified all Licensors of such request. Instead, the Report simply states, "As a result, I understand ███████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ *Id.*, ¶ 137. The Report offers no analysis of the conduct of the

parties and whether the terms and conditions were met. Because Professor Taylor has failed to analyze whether the Patents-in-Suit fell within the definition of ███████████" and failed to show the terms and conditions were met, Professor Taylor's opinions regarding Charter's license defense should be excluded.

**ii.   Professor Taylor has no basis for concluding that MaxLinear's chips are a non-infringing alternative.**

Professor Taylor provides the opinion that MaxLinear's products and services would qualify as available non-infringing alternatives. Ex. A, ¶ 151. But Professor Taylor provides no analysis. Instead, Professor Taylor cites only to Dr. Almeroth's Report, repeating his "understanding" from the report that the "██████████ ████████████████████ ███████████ ██████████ and thus ████████████████████████ ██." *See* Ex. A, pp. 58–71. There is zero analysis provided to reach this conclusion, just a citation to Dr. Almeroth's report—particularly concerning considering many of the asserted patent claims cannot be performed by ███████████████████ because the method steps or system claims instead are embodied by CMTSs or other aspects of Charter's systems. And equally concerning, as addressed above, is Professor's Taylor's complete failure to consider the dates or parties of the relevant hypothetical negotiations. *See* Ex. A, ¶ 208 ███████████ ████████████████████████████████████ █████████████████████). Instead, Professor Taylor assumes that at any time, MaxLinear's products and services would be available to Charter as an alternative. The Report offers nothing of its own, and thus should be stricken.

**D.  Professor Taylor's reports have been excluded in other district courts for these very reasons.**

Every case rests on its own facts. However, it is notable that in other cases Professor Taylor has been repeatedly admonished for offering inadmissible 'expert reports' that are little more than

veiled legal briefs. A little over three months ago, Professor Taylor's expert report in *Honeywell International* was excluded on these grounds:

> Indeed, Mr. Taylor's expert reports are indistinguishable from legal briefs. He describes in great detail his 'understanding' of the governing law and facts (apparently mostly gleaned from Honeywell's counsel) then concludes on each point that Honeywell wins under his legal analysis. . . . Such 'testimony' does not 'assist' the Court or the jury; rather, it supplants their primary roles in the trial (while also duplicating the role of counsel in closing argument). Accordingly, OPTO's motion will be granted and Mr. Taylor will not be permitted to testify as to his legal analysis or opinions as to either OPTO's alleged breach of contract or Honeywell's alleged patent misuse.

*Honeywell Int'l Inc. v. Opto Elecs., Ltd.*, No. 3:21-CV-00506-KDB-DCK, 2023 WL 3029264, at *12-13 (W.D.N.C. April 20, 2023). This Court also previously has had to instruct Professor Taylor that he is not permitted to offer testimony on legal conclusions or "contract law." *Mobile Telecommunications, LLC v. ZTE (USA) Inc.*, Case No. 13-CV-0946-JRG, Dkt. No. 251 (E.D. Tex.). Professor Taylor also was subject to a motion to strike in ITC Inv. No. 337-TA-1277, which only was not granted by ALJ Cheney because "[r]ather than attempt[] to separate factual evidence from legal conclusions in Mr. Taylor's testimony at this stage, [ALJ Cheney would] receive the evidence and make legal conclusions in the investigation based on the relevant law, not based on Mr. Taylor's opinions." *In re Certain Smart Thermostats, Load Control Switches, and Components Thereof*, Inv. No. 337-TA-1277, Order No. 21 (June 24, 2022).

In the present case, Professor Taylor's Report should be excluded for similar reasons. Professor Taylor's Report attempts to educate the judge and jury on the relevant law regarding non-infringement, specifically relating to licensing and non-infringing available alternatives. Because Professor Taylor's "testimony" duplicates the role of Charter's counsel and simply acts as a mouthpiece for Charter's view of the facts, Professor Taylor's Report should be excluded. None of this motion should be interpreted as any attack upon Professor Taylor personally. The law

places strict limits on expert testimony for good reasons, and what is offered here by Charter through Professor's Taylor Report does not qualify as permissible expert testimony.

### III.    <u>**CONCLUSION**</u>

An expert may only testify if the expert's knowledge and experience will help the trier of fact to understand the evidence or to determine a fact in issue. An expert's role is not to provide the trier of fact with legal conclusions and its own view of the relevant facts. Because Professor Taylor's Report is not based on any formal methodology and fails to assist the trier of fact, Entropic respectfully requests that Charter's Expert Report of David O. Taylor be excluded in its entirety.

In the alternative, if the Court does not exclude Professor Taylor's Report in its entirety, Entropic requests that the Court grant Entropic leave to file a rebuttal report in response to the Report.

Dated: July 28, 2023                          Respectfully submitted,

                                              */s/ James Shimota*
                                              James Shimota
                                              Jason Engel
                                              George Summerfield
                                              Katherine L. Allor
                                              Samuel P. Richey
                                              Ketajh Brown
                                              **K&L GATES LLP**
                                              70 W. Madison Street, Suite 3300
                                              Chicago, IL 60602
                                              Tel: (312) 807-4299
                                              Fax: (312) 827-8000
                                              jim.shimota@klgates.com
                                              jason.engel@klgates.com
                                              george.summerfield@klgates.com
                                              katy.allor@klgates.com
                                              samuel.richey@klgates.com
                                              ketajh.brown@klgates.com

                                              Nicholas F. Lenning
                                              Courtney Neufeld
                                              **K&L GATES LLP**
                                              925 Fourth Avenue, Suite 2900
                                              Seattle, WA 98104-1158
                                              Tel: (206) 623-7580
                                              Fax: (206) 623-7022
                                              nicholas.lenning@klgates.com
                                              courtney.neufeld@klgates.com

                                              Darlene Ghavimi
                                              Matthew A. Blair
                                              **K&L GATES LLP**
                                              2801 Via Fortuna, Suite 650
                                              Austin, Texas 78746
                                              Tel: (512) 482-6800
                                              darlene.ghavimi@klgates.com
                                              matthew.blair@klgates.com

                                              Christina N. Goodrich
                                              Connor J. Meggs
                                              **K&L GATES LLP**
                                              10100 Santa Monica Blvd., 8th Floor
                                              Los Angeles, CA 90067
                                              Tel: (310) 552-5031

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF**
**ENTROPIC COMMUNICATIONS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this twenty-eighth day of July, 2023.

*/s/ James Shimota*
James Shimota

**CERTIFICATE OF CONFERENCE**

I hereby certify that the parties personally conferred by telephone on July 27, 2023 regarding Entropic's intent to file a motion to exclude the Expert Report of David O. Taylor.

*/s/ James A. Shimota*
James A. Shimota

# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

# FILED UNDER SEAL