UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>　　Plaintiff<br><br>　　v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>　　Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**CHARTER'S SUR-REPLY TO ENTROPIC'S
MOTION TO STRIKE OPINIONS OF STEVEN GOLDBERG**

Entropic's reply (Dkt. 235 ("Reply")) misses the point of Dr. Goldberg's opinions and largely ignores Charter's opposition (Dkt. 214 ("Opp.")). Entropic contends some of Dr. Goldberg's opinions on prior art should be stricken because Entropic did not have "a fair opportunity to rebut" them. (Reply at 5.) Dr. Goldberg went first on invalidity, and Dr. Kramer filed a 65-page rebuttal. Entropic's suggestion that Dr. Goldberg's opinions should be stricken because Dr. Kramer could not rebut them is baseless, and Entropic's motion to strike Dr. Goldberg's opinions should be denied.

## I. The Court Should Not Strike Paragraphs That Reference The Court's Claim Construction Along With Other Evidence And Opinions

Entropic's arguments in reply do not address what Charter said in its opposition. Charter has no intention of violating the Court's prohibition against references to the claim construction Order (the "CC Order") in front of the jury, and Dr. Goldberg will do no such thing on direct at trial. The challenged paragraphs should not be stricken *in toto* because Dr. Goldberg provides other opinions and cites other evidence beyond the CC Order in those paragraphs:

**'775**: Entropic seeks to strike seven paragraphs of Dr. Goldberg's report in view of a single deposition Q&A where it asked Dr. Goldberg what he intends to tell the jury. He responded as any expert would—that he intends to state what is in his report: ¶¶ 65–67 refer to the final claim construction and not the CC Order; ¶ 80 does not refer to the CC Order; ¶¶ 77 & 83 cite once to the CC Order, but only to confirm Dr. Goldberg's understanding of the final claim construction; ¶ 79 states that there is "no clear delineation" in "the industry" between the meaning of two claim terms. Dr. Goldberg can explain all of these opinions without referring to the CC Order.

**'008/'826**: In ¶¶ 348, 351, and supplemental ¶ 14, Dr. Goldberg cites the CC Order, among other things, to confirm his understanding of the final claim constructions. He can explain his own opinions and his understanding of the final claim construction without referring to the CC Order.

1

**'362**: In ¶ 434, Dr. Goldberg agrees with Charter's proposed construction (though it was rejected by the Court) for non-jury purposes, *e.g.*, preservation and/or JMOL. For these reasons, it should not be stricken, but Charter acknowledges it will not be presented to the jury; ¶¶ 480–81 do not address the CC Order at all, but support Dr. Goldberg's opinion on lack of written description by citing inventor testimony that embodiments covered by the claims are not described in the specification.

**'682**: ¶ 507 cites to the final claim construction as well as Entropic's infringement contentions, and Dr. Goldberg refers to the CC Order only to support those opinions; ¶ 516 opines that a certain claim term is not found in the specification; ¶ 520 does not refer to the CC Order; ¶¶ 534 & 542 are similar to '362 ¶ 434 discussed above in that Dr. Goldberg's opinions are for non-jury purposes and should not be stricken; ¶ 573 relies on testimony from Dr. Kramer about the plain meaning of claim terms, which should be fair game for trial.

## II.   Dr. Goldberg Does Not Impermissibly Use Hindsight

**'362 ¶¶ 389–90**: Entropic's reply repeats its opening brief without addressing Charter's opposition. Entropic's contention that Dr. Goldberg allegedly relies on the '362 patent to interpret Zhang is wrong. (Reply at 3–4.) ¶¶ 389–90 quote only Zhang and do not reference the '362 patent at all. (Dkt. 168-2 at ¶¶ 389–90.) Entropic cites Dr. Goldberg's deposition where he states: "In the '362 it almost is a perfect map between Zhang and the '362" and "That's exact – that's not exactly, but that's almost directly what '362 says." (Dkt. 168-3 at 215:14–217:16.) This is precisely what Dr. Goldberg should consider in a proper invalidity analysis. *See, e.g.*, *In re Omeprazole Pat. Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007) ("An anticipation analysis requires a comparison of the construed claim to the prior art."); *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, — F.4th —, 2023 WL 6152418, at *3 (Fed. Cir. Sept. 21, 2023) (holding that obviousness requires consideration of

2

"differences between the prior art and the claims at issue" among other things) (quoting *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013)).

**'775 ¶¶ 67, 74**: Entropic's argument in reply (and in its opening brief) is just a dispute on the merits and does not go to admissibility. Entropic focuses only on ¶ 67, but ignores the preceding paragraphs giving context to ¶ 67, in which Dr. Goldberg explains without any hindsight that "[a] POSITA would understand that DOCSIS Interface of Dong includes both DOCSIS MAC and DOCSIS Controller functionality." He cites Dr. Kramer's testimony in support. And while he also cites the CC Order in support, he will not do so at trial. In ¶ 66, he notes that the final claim construction of "plain and ordinary meaning" supports his opinions that Dong has both claim elements. As to the requirement of bypassing the DOCSIS Controller, he explains that "a POSITA would understand that packets could be forwarded to the data networking engine without the involvement of the DOCSIS Controller by a 're-definition' of functional ownership." (*Id.* ¶ 66.) In ¶ 67, he sums up his rationale in ¶¶ 65–67. None of it should be stricken.

**'008/'826 ¶¶ 254–55, 292–93**: Entropic argues that "Dr. Goldberg only *assumes* television channels are disclosed in Coyne" and "relies on general statements in Coyne that do not disclose anything related to television, let alone television channels." (Reply at 5.) This is for cross-examination, not admissibility. Dr. Goldberg cites to concrete examples from Coyne in his report and at deposition which, in his expert opinion, a POSITA would have understood to disclose television channels. (Opp. at 12–13.) A POSITA would infer from the frequency range described in Coyne that the device processes television channels, as that frequency range corresponds to the television spectrum. (*Id.*) Entropic's argument goes only to the weight of the testimony, and Dr. Goldberg's opinion should not be stricken.

3

### III. There Will Be No Jury Confusion From Dr. Goldberg's Consideration Of Li In Opining That Zhang Discloses The "Mixer Module" Of '362 Claims 11–12

Entropic's reply does not contest Charter's showing that ¶¶ 389–91 should not be stricken because they do not even mention Li. (Opp. at 13.) As to ¶¶ 392–93, Entropic does not contest that Dr. Goldberg uses Li only as a state-of-the-art reference, not as part of an obviousness combination. (*Id.* at 14.) Entropic also acknowledges that such a state-of-the-art reference may properly be used to establish the knowledge of a POSITA. (*Id.*; Reply at 5.) Yet, Entropic insists, without explanation, that Li is an "improper use of unelected prior art" that will lead to jury confusion. (*Id.*) Dr. Goldberg's use of Li is clear and limited—it simply confirms that, to a POSITA, the term "multiply" refers to "mixing." (Opp. at 15.) This is not confusing.

Entropic's argument that it will not be prepared to address Li at trial—because "Dr. Kramer did not provide opinions addressing Li's mixer, which is the subject of the challenged paragraphs" (Reply at 5)—is particularly disingenuous. On invalidity, Dr. Goldberg **went first** and Dr. Kramer filed **a rebuttal report** in which he had every opportunity to "provide opinions addressing Li's mixer." (*Id.*) In fact, Dr. Kramer mentioned Li several times in his rebuttal report, but he chose not to disagree with Dr. Goldberg about Li. (Dkt. 214-2 at ¶¶ 8, 52, 119–20, 128, 157.) It defies credulity to suggest that Entropic did not have a "fair opportunity to rebut Li." (Reply at 5.)

### IV. The Court Should Not Strike Dr. Goldberg's Opinions Under LPR 3-3

Dr. Goldberg's report does not add "new theories" regarding motivations to combine relative to the invalidity contentions; in fact, he **narrows** the specific issues for trial from what was previously disclosed. Entropic makes no showing that Charter's invalidity contentions were insufficient. (Opp. at 16.) The contentions were served in September 2022 and amended three times. Since then, Entropic never asked for more specificity (when Charter had the opportunity to cure any such disputes). Instead, Entropic waited over a year and until after Dr. Goldberg's reports

4

were served. The Court should deny Entropic's motion to strike. *See Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14–cv–203–JRG–RSP, 2015 WL 7303352, at *1 (E.D. Tex. Aug. 25, 2015) (denying motion to strike expert reports because "to the extent Defendants' 3–3 disclosures are deficient, the Court finds [Plaintiff] waived any such objections by waiting nearly seven months to act").

The Court should also decline to strike Charter's motivations to combine or invalidity combinations under *Tyco*. There is no prejudice to Entropic, whose expert was able to fully respond to Dr. Goldberg's report, and Entropic deposed Dr. Goldberg on his opinions. For example, Entropic contends that it "could have sought discovery" on the motivations to combine described in Dr. Goldberg's ¶ 422, but that paragraph refers only to one reference (Zhang), and Entropic does not identify what specific discovery it would have sought. (Dkt. 168-2 at ¶ 422.) There is also no question that Charter's motivations to combine and invalidity combinations are vital to its case, which is another *Tyco* factor in Charter's favor. Thus, the Court should not strike these opinions.

## V.     CONCLUSION

For the foregoing reasons and those in Charter's opposition, the Court should deny Entropic's motion to strike the opinions of Dr. Goldberg.

Dated: October 11, 2023　　　　　　　　　　Respectfully submitted,

<u>/s/Daniel Reisner by permission Elizabeth Long</u>
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: albert.boardman@arnoldporter.com
Email: melissa.brown@arnoldporter.com
Email: jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Email: marc.cohn@arnoldporter.com
Email: amy.dewitt@arnoldporter.com
Email: paul.margulies@arnoldporter.com

**Attorneys for Defendant**
**Charter Communications, Inc.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served October 11, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Elizabeth Long*
Elizabeth Long
