**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

ENTROPIC COMMUNICATIONS, LLC

     *Plaintiff,*

v.

CHARTER COMMUNICATIONS, INC.,

     *Defendant.*

Civil Action No. 2:22-CV-00125-JRG

**JURY TRIAL DEMANDED**

██████████████████

**PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S MOTION TO STRIKE**
**OPINIONS OF DR. KEVIN ALMEROTH**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ......................................................................................................... 1

   a.   Improper Opinions on Essentiality of DOCSIS (Op. Rep. ¶¶ 4, 5, 21, 25–96) ................. 1

      i.   '682 Patent (Op. Rep. ¶¶ 62–73) ....................................................................... 2

      ii.   '008 and '826 Patents (Op. Rep. ¶¶ 42–61)........................................................ 4

      iii.   '690 Patent (Op. Rep. ¶¶ 31–41) ...................................................................... 5

      iv.   Other Opinions on DOCSIS (Op. Rep. ¶¶ 4, 5, 21, 25–30, 75–96)............................ 5

   b.   Improper Opinions on Non-Infringing Alternatives (Op. Rep. ¶¶ 100–144) ..................... 6

   c.   Improper Claim Construction Analysis (Rebut. Rep. ¶¶ 142, 199–200, 333–336, 337, 345–346, 351, 356, 368, 385, 408–410) ............................................................... 9

      i.   Improper reference to the Court's claim construction opinion and the parties' claim construction arguments (Rebut. Rep. ¶¶ 142, 351, 356)......................................... 9

      ii.   Reliance on inventor testimony for the sole purpose of determining claim scope (Rebut. Rep. ¶¶ 199–200, 337, 345–346, 368, 408–410) ................................... 10

      iii.   Improper narrowing of claim terms by incorporating limitations from the specification (Rebut. Rep.¶¶ 333–336, 351, 385)................................................ 11

   d.   Improper reliance on documents and information that were not timely disclosed during the discovery period (Supp. Rep. ¶¶ 11, 20, 28–29)............................................... 13

III.    CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)................................................................7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)................................................................9

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   2:16-CV-00134-JRG, 2017 WL 2869365 (E.D. Tex. May 18, 2017).....................13

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
   967 F.3d 1380 (Fed. Cir. 2020)................................................................1

*Howmedica Osteonica v. Wright Med. Tech.*,
   540 F.3d 1337 (Fed. Cir. 2008)...............................................................10

*INVT SPE LLC v. Int'l Trade Comm'n*,
   46 F.4th 1361 (Fed. Cir. 2022) ...............................................................1

*LaserDynamics v. Quanta Comp., Inc.*,
   2:06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) ......................................7

*Optis Wireless Technology, LLC v. Huawei Technologies Co. Ltd.*,
   2:17-cv-123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018).......................2

*Primrose Operating Co. v. National Am. Ins. Co.*,
   382 F.3d 546 (5th Cir. 2004) .................................................................14

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
   926 F.2d 1161 (Fed. Cir. 1991)................................................................6

*Teleflex, Inc. v. Ficosa North America Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002)...............................................................11

*VARTA Microbattery GmbH v. Audio Partnership LLC*,
   2:21-cv-00400-JRG-RSP, 2023 WL 5434853 (E.D. Tex. Aug. 23, 2023)..........................15

## TABLE OF EXHIBITS

| Exhibit | Title |
|---------|-------|
| A | Expert Report of Dr. Kevin Almeroth Regarding Licensing and Non-Infringing Alternatives, July 21, 2023 ("Opening Report" or "Op. Rep."). |
| B | Rebuttal Expert Report of Dr. Kevin C. Almeroth Regarding Non-Infringement, August 11, 2023 ("Rebuttal Report" or "Rebut. Rep."). |
| C | Supplemental Rebuttal Expert Report of Dr. Kevin Almeroth Regarding Non-Infringement, September 7, 2023 ("Supplemental Report" or "Supp. Rep."). |
| D | Excerpts from the Transcript of Deposition of Dr. Kevin Almeroth, August 23, 2023 ("Almeroth Tr."). |
| E | Rebuttal Expert Report Regarding Damages, August 11, 2023 ("Bakewell Report"). |
| F | Excerpts from the Transcript of Deposition of Dr. Curtis Ling, July 12, 2023 ("Ling Tr."). |
| G | CHARTER_ENTROPIC00481022. |
| H | CHARTER_ENTROPIC00481023. |
| I | Defendant's Sixth Supplemental Objections and Responses to Plaintiff's Second Set of Interrogatories (No. 7), September 7, 2023. |
| J | Excerpts from the Transcript of Deposition of Daniel Boglioli, August 11, 2023 ("Boglioli Tr."). |

## I.      INTRODUCTION

Plaintiff Entropic Communications, LLC ("Entropic") respectfully moves to strike Paragraphs 4, 5, 21, 25–96, and 100–144 of the Expert Report of Dr. Kevin Almeroth Regarding Licensing and Non-Infringing Alternatives ("Opening Report" or "Op. Rep.") (Ex. A); Paragraphs 142, 199–200, 333–336, 337, 345–346, 351, 356, 368, 385, and 408–410 of the Rebuttal Expert Report of Dr. Kevin Almeroth Regarding Non-Infringement ("Rebuttal Report" or "Rebut. Rep.") (Ex. B); and Paragraphs 11, 20, and 28–29 of the Supplemental Rebuttal Expert Report of Dr. Kevin Almeroth Regarding Non-Infringement ("Supplemental Report" or "Supp. Rep.") (Ex. C).

## II.     ARGUMENT

### a.      Improper Opinions on Essentiality of DOCSIS (Op. Rep. ¶¶ 4, 5, 21, 25–96)

Entropic moves to strike Paragraphs 4, 5, 21, and 25–96 of the Opening Report because Dr. Almeroth's opinions are based on an unreliable methodology. Dr. Almeroth opines that the '690, '008, '826, and '682 Patents are "'essential for compliance with' DOCSIS specifications." Op. Rep. ¶ 4; *see also* ¶ 29 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). However, Dr. Almeroth entirely avoids any proper comparison of each claim element to the standard. Thus his opinions that any claim is "essential" are unreliable as a matter of law.

"Claims are standard essential if 'the reach of the claims includes any device that practices the standard.'" *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) (citation omitted). This means that "all implementations of a standard infringe the claim" and the "patent covers every possible implementation of a standard." *Id*. According to the Federal Circuit, "[e]ssentiality is, after all, a fact question about whether the claim elements read onto mandatory

portions of a standard that standard-compliant devices must incorporate." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *see also id*. (The essentiality inquiry "is more akin to an infringement analysis"). Thus, showing that a claim is standard essential requires an element-by-element analysis of the claim language. *See generally Optis Wireless Technology, LLC v. Huawei Technologies Co. Ltd.*, 2:17-cv-123-JRG-RSP, 2018 WL 3375192, *1 (E.D. Tex. July 11, 2018) (establishing infringement of a standard essential patent "by showing that (1) the standard necessarily meets the elements of the claim").

Dr. Almeroth entirely fails to perform the proper analysis to test questions of what does (or does not) meet the infringement test. Dr. Almeroth rarely even addresses specific claims (by number or otherwise). For the few claims he points to by claim number, he merely summarizes Entropic's infringement contentions and then states that the features accused by Entropic are generally described at places within the DOCSIS Specifications. *See e.g.* Ex. D, Almeroth Tr., 30:20–31:1 ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████."); *see also* 49:5–7 ("███████████████████████████████████████████████").

This is deficient and unreliable as a matter of law. The **claim elements** must be measured against the **requirements** of DOCSIS. Dr. Almeroth does not. As detailed *infra*, he goes no further than asking whether the various instrumentalities Charter uses to infringe are alluded to by the DOCSIS standard, whether in relevant part or not.

### i. '682 Patent (Op. Rep. ¶¶ 62–73)

Although Entropic has asserted claims 1, 2, and 3 of the '682 Patent, Dr. Almeroth solely addresses claim 1. *See* Op. Rep. ¶¶ 67–69. He does not compare each claim element to what is required by the DOCSIS Specification. There is no claim chart and no element-by-element analysis

of the standard. Instead, Dr. Almeroth offers a general discussion of PMA (Profile Management Application), which he "understands" is an infringing instrumentality. *See* Op. Rep. ¶¶ 70–72.

Nowhere does Dr. Almeroth even attempt to opine that DOCSIS requires the five process steps of claim 1. Not a single claim element is analyzed for the question of essentiality For example, with respect to the "determining" step, Dr. Almeroth merely points out that ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Op. Rep. ¶ 67; *see also* ¶ 68 (quoting Entropic's infringement contentions for compliance with DOCSIS standard with respect to the "assigning" step), ¶ 69 (quoting Entropic's infringement contentions for compliance with DOCSIS standard with respect to the "communicating" step). But this is irrelevant to the question of essentiality. It is true that DOCSIS describes certain probes, which Charter happens to have employed for the purpose of infringing. But those probes might be used for anything. Dr. Almeroth never opines that DOCSIS *requires* the use of said probes in the particular way, for the particular purpose that Charter uses them. In fact, when asked at his deposition if PMA is required by DOCSIS, Dr. Almeroth answered that he did not recall offering that opinion. Almeroth Tr., 49:15–16. Even worse, Dr. Almeroth's report entirely ignores *any* discussion at all (general allusions or otherwise) of claim elements 1[c] ("generating…") and 1[d] ("selecting…").

Because Dr. Almeroth never compares the claims themselves to the standard, his opinions are unreliable and should be stricken. ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. But none of that is the least bit relevant to the question of whether any claim of the '682 Patent is *required* by DOCSIS. The lack of [1] an element-by-element comparison of [2] the '682 Patent claims to the DOCSIS

Specifications renders the opinions of essentiality irretrievably unreliable. This is not a legally permissible way for any expert to determine whether something would infringe, standard or not.

### ii.     '008 and '826 Patents (Op. Rep. ¶¶ 42–61)

As with the '682 Patent, Dr. Almeroth fails to provide any comparison of the claims to the DOCSIS Specification, but nonetheless concludes they are essential. There is no element-by-element analysis of essentiality. For certain elements, Dr. Almeroth provides zero discussion:

- '008 Patent element **1[c]** ("a data processor…"); and element **1[d]** ("a channelizer operable to . . . concurrently output said first portion…"). *See* Op. Rep. ¶¶ 48–52.

- '826 Patent element **1[d]** ("selecting a second portion of said digitized signal"); and **1[e]** ("processing said selected second portion…"). *See id.* at ¶¶ 53–57.

Nor does Dr. Almeroth compare ***any*** of the elements to the DOCSIS Specification(s). Instead, Dr. Almeroth only compares his own summary of the accusations of infringement to mentions of the (allegedly) same general topic in the standard. *See generally* Op. Rep. ¶¶ 48–61. He first reduces the accusations of infringement to particular uses of "full band capture." Op. Rep. ¶ 58 ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████). From there, Dr. Almeroth contends that "DOCSIS 3.0 has included full-band capture functionality since November 2012." *See id.* at ¶ 60. Note that he does not opine DOCSIS ***requires*** full band capture. And he provides no documentary support, just general allusions to DOCSIS. In his own words, "[i]t's referred to generally to the document." *See* Almeroth Tr., 33:1–5.

None of this is legally permissible opinion. The lack of [1] an element-by-element comparison of [2] the ***claims*** of the '008 and '826 Patent to the DOCSIS Specifications renders the opinions of essentiality irretrievably unreliable.

### iii.        '690 Patent (Op. Rep. ¶¶ 31–41)

Dr. Almeroth opines that ████████████████████████████████████████

███████ (Op. Rep. ¶ 41), but he only addresses claim 1, which is not asserted. *See id.* at ¶¶ 35–
40; *see also* Almeroth Tr., 23:25–24:6, 26:11–15 (admitting he did not perform separate analysis
for dependent claims 7 and 8, which are asserted). Moreover, Dr. Almeroth's analysis of claim 1
takes the same shortcut of summarizing Entropic's infringement contentions and then showing
how certain accused features are described in the standard. *See* Op. Rep. ¶ 35 ████████████

████████████████████████████████.'"), ¶ 36 ████████████

█████████████████████████████████████████████████

███████████████████████████████"), ¶ 37 ████████

███████████████████"). Dr. Almeroth does not opine that the claimed elements
are required for standard compliance.[1] Therefore, the Court should strike Dr. Almeroth opinion
that the '690 Patent is essential for DOCSIS.

### iv.        Other Opinions on DOCSIS (Op. Rep. ¶¶ 4, 5, 21, 25–30, 75–96)

Once Dr. Almeroth's deficient opinions of essentiality are stricken, the remainder of his
general opinions relating to background or unrelated ████████████ issues should be stricken as
irrelevant to the essentiality issue.

- Op. Rep. ¶¶ 4–5 (summary of opinions relating to DOCSIS);

- *Id.* at ¶ 21 ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████")");

---

[1] ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

- *Id.* at ¶¶ 25–30 (background of the DOCSIS license);

- *Id.* at ¶¶ 75–96 (███████████████████████████████████████████████

   ███████████████████████████████████████████████████████████████").

**b.    Improper Opinions on Non-Infringing Alternatives (Op. Rep. ¶¶ 100–144)**

Entropic moves to strike Paragraphs 100–144 of the Opening Report, where Dr. Almeroth

opines that █████████████████████████████████████████████████████████

████████████████████████████████████████." *See* Op. Rep. ¶ 100.

Entropic has also moved to strike related opinions in the rebuttal report of Charter's damages

expert, Mr. Bakewell. *See* Motion to Strike, Dkt. No. 174. To the extent the Court grants that

motion, the Court should strike this portion of Dr. Almeroth's testimony as irrelevant and likely to

confuse the jury. Irrespective of Mr. Bakewell's opinions, Dr. Almeroth's analysis is critically

flawed, and as a result his opinions regarding the MaxLinear chips are unreliable.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████"). These ideas are

incompatible with each other. "[B]y definition, noninfringing products do not represent an

embodiment of the invention." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161,

1166 (Fed. Cir. 1991). To the extent the ████████████ were licensed, they could at best be

called substitute products. But it is error to allow any expert to opine using the phrase "non-

infringing alternatives" which has a different legal meaning and is likely to confuse the jury.

In the case of the '775 Patent (*see* Op. Rep. ¶¶ 122–123), Dr. Almeroth's opinions are

unsupportable for another reason. The ████████████ were not, and could not have been,

licensed at the time of the hypothetical negotiation. "To be an acceptable non-infringing substitute, the substitute must be available or on the market at the time of infringement." *LaserDynamics v. Quanta Comp., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (quotes omitted). Availability means that the product was physically available and that it was known to be non-infringing at the time. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015) (generic products launched at risk could not be considered non-infringing alternatives for reasonable royalty analysis in 2003, even though they were found to be non-infringing in 2007).



█████████████████. They could not have been available to Charter as a non-infringing alternative.

With respect to the '682 Patent, Dr. Almeroth's opinions are unsupportable because ████████████████████ in no way provide the functionality underlying Charter's infringement. As he acknowledges, ████████████████████████████████████████████████████

████████████████████████████████████████████████ Op. Rep. ¶ 136.

████████ does not supply any component of a CMTS. Whether Charter uses cable modems or set top boxes including ████████████████ is irrelevant. Dr. Almeroth does not even attempt to connect any ████████████████ to the functionality provided by CMTS. Cable modems and set top boxes are categorically different devices than CMTS devices. Accordingly, Dr. Almeroth's

---

[2] *See* Op. Rep. ¶ 122 ████████████████████████████████████████████████████

opinion that MaxLinear's products can substitute for an entirely different category of product is too unreliable and flawed to be presented to the jury.

Finally, looking again at ***all six*** Patents-in-Suit, Dr. Almeroth's opinions regarding the █████████████ are unsupportable because he fails to show that any specific █████████████ were ***available*** as of the dates of each hypothetical negotiation. Dr. Almeroth provides a brief background on █████████████ (*see* Op. Rep. ¶¶ 104–115) wherein he identifies various chip model numbers. *See e.g.* Op. Rep. ¶ 108 █████████████ █████████████.") He then opines that █████████████ broadly do not infringe the Patents-in-Suit because they are either licensed or subject to patent exhaustion (*see id.* at ¶¶ 116–136). He makes no attempt to tie any particular MaxLinear product model to each patent. He only refers in the abstract to █████████████ ████ But this analysis has a logical gap—it fails to demonstrate the products were ***available*** at the dates of any hypothetical negotiation.

Rather than focus on any hypothetical negotiation date, which for most of the Patents-in-Suit would be January 2019 or earlier (not contested; *see* Bakewell Report, ¶¶ 180, 183, 188), Dr. Almeroth references █████████████ cable modems that are currently in use ***as of April 2023***. *See* Op. Rep. ¶ 138. In the following paragraph, he offers the conclusory opinion that ████ █████████████ (*id.* at ¶ 139), but he offers no support and doesn't even identify which █████████████ were supposedly available. This generic and conclusory statement is without any support.

Dr. Almeroth further asserts that █████████████ █████████████ (Op. Rep. ¶ 139), but his only support is Mr. Ling's testimony █████████████

████████████████ *Id*. Again, there is no discussion of specific chips, nor any analysis of the relevant time.[3] ***Was*** ████████ able to actually supply necessary products in the necessary numbers at the various hypothetical negotiation dates? Dr. Almeroth does not say.

Because Dr. Almeroth has failed to show that any ████████████ were actually *available* as "non-infringing alternatives," the Court should strike his opinions regarding the chips.

    **c.**    **Improper Claim Construction Analysis (Rebut. Rep. ¶¶ 142, 199–200, 333–336, 337, 345–346, 351, 356, 368, 385, 408–410)**

Plaintiff moves to strike Paragraphs 142, 199–200, 333–336, 337, 345–346, 351, 356, 368, 385, and 408–410 of the Rebuttal Report because Dr. Almeroth disregards the Court's claim construction rulings and engages in his own claim construction analysis. "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

    **i.**    **Improper reference to the Court's claim construction opinion and the parties' claim construction arguments (Rebut. Rep. ¶¶ 142, 351, 356)**

The Court issued its Claim Construction Memorandum Opinion and Order ("Claim Construction Order") (Dkt. No. 123) on June 26, 2023. The Order states:

> The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Claim Construction Order at 64. There are three instances where Dr. Almeroth violates the Court's order, and the corresponding paragraphs should be stricken.

---

[3] Dr. Almeroth also fails to consider ████████████████████████████████████████. 74:6–80:25; *see also* 79:15–23 (████████████████████████████████████████████).

**Rebut. Rep. ¶ 142:** Dr. Almeroth construes the term "network management messages" by importing the Court's discussion that "simply sending the measured characteristic to the headend is insufficient." This language does not appear in the Court's construction of the term.

**Rebut Rep. ¶ 351:** Dr. Almeroth opines that "[t]he plain meaning of 'DOCSIS controller' implicates the types of functions that the particular controller carries out." In support of this statement, he notes that "Entropic took this position in the claim construction hearing." *Id*.

**Rebut Rep. ¶ 356:** Dr. Almeroth says he "disagree[s] with Dr. Kramer's arbitrary inclusion of the classification processors of each SoC as part of a 'MAC processor.'" In support of that opinion, Dr. Almeroth notes "Entropic argued during the claim construction hearing that '[t]he DOCSIS MAC processor is performing MAC functions.'" *Id*.

### ii. Reliance on inventor testimony for the sole purpose of determining claim scope (Rebut. Rep. ¶¶ 199–200, 337, 345–346, 368, 408–410)

Dr. Almeroth repeatedly construes the scope of claim terms by references to inventor testimony. Even at the claim construction stage, this would be unreliable evidence. "The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim." *Howmedica Osteonica v. Wright Med. Tech.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008). At this stage, where the Court has already issued its claim construction ruling, opinions such as these are especially improper.

**Rebut. Rep. ¶¶ 199–200:** Dr. Almeroth relies on the testimony of Sridhar Ramesh to determine the scope of the term "SNR-related metric" in the '682 Patent. He then applies his construction to opine that RxMER does not fall with the scope of the term. *See id.* at ¶ 205.

**Rebut. Rep. ¶ 337:** Dr. Almeroth relies on the testimony of Gordon Li to determine the scope of "home networking functions," to support the opinion that "'home networking functions'

within the meaning of the '775 patent entails far more than simply supporting connectivity via an Ethernet interface from the cable modem to a separate router or home computer."

**Rebut. Rep. ¶¶ 345–346:** Dr. Almeroth relies on the testimony of Gordon Li to determine the scope of the '775 Patent term "the cable modem engine [("CME")] configured to enable upgrades to its software in a manner that is independent of upgrades to the software of the data networking engine [("DNE")]."

**Rebut. Rep. ¶ 368:** Dr. Almeroth relies on the testimony of Gordon Li to determine the scope of the '775 Patent term "configured to process downstream PDU packets and forward the processed packets directly to the [DNE] without the involvement of the DOCSIS controller," to support his conclusion that shared memory-based communication does not fall within the scope of the claim language. *See id.*

**Rebut. Rep. ¶¶ 408–410:** Dr. Almeroth relies on the testimonies of Timothy Gallagher (¶ 408), Madhuka Reddy (¶ 409), and Curtis Ling (¶ 410) to define the scope of the term "wideband" in the '362 Patent to support the conclusions that the scope of the claimed "wideband receiver system" and "wideband analog-to-digital converter (ADC) module" does not include full band capture. *See id.* at ¶¶ 402, 413.

### iii.   Improper narrowing of claim terms by incorporating limitations from the specification (Rebut. Rep.¶¶ 333–336, 351, 385)

Dr. Almeroth attempts to narrow certain claim terms by imposing limitations from the specification. Again, this would be improper even at the claim construction stage. *See e.g. Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) ("limitations from the specification are not to be read into the claims"). Therefore, these opinions should be stricken.

**Rebut. Rep. ¶¶ 333–336:** Dr. Almeroth attempts to narrow the term "home networking functions," a term that Charter chose not to submit for construction. Pointing to the '775 Patent at

3:49–53, he opines that the term at most refers to "home networking applications." Rebut. Rep. ¶¶ 333–334. He then incorporates language from the specification purportedly requiring the term to include "routing." *See id.* at ¶ 335 (opining that the '775 Patent "describes an embodiment in which the [DNE] performs advanced bridging and routing and also supports higher level applications . . . that rely on the [DNE's] underlying routing function"); *see also* ¶ 336 ("networking applications . . . in block 252 rely on the routing functionality implemented in block 250").

**Rebut. Rep. ¶ 351:** In addition to improperly relying on the parties' claim construction arguments, Dr. Almeroth uses the '775 Patent specification to narrow the plain meaning of "DOCSIS controller." He cites to portions of the specification discussing functions of the DOCSIS controller and then faults Dr. Kramer for not identifying how these specific functions are performed in the VIPER processor, used in Charter's cable modems. *See* Rebut. Rep. ¶ 351.

**Rebut. Rep. ¶ 385:** Dr. Almeroth attempts to narrow the meaning of "partitioning," even though the Court explicitly construed the term "wherein the cable modem functions performed by the [CME] are completely partitioned from the home networking functions performed by the [DNE]."[4] Specifically, he points to language in the '775 Patent that functional partitioning "is accomplished by localizing data networking functions in the [DNE] processor and localizing cable modem functional [*sic*] in the [CME] processor." Rebut. Rep. ¶ 385 (quoting '775 Patent at 4:13–24). He then opines that "having a shared memory controller and memory [in the accused products] undermines this purpose." *Id*. Effectively, Dr. Almeroth seeks to rehash the same argument Charter raised, and which the Court rejected, at claim construction. *See* Claim Construction Order at 17

---

[4] The Court construed this term to mean "wherein the [CME] and the [DNE] are not necessarily physically separate but are functionally separate such that the cable modem functions are performed only by the [CME] and the home networking functions are performed only by the [DNE]." Claim Construction Order at 61.

("The Court therefore hereby expressly rejects Defendant's proposal that the cable modem engine and the data networking engine cannot share any connecting circuitry, data paths, or memory devices"). The Court should not allow these opinions to go before the jury.

### d.   Improper reliance on documents and information that were not timely disclosed during the discovery period (Supp. Rep. ¶¶ 11, 20, 28–29)

Entropic moves to strike Paragraphs 11, 20, and 28–29 of the Supplemental Report because Dr. Almeroth relies on documents and information that Charter failed to timely disclose. Charter served the Supplemental Report on September 7, 2023 for the express purposes of (i) responding to the Supplemental Expert Report of Dr. Shukri Souri and (ii) addressing new discovery. *See* Supp. Rep. ¶ 2; *see also* Agreed Motion to Amend Docket Control Order, Dkt. 153, at 2 (the parties agreeing that Dr. Souri may submit a supplemental report on infringement and that Dr. Almeroth may supplement his rebuttal report). However, some of this "new discovery" was not new at all. Dr. Almeroth purports to rely on "new" documents and information that in actuality were already available to Charter at the time of his original Rebuttal Report (served August 11, 2023). These materials could have, and should have, been disclosed. Charter's failure to do so is unfairly prejudicial to Entropic, and therefore Dr. Almeroth's opinions relying on these materials should be stricken.

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(C)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869365, *2–3 (E.D. Tex. May 18, 2017). The Fifth Circuit weighs four factors to determine whether a late disclosure was substantially justified or harmless: (1) the justification for why the disclosure should be considered timely; (2) the importance of the

evidence, (3) the prejudice to the party opposing the introduction of the evidence; and (4) the possibility of curing such prejudice by granting a continuance. *See, e.g., Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004).

**Supp. Rep. ¶ 11:** Dr. Almeroth purports to rely on two documents (CHARTER_ENTROPIC00481022 and 00481023, Exs. G–H) and a supplemental interrogatory response, both of which Charter served with the supplemental report, on Sep. 7. The supplemental interrogatory response alleges that ███████████████████████████████████████ ███████████████████████████ and that the two documents (Exs. H–I) are █████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████ Ex. I, Sixth Supplemental Objections and Reponses to Plaintiff's Second Set of Interrogatories (No. 7), at 22. The supplemental response confirms ██████████████████████████████████████████████████████████████ (*id.*), meaning Charter could have obtained these screenshots as early as ███████. There is no reason for Charter's delay in producing these screenshots and supplementing its interrogatory response ███████████████. This delay is highly prejudicial to Entropic because Charter delayed until long after the deposition of Charter's corporate witness Dan Boglioli, who testified regarding ████████████████████████████. *See* Ex. J, Boglioli Tr., 16:13–17:9. Entropic is unable to elicit deposition testimony regarding the newly produced screenshots.

**Supp. Rep. ¶ 20:** Dr. Almeroth purports to rely on a ***conversation*** he had with Charter employee Roger Stafford on September 5, 2023, during which Mr. Stafford provided additional information on ████████████████████████. *See* Supp. Rep. ¶ 20. Mr. Stafford was deposed on June 27. Fact discovery closed on July 21. As noted above, Charter claims ███████████ ██████████████████████████. So any information Mr. Stafford had ██████████████ would

have been available prior to that date. Yet Charter waited to disclose this information until after its corporate representative was deposed on ████████████ (on August 11) and after Dr. Almeroth was deposed (on August 23). Charter's concealment until Entropic had no way to depose anyone about this "conversation" is highly prejudicial and warrants striking Dr. Almeroth's opinions. *See e.g. VARTA Microbattery GmbH v. Audio Partnership LLC*, 2023 WL 5434853, at *3–5 (E.D. Tex. Aug. 23, 2023) (excluding expert opinion regarding information obtained through conversations with another witness and which was not timely disclosed in discovery).

**Supp. Rep. ¶¶ 28–29:** Dr. Almeroth relies on a Broadcom article dated August 18, 2008 and which is available online. This is not a document that Broadcom produced in this litigation; rather it appears Dr. Almeroth obtained the document from the Internet in preparing his Supplemental Report. Given the article is from 2008, there is no reason Charter could not have obtained and produced the document before the close of fact discovery, and no reason Dr. Almeroth could not have cited the document in his original Rebuttal Report. Dr. Almeroth cannot even claim that the opinion was required to respond to Dr. Souri's Supplemental Report because the new opinion doesn't reply to that supplement at all. Instead it is directed at Dr. Kramer's opinions regarding infringement of the '362 Patent. Entropic is prejudiced because it is too late for Entropic to elicit further discovery or deposition testimony. *See VARTA Microbattery*, 2023 WL 5434853, at *4. Therefore, the Court should strike these opinions.

## III. CONCLUSION

For these reasons, the Court should strike Paragraphs 4, 5, 21, 25–96, and 100–144 of the Opening Report; Paragraphs 142, 199–200, 333–336, 337, 345–346, 351, 356, 368, 385, and 408–410 of the Rebuttal Report; and Paragraphs 11, 20, and 28–29 of the Supplemental Report.

Dated: September 11, 2023

Respectfully submitted,

*/s/ James A. Shimota*
James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com
ketajh.brown@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com
courtney.neufeld@klgates.com

Darlene Ghavimi
Matthew A. Blair
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

Christina N. Goodrich
Connor J. Meggs
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5031

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on September 11, 2023.

/s/ James Shimota
James Shimota



## CERTIFICATE OF CONFERENCE

I hereby certify that the parties personally conferred by videoconference on September 1, 2023 regarding Entropic's intent to file this Motion to Exclude Portions of the Expert Reports of Dr. Kevin Almeroth.

/s/ James A. Shimota
James A. Shimota

# EXHIBIT A - J

# FILED UNDER SEAL