# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Case No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED**<br><br> |

**PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT DEVICES WITH MAXLINEAR CHIPS ARE NOT NON-INFRINGING ALTERNATIVES AFFECTING THE <u>REASONABLE ROYALTY RATE</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................. 1 | |
| II. | STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................... 1 | |
| III. | STATEMENT OF UNDISPUTED FACTS ...................................................................... 1 | |
| IV. | LEGAL STANDARD ........................................................................................................ 3 | |
| V. | ARGUMENT ..................................................................................................................... 4 | |
| | A. | It is undisputed that no MaxLinear product was non-infringing at the time of the 2013 hypothetical negotiation for the '775 Patent. ................................................. 5 |
| | B. | It is undisputed that no MaxLinear product supplies the functionality of Charter's ▮ which infringes the '682 Patent, and therefore cannot be a substitute. .......... 6 |
| | C. | For all remaining Patents-in-Suit, no reasonable jury could find that MaxLinear-powered devices are non-infringing alternatives relevant to the hypothetical negotiations. ................................................................................................ 7 |
| | | 1. As a matter of law, the hypothetical licensor's own product is not an "alternative" or "substitution." .................................................................... 7 |
| | | 2. If Dr. Almeroth and Mr. Bakewell's opinions on non-infringing alternatives are stricken, there is no evidence on which a reasonable jury could rely to conclude that MaxLinear-powered devices are non-infringing alternatives. ....................................................................................................... 10 |
| VI. | CONCLUSION ................................................................................................................ 11 | |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  466 U.S. 242 (1986) ........................................................................................................... 3

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015) .......................................................................................... 5

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
  836 F.2d 1320 (Fed. Cir. 1987) ........................................................................................ 10

*Duffy v. Leading Edge Prods., Inc.*,
  44 F.3d 308 (5th Cir. 1995) ............................................................................................... 3

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
  879 F.3d 1332 (Fed. Cir. 2018) .................................................................................... 4, 11

*Hughes Tool Co. v. G. W. Murphy Indus., Inc.*,
  491 F.2d 923 (5th Cir. 1973) ............................................................................................. 8

*LaserDynamics v. Quanta Comput., Inc.*,
  No. 2:06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) ...................................... 10

*Pall Corp. v. Micron Separations, Inc.*,
  66 F.3d 1211 (Fed. Cir. 1995) ........................................................................................... 6

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017) ......................................................................................... 8

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.*,
  635 F.3d 675, 680 (5th Cir. 2011) ..................................................................................... 3

*SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ......................................................................................... 8

**Statutes**

35 U.S.C. § 284 .......................................................................................................................... 4

**Court Rules**

FED. R. CIV. P. 56(a) .................................................................................................................. 3

I.  **INTRODUCTION**

Plaintiff Entropic Communications, LLC respectfully moves for partial summary judgment that devices with MaxLinear chips cannot serve as a non-infringing alternative for any of the Patents-in-Suit. There are no issues of fact for trial with respect to the moved-upon issues because the expert evidence of non-infringing alternatives is deficient as a matter of law, entirely lacking any reliable analysis.

II.  **STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

Whether the Court should grant partial summary judgment that devices with MaxLinear chips are not a non-infringing alternative that affects the reasonable royalty rate for U.S. Patent No. 8,223,775 (the "'775 Patent") where the non-infringing alternative is only later licensed.

Whether the Court should grant partial summary judgment that devices with MaxLinear chips are not a non-infringing alternative that affects the reasonable royalty rate for U.S. Patent No. 10,135,682 (the "'682 Patent") where the "non-infringing alternative" would still require performance of all elements of the claimed methods in an infringing manner.

Whether the Court should grant partial summary judgment that devices with MaxLinear chips are not a non-infringing alternative that affects the reasonable royalty rate for U.S. Patent No. 8,284,690 (the "'690 Patent"), U.S. Patent No. 8,792,008 (the "'008 Patent"), U.S. Patent No. 9,825,826 (the "'826 Patent"), U.S. Patent No. 9,210,362 (the "'362 Patent"), and the '775 Patent where such a defense is barred as matter of law and there is no evidence that links the price of the MaxLinear chips to the value of the '690, '008, '826, '326 and '775 Patents.

III.  **STATEMENT OF UNDISPUTED FACTS**

1.  On July 21, 2023, Charter served the Opening Expert Report of Dr. Kevin Almeroth Regarding Licensing and Non-Infringing Alternatives ("Almeroth Report"). Dr. Almeroth's

Report provides opinions as to non-infringing alternatives. Ex. A[1], Almeroth Rep.

2. As to the '775, '690, '008, '362, '826, and '682 Patents, Dr. Almeroth alleges that the ███████████████████████████████████████████████ is a non-infringing alternative. Ex. A, Almeroth Rep., ¶ 99.

3. Dr. Almeroth further alleges that ███████████████████████████████████ ███████████████████████ Ex. A, Almeroth Rep., ¶ 116. Dr. Almeroth's reasons for this conclusion are (1) ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at ¶¶ 117–18.

4. Dr. Almeroth opines that products with MaxLinear chips present a feasible alternative. This is so because ██████████████████████████████████

██████████████████████ Ex. A, Almeroth Rep., ¶ 138.

5. Based off the statements above, Dr. Almeroth's opinion is that ████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Ex. A, Almeroth Rep., ¶ 144. As to the '682 Patent, Dr. Almeroth opines that devices with MaxLinear chips would have been a ████████████████████████████████████████

██████████████████████ *Id.*

6. On August 11, 2023, Mr. Bakewell submitted his Rebuttal Expert Report Regarding Damages ("Bakewell Report"). Mr. Bakewell's Report provides opinions as to non-infringing alternatives. Ex. B, Bakewell Rep.

---

[1] The exhibits cited herein are attached to the declaration of James Shimota submitted herewith.

7. Mr. Bakewell alleges ███████████████████████████████

███████████████████████████████████████████████████████████████ Ex.

B, Bakewell Rep., ¶ 240. These non-infringing alternatives include ███████████████

███████████████████████████ for the '775, '008, '826, '362, '682, and '690 Patents. *Id.* Mr.

Bakewell exclusively cites to either Dr. Almeroth's report or Charter's interrogatory responses for these statements.

8. To support Mr. Bakewell's conclusion that the MaxLinear chips are a non-infringing alternative for the '775, '008, '826, '682, and '690 Patents, Mr. Bakewell states that

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ Ex. B, Bakewell Rep.,

¶¶ 242, 243, 251, and 253.

## IV. LEGAL STANDARD

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 466 U.S. 242, 248 (1986). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Liberty Lobby*, 477 U.S. at 247). All evidence is viewed in the light most favorable to the party resisting the motion. *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011). The standard for summary judgment is two-fold: (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law.

Upon a finding of infringement, "the court shall award the claimant damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Thus, the Georgia-Pacific factors "take[] account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015)).

V.   **ARGUMENT**

This Court should grant partial summary judgment as to the limited issue of whether MaxLinear-powered devices are non-infringing alternatives because there are no genuine issues of material fact and no reasonable juror could conclude that such devices are non-infringing alternatives relevant to the hypothetical negotiation for any of the Patents-in-Suit.

**First**, as to the '775 Patent, there is no genuine issue of material fact that ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Specifically, all parties (and experts) agree that the hypothetical negotiation for the '775 Patent would have occurred in 2013. Charter's only basis for asserting that these devices are non-infringing alternatives is Charter's assertion that such devices were licensed. But it is undisputed that MaxLinear had no rights to the '775 Patent in 2013—two years before ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ also asserts that MaxLinear-powered devices practiced the '775 Patent. There therefore is no reasonable dispute that these devices would have been *infringing* alternatives in 2013, and therefore irrelevant to the damages analysis.

**Second**, as to the '682 Patent, there also is no genuine issue of material fact that MaxLinear-powered devices are not non-infringing alternatives, but for a different reason. All parties agree that such devices are not capable of practicing any element of the claims of the '682

4

Patent and cannot provide the accused functionality—███████████████████. Charter (and its expert) assert that MaxLinear-powered devices are NIAs only "to the extent" they are accused of infringement—but they are not. There therefore is no genuine issue of material fact and no reasonable juror could conclude that MaxLinear-powered devices are a non-infringing alternative as to the '682 Patent.

**Third,** as to the remaining four Patents-in-Suit, no reasonable juror could conclude that MaxLinear-powered devices are non-infringing alternatives for two reasons: (1) as a matter of law, the hypothetical licensor's own patented product cannot serve as a non-infringing alternative; and (2) if the Court strikes Dr. Almeroth and Mr. Bakewell's conclusory and legally wrong opinions on this issue, there is no evidence remaining on which a reasonable jury could rely to conclude that MaxLinear-powered devices are non-infringing alternatives relevant to any of the hypothetical negotiations.

For these reasons, the Court should grant partial summary judgment in Entropic's favor on this limited issue.

### A. It is undisputed that <u>no</u> MaxLinear product was <u>non</u>-infringing at the time of the 2013 hypothetical negotiation for the '775 Patent.

For a reasonable royalty analysis (the only theory in this case), whether a product is a non-infringing alternative must—like all other considerations—be assessed at the time of the hypothetical negotiation. An alternative product offered by a third party cannot be a non-infringing alternative if it only *later* became licensed or adjudged as non-infringing. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015) (generic pharmaceuticals launched at risk amid ongoing litigation "would not have been considered as non-infringing alternatives in November 2003" even though they were later found to be non-infringing in 2007 and thus could not be considered in a reasonable royalty analysis); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d

5

1211, 1222 (Fed. Cir. 1995) (an accused alternative product offered by a third party could not be considered as a non-infringing alternative before the patentee and the third party voluntarily settled their litigation).

The parties agree that the hypothetical negotiation date for the '775 Patent would be in or about 2013. At that time, the '775 Patent was owned by Entropic Communications, Inc. ("Legacy Entropic"), and it would be the hypothetical licensor. This is also undisputed. Ex. B, Bakewell Report, ¶ 178. At the hypothetical negotiation in 2013, MaxLinear had ***no rights*** to practice the '775 Patent at all. Mr. Bakewell concedes that ███████████████████████ ███████████████████████ *Id.* at ¶ 30. ███████████████████████ ███████████████████████ Therefore it is undisputed that MaxLinear-powered products could not have been "non-infringing alternatives" in 2013. If they were alternatives at all, they were ***infringing***. Infringing alternatives are legally irrelevant to the hypothetical negotiation. It would be no help to Charter to switch from one infringing supplier to another—Charter's use of the alternatives supplied by MaxLinear would still infringe. Perhaps circumstances changed in ███ when ███████████████████████, but that is irrelevant as a matter of law to the 2013 hypothetical negotiation. The Court should grant partial summary judgment that MaxLinear-powered devices cannot be a non-infringing alternative for the '775 Patent because Charter has no evidentiary basis that these products were non-infringing at the time of the hypothetical negotiation (and indeed, it is the opposite).

> **B. It is undisputed that no MaxLinear product supplies the functionality of Charter's PMA which infringes the '682 Patent, and therefore cannot be a substitute.**

MaxLinear-powered devices cannot serve as a non-infringing alternative for the '682 Patent because neither Charter nor its experts have identified ***any*** MaxLinear product or service that could substitute for the functionality of the system that infringes the '682 Patent. In fact,

6

review of Dr. Almeroth's opinions, relied upon by Mr. Bakewell, confirm there can be no MaxLinear NIAs for this patent. Charter infringes the '682 Patent by using CMTSs (infrastructure devices) carrying out Charter's ▇▇▇▇▇. MaxLinear does not supply CMTSs, chips for them, or any related software. The closest Charter and its experts can come is to point to *cable modems* with MaxLinear chips. Ex. B, Bakewell Rep. ¶ 215; *Id.*, Ex. A, Almeroth Rep. ¶ 144. But cable modems are irrelevant to the infringing system, which is entirely implemented by the CMTSs, as Charter's technical expert Dr. Almeroth concedes: ▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇ Ex. A, Almeroth Rep., ¶ 136. Dr. Almeroth instead only ▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇ *Id.* at ¶ 144. But they are not accused of infringement and, consequently, there are no NIAs.

Because no cables modems are accused of infringing the '682 Patent and Charter otherwise concedes that cable modems with MaxLinear chips are irrelevant to the infringing system of the '682 Patent, the Court should enter partial summary judgment that such products are not non-infringing alternatives relevant to the hypothetical negotiation of the '682 Patent.

> C. **For all remaining Patents-in-Suit, no reasonable jury could find that MaxLinear-powered devices are non-infringing alternatives relevant to the hypothetical negotiations.**
>
> > 1. **As a matter of law, the hypothetical licensor's own product is not an "alternative" or "substitution."**

A non-infringing alternative must be *an alternative*. The patentee's own product is not—it is the comparator. In the lost profits context, this is self-evident. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017) ("The correct inquiry under *Panduit* is whether a non-infringing alternative would be acceptable *compared to* the patent

7

owner's product . . . ."); *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991) ("by definition, non-infringing products do not represent an embodiment of the invention").

The logic underpinning those cases must apply equally to the reasonable royalty context.[2] Starting from first principles, the purpose of considering an alternative in a reasonable royalty analysis is the assumption that the alternative might affect the parties' bargaining positions, since it might be a reason for the hypothetical licensor to pay less. *See, e.g.*, *Hughes Tool Co. v. G. W. Murphy Indus., Inc.*, 491 F.2d 923, 930–31 (5th Cir. 1973) ("The existence of a non-infringing alternative reduces the value of the patent and thus the damages from infringement."). This possibility exists for one reason—the hypothetical licensor cannot control the alternative. If the alternative is non-infringing and thus beyond the reach of the patent, the patent owner would not be able to exclude. The patent owner could not stop the counterparty from using the substitute, nor could the patent owner change the price of some other company's product. It is entirely different with the licensor's own product. The hypothetical licensor controls that "alternative's" availability and its price—a price that could be raised to charge for the value of the patent in a market where infringement by others is forbidden. Regardless, in the hypothetical negotiation, pointing to the patent owner's own product—which uses the patented technology—would only **strengthen** the patent owner's bargaining position. If the only alternative is to use a product that **still practices the patent**—and where, like here, that product is only sold by the licensor—it is inescapable that the patent's value can only go up. This is why the patent owner's own product is not recognized by

---

[2] Entropic has searched and located no case that has resolved this precise issue—whether a hypothetical licensor's own product, that practices the patents but is not infringing because it is made by the patent owner, is a "non-infringing alternative" or "substitute" relevant to a reasonable royalty analysis—because Entropic has located no case where an accused infringer has attempted to make such an argument.

8

the law as an NIA that reduces the value of the patent.

Mr. Bakewell's opinions are illustrative of why the law does not recognize the licensor's own product as an alternative undermining the reasonable royalty. Mr. Bakewell opines that MaxLinear would have had less bargaining power, and would have reduced the price of a license (dramatically according to Mr. Bakewell).[3] But why? The threat of not providing a bargain license is no threat at all—it is a boon. The alternative is Charter diverting all its purchases to products using MaxLinear chips, generating extra business and profit.[4] MaxLinear would have accepted less in license fees to avoid securing more business? Mr. Bakewell's conclusion is unmoored from a real-world licensing negotiation and also contrary to law because no licensor would accept such a royalty. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987) ("[The] imposition on a patent owner who would not have licensed his invention for [a given] royalty is a form of compulsory license, against the will and interest of the person wronged, in

---

[3] *See* Ex. B, Bakewell Rep., ¶ 647, Exhibit 1.0.
[4] The fact that the devices are sold by third parties to Charter is of no moment because the evidence in this case establishes that ▬▬▬ *see, e.g.*, Ex. C, Boglioli Tr. at 32:5–34:7, ▬▬▬ *See, e.g.*, Ex. D, Kaufman Tr. at 52:24–53:1 ▬▬▬ Ex. E, Henricks Tr. at 16:14–19 ▬▬▬ Ex. F, Dani Tr. at 113:10–126:17 ▬▬▬ Indeed, Mr. Bakewell admits that ▬▬▬ Ex. B, Bakewell Rep. ¶ 148. *See* Boglioli Tr. at 43:15–21 ▬▬▬

favor of the wrongdoer."). Precisely because the price of a hypothetical license cannot be driven down by an alternative that is merely the hypothetical licensor's own products, such products cannot be considered NIAs as a matter of law.

The Court should grant partial summary judgment that MaxLinear-powered devices are not non-infringing alternatives because, as a matter of law, the hypothetical licensor's own products practicing the patent are not available as alternatives in a hypothetical negotiation.

> 2. **If Dr. Almeroth and Mr. Bakewell's opinions on non-infringing alternatives are stricken, there is no evidence on which a reasonable jury could rely to conclude that MaxLinear-powered devices are non-infringing alternatives.**

If the Court strikes Dr. Almeroth and Mr. Bakewell's opinions on MaxLinear-powered devices being a non-infringing alternative, for the reasons addressed in concurrently-filed motions, there is no genuine issue of material fact remaining because there is no evidence on which a reasonable jury could rely to conclude that MaxLinear-powered devices are non-infringing alternatives relevant to the reasonable royalty analysis. For instance, there would be *no evidence* that these devices were available, feasible, and non-infringing. *See LaserDynamics v. Quanta Comput., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011) ("only those substitutes that the infringer proves were 'available' during the accounting period can limit a patentee's damages—substitutes only 'theoretically possible' will not."); *see also Exmark Mfg. Co. Inc.*, 870 F.3d at 1349 (damages opinion only relevant to reasonable royalty analysis if expert "sufficiently tie[s] the expert testimony on damages to the facts of the case"). Indeed, Entropic has alleged in its motions to strike Mr. Bakewell and Dr. Almeroth's opinions on non-infringing alternatives that even with their opinions, Charter has failed to show that the MaxLinear-powered devices are available non-infringing alternatives at the time of the relevant hypothetical negotiations. Because the jury cannot assess what effect, if any, the MaxLinear chips would have

on a reasonable royalty rate without evidence as to availability, feasibility, or technical substitution, this Court should grant partial summary judgment in favor of Entropic finding that MaxLinear-powered devices are not relevant to a reasonable royalty analysis.

## VI.     CONCLUSION

For each Patent-in-Suit, there is no evidence on which a reasonable jury could rely to conclude that devices with MaxLinear chips are non-infringing alternatives relevant to the hypothetical negotiations. The Court therefore should grant partial summary judgment that such devices cannot serve as a non-infringing alternative for all of the Patents-in-Suit.

Dated: September 11, 2023                                   Respectfully submitted,

*/s/ James A. Shimota*
James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com
ketajh.brown@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com

11

courtney.neufeld@klgates.com

Darlene Ghavimi
Matthew A. Blair
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

Christina N. Goodrich
Connor J. Meggs
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5031
Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on September 11, 2023.

*/s/ James A. Shimota*
James A. Shimota

# EXHIBIT A- F

# FILED UNER SEAL