# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>  *Plaintiff*,<br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  *Defendant*. | Civil Action No. 2:22-CV-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

# PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S REPLY
# IN SUPPORT OF ITS MOTION
# <u>TO STRIKE OPINIONS OF CHRISTOPHER BAKEWELL</u>

A.   **Mr. Bakewell did not disclose the basis for his opinions on NIAs.**

Charter does not dispute that Mr. Bakewell is subject to the requirements of Rule 26(a)(2)(B). Mr. Bakewell therefore was required to provide a report containing "a complete statement of all opinions the witness will express ***and the basis and reasons for them***" and "***the facts or data considered by the witness in forming them***." FED R. CIV. P. 26(a)(2)(B)(i) (emphasis added). Mr. Bakewell did not do that. Despite Mr. Bakewell offering opinions that ▇▇▇▇ ▇▇▇▇▇▇▇▇ are non-infringing alternatives ("NIAs") to all asserted patents and criticizing that these devices should have been considered as part of the hypothetical negotiation, Charter does not dispute that Mr. Bakewell's report itself does not disclose:

1. Any basis that any specific ▇▇▇▇▇▇▇▇▇▇▇ was available at any particular point;

2. Any technical basis that any specific ▇▇▇▇▇▇▇▇▇ was an alternative to the technology of any particular asserted patent; or

3. Any basis or analysis as to how or why any ▇▇▇▇▇▇▇▇ would have impacted the hypothetical negotiation and its outcome.

Instead, Charter points to two items that *are not cited* in Mr. Bakewell's report: (1) a separate report that Dr. Almeroth served; and (2) a single, generic sentence from Charter's interrogatory response. Regardless of whether either *could* provide a sufficient basis, neither is disclosed in Mr. Bakewell's report. Moreover, Charter's interrogatory response about NIAs could not provide a reasonable basis for availability even if Mr. Bakewell had cited it. That response refers generically to Charter's awareness of NIAs. It does not disclose any particular NIA, but rather refers to NIAs generally since the 1990s, a time when ▇▇▇▇▇ did not even exist. Opp. at 5. Not only is Charter's interrogatory response—comprising litigation contentions from its attorneys—not a reliable evidentiary basis for Mr. Bakewell to purportedly ground his opinion, but that response also does not establish that any device was available at any particular time.

1

Charter's only other response is an attempt to create a new rule for rebuttal experts out of whole cloth. In Charter's view, Mr. Bakewell can be treated more leniently because his report is only "offered in rebuttal to Dell's analysis" and he is not "offering an affirmative royalty opinion." But that is not the law. [R]ebuttal expert testimony is not excepted from the reporting requirement of Rule 26(a)(2)(B)"—namely, the requirement for "all opinions to be expressed and the basis and reasons thereof." *Complaint of Kreta Shipping, S.A.*, 181 F.R.D. 273, 276–77 (S.D.N.Y. 1998) (internal quotes omitted). That Charter did not depose Mr. Bakewell also cannot excuse his failure to comply with the Federal Rules. *See, e.g.*, *Bridge Aina Le'a v. Haw. Land Use Comm'n*, No. 11-00414-SOM-KJM, 2017 WL 5617463, at *11 (D. Haw. Nov. 21, 2017) ("Rule 26(a)(2)(B) was designed to reduce the need for costly expert depositions. . . . Defendants were under no obligation to allow [the expert] to fix his report through deposition testimony.").

In sum, Charter does not meaningfully dispute that Mr. Bakewell did not disclose: (1) any technical basis that any of the ▮▮▮▮ were alternatives to any technology in an asserted patent; (2) any basis that any ▮▮▮▮ was available at the time of any hypothetical negotiation date; or (3) any basis or analysis as to **how** any ▮▮▮▮ would have impacted a hypothetical negotiation. For this reason alone, all of Mr. Bakewell's opinions regarding the ▮▮▮▮ as NIAs should be stricken.

**B.     Using the correct law, Charter's NIA for the '775 Patent must be stricken.**

Charter does not dispute that ▮▮▮▮ were not an available alternative to the '775 Patent at the time of the hypothetical negotiation. Instead, Charter argues that a NIA need only be available at any point in "the period of infringement," relying on *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999). Again, this is not the law. *Grain Processing* and *Micro Chemical* are lost profits cases. *Grain Processing Corp.*, 185 F.3d at 1347–49; *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). In that context,

2

looking at the full damages period makes sense—it is part and parcel of lost profits that a plaintiff must prove that *all* of the sales would have been theirs.

But, in this context, a reasonable royalty is different. As the Federal Circuit has made plain, the correct inquiry is whether the alternative was available "as of the beginning of [the defendant's] infringement" because this is when the negotiation takes place, and an alternative not known to be available could not impact that negotiation. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. Apr. 7, 2015); *see also DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2011 WL 8810604, at *9 (E.D. Tex. Aug. 2, 2011) (quoting *Fresenius Med. Car Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-01431 SBA, 2006 WL 1646113, at *1 (N.D. Cal. June 12, 2006)) ("[A] key part of the reasonable royalty determination under *Georgia Pacific* is whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation.").[1] And, Mr. Bakewell himself admits this. Mot., Ex. A, ¶ 226 ("I understand that the analysis of non-infringing alternatives occurs at the time of the hypothetical negotiation(s)."). Here, Charter offers no basis that a ▬▬▬▬▬▬▬▬▬▬ even would have been *anticipated* as an NIA in 2013, let alone actually available. Instead, Charter simply takes what happened and seeks to apply it retroactively. This is exactly the approach the Federal Circuit has cautioned "incorrectly replaces the hypothetical inquiry in what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have

---

[1] Charter's attempt to cast aspersions on *AstraZeneca* is transparently disingenuous. Judge Koh in the *Apple v. Samsung* case simply was observing that "*AstraZeneca* [does not] broadly stand for the proposition that a product can never be used to show the availability of a noninfringing alternative to a given patent *merely because it infringes other patents*." No. 11-CV-01846-LHK, 2016 WL 524904, at *8 (N.D. Cal. Feb. 10, 2016) (emphasis added). Aside from considering different grounds in *AstraZeneca*, that case, like the others Charter mistakenly cites, concerned lost profits and the proper temporal consideration was "the time of infringement," not the date of a hypothetical negotiation. *Id*. at *3, *8.

happened." *Aqua Shield v. Inter Pool Cover Team*, 774, F.3d 766, 772 (Fed. Cir. 2014).

C. **Charter points to no evidence that a ▓▓▓▓▓▓▓▓▓▓ would be relevant to a hypothetical negotiation with ▓▓▓▓▓.**

Charter does not dispute that a hypothetical licensor's own product cannot, as a matter of law, be an NIA. Instead, Charter asserts that ▓▓▓▓▓▓▓▓▓▓ can be NIAs—even though ▓▓▓▓ is the hypothetical licensor—because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. This statement is demonstrably false—Entropic's footnote of evidence takes up nearly half a page in its Motion. *See* Mot. at 7 n.6. The record evidence is voluminous that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But most importantly: it is undisputed. Charter offers no evidence to the contrary. This is in line with Mr. Bakewell's report. Mr. Bakewell never analyzes the third-party nature of the devices or how that would impact the hypothetical negotiation. Instead, Mr. Bakewell's report discusses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Mot., Ex. A, ¶ 667. In sum, Mr. Bakewell's report provides no basis on which a factfinder could rely to conclude that ▓▓▓▓ would be relevant NIAs in a hypothetical negotiation with ▓▓▓▓ itself.

D. **Mr. Bakewell's opinions that rely on late-produced ▓▓▓▓▓▓ and the documents themselves must be excluded.**

Charter does not dispute that it has known for quite some time that ▓▓▓▓ is relevant to this case. Charter also does not seriously dispute that the timing of the late disclosure is highly prejudicial—if cross-examination at trial were sufficient to cure prejudice, every late production would be excused. Charter's only claimed excuse is Entropic did not request ▓▓▓▓▓▓▓▓▓▓▓▓ specifically enough. Mot. at 10. This statement is false, but also irrelevant. It is false because Entropic repeatedly asked for *all* subscriber data for *all* service plans.

4

*See, e.g.*, Mot., Ex. H at 2. Entropic also specifically requested documents regarding the "tracking" of customers' use *and* clarified that this request included ▇▇▇▇▇▇▇. Opp. at 10 n.4; Mot. at 11, Ex. I. Charter essentially complains that Entropic should have hounded Charter to produce numbers Entropic did not know existed. But that complaint is irrelevant because Charter had an obligation under the Discovery Order to produce "all documents . . . that are relevant to the pleaded claims or defenses involved in this action." Dkt. 34. Charter was not permitted to withhold information it knew was relevant and responsive simply because Entropic did not ask certain deposition questions or did not "complain" enough. Opp. at 11. Adding to the prejudice, Charter then *created new documents* for its damages expert—based on data it had available throughout the fact discovery period—after reviewing Entropic's damages report. Such gamesmanship is highly prejudicial and exactly what the Federal Rules prohibit.

E. **Charter never disclosed ▇▇▇▇ as a comparable license and its late-produced license and the related opinions should be excluded.**

Charter concedes that it knew the ▇▇▇▇▇▇▇▇▇▇ was relevant. Charter's only explanation for its out-of-time production is that it "inadvertently" failed to produce it. Opp. at 15. But inadvertence is no excuse. *See GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00311-JRG, 2021 WL 603726, at *3 (E.D. Tex. Feb. 16, 2021) (striking reliance on source code disclosed after discovery "[r]egardless of whether this information was . . . inadvertently withheld"). And the prejudice to Entropic would be significant. Although Charter disclosed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ as a comparable license despite Entropic's request for that information (and Charter having produced numerous other allegedly comparable licenses). Mot. at 13–14. Now, with fact discovery closed, Charter has deprived Entropic of the ability to take discovery on this purported license—including depositions to investigate the economic circumstances surrounding the license and the motivations for the license. The Court should grant Entropic's Motion.

5

| | |
|---|---|
| Dated: October 3, 2023 | Respectfully submitted, |

/s/ *James A. Shimota*
James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com
ketajh.brown@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com
courtney.neufeld@klgates.com

Darlene Ghavimi
Matthew A. Blair
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

Christina N. Goodrich
Connor J. Meggs
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5031

6

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on October 3, 2023.

／s/ *James A. Shimota*
James A. Shimota

8