UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Civil Action No. 2:22-CV-00125-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>▋ |

**REPLY IN SUPPORT OF ENTROPIC'S MOTION TO EXCLUDE
OPINIONS OF DR. KEVIN ALMEROTH**

## I. DR. ALMEROTH'S OPINIONS ON ESSENTIALITY MUST BE EXCLUDED FOR FAILURE TO PERFORM AN ELEMENT-BY-ELEMENT ANALYSIS

Dr. Almeroth opines that four of the asserted patents are essential for compliance with the DOCSIS specifications, but he fails to perform an element-by-element analysis of any of the asserted claims. Charter does not refute this point and instead asserts that an element-by-element infringement analysis is not required. According to Charter, "Entropic cites no case, nor any contractual language of the ▮▮▮▮▮, requiring this." Opp. at 1. Untrue. Entropic cited to multiple cases which confirm that essentiality requires an element-by-element infringement analysis of the claims. *See INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022) ("Claims are standard essential if . . . all implementations of a standard infringe the claim and the patent covers every possible implementation of a standard") (internal quotes omitted); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020) ("Essentiality is, after all, a fact question about whether the claim elements read onto mandatory portions of a standard that standard-compliant devices must incorporate").

Charter attempts to dismiss these cases by arguing that they relate to infringement. Opp. at 1. But infringement is the correct standard. *See Godo Kaisha*, 967 F.3d at 1385 ("Essentiality . . . is more akin to an infringement analysis"). Charter admits as much, even as it attempts to rewrite the law: "'Essentiality' merely requires showing there is no practical way to comply with the Specifications without *infringing* Entropic's patents." Opp. at 2 (emphasis added). Dr. Almeroth cannot meet Charter's own standard—let alone the Federal Circuit's—because he never conducts a proper infringement analysis, *i.e.* showing every claim element is met. That alone is dispositive.[1]

---

[1] Charter further argues that the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and that the latter would be superfluous if essentiality required an element-by-element analysis. Opp. at 1–2. This is plainly false as an invention can be essential for practicing the standard, without necessarily be explicitly described in the standard. *See Godo Kaisha*, 967 F.3d at 1385. It is not inconsistent for both ▮▮▮▮▮" and ▮▮▮▮▮▮▮▮" to require an element-by-element analysis.

1

Because Dr. Almeroth fails to show that *any* claim is essential for practicing the standard, the Court need not take up the issue of whether the ▮▮▮▮▮ is on a "patent-by-patent rather than a claim-by-claim basis," as Charter contends it is. *See* Opp. at 4. Nor is Charter correct that "there is ample evidence of record for a jury to consider together with Almeroth's opinion." *Id*. This is not a case where Dr. Almeroth has failed to address "particular factors" (*see id.*), but rather entire claim elements. His opinions regarding essentiality would be of no help to the jury, the same as if an infringement expert attempted to opine on infringement without performing a complete element-by-element claim analysis.

## II.   DR. ALMEROTH'S OPINIONS ON NON-INFRINGING ALTERNATIVES

For the '682 Patent, Charter acknowledges that Dr. Almeroth has no opinions as to the use of ▮▮▮▮▮ in CMTSs. *See* Opp. at 7. Therefore, Dr. Almeroth will not and cannot opine that devices with ▮▮▮▮▮ can serve as non-infringing alternatives for the '682 Patent.

As to the '775 Patent, there is no dispute that the ▮▮▮▮▮ could not have been licensed at the time of the hypothetical negotiation. Charter argues that Dr. Almeroth's opinions are still relevant because ▮▮▮▮▮ were sold at a later time during the damages period. Charter cites to *Grain Processing Corp.*, but that case was speaking in terms of lost profits analysis, not reasonable royalty. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) ("Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits"). In the reasonable royalty context, a non-infringing alternative must have been regarded as non-infringing at the time of the hypothetical negotiation. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015) (products "not found to be non-infringing until 2007, would not have been considered as non-infringing alternatives in November 2003").

2

Charter cites to cases regarding the use of post-negotiation information to inform the reasonably royalty damages, but none of these cases endorse consideration of non-infringing alternatives that did not exist, and were not anticipated, at the time of the negotiation. *See Sinclair Ref. Co. v. Jenkins Petrol. Process Co.*, 289 U.S. 689, 698 (1933); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 722 (Fed. Cir. 2014); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016). To the contrary, *Aqua Shield* warns against Charter's approach because that approach "incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened." 774 F.3d 766, 772 (Fed. Cir. 2014). Here, there is no evidence that the parties to the hypothetical negotiation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

With respect to the remaining asserted patents, Dr. Almeroth fails to tailor his analysis to ▮▮▮▮▮▮▮▮ and show that they were available as of the relevant dates. Charter responds that availability is a factual question, and there is sufficient evidence for the jury to find ▮▮▮▮▮▮▮▮ were available to Charter. *See* Opp. at 7. But it is not sufficient to say ▮▮▮▮▮▮▮▮ generally were available. Although Dr. Almeroth identifies examples of ▮▮▮▮▮▮▮▮ (¶¶ 104–115), he does not tie any of them to the asserted claims. Instead, he opines broadly that ▮▮▮▮▮▮▮▮ would be a non-infringing alternative for each patent, again without even focusing on the correct time period. This goes to Dr. Almeroth's incomplete methodology, not the weight of the evidence. Further, his failure to identify specific products impairs Entropic's ability to cross-examine him about which products he claims were non-infringing alternatives to which patents at which date.

3

### III. DR. ALMEROTH'S IMPROPER CLAIM CONSTRUCTION ANALYSIS

Charter acknowledges that Dr. Almeroth may not mention the parties' claim construction positions or portions of the Court's claim construction opinion to the jury, and Charter concedes that Dr. Almeroth "will not do so." Opp. at 8. Thus, Dr. Almeroth cannot express the opinions in Paragraphs 142, 351, and 356 of the Almeroth Rebuttal Report.

As to the remaining disputed paragraphs, Charter contends that Dr. Almeroth has not engaged in improper claim construction analysis and that he may appropriately rely on inventor testimony. In support of its position, Charter cites to a case out of the Southern District of California. *See Echologics, LLC v. Orbis Intelligent Sys., Inc.*, Case No.: 21-cv-01147-H-AHG, 2023 WL 2752861, at *6 & n.1, *7–8 (S.D. Cal. Mar. 27, 2023). *Echologics* is distinguishable in a way that supports Entropic, not Charter. In *Echologics*, the Court noted that the expert's opinions were permissible in large part because "there are no citations to the specification or the file history," which would indicate an intent to argue claim construction. *Id.* at n.2. Here, by contrast, Dr. Almeroth ***does*** rely on citations to the specification in addition to inventor testimony. *See e.g.* Rebut. Rep. ¶¶ 345, 333–336, 351, 385 (all citing to '775 Patent specification and figures). Thus, Dr. Almeroth's opinions "bear the hallmarks of claim construction analysis" that were not present in *Echologics*, and he should be precluded from offering improper opinions on claim constructions, including at least Paragraphs 142, 333–337, 345–346, 351, 356, 368, and 385 of the Almeroth Rebuttal Report.

### IV. DR. ALMEROTH'S RELIANCE ON DOCUMENTS AND INFORMATION THAT WERE NOT TIMELY DISCLOSED

Charter purportedly shut down ▬▬▬▬▬▬▬▬▬▬ on ▬▬▬▬▬ already 19 days after the scheduled close of fact discovery. *See* Dkt. No. 89 at p. 3; *see also* Dkt. No. 138 (order granting limited fact discovery out of time, through August 11). A month later, Charter

4

produced new documents and supplemented its interrogatory response relating to the alleged ▮. This delay was neither substantially justified nor harmless, and Charter's expert should be precluded from relying on this belatedly produced discovery.

It was not substantially justified because Charter was obligated by the discovery order to produce all documents within its possession, custody, or control relevant to the pleaded claims or defenses. *See* Dkt. No. 34 at 3. This obligation included documents relating to Charter's ▮ ▮ which Entropic had specifically requested in discovery correspondence. *See* Ex. K to Shimota Decl., June 20, 2023 Letter from Peter Soskin, at 3 ("Documents and other materials showing Charter's ▮ ▮ Charter should have produced the supplemental discovery on ▮ but instead withheld it until just two days before the parties served rebuttal expert reports.

Nor was the delay harmless. Although Entropic was able to question Charter's corporate witness regarding the alleged ▮ Entropic had no opportunity to ask questions regarding the supplemental screenshots produced on September 7 or the alleged conversation between Dr. Almeroth and ▮. Charter's failure to produce relevant discovery has prejudiced Entropic because Entropic could not question Charter's witnesses about it.

Finally, Charter was completely in control regarding the timing and manner of its alleged ▮. Charter purportedly decided to terminate its ▮, and they decided to take that action *after* the initial close of fact discovery, undercutting Entropic's ability to obtain discovery surrounding the ▮. These circumstances further show that Dr. Almeroth should be precluded from relying on the late-produced discovery.

5

| | |
|---|---|
| Dated: October 3, 2023 | Respectfully submitted |
| | */s/ James A. Shimota*<br>James Shimota<br>Jason Engel<br>George Summerfield<br>Katherine L. Allor<br>Samuel P. Richey<br>Ketajh Brown<br>**K&L GATES LLP**<br>70 W. Madison Street, Suite 3300<br>Chicago, IL 60602<br>Tel: (312) 807-4299<br>Fax: (312) 827-8000<br>jim.shimota@klgates.com<br>jason.engel@klgates.com<br>george.summerfield@klgates.com<br>katy.allor@klgates.com<br>samuel.richey@klgates.com<br>ketajh.brown@klgates.com<br><br>Nicholas F. Lenning<br>Courtney Neufeld<br>**K&L GATES LLP**<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104-1158<br>Tel: (206) 623-7580<br>Fax: (206) 623-7022<br>nicholas.lenning@klgates.com<br>courtney.neufeld@klgates.com<br><br>Darlene Ghavimi<br>Matthew A. Blair<br>**K&L GATES LLP**<br>2801 Via Fortuna, Suite 650<br>Austin, Texas 78746<br>Tel: (512) 482-6800<br>darlene.ghavimi@klgates.com<br>matthew.blair@klgates.com<br><br>Christina N. Goodrich<br>Connor J. Meggs<br>**K&L GATES LLP**<br>10100 Santa Monica Blvd., 8th Floor<br>Los Angeles, CA 90067<br>Tel: (310) 552-5031 |

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on October 3, 2023.

/s/ *James Shimota*
James Shimota

8

# EXHIBIT K

# FILED UNDER SEAL