**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>        *Plaintiff*,<br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>        *Defendant.* | Civil Action No. 2:22-CV-00125-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>██████████████ |

**ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO**
**DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION TO**
**STRIKE ENTROPIC'S SECONDARY CONSIDERATIONS POSITIONS**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 2

     A.    Charter failed to take any meaningful action on Entropic's allegedly deficient interrogatory response................................................................................. 2

     B.    Charter postponed Mr. Teksler's deposition for months. ............................... 3

     C.    The designation of documents under the Protective Order prevented Entropic's Rule 30(b)(6) witness Mr. Teksler from knowing the underlying facts of Entropic's secondary considerations................................................................ 3

     D.    Charter *has* responded to Entropic's secondary considerations. .................................. 5

     E.    Charter questioned Entropic's experts on secondary considerations........................... 5

     F.    Entropic explained to Charter that this motion is baseless. .......................... 5

III.  LEGAL ARGUMENT ............................................................................... 6

     A.    There is no prejudice to Charter.................................................................. 6

     B.    The information sought in deposition was not known or reasonably available to Entropic........................................................................................................ 8

IV.  CONCLUSION ......................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brazos River Auth. v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ...................................................8

*Function Media, L.L.C. v. Google, Inc.*,
    No. 2:07–CV–279–CE, 2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ......................................8

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
    No. 2:16-CV-00055-JRG-RSP, 2017 WL 5165606 (E.D. Tex. Oct. 15, 2017) .......................7

*MLC Intell.l Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ...................................................7

*Semcon IP Inc. v. MediaTek USA Inc.*,
    No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871 (E.D. Tex. Feb. 28, 2018)........................7

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
    No. 3: 06-CV-0271-B, 2007 WL 4410370 (E.D. Tex. Dec. 14, 2007) ..................................8

**Court Rules**

Local Rule CV-5(a)...........................................................................................12

Rule 26 ...........................................................................................................9

Rule 30(b)(6)...........................................................................................2, 3, 6, 8

## I.    INTRODUCTION

Charter's motion treads dangerously near frivolity. Before filing, Entropic explained that there is no merit to this motion. Charter's motion asserts that Entropic's corporate representative did not testify regarding the factual bases for Entropic's secondary considerations, delaying the disclosure until Entropic served a supplemental interrogatory response. How long was the delay? ***Two days.*** That is not a delay meriting exclusion.

And what prejudice did those two days cause? Charter claims its experts "could not prepare opinions on secondary considerations" and have been "foreclosed" from responding. Motion at 8. If true, that would be obvious and severe prejudice. But it's not—Charter's expert ***did respond***. Dr. Steven H. Goldberg addressed Entropic's secondary considerations positions on August 14 in a fulsome 15-page supplemental report, twenty-four days after Entropic's interrogatory response and after reviewing Entropic's expert reports addressing secondary considerations. If Charter's expert wanted to say more, he could have—it has been six weeks and the parties have filed numerous other supplemental expert reports by mutual consent. With this fact—absent from Charter's motion—the basis for Charter's motion disintegrates.

But beyond Charter's clear lack of prejudice from a two-day delay, Charter also neglects to mention that Entropic's corporate witness could not testify about secondary considerations positions that he (and Entropic itself) are ***prevented from knowing by the Protective Order***. Something, again, Entropic explained before Charter filed this motion. The factual basis for Entropic's positions comes from deposition transcripts and documents that are designated Attorneys' Eyes Only under the Protective Order. And apparently Charter agrees—it filed the motion under seal and later redacted *all* exhibits and *all* of Entropic's interrogatory responses about secondary considerations. *See* Dkt. No. 186. Consequently, neither Entropic the entity, nor its CEO

and Rule 30(b)(6) witness Mr. Teksler, had any information to share. Charter had no response to this point on the parties' meet and confer. And, although Charter went ahead and filed its motion, it appears nothing has changed. Nowhere in the motion does Charter even acknowledge that the basis for Entropic's secondary considerations positions are contained in deposition transcripts and documents marked AEO. Obeying the protective order is not grounds to strike.

In summary, both of Charter's bases for this motion to strike crumble when all the facts are provided. Entropic respectfully requests that the Court deny the motion.

## II.      FACTUAL BACKGROUND

### A.      Charter failed to take any meaningful action on Entropic's allegedly deficient interrogatory response.

Charter's motion fails to identify a single instance during fact discovery—over more than a year—in which it raised Entropic's response to Interrogatory No. 15 or any alleged prejudice. This omission is intentional because Charter knows the facts are unfavorable. Entropic disclosed its initial secondary considerations positions in December. Charter then sent Entropic a single letter—back on January 5th before Charter had even meaningfully begun participating in discovery—raising Entropic's response to Interrogatory No. 15 in a cursory two paragraphs amid complaints about sixteen other interrogatories. Lenning Decl. ¶ 2, Ex. A. Entropic responded to that letter on January 26th, explaining that it was not aware of any further non-privileged information because Charter and third parties had not yet provided discovery, and that Entropic would supplement before the close of fact discovery. Lenning Decl., ¶ 3, Ex. B. The parties subsequently met and conferred, and Entropic served supplemental interrogatory responses to address certain issues raised by Charter. Lenning Decl., ¶ 4, Ex. C. Charter never responded to Entropic's letter and Entropic understood the issue to be resolved. Charter never again raised an

alleged deficiency with respect to Interrogatory No. 15 until contacting Entropic to meet and confer about its motion to strike.

### B.      Charter postponed Mr. Teksler's deposition for months.

Entropic was nothing but cooperative in working with Charter to schedule the deposition of Mr. Teksler in a timely manner. It was Charter who postponed Mr. Teksler's deposition for months, with multiple short-notice cancellations. Mr. Teksler's deposition was originally scheduled for May 12, 2023. Lenning Decl., ¶ 5, Ex. D at 10. At this time, Charter knew that Mr. Teksler would be testifying on secondary considerations. *Id.* at ¶ 5, Ex. D at 5. But—with Entropic's counsel having already traveled—Charter cancelled and asked to reschedule. *Id.* at ¶ 6, Ex. D at 1. Entropic proposed a new date of July 13, 2023 for Mr. Teksler's deposition and Charter confirmed this date worked. *Id.* at ¶ 7, Ex. E at 4–5. However, again on July 5, 2023, Charter asked to reschedule Mr. Teksler's deposition. *Id.* at ¶ 8, Ex. E at 3–4. Entropic confirmed Mr. Teksler would make himself available on July 19, 2023, one of the two dates Charter proposed. *Id.* at ¶¶ 8–9, Ex. E at 1, 3–4. Mr. Teksler's deposition occurring two days before the close of fact discovery is Charter's fault alone.

### C.      The designation of documents under the Protective Order prevented Entropic's Rule 30(b)(6) witness Mr. Teksler from knowing the underlying facts of Entropic's secondary considerations.

On July 19, 2023, Charter deposed Entropic's CEO Boris Teksler. Charter asked Mr. Teksler about Entropic's response to Interrogatory No. 15 regarding secondary considerations. Lenning Decl., ¶ 10, Ex. F at 251:1–257:10. Mr. Teksler explained, ███████████████ ████████████████████████████████████████ *Id.* at 252:5–6. Mr. Teksler continued to respond for each question related to Interrogatory No. 15 ████████████████████████████████ ██████████████████████ *Id.* at 253:2–7; *see also id.* at 253:8–257:10. Charter, at best, mischaracterizes Mr. Teksler's testimony stating Mr. Teksler testified that there were ***no*** secondary

considerations. Motion at 1 ("Entropic supplemented its interrogatory response with detailed contentions and factual allegations regarding secondary considerations, despite the 30(b)(6) witness having testified that there were none."). It is evident, however, from both the deposition transcript and Entropic's interrogatory response that is blatantly false. Instead, ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████

On July 21, 2023, after having diligently reviewed the many thousands of documents that Charter produced in discovery including in the final week, Entropic supplemented its response to Interrogatory No. 15 prior to the close of discovery. Lenning Decl., ¶ 11, Ex. G at 40–44. Entropic largely relied on Charter's documents to "[d]etail all bases . . . for any and all secondary considerations/objective indicia of nonobviousness of the claims." *Id.* Out of the fifty-seven documents Entropic cites to in its supplemental response to Interrogatory No. 15, forty-four of the documents are designated attorney-eyes only. Lenning Decl., ¶ 12. Entropic also relied extensively on the depositions of third parties and Charter witnesses, the transcripts of which were all designated AEO under the Protective Order. The thirteen undesignated documents are marketing materials and public documents on DOCSIS that support the underlying factual basis that is contained in the documents designated AEO. Of the documents relied upon, many were produced in March 2023. Lenning Decl., ¶ 13. Others, however, (including the depositions) came even later—in May,  June, and July. *Id.* Because Mr. Teksler, and everyone else at Entropic, is prohibited by the Protective Order from accessing documents designated AEO—or any copy, reproduction, extract, digest, or complete or partial summary—Entropic's 30(b)(6) witness consequently could not be prepared regarding the contents of those documents.

### D.      Charter *has* responded to Entropic's secondary considerations.

In his opening report, Charter's expert on invalidity, Dr. Steven A. Goldberg, addressed secondary considerations and objective indicia of non-obviousness for all asserted patents, concluding he was unaware of any. Lenning Decl., ¶ 14, Ex. H ¶¶ 85, 233, 357, 482. On August 14, 2023, after having reviewed Entropic's supplemental interrogatory response and Entropic's rebuttal expert reports on invalidity, Dr. Goldberg served a supplemental expert report addressing secondary considerations and objective indicia of non-obviousness across 15 pages of analysis. *Id.* ¶ 15, Ex. I. In the six weeks that have followed, Dr. Goldberg has not sought to further supplement.

### E.      Charter questioned Entropic's experts on secondary considerations.

Prior to the filing of this Motion, Charter also took the depositions of all three of Entropic's experts that have offered opinions on validity and, specifically, secondary considerations of non-obviousness. During each deposition, Charter had the opportunity to ask each of Entropic's experts about Entropic's secondary considerations—and did so. On August 22, 2023, Charter took the deposition of Dr. Pooley and asked about secondary considerations. Lenning Decl., ¶ 16, Ex. J at 117:16–124:11. On August 23, 2023, Charter took the deposition of Mr. Holobinko and asked about secondary considerations. Lenning Decl., ¶ 17, Ex. K at 84:8–88:3. And on August 24th, Charter took the deposition of Dr. Kramer. Lenning Decl., ¶ 18, Ex. L. While Dr. Kramer himself raised his opinions on secondary considerations, Charter did not ask any follow-up questions. *See id.* at 91:15–92:25.

### F.      Entropic explained to Charter that this motion is baseless.

The parties met and conferred regarding this motion on August 15, 2023 and again on September 1, 2023. Lenning Decl., ¶¶ 19–20. On the second meet and confer, Entropic explained to Charter that it did not understand its contention that Mr. Teksler was required to testify regarding

materials he was prohibited from accessing and that Entropic saw no prejudice here. *Id.*, ¶ 20. Charter's counsel did not respond, other than to note that it disagreed.

## III.   LEGAL ARGUMENT

Charter asserts that: (1) it has suffered prejudice because "Charter's invalidity experts could not prepare opinions on secondary considerations" and Charter's experts have been "foreclosed . . . from providing responses" to Entropic's contentions and the opinions of Entropic's experts; and (2) Entropic's representative, Boris Teksler, should have testified to Entropic's contentions regarding secondary considerations. Both of those arguments are flagrant misrepresentations by omission. Motion at 8.

### A.   There is no prejudice to Charter.

Charter alleges three ways in which Entropic's ***two-day delay*** between Mr. Teksler's deposition and Entropic's supplemental interrogatory response prejudiced Charter: (1) "Charter was unable to take a Rule 30(b)(6) deposition on the facts and contentions in Entropic's supplemental interrogatory response"; (2) "Charter's invalidity experts could not prepare opinions on secondary considerations in their opening reports"; and (3) Charter's experts were "foreclosed . . . from providing responses" to the opinions in the rebuttal reports of Entropic's experts. Motion at 8. All three of these are meritless.

First, as explained above, Entropic did not know "the facts and contentions in Entropic's supplemental interrogatory response" because they were designated AEO. Charter therefore did not miss anything—regardless of the timing, Entropic's corporate representative could not have been prepared to testify regarding materials he and Entropic were prohibited from accessing. To the extent there is prejudice, it flows from the Protective Order.

Second, Charter's expert on validity, Steven Goldberg, ***did*** prepare opinions on secondary considerations and ***did*** respond to the opinions of Entropic's experts regarding secondary

6

considerations. *See supra* at II.E. Charter's argument that it was "foreclosed" from doing so thus is demonstrably untrue. Any prejudice therefore was cured when Dr. Goldberg served his report on August 14th—or could have been cured by serving a further supplemental report at any point in the six weeks that have followed.

To the extent Charter's true complaint is about the timing of the supplementation itself, that complaint too is meritless. Charter's meandering approach to discovery in this case led to many thousands of documents being produced in the final months of discovery. For example, at the time of Entropic's original interrogatory response last December, Charter had produced only 1,360 documents, the vast majority of which were blatantly irrelevant ███████████ ██████████, Lenning Decl. ¶ 24, Ex. M, or ████████████████, *id.* ¶ 25, Ex. N). Lenning Decl., ¶ 21. On March 31, Charter then dumped 15,896 documents on Entropic. *Id.* at ¶ 22. In the last two months of discovery—between May 23 and July 21—Charter produced 17,922 documents (nearly 50% of all documents Charter produced in well over a year of discovery). *Id.* at ¶ 23. Entropic diligently reviewed these documents, and the testimony of witnesses such as Curtis Ling that occurred in the last two weeks of fact discovery, and properly supplemented its interrogatory response before the close of fact discovery. Lenning Decl., ¶ 11. There simply is no basis for Charter's assertion that "Entropic had known the pertinent facts for months."

Charter's reliance on *MLC Intell.l Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358 (Fed. Cir. 2021), *Semcon IP Inc. v. MediaTek USA Inc.*, No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871 (E.D. Tex. Feb. 28, 2018), and *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00055-JRG-RSP, 2017 WL 5165606 (E.D. Tex. Oct. 15, 2017), is illustrative—in ***all*** of those cases, the party failed to provide an interrogatory response or disclose evidence during fact discovery at all. That is plainly not the case here.

**B.      The information sought in deposition was not known or reasonably available to Entropic.**

Rule 30(b)(6) requires that "[t]he person[] designated must testify about information *known or reasonably available* to the organization." FED. R. CIV. P. 30(b)(6) (emphasis added). Here, the factual basis for Entropic's contentions regarding secondary considerations was not known or reasonably available to Entropic because substantially all of the materials were designated Attorneys' Eyes Only under the Protective Order. Sharing that information with Mr. Teksler—or anyone else at Entropic—would have violated the Protective Order. Thus, Charter's argument that Entropic itself "certainly knew of the fact that it added to its interrogatory supplement two days later on July 21" is false. Motion at 5.

This was explained to Charter before filing its motion, but Charter proceeded anyway. And despite this, Charter does not acknowledge the confidentiality designations of the materials, let alone explain how Mr. Teksler was supposed to testify regarding such materials at the deposition. That fact readily distinguishes the cases cited by Charter: every single one involved information indisputably *available to the corporate deponent. Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (party failed to prepare 30(b)(6) witness on "issues that . . . were within the corporate knowledge of the organization," including for example whether the corporation had received a warranty notice or whether the corporation's work had deviated from contract requirements); *Function Media, L.L.C. v. Google, Inc.*, No. 2:07–CV–279–CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) (Google's 30(b)(6) witness was not prepared regarding Google's own license agreements ); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, No. 3: 06-CV-0271-B, 2007 WL 4410370, at *8 (E.D. Tex. Dec. 14, 2007) (plaintiff's 30(b)(6) witness testified he couldn't quantify plaintiff's damages and then later the same witness filed an affidavit quantifying plaintiff's damages).

## IV.     CONCLUSION

This Court should deny this Motion because it is baseless. The materials on which Entropic relies for secondary considerations were not known to Entropic itself because the materials were designated AEO. Charter also has suffered no prejudice at all as it neglects to mention that it already has served a supplemental expert report addressing Entropic's secondary considerations contentions. Charter has not identified any violation of Rule 26 and consequently there are no grounds to strike either Entropic's interrogatory response or any portion of Entropic's expert reports.

Dated: September 25, 2023

Respectfully submitted,

*/s/ James A. Shimota*
James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com
ketajh.brown@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com
courtney.neufeld@klgates.com

Darlene Ghavimi
Matthew A. Blair
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

Christina N. Goodrich
Connor J. Meggs
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5031

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this twenty-fifth day of September, 2023.

*/s/ James A. Shimota*
James A. Shimota