# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>  *Plaintiff*,<br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  *Defendant*. | Civil Action No. 2:22-CV-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO
CHARTER'S MOTION TO STRIKE
<u>THE EXPERT OPINIONS OF STEPHEN DELL</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

    A. Mr. Dell's report apportions properly for each and every patent. ........................... 1

        1. Mr. Dell's use of Charter's operating profit margins is reliable. ................. 1

        2. Mr. Dell's analysis for U.S. Patent No. 8,223,775 (the "'775 Patent") is carefully tied to the incremental value of Charter's use of the patents. ....... 2

        3. The U.S. Patent No. 9,210,362 (the "'362 Patent") (Theory 2) damages opinion is tied to the incremental value of Charter's use of the patents. ..... 3

        4. The U.S. Patent No. 8,792,008 (the "'008 Patent"), U.S. Patent No. 9,825,826 (the "'826 Patent"), and the '362 Patent (Theory 1) damages opinions are grounded in technical and factual support.............................. 4

        a. Mr. Dell properly apportions out non-infringing features. .................................... 4

        b. Mr. Dell properly apportions between the '362 and the '008 and '826 patents. .... 6

        5. Both U.S. Patent No. 10,135,682 (the "'682 Patent") and U.S. Patent No. 8,284,690 (the "'690 Patent") damages opinions isolate the value of the claimed inventions. ........................................................................ 7

        6. The '362 Patent (Theory 3) opinion is grounded in facts. .......................... 9

    B. Mr. Dell's lump sum royalties are based on proper analysis. ............................... 10

        1. Mr. Dell's analysis of the '682 and '690 is based on Charter's foreseeable use. ........................................................................................ 10

        2. Mr. Dell's use of Charter-produced data for market projections is reliable. ...................................................................................................... 11

    C. Mr. Dell's application of a "benefit share" is grounded in the evidence and must be taken into account. .................................................................................. 11

    D. Mr. Dell has offered no credibility determinations, but as a expert can assess all of the evidence and offer his opinion. ............................................................. 13

II. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allergan Sales, LLC v. UCB, Inc.*,
  No. 2:15-CV-01001-JRG-RSP, 2016 WL 8222619 (E.D. Tex. Nov. 7, 2016) ........................11

*Bmc Software, Inc. v. Servicenow, Inc.*,
  No. 2:14:-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ........................................7

*CSIRO v. Cisco Sys., Inc.*,
  No. 6:11-cv-343, 2014 WL 3805817 (E.D. Tex. July 23, 2014) ................................................3

*Finjan, Inc. v. Sophos, Inc.*,
  No. 14-CV-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ................................12

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-cv-00070-JRG-RSP, 2020 WL 4057640 (E.D. Tex. July 20, 2020) ........................10

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)..................................................................................................13

*Innovation Scis., LLC v. Amazon.com, Inc.*,
  No. 4:18-cv-474, 2020 WL 4201882 (E.D. Tex. July 22, 2020) ..........................................2, 5

*IP Innovation L.L.C. v. Red Hat, Inc.*,
  705 F. Supp. 2d 687 (E.D. Tex. 2010)........................................................................................4

*LaserDynamics v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)......................................................................................................8

*Lucent Techs., Inc. v Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................................................11

*Metaswitch Networks Ltd. v. Genband US LLC*,
  No. 2:14-cv-744-JRG-RSP, 2016 WL 874737 (E.D. Tex. Mar. 5, 2016) .................................2

*U.S. ex rel. Mitchell v. CIT Bank, N.A.*,
  No. 4:14-CV-00833, 2022 WL 1233651 (E.D. Tex. Apr. 26, 2022).......................................14

*Oasis Rsch., LLC v. Adrive, LLC*,
  No. 4:10-CV-435, 2013 WL 12156381 (E.D. Tex. Mar. 1, 2013) ..........................................14

*Opticurrent, LLV v. Power Integrations, Inc.*,
  No. 17-cv-03597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21, 2018)...................................9

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
    No. 8:14-cv-01352-JLS-KES, 2020 WL 9158697 (C.D. Cal. Aug. 7, 2020) ......................... 13

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
    No. 2:15-cv-01366-JRG-RSP, 2021 WL 969271 (E.D. Tex. Mar. 14, 2021) ........................ 13

*PersonalWeb Techs. LLC v. IBM Corp.*,
    No. 16-cv-01266-EJD, 2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) ..................................... 4

*Red Rock Analytics, LLC v. Samsung Elecs. Co., Ltd.*,
    No. 2:17-CV-00101-RWS-RSP, 2019 WL 13212713 (E.D. Tex. Feb. 6, 2019) .................... 12

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................................................. 13

*Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*,
    No. 2:13-CV-213-JRG-RSP, 2015 WL 604577 (E.D. Tex. Jan. 29, 2015) ............................. 8

**Other Authorities**

Local Rule CV-5(a) ........................................................................................................................ 3

I.      INTRODUCTION

Charter moves to strike Mr. Dell's expert report—the whole thing. Charter does not identify specific paragraphs or tie its arguments to particular sections, leaving Entropic and the Court to sort out the arguments. This alone is reason for denial. The Court should not be forced to be more specific in its determination than Charter was with its motion. Moreover, Charter's hodgepodge of arguments either are directed to the weight, not admissibility of Mr. Dell's opinions, or are straw-man arguments aimed at Charter's rewriting of Mr. Dell's report through generous omission. The Court should deny Charter's motion.

A.      **Mr. Dell's report apportions properly for each and every patent.**

Charter claims Mr. Dell performed no apportionment at all. *See* Mot. at 8. But, across the board, Charter's own arguments demonstrate this lofty rhetoric is false. Mr. Dell apportioned. Charter just wishes he had apportioned *more*. That is for the jury to decide. *See, e.g.*, *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18-cv-474, 2020 WL 4201882, at *2 (E.D. Tex. July 22, 2020).

1.      **Mr. Dell's use of Charter's operating profit margins is reliable.**

Charter argues Mr. Dell could not have apportioned because he began his analysis with Charter's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ "specific to [a] single patent or accused service." Mot. at 8. For starters, Charter's argument is about which evidence is most relevant, not whether Mr. Dell's opinion is admissible. Regardless, the position Charter advances—that an infringer's own profit margins are somehow irrelevant—is not the law. Mr. Dell used the logical and best available data—Charter's ▬▬▬▬▬▬▬▬▬▬—as it is Charter's use of the patented technologies to provide services to its customers, across much or all of its business, that is accused. *See, e.g.*, Shimota Decl., ¶ 2, Ex. A ("Dell Rep."), ¶¶ 395–96, Attach. 9.1. That analysis is not only proper, it is routine. Hence why Judge Payne rejected a nearly identical dispute in

1

*Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874737, at *5 (E.D. Tex. Mar. 5, 2016) ("So long as the comparison isolates the value of the patented features—and no more—it is immaterial whether the profitability of a specific product or of an industry is used."). *CSIRO v. Cisco Sys., Inc.*, No. 6:11-cv-343, 2014 WL 3805817 (E.D. Tex. July 23, 2014) is inapposite. Among other errors, the economic expert in *CSIRO* used the average profit margins from five retailers, but *not* the retailer he was actually analyzing. In rejecting that opinion, the *CSIRO* Court correctly observed the expert had not considered the profit margin that "would be the most relevant." *Id.* at *6–7. Here, Mr. Dell relied on the "most relevant" evidence—Charter's own profit margins—and applied it as a guide to the parties' negotiations *after* apportioning to the incremental profit derived from the inventions. *See, e.g.*, Dell Rep., ¶¶ 395–96. This is entirely proper.

      2.      **Mr. Dell's analysis for U.S. Patent No. 8,223,775 (the "'775 Patent") is carefully tied to the incremental value of Charter's use of the patents.**

Charter asserts Mr. Dell failed to apportion for Charter's ▇▇▇▇▇▇▇▇▇▇▇▇. In fact, Mr. Dell accounts for it at least *three times*. First, Mr. Dell analyzed the *incremental* revenue derived only from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are enabled solely by the '775 patent. Dell Rep., ¶¶ 241–42. Mr. Dell attributed that incremental revenue to the '775 patent based on the technical analysis by Dr. Kramer, including that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* ¶ 113 (emphasis added), that enabling change in the DOCSIS standard simply ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* ¶ 389, and that when a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* ¶ 395. Mr. Dell therefore first isolated the ▇▇▇▇▇▇▇▇ to the '775 patent ▇▇▇▇▇▇▇▇ based on the technical analysis of Dr. Kramer.



2



Second, even after isolating the ▮▮▮▮▮ Mr. Dell then applies Charter's own ▮▮▮▮▮. Mr. Dell's analysis thus isolates the ▮▮▮▮▮. And then third, even after apportioning out Charter's ▮▮▮▮▮, Mr. Dell then further opines that the parties would recognize Charter's ▮▮▮▮▮ id. ¶ 444 (emphasis added); Shimota Decl., ¶ 3, Ex. B, ¶ 35; see, e.g., *PersonalWeb Techs. LLC v. IBM Corp.*, No. 16-cv-01266-EJD, 2017 WL 3476082, at *1–2 (N.D. Cal. Aug. 14, 2017) (damages expert's application of a "substantial downward adjustment" "to account for apportionment" was permissible and "sufficiently reasoned").

        **3.    The U.S. Patent No. 9,210,362 (the "'362 Patent") (Theory 2) damages opinion is tied to the incremental value of Charter's use of the patents.**

Charter mischaracterizes (or misunderstands) Mr. Dell's report by claiming he did not apportion because he did not remove unaccused devices from the analysis. But Charter identifies no devices that are allegedly ***unaccused***, nor could it—the devices Charter quibbles with are indisputably ones Charter is accused of using to infringe the '362 patent. Instead, Charter's actual complaint is that it believes some of its services are improperly included in the analysis because Charter feels it did not in fact receive the value Mr. Dell is assigning. The value and thus the proper royalty is a question of fact for the jury concerning the proper damages base, not a question of admissibility. Charter's reliance on *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687 (E.D. Tex. 2010) is misplaced because the issue there was inclusion of ***non***-infringing features in the damages calculations.

3

That ultimate question of fact is disputed. Charter relies solely on snippets of testimony from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As with other disputes raised here, Charter is free to explore this at trial, but the question of what devices are capable of providing what service is a question of fact for the jury. *See Innovation Scis., LLC*, 2020 WL 4201882, at *2.

4. **The U.S. Patent No. 8,792,008 (the "'008 Patent"), U.S. Patent No. 9,825,826 (the "'826 Patent"), and the '362 Patent (Theory 1) damages opinions are grounded in technical and factual support.**

a. **Mr. Dell properly apportions out non-infringing features.**

Charter makes broad statements that Mr. Dell's opinions regarding the '008 Patent and '826 Patent "lack[] any reliable factual foundation" and are "unsupported." Mot. at. 10. In truth, this is merely a battle over facts. Charter objects to Mr. Dell's use of a Charter document that assigns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shimota Decl., Ex. C. Charter claims these ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Not so. Charter's ▮▮▮▮▮▮▮▮▮▮ testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] Shimota Decl., Ex. E, 160:24–161:2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ When questioned specifically about the

---

[1] Charter mistakenly argues that Mr. Stafford was never asked about the document in question, Mot. at 10 n.10. He was —it was Exhibit 13 to his deposition. *See* Shimota Decl., Ex. D. The document has been produced multiple times, and Mr. Dell happened to cite to a copy with different Bates numbers than Stafford Ex. 13, but the content is the same. *Compare id. with* Shimota Decl., Ex. C.

4



*Id.* at 163:17–25. Mr. Dell relied upon this document and testimony. If this seems routine, it is.

Charter alleges that these ▓▓▓ as evidence, and Mr. Dell should not have relied upon them. That is not a *Daubert* issue. Charter does not, for example, argue the document is a type Mr. Dell should categorically have not relied upon, because experts in the field would not have. At best it is a dispute about the evidence. It is not grounds to strike.

Insofar as that dispute goes, Charter argues that the ▓▓▓ But that column does not refer to the uses Mr. Dell values. As addressed above, that column reflects the status of a ▓▓▓. Shimota Decl., Ex. E, 160:24–161:2. So what is not "done" is the new project, not the ▓▓▓tion Mr. Dell is evaluating. There is considerable evidence on this point.[2] Regardless, the salient point is that while Charter is free to contest its own witnesses and evidence at trial, or cross examine Mr. Dell about the issues, there is nothing here to merit a motion to strike.

Moreover, Charter also mischaracterizes Mr. Dell analysis. Mr. Dell's report relies on

---

[2] Charter's own documents prove that ▓▓▓

5

numerous sources to determine the ▆▆▆▆, not just the one document, including ▆▆▆▆ ▆▆▆▆ Dell Rep., ¶ 415. Relying on this evidence together, Mr. Dell concluded "▆▆▆▆ ▆▆▆▆" Id. at ¶ 416. Unlike *Bmc Software, Inc. v. Servicenow, Inc.*, No. 2:14:-CV-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016), Mr. Dell apportions out ▆▆▆▆ to isolate the incremental value attributable to the patents, which is grounded in Charter-produced documents and technical expert opinion. *Id.* ¶ 414. To attack this, Charter speculates that there may be additional (unidentified) technologies that should be apportioned, citing to a portion of Mr. Dell's deposition. But this snippet is taken out of context; Mr. Dell was plainly responding about other forms of ▆▆▆▆ for which he did apportion. In sum, Charter's argument is that Mr. Dell should have done his analysis differently. That is cross-examination material; it does not merit exclusion.

b. **Mr. Dell properly apportions between the '362 and the '008 and '826 patents.**

After isolating the incremental value of the infringing remote spectrum monitoring technology, Mr. Dell then apportions that value between the '008 and '826 patent, and the '362 patent. Charter again chooses to ignore large sections of Mr. Dell's analysis to conclude it is "little more than *ipse dixit*." Not so. Mr. Dell relied on Dr. Souri's technical analysis that ▆▆▆▆



6

▇▇▇▇▇ Dell Rep., at ¶ 409. According to the technical analysis of Dr. Kramer and Dr. Souri, which Mr. Dell relied upon, "the '362 patent's contribution to remote spectrum monitoring covers digitization of the signal"—i.e. one of the four technologies, while the remaining three are attributable to the value of the '008/'826 patents. *Id.* Based on Dr. Souri's technical analysis, Mr. Dell assigned ▇▇▇▇▇ to each of those four contributing technologies, resulting in a ▇▇ apportionment between the '008 and '826 patents on the one hand and the '362 patent on the other. *Id.* at ¶ 407; *see also* Shimota Decl., Ex. J, 93:3–20.

As the above makes clear, Mr. Dell did not "pluck[] out of thin air" apportionment percentages. *LaserDynamics v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012). Mr. Dell's analysis is tied to the facts of the case and based on the analysis of technical experts. *Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*, No. 2:13-CV-213-JRG-RSP, 2015 WL 604577, at *3 (E.D. Tex. Jan. 29, 2015). Charter's complaint is simply that it thinks Mr. Dell should have apportioned differently, ▇▇▇▇▇. That is something for cross-examination, not *Daubert*. *Id.*

> 5. **Both U.S. Patent No. 10,135,682 (the "'682 Patent") and U.S. Patent No. 8,284,690 (the "'690 Patent") damages opinions isolate the value of the claimed inventions.**

Charter identifies several functionalities, claims they should not be part of the value, and asserts Mr. Dell "did not attribute any value to these non-infringing components or contributions ▇▇▇▇▇ Mot. at 11. Specifically, Charter identifies "**[1]** ▇▇▇▇▇, **[2]** ▇▇▇▇▇ and **[3]** an ▇▇▇▇▇" as well as **[4]** the ▇▇▇▇▇ ▇▇▇▇▇ *Id.* (reference numbers added for clarity). The problem is that all of these items are either long-existing technologies that provide no technical value according to Entropic's technical expert or are part of the system that performs the *infringing* method. This is why Dr. Souri attributed ▇▇▇▇▇ to the '682 and '690

7

patents, which Mr. Dell then relied upon to conduct his analysis. At worst, then, Charter's attack goes to the correctness of the underlying technical analysis, not the reliability of the economic analysis.

First, **[1]** the ██████ and **[4]** the ████████████████████████ are squarely part of the infringement. The ████████████████████, is part of the integrated CMTS that performs the claimed method steps of the '682 patent. Second, Mr. Dell also accounts for **[2]** ████████████████████ and **[3]** ████████. For upstream, Dr. Souri opined that the required ████████████████████████████ that "infringe[] the '690 Patent." Shimota Decl., Ex. K, ¶ 325. Based on Dr. Souri's technical analysis that this data is "████████████████████████████████████ and that the '682 Patent otherwise provided the remaining technical value, Mr. Dell apportioned ██ of the value of Charter's ██ to the '682 Patent and ██ to the '690 Patent. But the ████████████████████████████████████ *Id.* at ¶ 324. Based on Dr. Souri's analysis that the ████████████ did not contribute technical value, Mr. Dell allocated the ████████████ to the '682 patent. As for ████████████ Dr. Souri also opined that it does not contribute ████████████ ████████████ " because ████████████████████████████████████████████████████████████████████████████████████ by Charter." *Id.* at ¶¶ 319, 326. In light of the above, Dr. Souri opined that ████████████████████████████████████████ *Id.* at ¶ 510; *see also* Shimota Decl., Ex. J at 168:15–23, while a ████████ of the technical value for ████████ only is attributable to the '690 patent.



In sum, "reference to specific portions of [the technical expert's] technical opinion," *Opticurrent, LLV v. Power Integrations, Inc.*, No. 17-cv-03697-WHO, 2018 WL 6727826, at *12 (N.D. Cal. Dec. 21, 2018), as Charter demands, is *exactly* what Mr. Dell did, apportioning economic value based on the specific testimony of the technical expert as to relative technical contributions to the benefit received by Charter. This is appropriate and admissible.

### 6. The '362 Patent (Theory 3) opinion is grounded in facts.

Mr. Dell's '362 Patent (Theory 3) is based upon Charter-produced data and communications with Entropic's technical experts. *See* Dell Rep., ¶ 456. In both his opening and supplemental report, Mr. Dell compared  based on the technical analysis of Dr. Kramer to select the This economic analysis was based on the extensive technical analysis by Dr. Kramer based on Shimota Decl., Ex. L, ¶ 16; *id.*, Ex. M, ¶¶ 38–48. With the availability of bills of materials, Mr. Dell's supplemental report also includes consideration of *Id.*, Ex. L at ¶ 21.

Charter does not argue that this methodology is unreliable or was performed incorrectly. Instead, Charter thinks Mr. Dell should have used a different device for comparison, one that favors Charter. This is exactly the type of argument about the "best" evidence that this Court has repeatedly rejected because it goes to weight, not admissibility. *See, e.g., GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 WL 4057640, at *5 (E.D. Tex. July 20, 2020) (rejecting argument that expert "cherry-picked" and "ignored" better evidence because "at its core, [the] complaint is not with [the expert's] methodology, but the weight he places on the evidence—a

9

disagreement better resolved by the fact finder.").

   **B.**  **Mr. Dell's lump sum royalties are based on proper analysis.**

     **1.**  **Mr. Dell's analysis of the '682 and '690 is based on Charter's foreseeable use.**

Charter complains that Mr. Dell's lump sum royalties for the '682 and '690 patents are unreliable because Mr. Dell does not confine his analysis to only those CMTSs that have actually performed the claimed method. Mot. at 12. In truth, Charter's argument really is that lump sum damages are impermissible, full stop, because, in Charter's view, a reasonable royalty can ***only*** be based on past use. The Federal Circuit disagrees and has expressly endorsed that a lump sum reasonable royalty—based on what the infringer would have paid in lump sum to practice the patent for its life at the time of the hypothetical negotiation—is legally sound. *Lucent Techs., Inc. v Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).[3] That is exactly the basis of Mr. Dell's analysis, which cites voluminous contemporaneous evidence of the ▮▮▮▮ Charter placed on using all "flavors" of the infringing ▮▮▮▮ *See, e.g.*, Dell Rep., ¶ 484 ▮▮▮▮ Mr. Dell also explicitly accounted for future uncertainty in his analysis, applying a substantial discount rate. *Id.* at ¶ 434.

To reach his conclusion that these specific parties would have landed on a lump sum over a running royalty in the hypothetical negotiation, Mr. Dell relied on considerable evidence. For example, that ▮▮▮▮. *Id.* at ¶ 483. Or that Entropic (the

---

[3] Charter's citation to *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-CV-01001-JRG-RSP, 2016 WL 8222619, at *2 (E.D. Tex. Nov. 7, 2016), is not on point. The expert in that case presented "a running royalty, not a lump sum royalty," and just applied that running royalty to estimated future use. *Id*. Because a running royalty must be "based on actual sales or use," Judge Payne rejected the application of the rate to future use—but future use is expressly permitted to be considered with a lump sum royalty. *Id*.

10

hypothetical licensor) has ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶ 203. And that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶ 478. Indeed, even Charter's own damages expert admits that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Shimota Decl., Ex. N, ¶¶ 600, 665. Mr. Dell's analysis is proper.

  2. **Mr. Dell's use of Charter-produced data for market projections is reliable.**

Charter also complains that Mr. Dell uses ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ through patent expiration. Mot. at 12. But Charter offers no support for its argument that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—a method this Court has expressly endorsed as reliable. *See Red Rock Analytics, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:17-CV-00101-RWS-RSP, 2019 WL 13212713, at *2–3 (E.D. Tex. Feb. 6, 2019). Indeed, Charter cites to a case that demonstrates the opposite problem—speculatively projecting growth. *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4268659, at *5 (N.D. Cal. Aug. 15, 2016). Mr. Dell's analysis is based on a reliable method approved by this Court and the motion should be denied.

  C. **Mr. Dell's application of a "benefit share" is grounded in the evidence and must be taken into account.**

Mr. Dell's use of a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is supported by the facts of this case. Mr. Dell first relies on a real-world, contemporaneous negotiation that evidences the sharing of economic benefits directly attributed to licensing and monetization of the asserted patents. Mr. Dell concluded that this agreement provides a contemporaneous, reliable data point of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, which was even more relevant because two of the three

11

hypothetical licensors (Entropic and MaxLinear) were parties to this agreement. Dell Rep. ¶ 386. Mr. Dell also considered Charter's contemporaneous documents concerning its ▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. ¶¶ 384–85. And that a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 387. Based on this evidence, Mr. Dell concluded the parties to each hypothetical negotiation would be aware of the Patent Purchase Agreement, at least because of the "book of wisdom," and "would acknowledge the distribution ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶¶ 446, 457, 475, and 513. This evidence is contemporaneous, tied to the facts of the case, and reliable.

Charter's argument that Mr. Dell's analysis is "indistinguishable from the 25% rule of thumb" thus is plainly false. The "25% rule of thumb" is impermissible because it is "an arbitrary, general rule, unrelated to the facts of this case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). This is not that. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 969271, at *3–4 (E.D. Tex. Mar. 14, 2021) (denying motion to strike a 75/25 profit split because expert used an eight-factor test, "adequately explain[ed] and support[ed] his decision to equally weigh all factors" and thus had "sufficiently tied his expert testimony to the facts of the case"); *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 8:14-cv-01352-JLS-KES, 2020 WL 9158697, at *9 (C.D. Cal. Aug. 7, 2020) (denying motion to strike where expert "did not simply start from the untenable premise that in general, a licensee pays a royalty rate equivalent to 25 percent of its expected profits," but rather "relied on and presented to the jury 'highly probative' information founded in actual, and comparable,

negotiations and licensing of the [asserted patent.]."). Charter's true dispute is what evidence is "most relevant or reliable to calculating a reasonable royalty"—a question for the jury. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010).

### D. Mr. Dell has offered no credibility determinations, but as a expert can assess all of the evidence and offer his opinion.

Charter's final, cursory argument is that Mr. Dell "should be precluded from making credibility determinations." Mot. at 15. Charter makes no effort to explain what credibility determinations Mr. Dell has made. The four paragraphs Charter identifies are Mr. Dell's observations that the testimony of Charter's witnesses as to ▬▬▬▬▬ ▬▬ are both unsupported by any documents and inconsistent with (and contradicted by) the vast bulk of the evidence he considered in the case. Mr. Dell thus analyzed the evidence in the case, observed that the evidence was not internally consistent, stated the nature of those inconsistencies, then chose to rely on the contemporaneous business records, which were consistent with each other. That is not a credibility determination, but rather proper expert opinion. *See Oasis Rsch., LLC v. Adrive, LLC*, No. 4:10-CV-435, 2013 WL 12156381, at *2 (E.D. Tex. Mar. 1, 2013). Charter's apparent insistence that Entropic's experts be bound to accept Charter's story without scrutinizing the underlying and totality of evidence is without support.

## II. CONCLUSION

Charter's arguments go to the weight of the evidence, rather than demonstrate that Mr. Dell's opinions are unreliable. "Indeed, '[i]f [Mr. Dell]'s claims are as unsupported or conclusory as [Charter] claims, then vigorous cross examination will reveal that.'" *U.S. ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 1233651, at *3 (E.D. Tex. Apr. 26, 2022) (quoting *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *8 (E.D. Tex. Nov. 5, 2019)). This Court should deny Charter's Motion in its entirety.

| | |
|---|---|
| Dated: September 25, 2023 | Respectfully submitted,<br><br>/s/ *James A. Shimota*<br>James Shimota<br>Jason Engel<br>George Summerfield<br>Katherine L. Allor<br>Samuel P. Richey<br>Ketajh Brown<br>**K&L GATES LLP**<br>70 W. Madison Street, Suite 3300<br>Chicago, IL 60602<br>Tel: (312) 807-4299<br>Fax: (312) 827-8000<br>jim.shimota@klgates.com<br>jason.engel@klgates.com<br>george.summerfield@klgates.com<br>katy.allor@klgates.com<br>samuel.richey@klgates.com<br>ketajh.brown@klgates.com<br><br>Nicholas F. Lenning<br>Courtney Neufeld<br>**K&L GATES LLP**<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104-1158<br>Tel: (206) 623-7580<br>Fax: (206) 623-7022<br>nicholas.lenning@klgates.com<br>courtney.neufeld@klgates.com<br><br>Darlene Ghavimi<br>Matthew A. Blair<br>**K&L GATES LLP**<br>2801 Via Fortuna, Suite 650<br>Austin, Texas 78746<br>Tel: (512) 482-6800<br>darlene.ghavimi@klgates.com<br>matthew.blair@klgates.com<br><br>Christina N. Goodrich<br>Connor J. Meggs<br>**K&L GATES LLP**<br>10100 Santa Monica Blvd., 8th Floor<br>Los Angeles, CA 90067<br>Tel: (310) 552-5031 |

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this eleventh day of September, 2023.

/s/ *James A. Shimota*
James A. Shimota

