**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

ENTROPIC COMMUNICATIONS, LLC

    *Plaintiff,*

v.

CHARTER COMMUNICATIONS, INC.,

    *Defendant.*

Civil Action No. 2:22-CV-00125-JRG

**JURY TRIAL DEMANDED**



**PLAINTIFF ENTROPIC COMMUNICATIONS LLC'S OPPOSITION TO
DEFENDANT CHARTER COMMUNICATIONS, INC.'S
<u>MOTION TO STRIKE DR. SOURI'S OPINIONS</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 1

    A.    Entropic's P.R. 3-1 Contentions Properly Disclosed What is Required by the Local Patent Rules (Souri Op. Rep. ¶¶ 317, 324–325, 355, 358–359, 364–365, 373–374, 407–408, 425) ............................................................................................................. 1

        1.    █████ Is Accused of Infringement and Is Disclosed in the P.R. 3-1 Contentions. ............................................................................................... 1

        2.    Entropic was Not Required to Disclose the Details of Joint Infringement of the '690 Patent in its Infringement Contentions ..................................... 4

        3.    Charter Fails to Identify Any Prejudice that Resulted From Dr. Souri's Allegedly Undisclosed Infringement Theories ......................................... 5

    B.    Dr. Souri's Opinions Related to ████████████████ in His Supplemental Report Are Admissible—He Is Not Opining on Charter's State of Mind (Souri Supp. Rep. ¶¶ 19, 23, 30) ................................................................. 6

    C.    Dr. Souri's Opinions About Indirect And Joint Infringement Are Admissible ...... 9

        1.    Charter Offers Inconsistent Arguments When Seeking to Exclude Dr. Souri's Opinions on Indirect Infringement (Souri Op. Rep. ¶¶ 79 and 431-434) ........................................................................................... 9

        2.    Dr. Souri's Opinions Regarding Joint Infringement of Method Claims are Admissible (Souri Op. Rep. ¶ 425) ......................................................... 10

    D.    Dr. Souri's Opinions Regarding Charter's Ownership and Control of Instrumentalities Underlying Infringement Are Proper (Souri Op. Rep. ¶¶ 426–27 and 433) ................................................................................................................ 11

III.    CONCLUSION........................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015).................................................................................4,11

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
    No. 21-704-MAK, 2022 WL 3021560 (D. Del. July 29, 2022) .............................................13

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
    No. 2:21-CV-00430-JRG-RSP, 2023 WL 4847343 (E.D. Tex. July 28, 2023) ....................7,9

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
    No. 6:10-cv-379, 2012 WL 12911055 (E.D. Tex. Aug. 10, 2012)..........................................4

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
    No. 6:08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010)..............................................4

*Gree, Inc. v. Supercell Oy*,
    Case No. 2:19-cv-00071-JRG-RSP, 2020 WL 4059550 (E.D. Tex. July 20,
    2020) ........................................................................................................................................7

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)................................................................................................3

*Marchlewicz v. Brothers Xpress, Inc.*,
    No. SA-19-CV-00996-DAE, 2020 WL 7319550 (W.D. Tex. Dec. 10, 2020) ........................13

*McGuire v. Cirrus Design Corp.*,
    No. 1:07-CV-683, 2009 WL 10709145 (E.D. Tex. Feb. 5, 2009)..........................................13

*Opal Run LLC v. C & A Mktg., Inc.*,
    *No.*, 2:16-CV-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017)...........................6

*Realtime Data, LLC v. Packeteer, Inc.*,
    No. 6:08-cv-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009).............................................6

*Retractable Techs. Inc. v. Abbott Labs., Inc*,
    No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010).........................................11

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*,
    CV 17-1734-RGA, 2021 WL 982732 (D. Del. Mar. 16, 2021)........................................12, 14

*Tyco Healthcare Grp. LP v. Applied Medical Resources Corp.*,
    No. 6:06-cv-151, 2009 WL 5842062 (E.D. Tex. Mar. 30, 2009).............................................6

## TABLE OF EXHIBITS

| Exhibit | Title |
| --- | --- |
| A | Opening Expert Report of Dr. Shukri Souri, Ph.D Regarding Infringement of U.S. Patent Nos. 8,792,008, 10,135,682, 8,284,690, 9,825,826 ("Souri Op. Rep.") |
| B | ████████████████████████████████████████████████████████) |
| C | ████████████████████████████████████████████████████████ |
| D | Opening Expert Report of Stephen E. Dell, CVA, Relating to Damages ("Dell Op. Rep.") |
| E | Supplemental Expert Report of Dr. Shukri Souri, Ph.D Regarding Infringement of U.S. Patent Nos. 8,792,008 and 10,135,682 and Non-Infringing Alternatives ("Souri Supp. Rep.") |
| F | Rebuttal Expert Report of W. Christopher Bakewell Regarding Damages ("Bakewell Rep.") |
| G | Plaintiff's Second Supplemental Infringement Contentions |
| H | Exhibit B to Plaintiff's Second Supplemental Infringement Contentions |
| I | Rebuttal Expert Report of Dr. Kevin C. Almeroth Regarding Non-Infringement ("Almeroth Reb. Rep.") |
| J | Supplemental Rebuttal Expert Report of Dr. Kevin Almeroth Regarding Non-Infringement ("Almeroth Supp. Rep.") |
| K | Excerpts from Charter's Fourth Supplemental Objections and Responses to Plaintiff's Second Set of Interrogatories (No. 6) |
| L | Excerpts from the December 13, 2022 Deposition Transcript of Daniel Boglioli ("Boglioli Tr.") |
| M | Excerpts from the May 25, 2023 Deposition Transcript of Jason Henricks ("Henricks Tr.") |
| N | Excerpts from the June 20, 2023 Deposition Transcript of Cathy Ubben ("Ubben Tr.") |
| O | Excerpts from Charter's Sixth Supplemental Objections and Responses to Plaintiff's Second Set of Interrogatories (No. 7) |

## I.      INTRODUCTION

Defendant Charter Communications, Inc. ("Charter") moves to strike certain opinions from the opening and supplemental reports of Plaintiff Entropic Communications, LLC's ("Entropic") technical expert, Dr. Shukri Souri ("Souri Op. Rep." and "Souri Supp. Rep.," respectively), regarding Charter's infringement of U.S. Pat. Nos. 8,792,008 (the "'008 Patent"), 10,135,682 (the "'682 Patent"), 8,284,690 (the "'690 Patent"), and 9,825,826 (the "'826 Patent"). *See* Dkt. 166 ("Motion"). Charter's Motion relies upon repeatedly mischaracterizing Dr. Souri's opinions and inapplicable case law, and thus fails to provide any basis on which this Court should exclude any opinions of Dr. Souri. Therefore, the Court should deny Charter's Motion in its entirety.

## II.     ARGUMENT

### A.      Entropic's P.R. 3-1 Contentions Properly Disclosed What is Required by the Local Patent Rules (Souri Op. Rep. ¶¶ 317, 324–325, 355, 358–359, 364–365, 373–374, 407–408, 425)

Charter seeks to exclude Dr. Souri's opinions related to the '682 and '690 Patents based on an alleged failure to disclose certain theories in Entropic's P.R. 3-1 infringement contentions. Motion at 2–3, 10. However, Entropic's disclosures are fully in compliance.

#### 1.      ████ Is Accused of Infringement and Is Disclosed in the P.R. 3-1 Contentions.



Charter characterizes Dr. Souri's opinions regarding ████████████████ ████████████████████████████, as "a new, independent infringement theory" exceeding the scope of Entropic's infringement contentions. Motion at 2-3. This is incorrect. ████—or more precisely Charter's use of ███████████ ████████████—is the accused infringement. The ***extent*** to which ███ is used may be categorized by the uses to which ███ may be put: (1) ████████████ ███████, (2) ███████████████████████, and (3) ███████████████

1

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████ *See, e.g.,* Ex B, CHARTER_ENTROPIC00290944–953

████ ██ ███ █ ██ ██████ █████ █ ██ █████ Ex C,

CHARTER_ENTROPIC00459313 at 004959316 ████████████████████████████

█████████████████████████ In turn, working from such evidence, Plaintiff's economic expert

Mr. Dell likewise discussed the cost savings and value implications of the various ways ████ can

provide benefits. Ex. D, Dell Op. Rep. ¶¶ 243–57. But the distinctions Charter draws, reflected in

the evidence, do not fragment the accusation of █████████████ into different infringement

theories. ████████████████████████████████████

███████

    The same ████████████ perform the steps of the claim. A █████████████

████████████████████████████████████

████████████████████████████████████

of claim 1. *See* Ex. A, Souri Op. Rep. ¶¶ 353–371. The ████████████████████

███████████████████████████████████████. *See id.*

¶¶ 372–386. The ████████████████████████████████

██████████████████ *See id.* ¶¶ 387–392. The ████████████████████

█████████████████████████████████████ *See id.*

¶¶ 393–399. This process is the same regardless whether ████████████████████

████████████████████████████████████

███████████████. *See, e.g., id.* ¶ 327 ("████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████ It is all the same theory of infringement. The only question is the **extent** of that infringement—how often and to what use case.

Because Charter classifies the various uses of ████ separately and quantifies their benefits to Charter in different ways, Dr. Souri was asked to analyze them to confirm that Charter's ████████████████████████████████████████████████████████ ██████████████ *See* Ex. A, Souri Op. Rep. ¶¶ 317, 324–325, 355, 358–359, 364–65, 373–374, and 407–408. He also analyzed the ██████████████████████████████████████████ ██████████████████████████████████████████████████████. *See id.* ¶¶ 312, 314–315, 319, 328–329; *see also id.* ¶ 335 ██████████████████████ ██████████████████████████████████████████ *see also* Ex. E, Souri Supp. Rep. ¶¶ 18, 19, 24, 26.

This analysis is an entirely appropriate opinion that is directly relevant to the hypothetical negotiation. The economic experts have opined either that the proper license is a lump-sum royalty (Mr. Dell for Entropic) or that Charter would prefer a lump-sum royalty (Mr. Bakewell for Charter). *See* Ex. D, Dell Op. Rep. ¶¶ 478, 507; Ex. F, Bakewell Reb. Rep. ¶¶ 600, 665. As lump-sum royalty is at issue, the ██████████████████████████████ is directly relevant:

> Parties agreeing to a lump-sum royalty agreement may, during the license negotiation, ***consider the expected or estimated usage*** (or, for devices, production) ***of a given invention***, ***assuming proof is presented to support the expectation***, because the more frequently most inventions are used, the more valuable they generally are and therefore the larger the lump-sum payment.

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (emphasis added). Dr. Souri's evidence addresses exactly this—what is Charter's ████████████████████████████ over the lifetime of the hypothetical license? Some of that usage may be to benefit the ████████ ██████████████████████████████████████████████████████

In summary, Dr. Souri's opinions are directed to the infringement of the '682 Patent by

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. The Court should

deny Charter's Motion to exclude Paragraphs 317, 324–325, 355, 358–359, 364–365, 373–374,

and 407–408 of Dr. Souri's Opening Report.

### 2. Entropic was <u>Not</u> Required to Disclose the Details of Joint Infringement of the '690 Patent in its Infringement Contentions

Charter also argues that Dr. Souri's opinions at Paragraph 425 regarding joint infringement

of the '690 Patent exceed the scope of Entropic's infringement contentions. Motion at 10. This

argument fails as this Court does not require infringement contentions to disclose details specific

to joint infringement: "infringement contentions serve a notice function and . . . as evident by the

text of P.R. 3-1 itself, infringement contentions are focused on notice of the underlying direct

infringement and are not the forum for explaining such issues as joint liability, mastermind, or

indirect infringement." *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc*., No. 6:10-cv-379, 2012

WL 12911055, at *3 n. 2 (E.D. Tex. Aug. 10, 2012); *see also Fenner Invs., Ltd. v. Hewlett-Packard

Co.*, No. 6:08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). As Entropic was not

required to disclose its specific joint infringement theories in its contentions, Charter's Motion on

this point is moot.

This is consistent with Federal Circuit precedent that joint or "divided" infringement is

simply a form of direct infringement under 35 U.S.C. § 271(a). *See Akamai Techs., Inc. v.

Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015) ("Direct infringement under

§ 271(a) occurs where all steps of a claimed method are performed by or attributable to a single

entity. . . . [L]iability under § 271(a) can also be found when an alleged infringer conditions

participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance.").

Although Charter disputes whether the infringement theory as to specific claim elements of the '690 Patent were disclosed, Charter does not dispute that Entropic's infringement contentions disclose a theory of direct infringement under § 271(a). *See* Ex. G, Plaintiff's Am. 2nd Supp. Infring. Cont. at 2 (identifying that certain claims of the '690 Patent are directly infringed); *also* Ex. H, Ex. B to Pl.'s Am. 2nd Supp. Infring. Cont. Thus, it is clear that Entropic disclosed a direct infringement theory of the '690 Patent, which is all that is required by P.R. 3-1.

### 3.   Charter Fails to Identify Any Prejudice that Resulted From Dr. Souri's Allegedly Undisclosed Infringement Theories

Not only has Entropic complied with the disclosure requirements, but Charter has identified no prejudice that it has suffered as a result, because there is none. Focusing first on the '682 Patent and ▮▮, Charter is fully aware of its own work to apply the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as discussed in Section A.1 *supra*, there is no credible argument that Charter was not on notice that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Furthermore, Charter was not prejudiced because it had ample opportunity to address Dr. Souri's opinions and did so at every opportunity. All opinions Charter is moving against are part of Dr. Souri's opening expert report. Thus, not only did Charter's expert, Dr. Almeroth, provide specific rebuttal opinions as to Dr. Souri's opinions regarding ▮▮ in his rebuttal report, but he did so as well in a supplemental rebuttal report. *See, e.g.*, Ex. I, Almeroth Reb. Rep. ¶¶ 172–176; Ex. J, Almeroth Supp. Rep. ¶¶ 10–21. Thus, any failure to provide any additional rebuttal opinions to rebut Dr. Souri's allegedly new opinions as to ▮▮▮▮▮▮ is of Charter's own making. Turning to the '690 Patent, Charter similarly knows how it operates its network and had the

necessary information and understanding to provide rebuttal opinions as to joint infringement of the '690 Patent. Ex. I, Almeroth Reb. Rep. ¶¶ 442–43.

Given that Charter cannot demonstrate any prejudice, Charter mischaracterizes this Court's previous decisions in order to assert that any theory first introduced in an expert report should **automatically** be struck, regardless of whether it is prejudicial. *See* Motion at 2 (citing *Opal Run LLC v. C & A Mktg., Inc.*, No. 2:16-cv-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017)). Such is not the practice of this Court, which often analyzes whether the introduction of new theories is prejudicial. *See e.g. Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *3–9 (E.D. Tex. Aug. 18, 2009); *see also Tyco Healthcare Grp. LP v. Applied Medical Resources Corp.*, No. 6:06-cv-151, 2009 WL 5842062, at *3–4 (E.D. Tex. Mar. 30, 2009).

Moreover, *Opal Run* is easily distinguishable: this Court excluded the expert's new theories because those theories relied on information that was publicly available. *Opal Run*, 2017 WL 3381344, *2. Here, the information regarding Charter's ███████ is not publicly available, as a cursory inspection of the citations in the contentions demonstrate, hence the "RESTRICTED – ATTORNEYS' EYES ONLY (AEO)," designation of the same. *See* Dkt. 166-4. Therefore, *Opal Run* is inapplicable.

Overall, Entropic's infringement contentions clearly provided what is required by the Local Patent Rules. Thus, Charter's arguments to the contrary fail and are no basis on which to excluded Dr. Souri's testimony. Accordingly, the Court should not exclude Dr. Souri's opinions identified above.

      **B.**    **Dr. Souri's Opinions Related to ███████████████████ in His Supplemental Report Are Admissible—He Is <u>Not</u> Opining on Charter's State of Mind (Souri Supp. Rep. ¶¶ 19, 23, 30)**

Next, Charter seeks to strike Paragraphs 19, 23, and 30 of Dr. Souri's Supplemental Report on the grounds "Dr. Souri provides opinions **suggesting** that Charter ████████████

███████████████████ after the conclusion of this suit. Motion at 3–6 (emphasis added).

Charter is seeking to exclude Dr. Souri's opinions based on ***what conclusions the jury may draw***

from his opinions, not because of the actual opinions. This is not a proper basis for exclusion

because an expert "may testify as to the underlying facts that in his opinion may show Defendants'

state of mind." *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-CV-00430-JRG-RSP,

2023 WL 4847343, at *5 (E.D. Tex. July 28, 2023); *see also Gree, Inc. v. Supercell Oy*, Case No.

2:19-cv-00071-JRG-RSP, 2020 WL 4059550, at *2 (E.D. Tex. July 20, 2020).

The admissibility of Dr. Souri's opinions is confirmed by a review of what Dr. Souri

***actually*** opined in his Supplemental Report. Beginning with **Paragraphs 19 and 30**, which are

similar, Dr. Souri is simply pointing out flaws in Dr. Almeroth's analysis concerning ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ Ex. E, Souri Supp. Rep. ¶ 19. As to ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ *Id.* at ¶ 30 (quoting Ex. K, Charter's Fourth Supp. Objs. & Resp. to Pl.'s Second Set

Interrog).

Finally, in **Paragraph 23**, Dr. Souri's summarizes the evidence he reviewed in the

preceding paragraphs and concludes that Charter understood ████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Ex. E, Souri Supp. Rep. ¶ 23. This opinion is nothing more than Dr. Souri's conclusions drawn

from Charter's own documents and the testimony of Charter's corporative representatives cited in

the preceding paragraphs. *See id.* at ¶¶ 18–23.

With Dr. Souri's testimony placed in the proper context, it is clear that all three of Charter's

arguments fail. First, contrary to Charter's assertion Dr. Souri offers mere *ipse dixit* unconnected

to any data, Dr. Souri offers opinions based on a thorough review of facts and data of the kind

experts in this field would reasonably rely upon in forming an opinion on the subject. *See id.* at

¶¶ 18–23, 28–30.

Second, as shown above, Dr. Souri is not opining on Charter's state of mind but rather

offering his conclusions based on his review of Charter's documents and witnesses. Thus,

Charter's argument that Dr. Souri lacks the necessary expertise is incorrect as Dr. Souri possesses

the necessary expertise, as Charter acknowledges in its Motion (Motion at 5, 9), to understand both

Dr. Almeroth's opinions and how those opinions are not supported by the technical documentation

and witness testimony in this case.

Charter's final argument fails as it is predicated on Charter's mischaracterization of

Dr. Souri's testimony. Again, Dr. Souri does not offer any opinions on Charter's state of mind,

and therefore, Charter's final argument that Dr. Souri's opinions are unreliable because they draw

"improper legal conclusions" is unpersuasive.

At bottom, Dr. Souri's opinions related to ███████████████████████ in his

Supplemental Report, which are based on his extensive review of relevant documents and

testimony, are admissible. Dr. Souri is not opining on Charter's intent or state of mind. Accordingly, the Court should not exclude Dr. Souri's opinions in Paragraphs 19, 23, and 30 of his Supplemental Report.

### C.     Dr. Souri's Opinions About Indirect And Joint Infringement Are Admissible

#### 1.     Charter Offers Inconsistent Arguments When Seeking to Exclude Dr. Souri's Opinions on Indirect Infringement (Souri Op. Rep. ¶¶ 79, 431-434)

Charter seeks to exclude Dr. Souri's opinions regarding indirect infringement by arguing: (1) Dr. Souri fails to provide "any opinions regarding Charter's intent to induce the purported infringement of others" (Motion at 6-7); and (2) Dr. Souri fails to show joint infringement of the system claims of the '008 Patent (*id.* at 7–8).

As to argument (1), Charter is seeking to exclude Paragraphs 79 and 431–434 of Dr. Souri's Opening Report regarding indirect infringement because Dr. Souri does not offer any opinions as to Charter's intent. As an initial matter, as addressed in the preceding section, Charter just finished arguing that Dr. Souri is ***not permitted*** any opinions relating to Charter's state of mind. Yet here Charter says all his opinions on indirect infringement must be stricken because he ***failed*** to offer opinions on state of mind. *Compare* Motion at 5, *with id.* at 6–7. Regardless, the caselaw indicates that Dr. Souri's opinions on indirect infringement are perfectly admissible despite him not opining as to Charter's state of mind or intent. *See Atlas Glob.*, 2023 WL 4847343, *5 (prohibiting an expert from testifying as to the defendant's state of mind but otherwise allowing the expert to offer his opinions related to indirect infringement).

As to argument (2), it is unclear what Charter is moving against. Charter's Motion fails to connect its arguments to any particular paragraphs or testimony. *See* Motion at 7–8. Assuming that Charter means its arguments to address Paragraphs 79 and 431–434 of the Opening Report, it confuses legal doctrines. Charter generally alleges that because Charter's customers do not

"benefit" from system claims 1 and 2 of the '008 Patent, Dr. Souri has failed to show *joint infringement*. Motion at 7. However, Dr. Souri is not offering an opinion that Charter and its customers jointly infringe the system claims of the '008 Patent. Paragraph 79 states:



Ex. A, Souri Op. Rep. ¶ 79. This false straw man attack fails.

### 2. Dr. Souri's Opinions Regarding Joint Infringement of Method Claims are Admissible (Souri Op. Rep. ¶ 425)

In Paragraph 425 of his Opening Report, Dr. Souri *does* offer opinions regarding joint infringement, of a different patent, the '690 Patent. Charter seeks to exclude them, arguing: **[1]** whether Charter "directs or controls" its users is not a technical question requiring expert testimony; and **[2]** Dr. Souri does not have the expertise that qualifies him to opine on whether Charter "directs or controls" another entity. Motion at 10–11. Both arguments fail.

At **Paragraph 425** of his Opening Report, Dr. Souri states:



Ex. A, Souri Op. Rep. ¶ 425. Dr. Souri then proceeds to cite to specific documents and testimony to support his joint infringement opinions. *Id.* at ¶¶ 426–429. Dr. Souri's ultimate conclusion regarding joint infringement is based upon a technical understanding of the architecture of Charter's cable network, and how that network is operated by Charter to deliver services. *Id.*

Therefore, both of Charter's arguments fail. As to argument (1), whether Charter directs or controls its users *is* a technical question in this case as Charter's architecture allows it to control its customers through conditioning access to Charter's cable network, *e.g.*, via technical requirements such as certification requirements. *See id.* ¶¶ 427–429. As to argument (2), Dr. Souri *is* qualified to offer opinions as to those technical issues, which are fairly characterized as direction and control of its customers for the purposes of joint infringement.

The caselaw Charter cites does not supports its arguments, as neither case addresses the question of expert testimony regarding direction and control where technical issues underlie those questions. *See* Motion at 10–11. *Akamai Techs., Inc. v. Limelight Networks, Inc.* generally describes the law of divided infringement, but does not address the technical expert evidence issue. 797 F.3d at 1022–23. Meanwhile, *Retractable Techs. Inc. v. Abbott Labs., Inc.* is a different context entirely; there an expert economist was found unqualified to opine on the legal question of "good faith." No. 5:05-CV-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010).

**D.    Dr. Souri's Opinions Regarding Charter's Ownership and Control of Instrumentalities Underlying Infringement Are Proper (Souri Op. Rep. ¶¶ 426–427, 433)**

Charter characterizes the disputed paragraphs (Souri Op. Rep. ¶¶ 426–427, 433) as offering legal opinions. This attack misunderstands the nature of a legal conclusion. Dr. Souri is a technical expert who has offered his opinion regarding the nature of the infringing acts themselves—namely, *who* commits the acts of use that he concludes underlie infringement? The answer underlies the question of direct infringement. Dr. Souri has reviewed the surrounding facts and concludes that Charter itself directly infringes by its use.

Dr. Souri bases his conclusions on a variety of facts. Charter's customer service agreements are *evidence* of some of those facts, *not* because of any legal interpretation of the agreements, but because of what they indicate about the real-world division of actions between Charter and its

subscribers. In Paragraph 426 of his Opening Report, Dr. Souri states that ███████████

████████████████████████████████████████████████████████████████

Ex. A, Souri Op. Rep. ¶ 426. To support this point, Dr. Souri cites to various ███████

███████, but his statement is one of fact, not contract interpretation. That a person cannot ███

████████████████████████████████████████████████████████████ It

is a fact about *Charter's behavior*. To the extent Charter's complaint is that Dr. Souri observes

that the ████████████████████████████████████████████████████

and thus not improper. *See Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, CV 17-1734-

RGA, 2021 WL 982732, at *16 (D. Del. Mar. 16, 2021) (excluding expert testimony about the

legal effects of a contract "to the extent the contract is not self-explanatory").

It is, in fact, indisputable that ██████████████████████████████

██████████████ This has been repeatedly confirmed by deposition testimony from Charter's

corporate witnesses. *See e.g.* Ex. L, Boglioli Tr. at 54:13–55:14 ███████████████

████████████████████████████████████████████████████████

███████ Ex. M, Henricks Tr. at 22:7–12 ████████████████████████

██████████████; Ex. N, Ubben Tr. at 33:2–4 ██████████████████████

Charter also admitted in its interrogatory responses that ██████████████████████

██████████████████████████████████ Ex. O, Sixth Supp. Objs. &

Resps. to Pl.'s Second Set of Interrogs. at 41.

It is for this reason that Dr. Souri states in Paragraph 427 of his Opening Report, ███████

██████████████████████████████████████" Ex. A, Souri Op. Rep. ¶ 427. This does

not require any legal analysis of the contracts, only a basic understanding of the difference between

██████████████████████████████. Moreover, Paragraph 427 continues: ██████████



*Id.* (internal citations omitted); *see also id.* ¶ 433. These statements do not involve any legal analysis of the ███████████████████████████████████

Finally, like all of Charter's other arguments above, the cases cited by Charter are inapposite precisely because Dr. Souri is only relying on what legal documents indicate about who-does-what; he is not opining on the legal effect of the contracts. *See Marchlewicz v. Brothers Xpress, Inc.*, No. SA-19-CV-00996-DAE, 2020 WL 7319550, at *5 (W.D. Tex. Dec. 10, 2020) (expert not qualified to testify as to "the ultimate legal question of whether Dhaliwal was Singh's statutory employer"); *McGuire v. Cirrus Design Corp.*, No. 1:07-CV-683, 2009 WL 10709145, at *5 (E.D. Tex. Feb. 5, 2009) (striking expert opinion that "[n]o company, including Cirrus Design, can delegate their responsibility for flight safety to another company to avoid liability"); *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704-MAK, 2022 WL 3021560, at *26–27 (D. Del. July 29, 2022) (excluding opinions about the legal effect of a merger agreement, but "to the extent their opinions about who owns the Azure tenant are based on sources other than the Merger Agreement, we do not exclude the opinion"); *Sprint*, 2021 WL 982732, at *15–16 (excluding expert opinion that "N2P was contractually bound to provide PSTN interconnectivity").

Because Charter has not shown that Dr. Souri offers any improper opinions regarding the ███████████████████████████ and in particular Charter's ███████████████████████ ████████, the Court should deny Charter's motion to strike Paragraphs 426–427 and 433 of Dr. Souri's Opening Report.

## III.    CONCLUSION

For the reasons expressed above, the Court should deny Charter's Motion.

Dated: September 25, 2023                   Respectfully submitted,

                                            */s/ James A. Shimota*
                                            James Shimota
                                            Jason Engel
                                            George Summerfield
                                            Katherine L. Allor
                                            Samuel P. Richey
                                            Ketajh Brown
                                            **K&L GATES LLP**
                                            70 W. Madison Street, Suite 3300
                                            Chicago, IL 60602
                                            Tel: (312) 807-4299
                                            Fax: (312) 827-8000
                                            jim.shimota@klgates.com
                                            jason.engel@klgates.com
                                            george.summerfield@klgates.com
                                            katy.allor@klgates.com
                                            samuel.richey@klgates.com
                                            ketajh.brown@klgates.com

                                            Nicholas F. Lenning
                                            Courtney Neufeld
                                            **K&L GATES LLP**
                                            925 Fourth Avenue, Suite 2900
                                            Seattle, WA 98104-1158
                                            Tel: (206) 623-7580
                                            Fax: (206) 623-7022
                                            nicholas.lenning@klgates.com
                                            courtney.neufeld@klgates.com

                                            Darlene Ghavimi
                                            Matthew A. Blair
                                            **K&L GATES LLP**
                                            2801 Via Fortuna, Suite 650
                                            Austin, Texas 78746
                                            Tel: (512) 482-6800
                                            darlene.ghavimi@klgates.com
                                            matthew.blair@klgates.com

                                            Christina N. Goodrich
                                            Connor J. Meggs
                                            **K&L GATES LLP**
                                            10100 Santa Monica Blvd., 8th Floor
                                            Los Angeles, CA 90067
                                            Tel: (310) 552-5031

Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via electronic mail on all counsel of record on this twenty-fifth day of September, 2023.

*/s/ James A. Shimota*
James A. Shimota