# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, *Plaintiff*, v. CHARTER COMMUNICATIONS, INC., *Defendant*. | Civil Action No. 2:22-cv-00125-JRG **JURY TRIAL DEMANDED**  |

**PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S OPPOSED MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT – OPPOSED MOTIONS *IN LIMINE* ..................................................... 1

       MIL 1: Preclude Charter From Introducing Evidence Or Argument That
              ███████████████████████████ ................................................... 1

       MIL 2: Preclude Charter From Offering Evidence, Testimony, Or Argument
              Related To Charter's Contribution To The Accused Technology Based On
              (1) Charter's Patents, Including The Number Of Patents Charter Owns, (2)
              The Relative Number Of Patents Between Charter And Entropic, (3)
              Patents On DOCSIS Owned By Charter Or Any Third Party, And (4)
              Charter's Overall Technology Expenditures. .................................................. 3

       MIL 3: Charter Shall Be Precluded From Offering Any Evidence, Testimony, Or
              Argument About The Value Of Any Licenses Or Settlement Agreements
              Unrelated To The Asserted Patents, Including ███████████████████
              ████████████████████████████████████████████████████
              ████████████ And Any Non-Consummated Licenses ............................. 6

       MIL 4: Preclude Charter From Offering Evidence, Testimony, Or Argument That
              Charter's Damages ████████████████████████████████████
              ████████████████████████████████████████████████████
              █████████ ........................................................................................ 8

       MIL 5: Preclude Charter From Introducing Evidence, Testimony, Or Argument
              That ██████████████████████████████████████████ ....... 10

III.   CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laby's. v. TorPharm, Inc.*,
    2003 WL 22462614 (N.D. Ill. Oct. 29, 2003) ................................................................. 6

*Amgen Inc. v. Hospira, Inc.*,
    944 F.3d 1327 (Fed. Cir. 2019) ..................................................................................... 9

*Aqua Shield v. Inter Pool Cover Team*,
    774 F.3d 766 (Fed. Cir. 2014) ....................................................................................... 9

*Biscotti Inc. v. Microsoft Corp.*,
    2017 WL 2607882 (E.D. Tex. May 25, 2017) .............................................................. 8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ...................................................................... 10, 12

*In re ChanBond, LLC Pat. Litig.*,
    2020 WL 550786 (D. Del. Feb. 4, 2020) ....................................................................... 7

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig.*,
    2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) ................................................................. 6

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) ..................................................................................... 9

*PalTalk Holdings, Inc. v. Microsoft Corp.*,
    2009 WL 10677783 (E.D. Tex. Feb. 25, 2009) ............................................................. 4

*Realtime Data LLC v. Echostar Corp.*,
    2018 WL 10466786 (E.D. Tex. Dec. 17, 2018) ............................................................ 4

*Realtime Data LLC v. EchoStar Corp.*,
    2018 WL 6266300 (E.D. Tex. Nov. 15, 2018) .............................................................. 7

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    2019 WL 7041725 (E.D. Tex. Dec. 20, 2019) ........................................................... 7, 8

*Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
    2019 WL 4892417 (E.D. Mich. 2019) ......................................................................... 12

**Rules**

Fed. R. Evid. 402 ................................................................................................... passim

Fed. R. Evid. 403 ................................................................................................... passim

Fed. R. Evid. 802 ............................................................................................................. 1, 2

**Statutes**

35 U.S.C. § 102(g) (pre-AIA) ................................................................................................ 11

## I. INTRODUCTION

Plaintiff Entropic Communications, LLC ("Entropic") respectfully moves *in limine* to exclude the arguments, evidence, and testimony set forth below, which is inadmissible as irrelevant, prejudicial, or hearsay.

## II. ARGUMENT – OPPOSED MOTIONS *IN LIMINE*

**MIL 1: Preclude Charter From Introducing Evidence Or Argument That** ▮▮▮▮

Pursuant to Fed. R. Evid. 402, 403, and 802, Defendant Charter Communications, Inc. ("Charter") should be precluded from presenting evidence or argument at trial ▮▮▮▮ This evidence is hearsay (or double hearsay), irrelevant to any issue in this case, and unduly prejudicial.

Charter's only "evidence" regarding ▮▮▮ comes from a single telephone call involving two individuals who will not testify at trial. At his deposition, Charter's Rule 30(b)(6) representative, an attorney, Daniel Boglioli, testified that ▮▮▮ (Ex. A, Boglioli 8/11/23 Tr. 37:8–38:12.) According to Mr. Boglioli, ▮▮▮ (*Id.*) According to Mr. Boglioli, ▮▮▮ (*Id.* at 38:13–16.) This testimony should be excluded for multiple reasons.

1

**First**, any evidence Charter could present at trial regarding ▮▮▮▮▮ would be inadmissible hearsay. ▮▮▮▮▮ is not on either party's witness list. (Ex. B, 9/28/23 Entropic Prelim. Witness List; Ex. C, 9/28/23 Charter Prelim. Witness List.) And the statement would be offered for the truth of its content—▮▮▮▮▮ This is classic inadmissible hearsay under Fed. R. Evid. 802. Worse, the only person who heard the alleged statement, ▮▮▮▮▮ will not testify at trial either (*id.*), meaning that any testimony is (at best) double hearsay. Charter has not suggested that it has any other evidence of ▮▮▮▮▮ much less produced such evidence in discovery. Accordingly, there is no admissible evidence of any alleged ▮▮▮▮▮.

**Second**, ▮▮▮▮▮ is entirely irrelevant, and thus evidence of it should be excluded under Fed. R. Evid. 402. This is an action for patent infringement. Whether ▮▮▮▮▮ is not probative of any legally cognizable issue. Charter's only attempt to claim relevance is a statement on a meet and confer that "MaxLinear was at the hypothetical negotiation and it would go to their mindset at the time." But that argument makes no sense. ▮▮▮▮▮ Nor is ▮▮▮▮▮ relevant to any of the *Georgia-Pacific* factors that guide the reasonable-royalty analysis. And Entropic is unaware of (and Charter has not identified) any caselaw suggesting that ▮▮▮▮▮ is relevant to the hypothetical negotiation. Charter suggested that this evidence could be analyzed, presumably by its damages expert, W. Christopher Bakewell, under the "book of wisdom" doctrine. But Mr. Bakewell offered no opinions in his report relating to ▮▮▮▮▮ Any attempt to introduce such evidence would therefore

2

violate Court Motion *in Limine* No. 23, which prohibits experts from testifying "outside the established parameters of [their] expert report." (8/11/23 Standing Order on MILs at 4.)

**Third**, even if evidence of ▮▮▮▮▮▮▮▮ were admissible and relevant, it should be excluded under Fed. R. Evid. 403. Any marginal probative value this evidence might have—and, as set forth above, it is not relevant to any aspect of the reasonable-royalty calculation—is substantially outweighed by the risk of unfairly prejudicing the jury against Entropic and confusing the issues. Charter apparently intends to suggest that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is a transparent attempt to suggest to the jury that Entropic's business model, which includes filing lawsuits to enforce its patent rights, is improper. That argument would be unduly prejudicial for the same reason the Court forbids reference to a patent owner as a "patent troll" or "patent assertion entity." (8/11/23 Standing Order on MILs at 3, MIL No. 11.). Further, admitting evidence of ▮▮▮▮▮▮▮▮▮▮▮ confusing the jury by suggesting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Admitting this evidence would also require Entropic to offer proof of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This risks creating a "trial within a trial" that would waste time and distract the jury from the infringement and validity issues.

> **MIL 2: Preclude Charter From Offering Evidence, Testimony, Or Argument Related To Charter's Contribution To The Accused Technology Based On (1) Charter's Patents, Including The Number Of Patents Charter Owns, (2) The Relative Number Of Patents Between Charter And Entropic, (3) Patents On DOCSIS Owned By Charter Or Any Third Party, And (4) Charter's Overall Technology Expenditures.**

The Court should preclude Charter from presenting to the jury certain evidence or argument about the amount of its expenditures on technology, the number of patents it owns, or the number

3

of patents that third parties own as irrelevant under Fed. R. Evid. 402 and unduly prejudicial under Fed. R. Evid. 403. For clarity, Entropic is seeking to preclude the use of this evidence to show Charter's purported contribution to the accused technology for apportionment and is not seeking to preclude Charter from offering *general* testimony that it has patents or invests in technology.

**Charter's Patents**. Charter apparently intends to offer evidence regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*E.g.*, Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶¶ 52, 211.) This evidence should be precluded under Fed. R. Evid. 402 and 403 as irrelevant and unduly prejudicial. Charter's patents have nothing to do with this case. Charter has not alleged that any of its patents are prior art to the patents-in-suit. And it has not attempted to link these patents to any accused technology or suggest that they are comparable to the patents-in-suit, meaning that they cannot be relevant to damages. No expert has undertaken the analysis to link any Charter patents—either specifically or generally—to the accused products, the accused technology, or the functionality at issue. Consistent with that, courts in this district routinely preclude defendants from referencing how many patents they own. For example, in *PalTalk Holdings, Inc. v. Microsoft Corp.*, the Court precluded the defendant "from arguing that these 101 patents and 271 application[s] cover the accused products or that they [a]ffect the damages models in this case" because it failed to establish that those patents "bear[] a reasonable relationship to the issues to be presented at trial." No. 2:06-CV-367 (DF), 2009 WL 10677783, at *3 (E.D. Tex. Feb. 25, 2009); *see also Realtime Data LLC v. Echostar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 10466786, at *1 (E.D. Tex. Dec. 17, 2018) (ordering "No Reference to Specific Hughes Patents, the Number of Hughes Patents, or that Hughes Patents Cover the Accused Products").

Further, though general evidence of ▮▮▮▮▮▮▮▮▮▮▮▮ may be minimally relevant to Charter's story, any attempt or suggestion linking those patents to the accused products or functionality at issue will risk confusing and misleading the jury. For instance, even if Charter

4

were not to directly argue noninfringement based on its patents, suggesting Charter has patent coverage relevant to the technology at issue may confuse the jury into thinking that Charter cannot infringe Entropic's patents because it has patents of its own or because a single technology cannot be covered by more than one patent. There is also a risk that the jury will improperly assume Charter's patent portfolio relates to the accused functionalities and use it as a proxy for apportionment—even though Charter has not established that any of these patents are comparable to the accused technology.

**DOCSIS Patents of Charter and Third Parties**: Charter also seemingly intends to offer evidence of the relative number of DOCSIS patents owned by Charter, Entropic, and various third parties. According to Charter, it has ████████████████████████████████████████ ████████████████████████████████████████ (*E.g.*, Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶ 660; *id.* at n.1401.) This information should be excluded under Fed. R. Evid. 402 and 403 as irrelevant and unduly prejudicial. As with its other patents, Charter never links any of these patents to the accused technology. Instead, these DOCSIS patents introduce an irrelevant metric—skewed in Charter's favor—that again invites the jury to engage in an improper apportionment analysis.

**Technology Expenditures**. On a meet and confer, Charter stated that it intends to offer evidence of its overall technology expenditures at trial as evidence of Charter's contribution to the accused technologies. This evidence should be excluded for this purpose on the record here.

**First**, Charter has not tied the total amount of its technology investment to the accused technology or, by extension, a technical apportionment analysis. Its damages expert, Mr. Bakewell, ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ (Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶¶ 50, 214 n.541.) Nor has

5

Charter explained how this general figure could have any bearing on the value of the technologies at issue. Charter should be precluded from offering argument or testimony that suggests to the jury that the amount of its expenditures is relevant to an apportionment analysis when none of its fact witnesses or experts have tied the two together.

**Second**, evidence of Charter's overall technology expenses risks confusing the jury with irrelevant data and should thus be excluded under Fed. R. Evid. 403. Courts routinely preclude evidence of a party's technology expenditures when a party uses them to "engender sympathy" or "cloak" its efforts in "a veneer of legitimacy—by alluding to its investment of time, effort, and money." *Abbott Laby's. v. TorPharm, Inc.*, No. 97 C 7515, 2003 WL 22462614, at *23 (N.D. Ill. Oct. 29, 2003) (internal quotation marks omitted; *see also In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *20 (S.D. Ill. Dec. 22, 2011) (excluding R&D dollar amounts). That appears to be exactly what Charter intends to do here. Moreover, there is a substantial risk that the size of Charter's expenditures misleads the jury into thinking that the expense must relate to Charter's own contributions to the accused functionalities. Charter has not established the necessary predicate for the jury to hear testimony or see evidence about the amount of Charter's investment in technology as part of apportionment because Charter has not tied the amount of this investment to the accused technology.

> **MIL 3: Charter Shall Be Precluded From Offering Any Evidence, Testimony, Or Argument About The Value Of Any Licenses Or Settlement Agreements Unrelated To The Asserted Patents, Including** ███████████████████████████████████████████████ **And Any Non-Consummated Licenses**

Charter should be precluded from presenting evidence or argument relating to several license and settlement agreements that the parties agree are not technologically or economically

6

comparable to the patents-in-suit. Both parties' damages experts further agree that these agreements are not probative of the amount of a reasonable royalty in this case. At most, they are used to discuss the form of the royalty in this case. Thus, anything beyond the form of these agreements should be excluded under Fed. R. Evid. 402 and 403 because they have no probative value and would only confuse and mislead the jury, particularly given the low-dollar amounts contained in these agreements. It serves no purpose other than an attempt to unfairly anchor the jury to a low number.

"For an expert to introduce other licenses, agreements, negotiations, or the like to support the expert's theory surrounding the hypothetical negotiation, the Federal Circuit requires a showing of comparability." *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 7041725, at *1 (E.D. Tex. Dec. 20, 2019). Charter's expert made no such showing. To the contrary, he admits that "none of these agreements are instructive as to the amount of a reasonable royalty." (Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶ 600, 613.) Entropic's expert, Stephen E. Dell, CVA, agrees: "[i]t is my opinion that none of the agreements produced by Charter are economically comparable to the Asserted Patents." (Ex. E, 7/21/23 Dell Rpt. ¶ 195.) Because the experts agree that the licenses are not informative of the royalty determination, the licenses themselves should be excluded as irrelevant. *See, e.g.*, *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266300, at *4 (E.D. Tex. Nov. 15, 2018) (quotation marks and citation omitted) (excluding testimony on settlement agreement that expert conceded was "not sufficiently comparable to the technology in the hypothetical negotiations"); *see also In re ChanBond, LLC Pat. Litig.*, No. 15-842-RGA, 2020 WL 550786, at *1 (D. Del. Feb. 4, 2020) ("Mr. Bakewell's opinion based on [investment offers that are not technologically or economically comparable] is irrelevant and excluded").

Although Charter concedes the agreements are not probative of the royalty amount, it has indicated that it may try to introduce them to show the ▇▇▇▇ of its licenses. (Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶ 600.) But Charter's expert can express this ▇▇▇▇ opinion—i.e., that Charter has entered into agreements that ▇▇▇▇ and that are ▇▇▇▇—without showing the jury the individual licenses or the specific licensing values at issue. (*Id.*) The details of the individual licenses are irrelevant to the hypothetical negotiation because neither Charter nor its expert have shown the licenses to be technologically comparable. *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017) ("[A] complete failure to provide any analysis regarding technological comparability warrants exclusion."). Even if the "structure" of Charter's licenses and settlements were marginally relevant, any probative value is substantially outweighed by the risk of prejudice and confusion. *United Servs. Auto. Ass'n*, 2019 WL 7041725, at *2. Allowing the jury to see evidence of agreements unrelated to the hypothetical negotiation risks confusing the jury. Indeed, these licenses involve far lower royalty amounts than what is at issue in this case. Thus, the jury's royalty determination could be improperly skewed by the values in those non-comparable agreements. By contrast, any prejudice to Charter from excluding the licenses is negligible because its own expert does not rely on them to support his opinions on the amount of the royalty and because he can still offer his opinion that Charter has used lump sum agreements for patent rights.

### MIL 4: Preclude Charter From Offering Evidence, Testimony, Or Argument That Charter's Damages ▇▇▇▇

The Court should preclude Charter from offering argument or evidence that ▇▇▇▇ as contrary to the law. Entropic's damages expert, Mr. Dell, opines ▇▇▇▇ (Ex. E, 7/21/23 Dell Rep. ¶ 478.) In rebuttal, Mr.

8

Bakewell argues ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶ 17.) Charter has made plain its intent to argue that damages must be capped by actual use because it moved to strike Mr. Dell's opinions on the erroneous ground that damages cannot be based on a lump sum royalty for future expected use. (Dkt. 169 at 12–13.) Although Entropic does not dispute that Mr. Bakewell can opine ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and that this is an optional consideration for the hypothetical negotiation, any testimony, suggestion, or argument that actual use of an accused feature acts as a "cap," or ceiling, for lump-sum damages is contrary to law.

For lump-sum awards—the only form of royalty at issue for the '682 Patent—it is reversible error to "treat[] the profits [defendant] actually earned during the period of infringement as a royalty cap." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). Such "treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened." *Id.* Reinforcing that actual use is not a cap to lump-sum awards, the Federal Circuit consistently upholds awards based on parties' expectations at the time of the hypothetical negotiation even when those expectations are not realized. In *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, the court found that the jury's damages award was properly based on a defendant's "business plan and its projections for future sales," even though the defendant never met those projections. 274 F.3d 1371, 1385 (Fed. Cir. 2001). Likewise, the court in *Amgen Inc. v. Hospira, Inc.* upheld a jury's award that was based on the hypothetical negotiators' expectations about FDA approval, even when those expectations were not met. 944 F.3d 1327, 1341–42 (Fed. Cir. 2019).

In short, Entropic does not seek to prevent Mr. Bakewell from referring to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ or opining that it would be a consideration at the hypothetical negotiation (under the Book of Wisdom). However, his testimony, and argument based on it, must

9

conform to Federal Circuit law that prohibits use of such post-negotiation evidence as a "cap" on what the parties would agree at a hypothetical negotiation. Allowing Charter to present testimony or argument ▮▮▮ would be contrary to law and should be precluded.

**MIL 5: Preclude Charter From Introducing Evidence, Testimony, Or Argument That** ▮▮▮

Pursuant to Fed. R. Evid. 402 and 403, Charter should be precluded from arguing to the jury ▮▮▮ Entropic alleges that Charter's use of ▮▮▮ infringes certain of the Asserted Patents, including the '362 Patent. Although Charter wants to tell the jury that ▮▮▮ it made no such allegation as part of its invalidity case. Nor can it be relevant to damages. Although the *Georgia-Pacific* factors allow consideration of the "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results," Charter has no evidence that ▮▮▮ *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Charter's evidence of ▮▮▮ comes from the deposition testimony of ▮▮▮ was asked ▮▮▮ to which he stated that ▮▮▮ (Ex. F, ▮▮▮ 8/16/23 Tr. 16:25–17:6.) Mr. ▮▮▮, and none of Charter's experts cite his testimony to support their opinions. Similarly, ▮▮▮ described ▮▮▮ work in general terms. He indicated that ▮▮▮

10

timeframe, and he did not specifically identify work that predated the priority date of the '362 Patent. (Ex. G, [REDACTED] 7/17/23 Tr. 78:23–80:3.) This evidence should be precluded for several reasons.

**First**, testimony and evidence about [REDACTED] would violate the Court's Standing Order on Motions *in Limine*. (8/11/23 Standing Order on MILs.) Charter did not identify [REDACTED] products, or activities as prior art. Any attempt to introduce evidence that [REDACTED] would violate Court Motion *in Limine* No. 4. *Id.* at 2 (prohibiting "evidence, testimony, or argument regarding prior art that is not disclosed in a specific combination set forth in any party's expert report or invalidity contentions").) Likewise, Charter's invalidity expert, Dr. Goldberg, did not refer to [REDACTED] products or activities in the substance of his opinions. Nor did he cite any testimony from Mr. [REDACTED] or Mr. [REDACTED] to support the notion that [REDACTED] Any attempt by Dr. Goldberg to opine on this notion at trial would violate Court Motion *in Limine* No. 23. (*Id.* at 4 (precluding experts from testifying "outside the established parameters of" their reports).)

**Second**, the issue is irrelevant. There is no evidence that [REDACTED] qualifies as prior art pursuant to the Patent Act. Mr. [REDACTED] testimony does not identify [REDACTED] Similarly, Mr. [REDACTED] testimony lacks the evidentiary basis to show that he is describing prior art. Mr. [REDACTED] testified to work that [REDACTED] (Ex. G, [REDACTED] 7/17/23 Tr. 78:23–80:3.) But the priority date for the '362 Patent is April 17, 2009, and Mr. [REDACTED] testimony [REDACTED] Even if [REDACTED] it would still be irrelevant. [REDACTED]'s internal development work is not prior art, as Charter never asserted a prior-invention defense under 35 U.S.C. § 102(g) (pre-AIA). Thus,

11

testimony about ▮▮▮▮▮ is not relevant to validity. *See Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, No. 16-CV-13456, 2019 WL 4892417, **3–5 (E.D. Mich. 2019) (excluding prior-invention evidence because "allowing [defendant] to present to the jury testimony and evidence of priority of invention will suggest to the jury an improper basis for reaching a conclusion on invalidity"). Moreover, there is no evidence to suggest that anything ▮▮▮▮▮ did that would be cognizable as prior art under the Patent Act discloses or embodies any element of the asserted claims. Charter's retained experts ▮▮▮▮▮

**Third**, evidence regarding ▮▮▮▮▮ is not relevant to damages. Charter's technical expert, Dr. Kevin C. Almeroth, ▮▮▮▮▮ (Ex. H, 8/11/23 Almeroth Reb. Rpt. ¶ 395.) Charter's damages expert, Mr. Bakewell, ▮▮▮▮▮ (Ex. D, 8/11/23 Bakewell Reb. Rpt. ¶ 82.) The only conceivable way that ▮▮▮▮▮ could be relevant to damages is through *Georgia-Pacific* factor nine. That factor permits consideration of "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results." *Georgia-Pacific*, 318 F. Supp. at 1120. But because there is no evidentiary foundation showing ▮▮▮▮▮ it cannot be relevant to this factor.

**Fourth**, even if evidence of ▮▮▮▮▮ was somehow marginally relevant, any probative value is substantially outweighed by the risk of confusing the jury. For instance, this evidence could improperly suggest to the jury that the accused products and services cannot infringe because ▮▮▮▮▮ The testimony could also confuse the jury

12

regarding the disclosures of the printed art that Charter does rely on, U.S. Patent No. 7,522,901 to Dauphinee. Although Dauphinee is assigned to ▓▓▓▓, Charter never disclosed, and its experts never opined on, a combination of Dauphinee and any ▓▓▓▓ product or activity. If testimony of ▓▓▓▓ witnesses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is presented to the jury, it may mislead them into thinking that this work was reflected in, or should be considered together with, the disclosures of Dauphinee. Thus, any evidence of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ should be precluded under Fed. R. Evid. 403.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant Entropic's motions *in limine*.

Date: October 10, 2023

Respectfully submitted,

By: */s/ Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)
Alan E. Littmann (*pro hac vice*)
Doug Winnard (*pro hac vice*)
Shaun Zhang (*pro hac vice*)
Jennifer M. Hartjes (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
dwinnard@goldmanismail.com
sschoenburg@goldmanismail.com
wwoodward@goldmanismail.com
jhartjes@goldmansimail.com

James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown

**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com
ketajh.brown@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com
courtney.neufeld@klgates.com

Darlene Ghavimi
Matthew A. Blair
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

Christina N. Goodrich
Connor J. Meggs
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5031
Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com

Peter E. Soskin
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8046
Fax: (415) 882-8220

peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
Charles Everingham, IV
Texas Bar No. 787447
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com
ce@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 6, 2023, pursuant Local Rule CV-7(h), counsel for Plaintiff Entropic Communications, LLC (Alan Littmann, Michael Pieja, and James Shimota) conferred with counsel for Defendant Charter Communications, Inc. (including Deron Dacus) regarding the foregoing Motions *in Limine*. Charter opposes the relief sought in Motions *in Limine* Nos. 1–5, having given the reasons set forth in the Argument section above. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

                                                    */s/ Michael T. Pieja*
                                                    Michael T. Pieja



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on October 10, 2023.

                                                    */s/ Michael T. Pieja*
                                                    Michael T. Pieja