# CONFIDENTIAL

███████████████

# EXHIBIT C

```
                                                             Page 1
 1            IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF TEXAS
 3                     MARSHALL DIVISION
 4    ENTROPIC COMMUNICATIONS,
 5    LLC,
 6              Plaintiff,       Case No.
 7       vs.                     2:22-cv-00125-JRG
 8    CHARTER COMMUNICATIONS,
 9    INC.,
10              Defendant.
11    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
12
13
14            REMOTE VIDEO DEPOSITION OF
15                RICHARD A. KRAMER
16
17
18               August 24, 2023
19               10:08 a.m. Central
20
21
22
23          Stenographically Reported By:
24    Deanna Amore - CRR, RPR, CSR - 084-003999
25
```

Page 2

```
 1          APPEARANCES OF COUNSEL
         (All Participants Appeared Remotely.)
 2
    On Behalf of the Plaintiff, ENTROPIC
 3  COMMUNICATIONS, LLC:
 4       K&L GATES LLP
         CONNOR MEGGS
 5       70 West Madison Street
         Suite 3300
 6       Chicago, Illinois 60602
         connor.meggs@klgates.com
 7
    On Behalf of the Defendant, CHARTER COMMUNICATIONS,
 8  INC.:
 9       ARNOLD & PORTER
         MARC COHN
10       601 Massachusetts Avenue NW
         Washington, D.C. 20001
11       marc.cohn@arnoldporter.com
12
    ALSO PRESENT:
13       Tim Tupiak, Legal Videographer
         Matthew Laurence, Concierge-Technician
14
15
```

Page 3

```
 1              I N D E X
 2  WITNESS                           EXAMINATION
 3  RICHARD A. KRAMER
 4    EXAMINATION BY MR. COHN               6
 5    EXAMINATION BY MR. MEGGS             133
 6           EXHIBITS
 7  Exhibit 1    U.S. Patent 8,223,775       8
 8  Exhibit 2    U.S. Patent 9,210,362       8
 9  Exhibit 3    Richard Kramer Curriculum   8
10               Vitae
11  Exhibit 4    Materials Considered to     8
12               Expert Report of Dr.
13               Richard Kramer
14  Exhibit 5    Dong - U.S. Patent          8
15               Application 2004/0160945;
16               CHARTER_ENTROPIC00381592-
17               1607
18  Exhibit 6    Brooks - U.S. Patent        9
19               Application 2001/0039600;
20               CHARTER_ENTROPIC00217633-
21               -646
22  Exhibit 7    Zhang - U.S. Patent         9
23               6,704,372
24  Exhibit 8    Favrat U.S. Patent          9
25               7,265,792
```

Page 4

```
 1           EXHIBITS
 2  NUMBER       DESCRIPTION              PAGE
 3  Exhibit 9    Li - U.S. Patent            9
 4               Application 2007/0098089;
 5               CHARTER_ENTROPIC00035923-
 6               939
 7  Exhibit 10   Dauphinee U.S. Patent       9
 8               7.522.901;
 9               CHARTER_ENTROPIC00380676-
10               681
11  Exhibit 11   8.11.2023 Expert Rebuttal   9
12               Report of Richard A.
13               Kramer
14  Exhibit 12   Errata to Expert Report    10
15               of Dr. Richard A. Kramer
16  Exhibit 13   Asserted Patents Claim     11
17               Language
18  Exhibit 14   7.12.2023 Deposition       83
19               Transcript of Curtis
20               Ling, Ph.D.
21  Exhibit 15   October 1989 Networking   103
22               Working Group Internet
23               Engineering Task Force;
24               ENTROPIC_CHARTER0018562-
25               677
```

Page 5

1       THE VIDEOGRAPHER:  Good morning.  We are going
2  on the record.  The time is 10:08 a.m. Central Time
3  on August 24, 2023.
4       Quality of recording depends on quality of
5  camera and Internet connection of participants.
6  What is heard from the witness and seen on the
7  screen is what will be recorded.
8       Audio and video recording will continue to
9  take place unless both parties agree to go off the
10 record.                          10:08:18
11      This is Media Unit No. 1 in the
12 video-recorded deposition of Dr. Richard Kramer,
13 taken in the matter of Entropic Communications, LLC
14 versus Charter Communications, Incorporated, filed
15 in the United States District Court for the
16 Eastern District of Texas Marshall Division,
17 Case No. 2:22-cv-00125-JRG.
18      My name is Tim Tupiak.  I'm the
19 videographer.  The court reporter is Deanna Amore.
20 We are both with the firm Veritext Legal Solutions.  10:08:53
21      I am not related to any party in this
22 action, nor am I financially interested in the
23 outcome.
24      If counsel will now state their
25 appearances and affiliations for the record,

2 (Pages 2 - 5)

Page 6

1  beginning with the noticing attorney, after which
2  the reporter will administer the oath.
3      MR. COHN:  This is Marc Cohn with
4  Arnold & Porter, in Washington DC, for the
5  defendant.
6      MR. MEGGS:  Connor Meggs, of K&L Gates, counsel
7  for Entropic Communications, LLC.
8          (Whereupon, the witness was
9          duly sworn.)
10     THE STENOGRAPHER:  Thank you.           10:09:35
11  You may proceed.
12         RICHARD A. KRAMER,
13  called as a witness herein, having been first duly
14  sworn, was examined and testified as follows:
15             EXAMINATION
16  BY MR. COHN:
17     Q.  Good morning, Dr. Kramer.
18     A.  Good morning.
19     Q.  I understand you've given a number of
20  depositions in the past.  So I won't belabor the   10:09:55
21  ground rules, but if you need a break or anything
22  like that, please let me know.  I tend to break at
23  the top of the hour.  So if you see it's the top of
24  the hour, you can expect we'll take a break
25  shortly.  If you need water, coffee, anything like

Page 7

1  that, it's important to me that you're able to
2  focus and are comfortable.  So if you need anything
3  like that, let me know.
4     A.  Thank you.
5          And, typically, if we are kind of in a
6  groove, to respect your time and everyone's, I'm
7  good to go more than an hour at first.  As we both
8  get tired, then I'll probably want to take breaks
9  more often but thank you.
10     Q.  Okay.  What did you do to prepare for    10:10:31
11  today's deposition?
12     A.  I read my report.  I read Dr. Goldberg's
13  report.  I read Dr. Almeroth's report.
14     Q.  Did you meet with counsel?
15     A.  Briefly.  Two days, part-time only.
16     Q.  And how many hours were your total
17  meetings with counsel to prepare for today?
18     A.  Not counting lunch, maybe, approximately,
19  six hours.  I could be off by an hour or two.
20     Q.  Roughly three hours twice?              10:11:12
21     A.  Roughly three to four, I would say, in
22  that range.
23     Q.  And when you said you reviewed the expert
24  reports, I assume you reviewed the documents cited
25  in those reports; is that true?

Page 8

1     A.  That is correct, sir, yes.
2     Q.  All right.  Now, I've premarked some
3  exhibits.  Let me just go through them for the
4  record.
5          Kramer Exhibit 1 is U.S. Patent 8,223,775.
6          (Whereupon, Kramer Exhibit 1 was
7          marked for identification.)
8     MR. COHN:  Kramer Exhibit 2 is U.S.
9  Patent 9,210,362.
10         (Whereupon, Kramer Exhibit 2 was
11         marked for identification.)
12    MR. COHN:  Kramer Exhibit 3 is your CV.
13         (Whereupon, Kramer Exhibit 3 was
14         marked for identification.)
15    MR. COHN:  Kramer Exhibit 4 are additional
16  materials considered in your rebuttal report.
17         (Whereupon, Kramer Exhibit 4 was
18         marked for identification.)
19    MR. COHN:  Kramer Exhibit 5 is the Dong prior
20  art.
21         (Whereupon, Kramer Exhibit 5 was
22         marked for identification.)
23    Mr. Cohn:  Kramer Exhibit 6 is the Brooks prior
24  art.
25

Page 9

1          (Whereupon, Kramer Exhibit 6 was
2          marked for identification.)
3     MR. COHN:  Kramer Exhibit 7 is the Zhang prior
4  art, Z-h-a-n-g.
5          (Whereupon, Kramer Exhibit 7 was
6          marked for identification.)
7     MR. COHN:  Kramer Exhibit 8 is the Favrat prior
8  art.
9          (Whereupon, Kramer Exhibit 8 was
10         marked for identification.)
11    MR. COHN:  Kramer Exhibit 9 is Li prior art.
12         (Whereupon, Kramer Exhibit 9 was
13         marked for identification.)
14    MR. COHN:  Kramer Exhibit 10 is the Dauphinee
15  prior art, D-a-u-p-h-i-n-e-e.
16         (Whereupon, Kramer Exhibit 10
17         was marked for identification.)
18    MR. COHN:  And Kramer Exhibit 11 is your August
19  11, 2023 rebuttal expert report.
20         (Whereupon, Kramer Exhibit 11
21         was marked for identification.)
22    MR. COHN:  And for the record, I made these
23  exhibit numbers match the exhibit numbers you used
24  in your rebuttal report.
25    There's two other exhibits here that

Page 14

1  approximately 10.  There's also been -- for
2  validity, I worked with the patent owners.  Some of
3  those have been -- I have helped address just
4  giving my technical opinions during, like, the
5  patent owner response, and so some of those were
6  dealt with at that level, and then -- or I've
7  written testimony on behalf of the patent holder.
8      Q.  In terms of your involvement in IPRs
9  before the patent office, how many times have you
10 rendered an opinion that patent claims were        10:20:02
11 unpatentable as opposed to patentable?
12     A.  As far as the numbers of matters I worked
13 on, it's about 50/50 split.  Again, some of this
14 stuff didn't see the light of day because -- but
15 the -- as far as the number of IPRs I've done, it
16 would probably be around maybe ten.
17     Q.  Have you testified in front of a jury
18 before in a patent case?
19     A.  No, sir, never.
20         (Stenographer clarification.)            10:20:45
21     THE WITNESS:  I believe I said ten.
22         And that ten doesn't represent some things
23 that -- where there was never a declaration ever
24 issued.  The ten -- there's a broader number than
25 ten where both for the patent owner and for the

Page 15

1  defendants where I've worked on other matters,
2  that's a broader number than ten.  I don't know
3  what it is, but it's probably 50.  I could be
4  wrong.
5  BY MR. COHN:
6      Q.  All right.  Let's look at the '362 patent,
7  No. 2.
8      A.  Okay.
9      Q.  This patent is titled "Wideband Tuner
10 Architecture."                                    10:21:55
11         Do you see that?
12     A.  Yes, sir.
13     Q.  And the term "wideband" is used in both
14 the specification and in the claims of this patent;
15 right?
16     A.  For instance, it's in the title, and it's
17 in the claims, a wideband receiver system, and
18 it's, for instance, in the abstract.
19     Q.  And when you say "in the abstract," you
20 don't mean conceptually, you mean in reality, it's  10:22:19
21 in a portion of the patent called the abstract; is
22 that correct?
23     A.  On the front page of the patent, thank
24 you, Item No. 57.
25     Q.  Aren't always as familiar as we are with

Page 16

1  these things.
2      The term "wideband" in the '362 patent is
3  not given a special definition in that patent; is
4  that correct?
5      A.  What do you mean by "special definition"?
6      Q.  Is there a passage of the '362 patent that
7  provides a definition of wideband?
8      A.  As one skilled in the art in reading
9  wideband, there is the discussion about the fact
10 that, for example, in column 4, that the frequency   10:23:14
11 bandwidth spectrum could be any -- any portion.
12     In column 5, there's a discussion, for
13 example, with respect to bandwidth, UBW1, for
14 instance, the frequency spectrum, that it would be
15 understood that it could comprise all available
16 channels that exist in a license frequency spectrum
17 to provide system flexibility, and it can also be
18 all receivable channels within a geographical area.
19     So as one skilled in the art, one would
20 appreciate that wideband would include at least it   10:24:09
21 is a broader term than full band and would include
22 full.
23     Q.  Wideband is not limited to full band.
24 That's correct; right?
25     A.  Wideband is a broader term.  It would

Page 17

1  include full.
2      Q.  And wideband would include bandwidth less
3  than full band; correct?
4      A.  Under the umbrella it could include full
5  band.  It could include something less than full
6  band.
7      Q.  One of the examples given of widebands
8  within the '362 patent is 80 megahertz bandwidth;
9  is that correct?
10     A.  Can you show me where?                      10:25:10
11     Q.  My browser just burped.
12     I believe it's column 2.  I'm sorry.  It's
13 column 4, approximately line 22.  It says "In this
14 example, a number of available channels in BW1 is
15 assumed to be 10 with each channel occupies an
16 8 megahertz bandwidth for a total of 80 megahertz."
17     Do you see that?
18     A.  I do see that.
19     Q.  And the total of 80 megahertz is an
20 example of a wideband; is that right?               10:26:03
21     A.  I think that's a good way of putting it.
22 It's an example.
23     Q.  Would a bandwidth incoming to the system
24 described in the '362 patent of only 8 megahertz be
25 considered a wideband?

| Page 86 | Page 88 |
|---|---|
| 1  in that Q & A that I just read; right? | 1  Dr. Goldberg's analysis of the invalidity of |
| 2      A.  To the extent that Dr. Ling wasn't asked | 2  claim 11 in view of Zhang; right? |
| 3  to consider the Court's claim construction and | 3      A.  It appears so, yes. |
| 4  consider the claims, he was just simply giving his | 4      Q.  And in your response you see the |
| 5  opinion related to figures. | 5  subheading (a) refers to claim element 11a3.  And |
| 6      Q.  You don't disagree with what he said -- | 6  then you quote the element? |
| 7  right? -- based on your analysis that the tuners 1 | 7      A.  Yes. |
| 8  and 2 in Figure 6 perform similar functions to the | 8      Q.  And that element corresponds to |
| 9  radio front end of the previous figures? | 9  element 11d in Kramer Exhibit 13 that you brought |
| 10     A.  I mean, it speaks for itself what it says.  14:15:07 | 10 this morning; is that right?           14:19:00 |
| 11 I really don't have an opinion. | 11     A.  I think that's correct, yes. |
| 12     Q.  You don't disagree with that answer of | 12     Q.  And after this section on element 11d, |
| 13 Dr. Ling; right? | 13 your report then turns to the validity of claim 12; |
| 14     MR. MEGGS:  Objection.  Form. | 14 correct? |
| 15     THE WITNESS:  I didn't say that. | 15     A.  So after this section, paragraphs 120 |
| 16 BY MR. COHN: | 16 including Subsections 121 through paragraphs 120 -- |
| 17     Q.  Do you disagree with Dr. Ling when he said | 17 forgive me -- paragraph 121 through paragraph 128, |
| 18 that -- | 18 then starting with paragraph 129 is a12. |
| 19          (Simultaneous speaking.) | 19     Q.  And in your -- in paragraphs 120 to 128 of |
| 20     THE WITNESS:  I don't have an opinion.  I mean,   14:15:45 | 20 your report, the only claim element that you      14:20:05 |
| 21 it speaks for itself.  He's entitled to have his | 21 discuss is what's labeled as element 11d on the |
| 22 own opinion and describe what he feels is his | 22 chart you brought with you this morning; is that |
| 23 opinion. | 23 right? |
| 24 BY MR. COHN: | 24     A.  So the heading over paragraph 121 appears |
| 25     Q.  In the course of your analysis, did you | 25 to correspond to what I have marked on my note |

| Page 87 | Page 89 |
|---|---|
| 1  come to an opinion that the tuners 1 and 2 of | 1  sheet here as 11d, correct. |
| 2  Figure 6 perform different functions than the radio | 2      Q.  And you don't discuss any of the other |
| 3  front end of the previous figures? | 3  elements of claim 11 besides 11d in paragraphs |
| 4      MR. MEGGS:  Objection.  Form. | 4  120 to 128; correct? |
| 5  BY MR. COHN: | 5      A.  I'm going by the headings.  (a) is what is |
| 6      Q.  Do you recall whether you gave that | 6  marked as 11a3, and then it goes into claim 12. |
| 7  opinion or not? | 7  That appears to be correct. |
| 8      A.  In my analysis I was rebutting | 8      Q.  Let's go back to Figure 2, please. |
| 9  Dr. Goldberg and Dr. Almeroth's reports. | 9      A.  Of the '362 patent? |
| 10 I disagree with their opinions.  I was focused on    14:16:34 | 10     Q.  Yes.  Of the '362 patent.         14:23:17 |
| 11 the claims, the evidence they provided.  I didn't | 11     A.  Okay.  I'm there. |
| 12 go through people's transcripts line by line | 12     Q.  Do you see, at the right side of Figure 2, |
| 13 forming opinions.  I don't have one. | 13 it says "serial or parallel data interface to |
| 14     Q.  Now, if we could turn in your expert | 14 demodulator"? |
| 15 report to page 41, please. | 15     A.  So it says "serial or parallel data |
| 16     A.  Okay.  I'm there. | 16 interface to demodulator."  Yes.  I see that. |
| 17     Q.  Now, heading D(1) on page 41 of your | 17     Q.  Okay.  And there were commonly known |
| 18 report, you say that "Claim 11 Is Valid in View of | 18 methods for serial or parallel data interfaces at |
| 19 Zhang Either Alone Or in Combination With Favrat." | 19 the time of the '362 patent; right? |
| 20     Do you see that?                  14:17:51 | 20     A.  I was asked to analyze the '362 patent in   14:24:24 |
| 21     A.  What paragraph again, please? | 21 the context of the claim terms.  If we want to talk |
| 22     Q.  It's the heading just before | 22 about hypotheticals, was there a parallel and |
| 23 paragraph 120. | 23 serial interfaces, yes, there was. |
| 24     A.  Okay. | 24     Claim 12 is not a hypothetical.  It is |
| 25     Q.  And in this section you're responding to | 25 just not serial.  So the serial interface -- I just |

Page 142

1  subscriber would be again the same.  So there
2  wouldn't be any undesired channels, and it's being
3  selected from undesired.
4       BY MR. MEGGS:
5       Q.  And then what happens when n is greater
6  than m?
7       MR. COHN:  Same objections.
8       THE WITNESS:  So n could be any number, and so
9  then it would be some sort of a selection of n is
10 greater than m.                            16:42:26
11      MR. MEGGS:  No further questions.
12      MR. COHN:  Okay.  I don't have any questions.
13 I object to that entire redirect as outside of
14 scope of his report and outside of scope of my
15 questioning, but I don't have any questions.
16      MR. MEGGS:  Your objection is noted, sir, but
17 I obviously disagree.
18      THE VIDEOGRAPHER:  Are we ready to go off the
19 record?
20      MR. COHN:  We sure are.              16:42:50
21      THE VIDEOGRAPHER:  We are going off the record.
22 The time is 4:42 p.m.  This concludes today's
23 testimony by Rich Kramer.  The total number of
24 media unit used was six and will be retained by
25 Veritext Legal Solutions.  Thank you.

Page 143

1                    C E R T I F I C A T E
2
3       I, DEANNA AMORE, a Shorthand Reporter and
4  notary public, within and for the State of
5  Illinois, County of DuPage, do hereby certify:
6       That RICHARD A. KRAMER, the witness whose
7  examination is hereinbefore set forth, was first
8  duly sworn by me and that this transcript of said
9  testimony is a true record of the testimony given
10 by said witness.
11      I further certify that I am not related to
12 any of the parties to this action by blood or
13 marriage, and that I am in no way interested in the
14 outcome of this matter.
15
16      IN WITNESS WHEREOF, I have hereunto set my
17 hand this 28th day of August 2023.
18
19
       *[signature: Deanna Amore]*
20      _____
21      Deanna M. Amore, CRR, RPR, CSR
22
23
24
25

Page 144

1  CONNOR MEGGS
2  connor.meggs@klgates.com
3              August 28, 2023
4  Entropic Communications v Charter Communications, Inc., Et Al
5  8/24/2023, Richard Kramer (#6067726)
6      The above-referenced transcript is available for
7  review.
8      Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 cs-ny@veritext.com.
16
17 Return completed errata within 30 days from
18 receipt of testimony.
19 If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22           Yours,
23           Veritext Legal Solutions
24
25

Page 145

1  Entropic Communications v Charter Communications, Inc., Et Al
2  Richard Kramer (#6067726)
3              E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23 _____    _____
24 Richard Kramer                        Date
25