UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>             Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.<br><br>             Defendant. | Civil Action No. 2:22-cv-00125-JRG |

**CHARTER'S SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO STRIKE
OPINIONS OF CHRISTOPHER BAKEWELL**

Entropic's reply (Dkt. 240 or "Reply") continues to mischaracterize Bakewell's opinions and the applicable law. As Charter set forth in its Opposition, the royalty opinions of Entropic's expert, Stephen Dell, include lump sums involving projections up to ▮▮▮▮▮, which necessarily requires an examination of what the market would look like during that period, but which Dell failed to perform. (Dkt. 212 ("Opp.") at 6–7.) Bakewell's rebuttal opinions on non-infringing alternatives and product substitution are directed to this failure, which is entirely proper and not, as Entropic suggests, "an attempt to create a new rule for rebuttal experts." (Reply at 3.) Entropic has not demonstrated that any opinions of Christopher Bakewell should be struck.

### A.     Bakewell Disclosed the Bases For His Rebuttal Opinions

Bakewell has adequately disclosed the basis for his opinions. *First*, his report adequately disclosed the timing that the analysis would occur. For each patent, Bakewell provides timelines of relevant events (including the hypothetical negotiation) and the potential non-infringing alternatives. (Opp. at 10.) Bakewell also properly relied on Charter's Interrogatory Response, and Entropic's claim that an expert's reliance on interrogatories is "not a reliable evidentiary basis" is belied by its own expert's reliance on interrogatory responses. (Dkt. 169-2 (Dell Op. Report) at footnotes 245, 306, 437; Dkt. 169-3 (Dell Supp. Report) at 21 (Attachment 12); *Estech Sys. IP, LLC v. Carvana LLC*, No. 2:21-CV-482-JRG-RSP, 2023 WL 3292881, at *8–9 (E.D. Tex. May 5, 2023) (denying plaintiff's motion "to strike Ms. Kindler's damages report for relying on Conduent's third supplemental answer to Estech's interrogatories as the basis for her 2008 hypothetical negotiation date").) Any dispute Entropic has with the adequacy of the evidence Bakewell relies on is properly the source of cross-examination, not exclusion. *Second*, it is entirely appropriate for Bakewell to rely on Dr. Almeroth for any technical opinions regarding ▮▮▮▮▮ ▮▮▮▮▮ as permitted by Fed. R. Evid. 703, and Entropic fails to distinguish Charter's relevant law. (*See* Opp. at 10.) *Finally*, Bakewell's report includes an extensive rebuttal directed to Dell's failure

1

to █████████████████████████████████████████████████████████

████████. (*See id.* at 6, 7, 12–14.) Bakewell's criticisms are proper rebuttal opinions and were adequately disclosed. Each of Entropic's issues amount to factual disagreements regarding the relative weight that should be given to Bakewell's rebuttal opinions, for which cross-examination, not exclusion, is appropriate.[1]

      **B.**    **Bakewell's Opinions On ██████████ Are Reliable And Admissible**

Entropic's first argument—that *Grain Processing's* analysis of non-infringing alternatives "during the accounting period" is irrelevant because it is a lost profits case—is easily refuted. (Reply at 3–4; *see Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).) This Court, and other courts in this district, have relied on *Grain Processing* in analyzing non-infringing alternatives in the reasonable royalty context. *See*, *e.g.*, *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-1366-JRG-RSP, 2021 WL 2697721, at*1–2 (E.D. Tex. Feb. 23, 2021); *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-CV-158-JRG, 2012 WL 1995514, at *2–3 (E.D. Tex. June 4, 2012) (citing *Grain Processing* in denying motion to strike damages expert's opinions on non-infringing alternatives); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (using *Grain Processing* factors to determine availability of non-infringing alternatives), *objections overruled*, No. 2:06-CV-348, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011). Entropic's attempt to distinguish *Grain Processing* is particularly disingenuous when Entropic itself relied on lost profits cases in

---

[1] *Complaint of Kreta Shipping, S.A*, relied on by Entropic, is completely inapposite. There, the plaintiff moved to strike certain experts' trial affidavits because the affidavits included additional opinions not in the initial report. 181 F.R.D. 273, 276–77 (S.D.N.Y. 1998). Such a situation is not present here and, in any event, Charter does not contest that Bakewell's report is subject to Federal Rule of Civil Procedure 26(a)(2)(B), and as demonstrated here and in Charter's Opposition, the report fully complies with the rule.

its opening brief and claimed that "[t]he logic underpinning those cases must apply equally to the reasonable royalty context." (Dkt. 174 ("Mot.") at 10–11.)[2] Entropic's reliance on *Data Treasury* is misguided since that court *also* quoted *Grain Processing* for the very proposition that Entropic attempts to discount. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2011 WL 8810604, at *13 (E.D. Tex. Aug. 2, 2011) ("Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits . . . ."). Likewise, Entropic's argument that Bakewell is precluded from relying on the book of wisdom (Reply at 4–5) is directly contrary to the numerous cases cited by Charter (Opp. at 9–10), none of which Entropic attempts to address.

Charter also explained how ████████████████████████████████████████████████████████████, and cited supporting cases. (Opp. at 11–12.)[3] Ignoring this precedent (or conceding its relevance), Entropic instead points to a single paragraph of Bakewell's report and claims that "Mr. Bakewell never analyzes the ██████████████████████████████ the hypothetical negotiation. (Reply at 5.) Bakewell's rebuttal report, however, criticizes Dell's opinions related to non-infringing alternatives and product substitution at length, including critiques directed to third-party supply of products. (Dkt. 174-2 at ¶¶ 234–43, 254–66, 624–31.) Entropic's disagreement with those opinions, which are directly responsive to Dell, are not a basis for exclusion.

---

[2] Far from "cast[ing] aspersions on *AstraZeneca*," as Entropic claims (Reply at 4 n.1), Charter simply pointed out the unremarkable proposition that the findings of the *AstraZeneca* court were based on a particular set of facts. (Opp. at 8.)

[3] ████████████████████████████████████████████████████████████████████████████

3

C.  Exclusion Of ▮▮▮▮▮ Is Not Warranted

1. ▮▮▮▮▮

Entropic does not dispute that (i) it never disclosed ▮▮▮▮ as a damages theory in response to Charter's interrogatory, (ii) it never raised any issue with Charter regarding production of any ▮▮▮▮ during fact discovery, (iii) it never asked a single Charter witness about ▮▮▮▮, and, most critically, (iv) it never disclosed this damages theory until service of the Dell report. (Reply at 5–6.) Nor does Entropic address any of the directly relevant case law cited by Charter. (*See, e.g.*, Opp. at 16–18.) Instead, Entropic repeats its false statement that Charter "with[e]ld information it knew was relevant." (Reply at 6), which makes absolutely no sense given that the information demonstrates the vast overinflation of Dell's royalty opinion. There would be no reason for Charter to withhold this information had Entropic properly disclosed its ▮▮▮▮ theory.

Additionally, Charter certainly disputes Entropic's claim that "the timing of the late disclosure is highly prejudicial." (*Id.* at 5.) Entropic never raised any issue during discovery, Dell had two separate occasions after service of the Bakewell report to respond to Bakewell's opinions, and Entropic had every opportunity to depose Bakewell. Entropic should not be allowed to lay behind the log and raise the issue for the first time in its motion to strike. *See Dallas Fallen Officer Found. v. Frazier*, No. 4:18-CV-481-ALM, 2019 WL 4256958, at *5 (E.D. Tex. Sept. 9, 2019) ("Concerns about discovery disputes should not be addressed to the Court for the first time through a motion to sanction the other party. Let alone when there have been no discovery disputes up until the present dispute."). Finally, an accurate number of ▮▮▮▮ is undisputedly important. Dell claims that Entropic is entitled to ▮▮▮▮, which is based on a false theory that every ▮▮▮▮

4

functionality. Accounting for an accurate number of ▮ will reduce damages to ▮,[4] which clearly weighs against exclusion.

2. ▮.

Entropic does not dispute that (i) Charter ▮, and (iii) Entropic deposed multiple Charter employees regarding ▮ including Charter's 30(b)(6) witness, who testified the ▮. Accordingly, Entropic's claim that it was "deprived" of any ability to take discovery on this agreement is false. (Reply at 6.) Entropic's reliance on *Gree, Inc. v. Supercell Oy*, No. 2:19-CV-311-JRG, 2021 WL 603726, at *3 (E.D. Tex. Feb. 16, 2021), is misplaced. There, the defendant possessed third-party source code throughout discovery, but argued that it wasn't required to produce it because the code was not a "document" under the parties Discovery Order. 2021 WL 603726, at *3.[5] No such facts exist here. Because it is undisputed that the information is important as it demonstrates the unreasonableness of Dell's royalty opinions, exclusion is not appropriate.

Entropic's motion should be denied.

---

[4] Dkt. 174-2 at 276 (Exhibit 4.0).

[5] In *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, No. 11-414, 2017 WL 5617463, at *11 (D. Haw. Nov. 21 2017), cited by Entropic, the expert initially served a three-page report and "failed to provide any of the documents underlying his opinions or the calculations forming the basis for his conclusion[.]" *Id.* at *2. The expert then served two later reports that supposedly addressed these deficiencies, but "the time for discovery ha[d] not been reopened" and the court determined that defendants were prejudiced because they "formulated their trial strategy based on [the expert']s original report," "decided which experts they needed or did not need in light of [the expert']s original report," and "would need to rethink their trial strategy and possibly seek out an additional expert." *Id.* at *10–11. None of those facts remotely exist here.

5

Dated: October 11, 2023                    Respectfully submitted,

*/s/ Daniel Reisner by permission Elizabeth Long*
Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email:  ddacus@dacusfirm.com

Daniel L. Reisner
David Benyacar
Elizabeth Long
Albert J. Boardman
Melissa Brown
Jacob Bass
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email:  daniel.reisner@arnoldporter.com
Email:  david.benyacar@arnoldporter.com
Email:  elizabeth.long@arnoldporter.com
Email:  albert.boardman@arnoldporter.com
Email:  melissa.brown@arnoldporter.com
Email:  jacob.bass@arnoldporter.com

Marc A. Cohn
Amy L. DeWitt
Paul I. Margulies
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Email:  marc.cohn@arnoldporter.com
Email:  amy.dewitt@arnoldporter.com
Email:  paul.margulies@arnoldporter.com

**Attorneys for Defendant**
**Charter Communications, Inc.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV 5(a). As such, this document is being served October 11, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV 5(a)(3)(A).

/s/ Elizabeth Long
Elizabeth Long

7