IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:22-CV-00125-JRG-RSP |
| CHARTER COMMUNICATIONS, INC., | § § | |
| *Defendants*. | § § § | |

### **REPORT AND RECOMENDATION**

Before the Court is Plaintiff Entropic Communications, LLC's ("Entropic") Motion For Summary Judgment That Devices With MaxLinear Chips Are Not Non-Infringing Alternatives Affecting The Reasonable Royalty Rate (Dkt. No. 179). For the reasons that follow, the motion should be **GRANTED-IN-PART** and **DENIED-IN-PART** as provided below.

### I. BACKGROUND

Entropic filed its initial complaint on April 27, 2022 asserting that Charter Communications, Inc. ("Charter") infringes U.S. Patent Nos. 8,223,775 (the "'775 Patent"), 8,284,690 (the "'690 Patent"), 8,792,008 (the "'008 Patent"), 9,210,362 (the "'362 Patent"), 9,825,826 (the "'826 Patent"), and 10,135,682 (the "'682 Patent") (collectively "the Asserted Patents"). (Dkt. No. 1 at ¶1.)

Entropic purchased the asserted patents from MaxLinear in 2021. (Dkt. 180 at 2.) MaxLinear in turn obtained at least the '775 Patent from Entropic Communications, Inc. ("Legacy Entropic") in 2015. (Dkt. 179 at 6 ("Mot.")). The Parties agree that the hypothetical negotiation for the '775 Patent would have occurred in 2013 between Entropic and Charter. (Mot. at 4.) The

1

parties also agree that for the hypothetical negotiations for the '690, '008, '362, and '826 patents MaxLinear would be the hypothetical licensor. (*Id.* 7-10)

## II.     APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### III. ANALYSIS

Charter has offered a number of MaxLinear devices as non-infringing alternatives as to the hypothetical negotiations surrounding the Asserted Patents. (Mot. at 2.) Charter argues that certain MaxLinear products that became licensed two years after the hypothetical negotiation of the '775 Patent are non-infringing alternatives. (*Id*. at 4.) Charter further argues that MaxLinear products for all hypothetical negotiations[1] are non-infringing alternatives. (*Id*.) Entropic contests the availability of MaxLinear products in the first case and whether MaxLinear's products can even be non-infringing alternatives in the second. (*Id*.)

#### A. LATER LICENSED PRODUCTS AS NON-INFRINGING ALTERNATIVES

On this first point, Entropic argues MaxLinear's products were not non-infringing at the time of the hypothetical negotiation and thus were not available. (Mot. at 5-6.) Charter contends that the "book of wisdom" allows its expert to consider "post-negotiation information." (Opp. at 5.) Charter notes that Courts often permit the use of the Book of Wisdom to permit damages experts to consider alternatives that were not on the market at the time of the hypothetical negotiation. (Opp. 4-5 (citing *Grain Processing Corp. v. Am. Maize-Prod. Co.,* 185 F.3d 1341, 1353 (Fed. Cir. 1999).) Entropic argues that the Book of Wisdom enables an expert "to correct uncertain

---

[1] Entropic argues that the MaxLinear products identified by Charter are not acceptable alternatives from a technical perspective for the '682 Patent. (Mot. at 4). Charter argues that because Entropic withdrew particular infringement contentions the comparable MaxLinear product no longer need be considered as a non-infringing alternative and Entropics motion here is moot. (Dkt. No. 211 at 10 ("Opp.").) Entropic argues that its motion should instead be granted rather than mooted. (Dkt. No. 242 at 3 ("Reply")). The Court finds that Charter has withdrawn its contention as to MaxLinear's product here and as such it no longer remains an active controversy on which the Court should rule. As such the Court recommends this portion of Entropic's motion be **DENIED** as moot.

prophec[ies]" but not to alter the availability of alternatives, as this situation would require. (Reply at 2.)

The Court agrees with Entropic. Charter misconstrues the scope of the Book of Wisdom. It is incorrect to state that the Book of Wisdom "provides that reasonable royalty damages can be informed by post-negotiation information." (Opp. at 5.) Such a statement is too broad. Rather, the Book of Wisdom permits experts to consider post-negotiation information in reconstructing the market to determine how a negotiation might be conducted. *See Grain Processing*, 185 F.3d at 1351-53.

For example, in *Grain Processing*[2], the Federal Circuit only permitted the consideration of an alternative not used until after infringement because the alleged infringer showed the only reason the alternative was not used was economic. *Id*. at 1354. While Charter cites a portion of this reasoning, that "[t]he critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period,'" *id*. at 1353, Charter takes this quotation out of context. *Grain Processing* explains the hypothetical negotiation "requires the patentee to project economic results that did not occur." *Id*. at 1350. This reconstruction "must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Id*. at 1350-51. This is where the Book of Wisdom permits the parties to consider post-negotiation information for non-infringing alternatives. The Federal Circuit explains such foreseeable alternatives may not have been on the market at the time, such as using old, non-infringing parts or processes that were technically available but not used until after the period of infringement for economic reasons. *Id*. at 1351-52.

---

[2] While *Grain Processing* deals with lost profits, this analysis of the hypothetical negation holds true for a reasonable royalty analysis. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

4

The Federal Circuit reasoned that where an alleged infringer could have "readily obtained all the materials needed for" the non-infringing alternative, it could be considered despite not being in use until much later. *Id*.

Here, Charter's proposed non-infringing alternative was not available because it was not yet licensed or otherwise non-infringing. (Mot. at 5-6.) No reconstruction of a negotiation in 2013 can result in an unrelated 2015 patent acquisition occurring any differently. Thus, the Book of Wisdom has no role here and MaxLinear's products cannot be considered as non-infringing alternatives to the '775 patent[3].

### B. PATENT OWNER'S PRODUCTS AS NON-INFRINGING ALTERNATIVES

On the second point, Entropic argues that a licensor's own product cannot be an alternative. (Mot. 7-9.) Entropic notes this is somewhat an issue of first impression, noting that while this issue has been squarely addressed for a lost profits analysis, it has not been for a reasonable royalty analysis. (*Id.* at 7.) Entropic argues the same rationale should apply here. First, Entropic argues the non-infringing alternative analysis is determining if there is an alternative to the patent owner's patented product, not to the allegedly infringing product. (Mot. at 7-8 citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017) and *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).) Second, Entropic argues the rationale for considering a non-infringing alternative in the hypothetical negotiation is that the licensor does not control it and thus cannot set the price. (Mot. at 8-9.) Entropic argues

---

[3] Additionally, as provided *infra* § III.b, once MaxLinear became the owner of the '775 Patent, the products would become patent owner products and could not be considered.

that where the licensor controls the proposed alternative there is no change in position as they still control access to the technology, whether through the patent or its product. (*Id*.)

First, Charter counters that Entropic's lost profits case law is distinguishable. (Opp. at 7-8.) Second, Charter disputes Entropic's discussion of the relative positions of the parties to the hypothetical negotiations. (*Id*. at 6-9.) Charter first clarifies that it proposes that third-party products employing the MaxLinear chip were alternatives, not MaxLinear products. (*Id*. at 5-6.) Charter argues that this eliminates any power MaxLinear has over the proposed non-infringing alternative, as any control is exhausted when MaxLinear first sells its product. (*Id*. at 6-9.) Finally, Charter argues that as a matter of law, third-party licensed products should be considered as non-infringing alternatives. (*Id*. at 6-7, citing *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed. Cir. 1995).)

The Court agrees with Entropic. While there is no case law cited by the parties that provides a definitive answer, the Court agrees that when considering the hypothetical negotiation a licensor's products can only be considered to strengthen the licensor's position.

### i. Case Law Does Not Provide A Clear Answer

The reasoning cited by Entropic in *Presido* and *SmithKline* does not provide clear guidance on this issue.

While *Presido* provides "[t]he correct inquiry under *Panduit* is whether a non-infringing alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product," this is limited to a lost profits analysis. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). The fundamental question asked by the lost profits analysis is different from that of the reasonable royalty analysis before the Court. The lost profits analysis is concerned with the source of the *patent owner's* profits so the

6

Court asks if the demand for the patent owner's product is attributable to the patented feature, or if an alternative without the patented feature would meet the demand. *See Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). Under the reasonable royalty analysis, by contrast, a non-infringing alternative may cap reasonable royalties based on the costs involved for *the infringer* to switch from the infringing solution to the non-infringing solution. *See Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (citing *Grain Processing,* 185 F.3d at 1347). Thus what "the correct inquiry under *Panduit*" is not relevant here under a reasonable royalty analysis.

Sinilarly, *SmithKline*'s discussion is not inconsistent with the foregoing. *SmithKline* provides "by definition, noninfringing products do not represent an embodiment of the invention." *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991). As Charter correctly notes, this statement is not intended as a definition of a non-infringing alternative. Rather it is merely one obvious feature.

Likewise, Charter's citation to *Pall Corp. v Micron Separations, Inc.* is incorrect. (Opp. at 7.) The entirety of Charter's citation provides:

> However, after Pall settled with Cuno, the district court correctly held that Cuno's presence in the marketplace could not be ignored, and limited the award of lost profits to the *share* of MSI's sales that Pall would reasonably have made.
>
> *Pall Corp.*, 66 F.3d at 1223(emphasis added).

The latter half of this quotation explains lost profits would need be apportioned between all alleged infringers[4]. *Id*. The third party products were not considered as non-infringing alternatives. Under

---

[4] Likewise, *Broadcom Corp. v. Emulex Corp.*, No. CV1003963JVSANX, 2011 WL 13133846, at *3 (C.D. Cal. Aug. 2, 2011) and *Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94 C 2304, 1996 WL 114781, at *5 (N.D. Ill. Mar. 14, 1996), aff'd, 178 F.3d 1306 (Fed. Cir. 1998) only address lost profits.

7

a reasonable royalty analysis there is no need to apportion an injury suffered by the patent owner among infringers as in the lost profits analysis.

### ii. First Principles Favors Granting the Motion

An examination of the principles underpinning the reasonable royalty analysis militates in favor of granting Entropic's motion. The point of the hypothetical negotiation analysis is to reconstruct the relative position of each party at the time of first infringement. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Such a negotiation "would involve a market place confrontation of the parties, the outcome of which would depend upon such factors as their relative bargaining strength; [and] the anticipated amount of profits that the prospective licensor reasonably thinks he would lose as a result of licensing the patent as compared to the anticipated royalty income. . ." *Id*.

While, the Federal Circuit has noted "[t]he economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation," this cannot be done in a vacuum. *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002). Here, MaxLinear, the prospective licensor, would profit from Charter's proposed alternative. As Charter proposes, it would purchase third-party devices employing MaxLinear chips, in turn this would increase demand and sales for such devices requiring the third parties to purchase more MaxLinear chips. As such, the threat of Charter's proposed alternative would not diminish MaxLinear's negotiating position. *See Georgia-Pac.*, 318 F. Supp. at 1121. With this understanding, exhaustion is not relevant. The analysis is not simply what a licensor controls, but what profit it stands to lose.

This analysis deals narrowly with the question before the Court and does not address other potential impacts of a hypothetical licensor's products on the market such as an examination of the licensor's profit. *See e.g. Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017).

## IV.   CONCLUSION

The Court recommends that Entropic's summary judgment motion be **GRANTED** as to the use of MaxLinear and MaxLinear-powered products as non-infringing alternatives for all Asserted Patents except the '682 Patent, for which summary judgment should be **DENIED AS MOOT**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report **by not later than December 7, 2023** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 27th day of November, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE