IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO.  2:22-CV-00125-JRG |
| § | |
| CHARTER COMMUNICATIONS, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Before the Court is Defendant Charter Communications, Inc.'s Motion to Strike Dr. Kramer's Improper Opinions. (Dkt. No. 167.) Plaintiff Entropic Communications, LLC opposes the motion. (*See* Dkt. No. 196.) For the following reasons, the motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**II.   BACKGROUND**

Dr. Kramer is one of Entropic's technical experts. Dr. Kramer opines on infringement of the '775 and '362 Patents. Charter moves to strike various portions of his report.

**III.   LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

IV.   ANALYSIS

A.   Opinions Regarding Contracts

Charter seeks to strike paragraphs 88–89 and 221–222 of Dr. Kramer's opening report. (*See* Dkt. No. 167 at 1.) There, Dr. Kramer opines that Charter retains ownership over the equipment because Charter requires its customers to sign a contract to lease the cable modems. (*Id.* at 2.)

Charter makes two arguments as to why these paragraphs should be stricken. (*Id.* at 2–3.) First, Charter argues that Dr. Kramer, "a technical expert with no legal training," lacks the qualifications to opine about a legal relationship between Charter and its customers. (*Id.* at 2–3.) Second, Charter argues that these opinions constitute improper legal conclusions. (*Id.* at 3.)

Entropic argues in response that Dr. Kramer is simply opining on the nature of the infringing acts themselves, namely who commits the acts of use that he concludes underly the infringement. (Dkt. No. 196 at 1–2.) The service agreements are evidence of some of these facts. (*Id.* at 2–3.) Further, Entropic argues that Dr. Kramer's opinions do not concern the legal effect of the contracts, but instead concern "who-does-what," which is factual. (*Id.* at 3–4.)

In reply, Charter notes that Dr. Kramer only cites to contracts to support his opinion that "Charter maintains ownership of the … cable modems." (Dkt. No. 217 at 2.) Charter argues that Dr. Kramer thus "renders legal conclusions about contractual rights and obligations." (*Id.*)

In sur-reply, Entropic argues Charter has raised no reason why Dr. Kramer cannot testify to the following facts: (1) that Charter leases equipment to its customers and (2) that Charter requires its customers to sign a contract to use the Accused Services and Charter equipment. (Dkt. No. 254 at 1.) Moreover, Entropic contends that stating that Charter retains ownership over the equipment does not require "any legal expertise or analysis of the contract terms." (*Id.* at 3.)

The Court finds that there is no reason to strike these paragraphs. These opinions do not become legal conclusions simply because Dr. Kramer is relying on contracts to form them. And Dr. Kramer is certainly qualified to read the plain language of a contract. For these reasons Dr. Kramer's opinions are not legal in nature but factual. Moreover, Charter does not dispute the veracity of these factual opinions.

The concerns with allowing experts to present legal conclusions to the jury are that it invades the province of the Court to instruct on the law and could potentially invade the jury's province to make conclusions based on the facts. These concerns are not implicated here. There is no law which the Court might instruct on that Dr. Kramer's testimony would conflict with. Further,

3

and again, Dr. Kramer's opinions regarding ownership are not disputed, meaning his opinions are not invading the jury's province.

### B. Opinions Regarding Charter's State of Mind

Charter seeks to strike paragraphs 93–94 and 247–248 of Dr. Kramer's opening report. (*See* Dkt. No. 167 at 1.) In these paragraphs, Dr. Kramer opines that Charter has had notice "of the resulting infringement of the '775 Patent at least as of July 17, 2012 (the issue date of the '775 Patent, if not earlier)" and that Charter "knowingly induces its customers to infringe the '775 Patent." (Dkt. No. 167-2 at ¶¶ 93–94.) Dr. Kramer opines similarly regarding the '362 Patent. (*Id.* at ¶¶ 247–248.)

Charter argues that these opinions should be struck for three reasons. First, they are conclusory, and unsupported by any evidence. (Dkt. No. 167 at 3–4.) Second, they are outside of Dr. Kramer's technical expertise. (*Id.* at 4.) Third, they "unreliable because they relate to things that Dr. Kramer cannot possibly know." (*Id.* at 4–5.)

In response, Entropic argues that in these paragraphs Dr. Almeroth is simply "stat[ing] a truism: that Charter became aware of possible infringement no later than the date the complaint was filed and served." (Dkt. No. 196 at 4–5.) Further, experts "may testify as to the underlying facts that in his opinion may show Defendants' state of mind." (*Id.* at 5 (quoting *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-CV-00430-JRG-RSP, 2023 WL 4847343, at *5 (E.D. Tex. July 28, 2023)).)

In reply, Charter points out that Dr. Kramer opines that Charter knew of the '775 and '362 patents when the patents issued in 2012 and 2015. (Dkt. No. 217 at 2.) Charter also re-urges its argument that Dr. Kramer may not testify as to whether Charter "knowingly induces" its customers to infringe because experts may not opine on mental states. (*Id.* at 2–3.) Finally, Charter argues that these opinions should be stricken under Federal Rule of Evidence 403. (*Id.* at 3.)

4

In sur-reply, Entropic contends that Dr. Kramer is simply opining that Charter has had knowledge of the resulting infringement as of the filing of the complaint, and at least as early as the issue date of the patents. (Dkt. No. 254 at 2.) Entropic also argues that Dr. Kramer should be allowed to testify that Charter has been inducing its customers to infringe as of the filing date of the complaint because "[i]nducement of infringement under § 271(b) requires only knowledge that the induced acts constitute patent infringement" and "[o]nce served with the complaint in this case, Charter indisputably had that requisite knowledge." (*Id.*)

It is beyond dispute that Charter had knowledge of the patents-in-suit once it was served with the complaint. *See, e.g.*, *RightQuestion, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-00238-JRG, 2022 WL 507487 at *3 (E.D. Tex. Feb. 18, 2022). Dr. Kramer may testify as much. However, Dr. Kramer may not testify to Charter's state of mind in any other capacity. Dr. Kramer may simply testify as to the facts underlying his conclusions about Charter's state of mind. Finally, Charter's argument relying on FRE 403 is waived because it was raised for the first time in reply.

### C. Opinions Regarding Joint Infringement

Charter seeks to strike paragraphs 241–245 of Dr. Kramer's opening report. (Dkt. No. 167 at 1.) There, Dr. Kramer opines that Charter jointly infringes the '362 Patent with its users, alleging that Charter directs and controls its users because "Charter conditioned participation in the use of the Accused Services and was in receipt of (and receives) a benefit upon performance of various claimed method steps by Charter customers, and established the manner of that performance." (Dkt. No. 167-2 at ¶ 241.) Dr. Kramer then provides what he calls "examples" of such conduct, including Charter providing a "connectivity check" during self-install, Charter's user manuals, and Charter's quick start guide. (*Id.* at ¶¶ 242–45.)

Charter argues that these paragraphs should be struck for two reasons. (Dkt. No. 167 at 5–6.) First, Entropic never disclosed a joint infringement theory in its infringement contentions. (*Id.*

5

at 5–6.) Second, "whether Charter 'directs or controls' its users … is not a technical question requiring expert testimony to assist the jury." (*Id.* at 6.) Whether Charter "directs or controls" another entity is outside of Dr. Kramer's expertise. (*Id.*)

Entropic contends in response that each of Charter's arguments fail. First, Entropic argues that it was not required to disclose its joint infringement theory in its infringement contentions. (Dkt. No. 196 at 6.) Entropic continues: even if it was required to disclose its specific joint infringement theories, Charter has identified no prejudice from Dr. Kramer's opinions. (*Id.* at 7.) Second, Entropic argues that whether Charter directs or controls its customers is a technical question because, according to Entropic, "whether Charter or the subscriber performs particular steps, and the influence Charter exerts over those steps (even if performed by a customer) involve questions of operation of the products and how that connects to the claim elements." (*Id.* at 8.) In any event, Entropic argues, Dr. Kramer is clearly permitted to testify as to the underlying facts indicating direction and control. (*Id.*) Finally, Entropic argues that Charter has not shown any reason why paragraphs 242–245 should be struck. (*Id.* at 8–9.)

In reply, Charter re-urges that it is too late to disclose a joint infringement theory for the first time in an expert's report. (Dkt. No. 217 at 3.)

In sur-reply, Entropic argues that Charter has not addressed any of the arguments made in opposition. (Dkt. No. 254 at 2–3.)

The Court finds that there is no reason to strike these paragraphs. First, joint infringement theories need not be disclosed in infringement contentions. *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379, 2012 WL 12911055, at *3 n. 2 (E.D. Tex. Aug. 10, 2012) ("[I]nfringement contentions serve a notice function and . . . as evident by the text of P.R. 3-1 itself, infringement contentions are focused on notice of the underlying direct infringement and

are not the forum for explaining such issues as joint liability, mastermind, or indirect infringement."). Second, the Court finds that Dr. Kramer's testimony will help the jury determine whether Charter directs or controls its customers. It will be beneficial to the jury to have the same expert explain the underlying facts and explain how those facts lead to the conclusion that Charter directs or controls its customers. Finally, the Court finds that the question of whether Charter directs or controls its customers is not so far afield of Dr. Kramer's technical expertise to justify striking this opinion. Entropic may make this attack on cross examination if it wishes.

### D. Opinions Regarding Secondary Considerations as to the '775 Patent

Charter seeks to strike paragraphs 83–89 of Dr. Kramer's rebuttal report. (Dkt. No. 167 at 1.) In these paragraphs, Dr. Kramer opines that secondary considerations of non-obviousness related to the '775 patent include "evidence of the commercial success of the '775 Patent, praise by others in the field, and unexpectedly superior results." (Dkt. No. 167-3 at ¶ 83.)

Charter first argues that these opinions should be struck because Dr. Kramer never establishes a nexus between the claimed invention and the commercial success. (Dkt. No. 167 at 6–7, 8.) Charter next contends that "Dr. Kramer's opinions on commercial success, praise by others, and unexpectedly superior results are conclusory." (*Id.* at 7.)

In response, Entropic argues that Dr. Kramer does establish a nexus between the claimed features of the '775 Patent and secondary considerations of non-obviousness. (Dkt. No. 196 at 9.) Dr. Kramer opines that "Charter's 1Gbps modems require the use of the technology claimed in the '775 Patent in order to achieve 1Gbps speeds." (*Id.*) Dr. Kramer supports this statement by citing to Charter documents as well as testimony from Broadcom's corporate witness. (*Id.*) Moreover, Dr. Kramer discussed how the invention of the ''775 Patent enabled speeds over 1Gbps in his opening report. (*Id.* at 10.) Entropic then argues that Dr. Kramer tied the 1Gbps speeds enabled by the '775 Patent to the commercial success and praise received. (*Id.* at 11.)

Charter argues in reply that "[Entropic] does not provide a single example where [Dr. Kramer] even attempts to establish such a nexus." (Dkt. No. 217 at 3.) Further, Charter argues, Dr. Kramer's assertion that "Charter's 1Gbps modems require the use of the technology claimed in the '775 Patent in order to achieve 1Gbps speeds" is pure *ipse dixit*. (*Id.* at 3–4.)

In sur-reply, Entropic re-urges that the sentence from Dr. Kramer's rebuttal report that Charter quoted in its reply brief ***is*** the nexus. (Dkt. No. 254 (citing Dkt. No. 217 at 3–4).) Entropic then argues that this sentence is not *ipse dixit*. (*Id.* at 3–4.)

The Court finds that these paragraphs should not be struck. Dr. Kramer does establish a nexus between the secondary considerations and the invention of the '775 Patent. Dr. Kramer first opines that "Charter's 1Gbps modems require the use of the technology claimed in the '775 Patent in order to achieve 1Gbps speeds." Dr. Kramer explains in his opening report how the technology in the '775 Patent enables these speeds. (*See* Dkt. No. 196 at 10.) Further, Dr. Kramer also relies on testimony from Broadcom and Charter documents to support this assertion. It is not *ipse dixit*. Dr. Kramer then connects the 1Gbps speeds to commercial success and industry praise, which Charter does not dispute. (*See* Dkt. No. 196 at 11.) There is therefore a clear nexus between the secondary considerations and the technology of the '775 Patent.

### E.  Allegedly New Opinions Raised in Dr. Kramer's Deposition

Charter's expert, Dr. Goldberg, opined in his opening report that claims 11 and 12 of the '362 Patent were anticipated by the Zhang prior art reference and therefore claims 11 and 12 of the '362 Patent are invalid. In rebuttal, Entropic's expert, Dr. Kramer, addressed only a single claim element—the "selecting" step—and did not address any other claim elements with respect to Zhang. (Dkt. No. 167-3 at ¶¶ 121–128.) Dr. Kramer admitted at deposition that his report only addressed the "selecting" step. (Dkt. No. 167-4 at 87:14–89:7.) However, on redirect, in response to questions from Entropic's counsel, Dr. Kramer suggested that Zhang did not describe the "mixer

module" or the "downconverting" claim element. (*Id.* at 134:24–135:2; *see also id.* at 134:24–136:12.)

Charter argues that "Dr. Kramer improperly testified beyond the scope of that report during his deposition on August 24, 2023. As such, the Court should strike these opinions." (Dkt. No. 167 at 9–10.) Charter appears to be asking the Court to strike the following portions from Dr. Kramer's August 24, 2023 deposition: 134:24–136:12, 136:17–139:10, 139:17–142:17.

In response, Entropic argues that Dr. Kramer was simply testifying as to his understanding of Dr. Goldberg's opinions--that "the specification of Zhang does not use the term 'mixer' in connection with its frequency block down converters" and that Zhang instead performs downconversion by using a multiplier. (Dkt. No. 196 at 12 (quoting Dkt. No. 196-8 at ¶¶ 391–392).) Entropic then argues that "Charter has not shown that Dr. Kramer's opinions regarding the 'downconverting' step are outside the scope of his Rebuttal Report." (*Id.* at 13–14.) Entropic contends that "[t]he principle of expert reports is to provide the opposing party with notice." (*Id.* at 13 (citing *Music Choice v. Stingray Digital Group Inc.*, No. 2:16-cv-586, 2019 WL 5721821, at *3 (E.D. Tex. Nov. 5, 2019).) Thus, "[t]o the extent Dr. Kramer's deposition testimony implicates his view that 'downconversion' requires a mixer, that was disclosed in Dr. Kramer's report as noted at the outset." (*Id.*)

In reply, Charter argues that Entropic is unable to cite a single passage in Dr. Kramer's report wherein he opines that the Zhang prior art lacks the 'downconverting' step or the 'mixer module.' (Dkt. No. 217 at 4.) Charter then argues that "Dr. Kramer never alleged that this limitation was missing from Zhang and never disputed Dr. Goldberg's opinion that Zhang does disclose that limitation." (*Id.* at 5.)

9

Entropic argues in sur-reply that Charter fails to address that "Charter's own expert Dr. Goldberg admitted in his report that 'the specification of Zhang does not use the term "mixer" in connection with its frequency block down converters' and that Zhang instead performs downconversion by using a multiplier." (Dkt. No. 254 at 4 (quoting Dkt. No. 196-8 at ¶¶ 391–392).) "Dr. Kramer is not *responding* with a new opinion; he is simply agreeing regarding what Dr. Goldberg opined." (*Id.*)

It appears that Charter is asking the Court to strike certain deposition testimony as outside of the scope of Dr. Kramer's report. However, Charter has not justified this request. At trial, Dr. Kramer will not be allowed to offer opinions not contained in the four corners of his report. (*See* Court MIL No. 23 ("No expert witness may testify to expert opinions outside the established parameters of her/his expert report.").) However, there is one quasi-exception: Dr. Kramer may testify as to what he heard, and what he did not hear, from other witnesses testifying at trial. Such testimony is not "expert opinion[]." (*See id.*) More importantly, Dr. Kramer's report is not expanded by his deposition testimony. There is therefore no reason to strike this deposition testimony.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 167) should be and hereby is **GRANTED-IN-PART** and **DENEIED-IN-PART**. Specifically, Dr. Kramer may not testify as to Charter's state of mind, except that he may state that Charter knew of the patents-in-suit once it was served with the complaint. The balance of the Motion is **DENIED**.

**SIGNED this 28th day of November, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE