IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:22-CV-00125-JRG |
| CHARTER COMMUNICATIONS, INC., | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM ORDER

### I. INTRODUCTION

Before the Court are three motions, all brought by Plaintiff Entropic Communications, LLC. The first is Entropic's Motion to Strike Opinions of Christopher Bakewell (the "Motion to Strike"). (Dkt. No. 174.) The second is Entropic's Opposed Motion for Leave to File Out of Time Supplemental Motion to Strike Opinions of Christopher Bakewell (the "Motion for Leave"). (Dkt. No. 287.) The third is Entropic's Supplemental Motion to Strike Opinions of Christopher Bakewell (the "Supplemental Motion to Strike). (Dkt. No. 289.) Defendant Charter Communications, Inc. opposes all three motions. (*See* Dkt. Nos. 207, 328, 329.)

For the following reasons, the Court finds that the Motion to Strike should be **GRANTED-IN-PART** and **DENIED-IN-PART**, that the Motion for Leave should be **GRANTED**, and that the Supplemental Motion to Strike should be **DENIED**.

### II. THE MOTION TO STRIKE

#### A. Background

Mr. Bakewell is Charter's expert who opines on issues of damages.

1

...

### B. Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### C. Analysis

#### i. Opinions Related to MaxLinear Chips as Non-Infringing Alternatives

Entropic seeks to strike paragraphs 234–240, 242–243, 250–251, 253–268, 649, 651, and 667, which relate to the MaxLinear chips and how they are used as non-infringing alternatives. (*See* Dkt. No. 174 at 1–10.) Charter opposes this request. (*See* Dkt. No. 207 at 3–9.)

The Court notes that it has recommended granting summary judgment that the MaxLinear Chips could <u>not</u> be non-infringing alternatives. Accordingly, these paragraphs are irrelevant and should be struck.

### ii. Opinions Relying on Spreadsheets Allegedly Not Produced Prior to the Close of Fact Discovery

Entropic seeks to strike paragraphs 426, 476–479, and 492, and Exhibit 4.0 from Mr. Bakewell's report. (Dkt. No. 174 at 13.) Entropic argues that these paragraphs rely on two spreadsheets that Charter did not produce prior to the close of fact discovery and thus should be struck. (*Id.* at 10.) The spreadsheets "purport to show the number of Charter's whole home DVR subscribers." (*Id.*)

The Court considers the following factors when deciding whether to exclude late-produced documents: "(1) the prejudice to the opposing party of allowing the evidence; (2) the importance of the evidence; (3) the possibility for curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the disclosure requirements." *Tyco Healthcare Grp. LP v. Applied Med. Res. Grp.*, No. 9:06-CV-151, 2008 WL 11348407, at *1 (E.D. Tex. July 10, 2008); *see also Majestic Oil, Inc. v. Certain Underwriters at Lloyd's*, No. 21-20524, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023).

Entropic asked Charter for subscriber information for Charter's accused services, and specifically Charter's whole home DVR service in December 2022 and January 2023. (*See id.* at 11.) Entropic then served deposition topics targeted at Charter's whole home DVR service. (*Id.* at 12.) Charter designated a witness on these topics without objection, and Entropic asked the witness questions about the whole home DVR device. (*Id.*) Charter also produced a multitude of documents related to the whole home DVR service. (*Id.*)

3

Mr. Dell, Entropic's damages expert, produced a report relying on these documents. (*See id.*) After reviewing Mr. Dell's report, Charter created two spreadsheets containing information on whole home DVR subscribers and produced them. (*Id.* at 12–13.)

Entropic argues that these spreadsheets are prejudicial because Entropic does not know who made them or how they were made (and with what data). (*Id.* at 13.)

In response, Charter argues that Entropic did not disclose that its damages theory would be based on Whole Home DVRs, despite serving an interrogatory requesting Entropic to disclose such bases for its damages theory. (Dkt. No. 207 at 10.) Charter also argues that Entropic never specifically made a document request seeking Whole Home DVR subscribers, and that none of the topics relating to Whole Home DVRs sought information regarding the number of Whole Home DVR subscribers. (*Id.* at 10–11.) Further, Entropic never asked Charter's corporate representative a single question regarding the number of Whole Home DVR subscribers or asked how many DVRs in Charter's network were capable of Whole Home DVR. (*Id.* at 11.) In fact, Charter argues, Charter was not aware that Entropic's damages model depended on the number of Whole Home DVR subscribers until it received Mr. Dell's damages report. (*Id.*)

Charter argues that its delay in producing these spreadsheets was justified because Entropic never disclosed its Whole Home DVR damages theory prior to the service of Mr. Dell's damages report. (*Id.* at 12.) Charter contends that Entropic's claim of prejudice is belied by (1) Entropic's agreement to take fact discovery after it ostensibly closed, including taking depositions after the service of Mr. Dell's report and (2) Entropic's decision not to depose Bakewell. (*Id.*) Further, Charter argues that it would be prejudiced if it could not rebut Mr. Dell's report. Charter argues that Entropic has not addressed the importance factor and has so waived any argument regarding

4

it. (*Id.* at 13.) Besides, Charter contends, the information in the spreadsheets is important because it accurately reflects the number of subscribers. (*Id.*)

In reply, Entropic argues that "Charter does not dispute that it has known for quite some time that whole home DVR is relevant to this case." (Dkt. No. 240 at 4.) Entropic also contends that it is false that it did not request whole home DVR subscriber information. (*Id.*) Rather, Entropic contends, it repeatedly asked for all subscriber data for all service plans, and specifically documents regarding the "tracking" of customers' use for whole home DVR. (*Id.* at 4–5.) Entropic notes that Charter had an obligation under the Discovery Order to produce "all documents . . . that are relevant to the pleaded claims or defenses involved in this action." (*Id.* at 5 (quoting Dkt. No. 34).)

In sur-reply, Charter argues that "Entropic does not dispute that (i) it never disclosed Whole Home DVR as a damages theory in response to Charter's interrogatory, (ii) it never raised any issue with Charter regarding production of any Whole Home DVR subscriber information during fact discovery, (iii) it never asked a single Charter witness about Whole Home DVR subscribers, and, most critically, (iv) it never disclosed this damages theory until service of the Dell report." (Dkt. No. 271 at 4.) Charter also argues that Entropic should not be allowed to lay behind the log and raise the issue for the first time in its motion to strike. (*Id.* (citing *Dallas Fallen Officer Found. v. Frazier*, No. 4:18-CV-481-ALM, 2019 WL 4256958, at *5 (E.D. Tex. Sept. 9, 2019) ("Concerns about discovery disputes should not be addressed to the Court for the first time through a motion to sanction the other party. Let alone when there have been no discovery disputes up until the present dispute.")).)

The Court finds that these paragraphs should not be struck. The parties agree that the information is important. Neither party addresses the continuance factor so it is neutral. The parties

disagree on whether Charter's delay was justified. First, the Court finds that Charter's delay was not justified. Charter had an obligation to disclose relevant information under the discovery order. This obligation is not and was not extinguished because Entropic did not respond to an interrogatory with specific enough information. However, the Court finds that Entropic has contributed to this delay by not making clear its reliance on Whole Home DVR during discovery.

The parties also disagree on whether allowing this information would be prejudicial. It would be. Currently, Entropic does not know how these spreadsheets were created, who made them, and other basic information. Allowing opinions based on these spreadsheets to be presented to the jury would thus be prejudicial to Entropic.

On the whole, it is the Court's view that the best course of action is to remove the prejudice by allowing limited additional fact discovery, instead of striking these opinions (which would undoubtedly be prejudicial to Charter). Accordingly, Charter shall designate a witness who is knowledgeable about the spreadsheets for a deposition.

### iii. Opinions Regarding the PathTrak Software Agreement

Entropic requests that the Court strike paragraphs 594–595, 596 (regarding the '008, '826, and '362 Patents), Exhibit 1.0 (regarding the '008, '826, and '362 Patents). (Dkt. No. 174 at 15.) In these paragraphs, Mr. Bakewell discusses a license that was not disclosed during discovery, the PathTrak Software Agreement. (*See id.* at 13–15.)

Entropic served Interrogatory No. 5 on September 8, 2022 seeking disclosure and production of licenses that Charter asserts are comparable. (*Id.* at 13.) Charter never identified the PathTrak Software Agreement and did not produce it until after fact discovery had closed. (*Id.* at 13–14.)

Entropic argues that allowing these paragraphs would be prejudicial because "Entropic has been deprived of any ability to probe in discovery whether this license is comparable." (*Id.* at 15.)

6

In response, Charter first argues that Entropic glosses over pertinent facts. (*See* Dkt. No. 207 at 13.) During fact discovery, Charter disclosed its use of a third-party application for upstream spectrum analysis that does not use Full Band Capture, called PathTrak. (*Id.*) Moreover, Dr. Almeroth discussed PathTrak in his rebuttal reports. (*Id.* at 13–14.) Further, Charter's 30(b)(6) witness testified concerning the "PathTrak license." (*Id.* at 14.)

Charter argues that exclusion is not warranted. (*Id.* at 14–15.) Regarding its explanation for the delay, Charter argues that it produced many documents related to the PathTrak license, and only "inadvertently" failed to produce the license itself. (*Id.* at 14–15.) Charter argues that there is minimal prejudice because Dr. Almeroth opined on the technical comparability of the PathTrak license, and Entropic had an opportunity to test those theories with Dr. Almeroth's deposition. (*Id.* at 15.) Finally, Charter argues that the evidence is important because it relates to damages and Entropic has waived any argument to the contrary by failing to address this factor in its opening brief. (*Id.*)

In reply, Entropic re-urges that the prejudice would be significant because PathTrak was never disclosed as a comparable license, even though it was disclosed as a NIA. (Dkt. No. 240 at 5.) Moreover, the late disclosure has "deprived Entropic of the ability to take discovery on this purported license—including depositions to investigate the economic circumstances surrounding the license and the motivations for the license." (*Id.*)

In sur-reply, Charter argues that "Entropic does not dispute that (i) Charter disclosed an agreement with PathTrak, for which it pays $1 million a year, during fact discovery, (ii) Charter's technical expert provided technological comparability between PathTrak and Full Band Capture, and (iii) Entropic deposed multiple Charter employees regarding PathTrak, including Charter's 30(b)(6) witness, who testified the license was comparable." (Dkt. No. 271 at 5.) Thus, Charter

argues, "Entropic's claim that it was 'deprived' of any ability to take discovery on this agreement is false." (*Id.* (citing Dkt. No. 240 at 5).)

The Court finds that these portions of Mr. Bakewell's report should be excluded. Charter's explanation that it "inadvertently" failed to disclose the license agreement does not suffice. Moreover, Entropic has been deprived of discovery regarding the license. In other words, Entropic has been prejudiced because it did not know the license would figure this prominently into the case when it did have the opportunity to take discovery. The fact that the license is important does not outweigh these other two factors. Neither party addresses the final factor, so the Court finds it to be neutral.

Thus, paragraphs 594–595, 596 (regarding the '008, '826, and '362 Patents), Exhibit 1.0 (regarding the '008, '826, and '362 Patents) of Mr. Bakewell's report shall be struck.

### D. Conclusion

For the foregoing reasons, the Court finds that the Motion to Strike (Dkt. No. 287) should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. Accordingly, the Court **ORDERS** that the portions of Mr. Bakewell's report be **struck** as detailed above. Furthermore, Charter shall designate a witness who is knowledgeable about the spreadsheets for a deposition, not to exceed two hours in length, within the next 7 days..

## III.  MOTION FOR LEAVE

### A. Background

Charter served Mr. Bakewell's Second Supplemental Expert report on September 25, 2023—two weeks after the September 11 deadline to file motions to strike. (Dkt. No. 287 at 1.) The Motion for Leave (and the Supplemental Motion to Strike) were filed on October 13, 2023.

8

In the Motion for Leave, Entropic requests leave of Court to file the Supplemental Motion to Strike past the September 11 deadline. (*Id.*)

### B. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) allows a case schedule to be modified for "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). There are four factors this Court considers when determining whether there is good cause to grant such relief: (1) the explanation for the failure to meet the deadline; (2) the importance of the modification of the deadline; (3) any potential prejudice from allowing the modification; and (4) the availability of a continuance to cure any such prejudice. *See Arigna Tech. Ltd. v. Volkswagen AV*, No. 2:21-CV-00054-JRG-RSP, 2022 WL 2761288, at *1-2 (E.D. Tex. Jan. 19, 2022). The "good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* (quoting *S&W Enters. v. South Trust Bank of Al.*, 315 F.3d 533, 546 (5th Cir. 2003). Moreover, "the 'good cause' standard focuses on the diligence of the party asking the court to modify the scheduling order." *Hereford v. Carlton*, No. 9:15-CV-26, 2016 WL 7080058, *2 (E.D. Tex. May 31, 2016) (citation omitted).

### C. Analysis

Entropic argues that it has met the good cause standard because it could not have met the September 11 deadline to file motions to strike. (Dkt. No. 287 at 1.) Charter did not serve Mr. Bakewell's Second Supplemental report until two weeks after this deadline. (*Id.*) Entropic also asserts that the Supplemental Motion to Strike is "inextricably intertwined" with another motion. (*See id.*)

In response, Charter argues that Entropic has not been diligent because it waited from September 25 to October 13 to file its motion for leave. (Dkt. No. 328 at 2.) Charter also points

out that Entropic has not argued any other factor. (*Id.*) Charter asserts that Entropic's delay in bringing the Motion for Leave and the Supplemental Motion to Strike demonstrates their non-importance. (*Id.* at 3.) Further, Charter argues that it "would suffer substantial prejudice" if the Court were to grant the Supplemental Motion to Strike because Mr. Dell's opinions would then be unrebutted. (*Id.*) Finally, Charter argues that a continuance would not cure the prejudice. (*Id.*)

The Court finds that good cause has been shown to grant leave. The Court finds that Entropic's explanation for its failure to meet the deadline is sufficient. Indeed, Entropic could not have met the September 11 deadline because Charter did not serve Mr. Bakewell's Second Supplemental report until September 25. Charter did not lack diligence by waiting until October 13 to file the Motion for Leave and the Supplemental Motion to Strike. The Supplemental Motion to Strike is important because it tests the expert opinions. Charter has identified no prejudice that might stem from the Court taking the Supplemental Motion to Strike under advisement. If the Motion were denied, then the opinions contained in Mr. Dell's Second Supplemental Report would be presented to the jury untested. This would be prejudicial to Entropic. Finally, the Court finds that no continuance is necessary because there is no prejudice that stems from the Court taking the Supplemental Motion to Strike under consideration.

### D. Conclusion

For the foregoing reasons, the Court finds that the Motion for Leave (Dkt. No. 287) should be and hereby is **GRANTED**.

### IV. SUPPLEMENTAL MOTION TO STRIKE

In the Supplemental Motion to Strike, Entropic contends that "[i]f Charter's Opposed Motion to Amend the Docket Control Order is denied and Dr. Almeroth's Second Supplemental Expert Report is excluded, Mr. Bakewell's opinions in his Second Supplemental Expert Report

Regarding Damages will lack the necessary technical support." (Dkt. No. 289 at 1.) However, the Court has granted Charter's Opposed Motion to Amend the Docket Control Order.

Accordingly, the Court finds that the Supplemental Motion to Strike (Dkt. No. 289) should be and hereby is **DENIED**.

**SIGNED this 28th day of November, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE