IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00125-JRG |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| | § | |
| *Defendant.* | § | |

# MEMORANDUM ORDER

Before the Court is Plaintiff Entropic Communications, LLC's Motion to Strike the Expert Report of David O. Taylor. (Dkt. No. 141.) Defendant Charter Communications, Inc. opposes the Motion. (*See* Dkt. No. 144.) Entropic filed a reply brief. (*See* Dkt. No. 151.) Charter did not file a sur-reply brief. For the following reasons, the motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I. BACKGROUND

Professor David O. Taylor is a law professor at SMU Dedman Law School. Charter offers him as an expert in patent licensing and transactions. (Dkt. No. 144 at 1.) Taylor opines (1) that Charter's conduct was protected by a license, (2) that Charter "does not infringe" four of the patents in suit because of alleged rights flowing from a CableLabs IPR agreement in the context of DOCSIS standards, and (3) that there are certain non-infringing alternatives. (*Id.*)

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### III. ARGUMENTS

#### A. Alleged Legal Conclusions

Entropic argues that Taylor's report contains two categories of legal conclusions, both of which are inadmissible. (Dkt. No. 141 at 3–4.) Entropic first contends that Professor Taylor's analysis of Charter's license defense is nothing more than a recitation of the facts followed by "a scant two paragraphs" concluding that Charter is the beneficiary of a license without any supporting analysis. (*Id.* at 5–6.) Second, Entropic contends that Professor Taylor's conclusion that MaxLinear's products and services qualify as non-infringing alternatives is inadmissible because Professor Taylor offers none of his own analysis—he simply relies on facts from others to form an opinion. (Dkt. No. 141 at 6–10.)

In response, Charter argues that Professor Taylor relies on the analysis in Dr. Almeroth's report, as he should, to reach his conclusion that the accused products are licensed. (Dkt. No. 144 at 3.) Charter next argues Professor's Taylors opinions regarding the MaxLinear chips are not inadmissible because Professor Taylor provided sufficient analysis. (*Id.* at 4–5.)

In reply, Entropic urges that Professor Taylor simply "restat[es] Dr. Almeroth's conclusions, read[s] the relevant licenses to the jury, and then stat[es] an ultimate legal conclusion—that Charter is licensed." (*See* Dkt. No. 151 at 2–3.) Entropic also re-urges that Professor Taylor does not offer any of his own analysis regarding non-infringing alternatives.

### B. Opinions Allegedly Outside the Scope of Professor Taylor's Qualifications

Entropic argues that Professor Taylor is an expert in law, not in technical or economic subjects, so his "opinion[s] on the interpretation of the DOCSIS License Agreements and whether Charter was protected by such license" should be excluded. (*Id.* at 10–11.) Entropic also argues that Professor Taylor's opinions on matters of competition and economics stray outside his expertise and should be excluded. (*Id.* at 11.) Professor Taylor opines:

> I conclude Charter would not have surrendered its market share when faced with the Patents-in-Suit because Charter could compete in a lawful manner. Indeed, in my view, given the available acceptable non-infringing substitutes, anyone in the market would have expected very little profit or reward if Charter had not allegedly infringed.

(*Id.* (citing Dkt. No. 141-1 at ¶ 179).)

Charter argues in response that Professor Taylor is offered as an expert in "intellectual property transactions," not an expert in the law, and thus is appropriately qualified to render the opinions set forth in his report. (Dkt. No. 144 at 5.)

### C. Alleged Lack of Methodology

Entropic argues that Professor Taylor's opinions should be struck because he does not include any of his own analysis. (Dkt. No. 141 at 11–12.) Specifically, Entropic first contends that

3

Professor Taylor does not conduct his own analysis of whether the DOCSIS license agreements are applicable but merely recites the conclusions of another expert, Dr. Almeroth, and relies on them to reach his own conclusions without any further analysis. (*Id.* at 12–13.) Second, Entropic contends that Professor Taylor offers nothing more than his "understanding" that MaxLinear chips would be a non-infringing alternative without offering any of his own analysis.

In response, Charter argues that Professor Taylor's report provides an analysis of why and how the accused products are covered under a license to various patents-in-suit. (Dkt. No. 144 at 6–7 (citing Dkt. No. 141-1 at ¶¶ 87–88, 113–122, 124–137).) Charter also argues that Professor Taylor provides sufficient analysis in his report to conclude that MaxLinear chips are a non-infringing alternative. (*Id.* at 7 (citing Dkt. No. 141-1 at ¶¶151–179, 181–203).)

### D. Exclusion in Other Cases

Finally, Entropic notes that Professor Taylor's analysis has been excluded in other cases for the same reasons it seeks exclusion here. (Dkt. No. 141 at 13–15 (citing *Honeywell Int'l Inc. v. Opto Elecs., Ltd.*, No. 3:21-CV-00506-KDB-DCK, 2023 WL 3029264, at *12-13 (W.D.N.C. April 20, 2023); *Mobile Telecommunications, LLC v. ZTE (USA) Inc.*, Case No. 2:13-CV-0946-JRG, Dkt. No. 251 (E.D. Tex.); *In re Certain Smart Thermostats, Load Control Switches, and Components Thereof*, Inv. No. 337-TA-1277, Order No. 21 (June 24, 2022)).)

In response, Charter notes that Professor Taylor has been recognized as an expert by this Court, and that Professor Taylor has provided sufficient analysis to avoid exclusion. (Dkt. No. 144 at 8–9 (citing *Mobile Telecommunications*, Case No. 2:13-CV-0946-JRG, Dkt. No. 237).)

### IV. ANALYSIS

As an initial matter, the undersigned has recommended granting summary judgment that the MaxLinear chips are not non-infringing alternatives. (Dkt. No. 349.) The portions of Professor Taylor's report relating to these chips are therefore irrelevant and should be excluded.

"'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.' *Daubert,* 509 U.S. at 595. This concern is further compounded where the purported witness is an attorney." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365, n.8 (Fed. Cir. 2008). In light of this concern, the Court finds that the appropriate solution is to limit Professor Taylor's testimony in connection with Charter's license defense to "the factual underpinnings" of Charter's license defense. *Mobile Telecommunications*, Case No. 2:13-CV-0946-JRG, Dkt. No. 237 at 78. Professor Taylor may not opine as to any ultimate conclusion on Charter's license defense. At trial, he may simply apply the facts, as he understands them, to the language of the license, as he does in his report.

Entropic also asserts that Professor Taylor is simply parroting facts from documents and witnesses. While the Court is sympathetic to Entropic's point of view, the Court does not find that this warrants exclusion. Professor Taylor is simply applying facts to the language of a license. Since Professor Taylor is not a technical expert, he obtains many of his facts from Dr. Almeroth, as he should. Applying these facts to the language of the license is an inherently simple exercise, and one that he should be permitted to undertake. Further, the Court finds that this is Professor Taylor's methodology, and that it is not unreliable. Applying facts to the language of the license is what an expert opining on a license defense is expected to do.

However, since Professor Taylor would most nearly be acting as a mouthpiece for hearsay, the Court will not allow Professor Taylor to repeat facts learned from Dr. Almeroth unless and until Dr. Almeroth testifies to them on the stand to limit any prejudice. This will allow Entropic to test most of the factual underpinnings of Professor Taylor's report on cross examination before Professor Taylor testifies.

Entropic's remaining concern is unfounded. Professor Taylor is offered as an expert in intellectual property transactions, and Entropic does not challenge this assertion. Instead, Entropic argues that certain opinions are outside his expertise. Specifically, Entropic argues that "opinion[s] on the interpretation of the DOCSIS License Agreements and whether Charter was protected by such license" should be excluded. (Dkt. No. 141 at 10–11.) Entropic also argues that Professor Taylor's opinions on matters of competition and economics stray outside his expertise and should be excluded. (*Id.* at 11 (citing Dkt. No. 141-1 at ¶ 179).) However, the applicability of a license, and matters of competition and economics are well within the realm of Professor Taylor's expertise in intellectual property transactions, which encompasses such transactions, as well as the fields competition and economics. There is no indication that Professor Taylor is out of his depth in these opinions.

Finally, the Court notes that Entropic conditionally requested leave to file a rebuttal report to Professor Taylor's report, if Professor Taylor's report was not ultimately excluded. (Dkt. No. 141 at 15). Since Charter apparently did not oppose this request, Entropic could have filed such a report long ago. However, given the proximity to trial and the fact that Entropic had sufficient time to serve a rebuttal report prior to the close of discovery on September 25, 2023 (Dkt. No. 319 at 3), this request is denied. Entropic's interests can be adequately defended through cross-examination.

V.  **CONCLUSION**

For the foregoing reasons, the Court finds that the motion (Dkt. No. 141) should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the Court **ORDERS** that the portions of Professor Taylor's report concerning the MaxLinear non-infringing alternatives shall be struck.

The Court further **ORDERS** that any of Professor Taylor's testimony concerning Charter's license defense must be in accordance with the limitations set forth above.

Finally, the Court **DENIES** leave to Entropic to file a rebuttal report to Professor Taylor's report.

**SIGNED this 5th day of December, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE