# EXHIBIT A

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE EASTERN DISTRICT OF TEXAS
3  MARSHALL DIVISION
4
5  ENTROPIC COMMUNICATIONS,    )
   LLC,                        )
6                              )
           Plaintiff,          )
7                              )
   vs.                         )Civil Action No.
8                              )2:22-cv-00125-JRG
                               )
9  CHARTER COMMUNICATIONS,     )
   INC.,                       )
10                             )
           Defendant.          )
11                             )
12
13
14
15  ***ATTORNEYS' EYES ONLY - HIGHLY CONFIDENTIAL***
16        VIDEO-RECORDED 30(b)(6) DEPOSITION
17          OF CHARTER COMMUNICATIONS, INC.
18                       BY
19             ROGER GRAHAM STAFFORD
20              LONE TREE, COLORADO
21
22
23
24
25

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 2

```
 1              APPEARANCES
 2
 3
      For Plaintiff:    K&L GATES LLP
 4           By: Nicholas Lenning, Esq.
             925 Fourth Avenue
 5           Suite 2900
             Seattle, WA 98104
 6           (206) 623-7580
             nicholas.lenning@klgates.com
 7
 8                      K&L GATES LLP
             By: Samuel P. Richey, Esq.
 9           70 W. Madison Street
             Suite 3300
10           Chicago, IL 60602
             (312) 372-1121
11           samuel.richey@klgates.com
12
      For Defendant:    ARNOLD & PORTER
13           By: Daniel L. Reisner, Esq.
             250 West 55th Street
14           New York, NY 10019
             (212) 836-8132
15           daniel.reisner@arnoldporter.com
16
      Also Present:    Davis Baumunk, Videographer
17
                      Daniel Boglioli, Charter
18                    Communications
19
20
21
22
23
24
25
```

Page 3

```
 1                    INDEX
 2
 3 EXAMINATIONS:                          PAGE
 4 ROGER GRAHAM STAFFORD
 5    Examination By Mr. Lenning          7
 6    Examination By Mr. Reisner        184
 7
 8                   EXHIBITS
 9
10 No.       Description            Identified
11 Stafford   Notice of Deposition of    16
   Exhibit 1 Charter Communications, Inc.
12           Pursuant to FED. R. CIV. P.
             30(b)(6)
13
   Stafford   Plaintiff's Amended Notice of  19
14 Exhibit 2 Deposition of Roger Stafford
15 Stafford   Roger Stafford LinkedIn    19
   Exhibit 3 Profile
16
   Stafford   Document Produced In Native   36
17 Exhibit 4 Format - DOCSIS 3.1 Profile
             Management Application (PMA)
18
   Stafford   PMA Technical Roadmap & Status  54
19 Exhibit 5
20 Stafford   Downstream Profile Management   63
   Exhibit 6 Application (PMA) Pilot
21           Deployment
22 Stafford   Profile Management Application  107
   Exhibit 7
23
   Stafford   DOCSIS and DAA Infrastructure  116
24 Exhibit 8
25
```

Page 4

```
 1 Stafford   PMA Downstream EFA       119
   Exhibit 9
 2
   Stafford   Spreadsheet              139
 3 Exhibit 10
 4 Stafford   PMA Improvements - Strategies  143
   Exhibit 11 Employed for Faster
 5            Mitigation, Increased
              Capacity, and Cost Savings
 6
   Stafford   Full Scale Employment of PMA  144
 7 Exhibit 12
 8 Stafford   Spreadsheet              160
   Exhibit 13
 9
   Stafford   Representative Cable FBD   165
10 Exhibit 14
11 Stafford   Data Over Cable Service    167
   Exhibit 15 Interface Specification
12            Proactive Network Maintenance
13 Stafford   PNM Technical Roadmap      169
   Exhibit 16
14
   Stafford   Network Monitoring Where and  171
15 Exhibit 17 How to Monitor a Cable Network
16 Stafford   A Comprehensive Case Study of  173
   Exhibit 18 Proactive Network Maintenance
17
   Stafford   Tech Talk: DOCSIS3.1 What it  175
18 Exhibit 19 means to Charter
              Communications
19
   Stafford   In-Home Topologies as a limit  178
20 Exhibit 20 to Network Capacity Expansion
21
22
23
24
25
```

Page 5

```
 1        PURSUANT TO WRITTEN NOTICE and the
 2 appropriate rules of civil procedure, the Video
 3 Deposition of ROGER GRAHAM STAFFORD, called for
 4 examination by the Plaintiff, was taken at Denver
 5 Marriott South at Park Meadows, 10345 Park Meadows
 6 Drive, Lone Tree, CO 80124, commencing at 9:13 AM on
 7 Tuesday, June 27, 2023, before Jennifer L. Smith,
 8 California CSR No. 10358, Washington CCR No. 3101,
 9 RMR, CRR, CRC, and Notary Public in and for the State
10 of Colorado.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

```
 1            PROCEEDINGS                                   09:13:51
 2
 3       THE VIDEOGRAPHER: Good morning. We are             09:13:51
 4  going on the record at 9:13 on June 27, 2023.           09:13:52
 5       Audio and video recording will continue to         09:13:57
 6  take place unless all parties agree to go off the       09:13:59
 7  record.                                                 09:14:02
 8       This is Media Unit 1 of the video-recorded         09:14:02
 9  deposition of Roger Stafford, taken by counsel for      09:14:07
10  plaintiff, in the matter of Entropic Communications,    09:14:10
11  LLC, versus Charter Communications, LLC, filed in the   09:14:14
12  United States District Court for the Eastern District   09:14:20
13  of Texas, Marshall Division, Case Number                09:14:23
14  2:22-cv-00125-JRG.                                      09:14:25
15       The location of this deposition is                 09:14:30
16  10345 Park Meadows Drive, Lone Tree, Colorado.          09:14:35
17       My name is Davis Baumunk, representing             09:14:41
18  Veritext Legal Solutions, and I am the videographer.    09:14:44
19  The court reporter is Jennifer Smith from the firm      09:14:46
20  Veritext Legal Solutions.                               09:14:50
21       I am not related to any party in this              09:14:51
22  action, nor am I financially interested in the          09:14:54
23  outcome.                                                09:14:55
24       Counsel will now state their appearances and       09:14:57
25  affiliations for the record, beginning with the         09:14:59
```

Page 7

```
 1  noticing attorney.                                      09:15:01
 2       MR. LENNING: Nick Lenning with K&L Gates           09:15:03
 3  for the plaintiff, and with me is Pat Richey, also of   09:15:09
 4  K&L Gates.                                              09:15:12
 5       MR. REISNER: Dan Reisner, Arnold & Porter,         09:15:14
 6  for the defendant and witness. I'm here with            09:15:14
 7  in-house counsel for Charter, Dan Boglioli.             09:15:16
 8                                                          09:15:30
 9       ROGER GRAHAM STAFFORD,                             09:15:30
10       having been first duly sworn,                      09:15:30
11       was examined and testified as follows:             09:15:30
12                                                          09:15:31
13              EXAMINATION                                 09:15:31
14  BY MR. LENNING:                                         09:15:31
15     Q. Good morning. Could you state your full           09:15:32
16  name for the record and spell it.                       09:15:35
17     A. Yes. Roger, R-o-g-e-r, Graham, G-r-a-h-a-m,       09:15:37
18  Stafford, S-t-a-f-f-o-r-d.                              09:15:43
19     Q. Have you ever had your deposition taken           09:15:47
20  before?                                                 09:15:48
21     A. Yes.                                              09:15:49
22     Q. How many times?                                   09:15:50
23     A. Once.                                             09:15:51
24     Q. And what was that for?                            09:15:53
25       MR. REISNER: I'm just going to caution the         09:15:55
```

Page 8

```
 1  witness not to reveal any information that you          09:15:56
 2  learned as a result of communications with counsel.     09:16:00
 3       To the extent you know anything about the          09:16:03
 4  case, apart from communications with counsel, you may   09:16:04
 5  answer.                                                 09:16:07
 6       THE WITNESS: I just remember it was a -- a         09:16:14
 7  MoCA-related case.                                      09:16:18
 8  BY MR. LENNING:                                         09:16:18
 9     Q. Why were you testifying?                          09:16:22
10       MR. REISNER: Same instructions.                    09:16:26
11       THE WITNESS: It was a personal deposition          09:16:30
12  as a Charter employee.                                  09:16:32
13  BY MR. LENNING:                                         09:16:32
14     Q. Do you know the name of that case?                09:16:37
15     A. No, I don't remember.                             09:16:40
16     Q. Do you remember any of the parties? Aside         09:16:42
17  from Charter, I assume?                                 09:16:45
18     A. No, I don't.                                      09:16:49
19     Q. Have you ever testified in court before?          09:16:55
20     A. No. No, I've not.                                 09:17:00
21     Q. Okay. I'm going to go over some ground            09:17:04
22  rules for the deposition, a lot of which may sound      09:17:08
23  familiar from the first time you were deposed, but      09:17:11
24  we're going to go over them just so we're all on the    09:17:13
25  same page about how we're going to proceed.             09:17:15
```

Page 9

```
 1       You understand that your testimony here            09:17:17
 2  today is under oath?                                    09:17:19
 3     A. Yes, I do.                                        09:17:21
 4     Q. And you understand that your answers,             09:17:23
 5  therefore, are subject to the penalties of perjury?     09:17:25
 6     A. Yes, I do.                                        09:17:28
 7     Q. Since the court reporter is transcribing          09:17:29
 8  your testimony, please say yes or no in response to     09:17:32
 9  questions, rather than uh-huh or nodding your head.     09:17:36
10       Is that fair?                                      09:17:39
11     A. Understood.                                       09:17:43
12     Q. I'd also ask you to wait until I finish my        09:17:44
13  question before you answer it. That way the court      09:17:47
14  reporter will be able to transcribe both the            09:17:49
15  questions and the answers, and we'll have a clear       09:17:52
16  transcript.                                             09:17:54
17       Is that fair?                                      09:17:55
18     A. Yes.                                              09:17:55
19     Q. And by that same token, if I interrupt you        09:17:56
20  before you've finished your answer, just let me know    09:17:58
21  so you can finish.                                      09:18:00
22     A. Understood.                                       09:18:02
23     Q. If at any time you feel like you need a           09:18:04
24  break, just let me know. The only limitation to that    09:18:07
25  is that, if there is a question pending, I'd ask you    09:18:10
```

Page 10

1  to answer that question before we take a break.        09:18:13
2       Do you understand?                               09:18:15
3    A. Understood.                                      09:18:16
4    Q. If any of my questions are unclear or if you     09:18:18
5  don't understand them, please let me know, and I'll   09:18:21
6  try to restate the question.                          09:18:24
7       Is that clear?                                   09:18:25
8    A. Yes.                                             09:18:26
9    Q. And if you answer my question, I'm going to      09:18:28
10 assume that you understood it.                        09:18:31
11      Agreed?                                          09:18:33
12   A. Understood.                                      09:18:34
13   Q. During the deposition, as already happened,      09:18:37
14 your counsel may state an objection after I ask a     09:18:41
15 question. Those objections are simply to make a       09:18:44
16 record so the judge can rule on objections at a later 09:18:47
17 time.                                                 09:18:50
18      If your counsel objects, you still must          09:18:50
19 answer the question unless your counsel specifically  09:18:53
20 instructs you not to answer and you decide to follow  09:18:56
21 your counsel's instruction.                           09:19:00
22      Do you understand that?                          09:19:02
23   A. Understood.                                      09:19:03
24   Q. Is there any reason you cannot provide           09:19:04
25 truthful or accurate testimony today?                 09:19:06

Page 11

1    A. No.                                              09:19:08
2    Q. I want to ask you about your preparation for     09:19:12
3  today's deposition.                                   09:19:14
4       You are represented here by counsel today?       09:19:16
5    A. Yes, I am.                                       09:19:20
6    Q. And what did you do to prepare for your          09:19:21
7  deposition today?                                     09:19:23
8    A. I met with counsel yesterday.                    09:19:24
9    Q. The same counsel that's in the room?             09:19:29
10   A. Yes.                                             09:19:31
11   Q. Did you meet with anyone else?                   09:19:32
12   A. No.                                              09:19:34
13   Q. Were there any other meetings aside from         09:19:39
14 yesterday?                                            09:19:41
15   A. No.                                              09:19:42
16   Q. How long was your meeting yesterday?             09:19:45
17   A. About eight hours.                               09:19:46
18   Q. Did you review any documents to prepare for      09:19:50
19 today?                                                09:19:56
20   A. Yes.                                             09:19:57
21   Q. Approximately how many hours did you spend       09:19:57
22 reviewing documents in preparation for your           09:19:58
23 deposition today?                                     09:20:00
24   A. About two or three hours.                        09:20:03
25   Q. What documents did you look at to prepare?       09:20:07

Page 12

1       MR. REISNER: You can answer to the extent       09:20:10
2  that you need to rely on information that you learned 09:20:14
3  as a result of reviewing those documents with respect 09:20:19
4  to PMA, which you're designated on to testify on     09:20:24
5  behalf of Charter.                                   09:20:26
6       I'm not sure if you -- based on your looking    09:20:31
7  at me, I'm not sure if you understand my instruction. 09:20:33
8  So let me try to clarify.                            09:20:36
9       We object to asking for a list of the           09:20:37
10 documents that Mr. Stafford was shown by counsel.    09:20:41
11 That's work product.                                 09:20:45
12      But to the extent that the witness's            09:20:46
13 testimony on behalf of the company, which is with    09:20:50
14 respect to PMA and on the other topics that I        09:20:55
15 identified in my email yesterday, to the extent you  09:20:59
16 are relying on information that you learned from the 09:21:03
17 documents in order to testify on behalf of Charter,  09:21:05
18 you can answer.                                      09:21:09
19      It may require some follow-up from you to       09:21:11
20 make sure the witness understands what you're asking 09:21:13
21 for, but we have an objection.                       09:21:15
22      THE WITNESS: Could you repeat the question,     09:21:20
23 please?                                              09:21:21
24 BY MR. LENNING:                                      09:21:21
25   Q. Yeah.                                           09:21:22

Page 13

1       The question is what documents you looked at    09:21:22
2  to prepare for today?                                09:21:24
3       MR. REISNER: Same -- same instruction; same    09:21:28
4  objection.                                           09:21:30
5       So I'm concerned that the witness is not       09:21:35
6  understanding my objection, and I suggest that either 09:21:37
7  we can take a break, if this is what you want to     09:21:43
8  pursue, or you can ask, you know, more precise       09:21:46
9  questions on this, as, you know, other -- other      09:21:48
10 counsel from Entropic have done with prior witnesses. 09:21:53
11 BY MR. LENNING:                                      09:21:53
12   Q. Let me ask you this: Did you review -- did     09:22:02
13 you do any independent review of documents outside of 09:22:05
14 counsel?                                             09:22:08
15   A. No.                                             09:22:09
16   Q. Okay. When you were reviewing documents         09:22:10
17 with counsel, was a distinction made between the     09:22:13
18 documents you were prepping for to testify on behalf 09:22:17
19 of Charter as a 30(b)(6) witness versus other topics? 09:22:20
20   A. I'm not sure what a 30(b)(6) witness is.       09:22:26
21   Q. Okay. Let's cover that.                         09:22:33
22      Have you -- do you understand that you've       09:22:37
23 been designated by Charter to testify on behalf of   09:22:39
24 the company on certain topics?                       09:22:42
25   A. Yes. Generally, yes. Uh-huh.                   09:22:48

4 (Pages 10 - 13)

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 14

1  Q. And do you understand what those topics are?  09:22:51
2  A. The subject of Profile Management  09:22:53
3  Application --  09:22:53
4  Q. Okay.  09:23:00
5  A. -- is one of those topics.  09:23:01
6  Q. Did you review any documents to prepare to  09:23:02
7  testify about that?  09:23:05
8  MR. REISNER: And I'm going to -- same  09:23:06
9  caution. So to the extent that you are actually  09:23:07
10 relying on information that you learned from  09:23:13
11 reviewing those documents in order to answer  09:23:16
12 questions today, you can identify the document.  09:23:19
13 But you can't identify the document simply  09:23:22
14 because I showed it to you and you looked at it.  09:23:25
15 THE WITNESS: So my testimony today will be  09:23:29
16 based on information that I already know as -- from  09:23:32
17 my history of working on these subjects.  09:23:36
18 BY MR. LENNING:  09:23:36
19 Q. Okay. So you did not review any documents  09:23:39
20 to be able to testify today on behalf of Charter on  09:23:42
21 those topics?  09:23:46
22 A. That's correct.  09:23:46
23 Q. Did you speak with anyone else to prepare  09:24:12
24 for today?  09:24:13
25 A. No, I did not.  09:24:15

Page 15

1  Q. Can you briefly describe what you know about  09:24:24
2  this case?  09:24:26
3  MR. REISNER: Again, I'm going to caution  09:24:27
4  you not to reveal any information you learned as a  09:24:29
5  result of communications with counsel.  09:24:34
6  So you can answer the questions to the  09:24:35
7  extent you have knowledge of this case, apart from  09:24:38
8  communications with counsel.  09:24:42
9  THE WITNESS: So I really know very little  09:25:17
10 about the case, except for that which I've learned  09:25:21
11 from counsel.  09:25:25
12 BY MR. LENNING:  09:25:25
13 Q. Have you discussed this case with anyone at  09:25:29
14 Charter, aside from counsel?  09:25:30
15 A. No.  09:25:36
16 Q. Did you talk with any of your coworkers  09:25:42
17 about their depositions in this case?  09:25:43
18 A. No.  09:25:45
19 Q. Did you search for documents for this  09:25:47
20 litigation?  09:25:52
21 A. No. Oh, let me correct that.  09:25:53
22 So I was asked by counsel to provide  09:25:57
23 documentation that I have held or hold that relates  09:26:00
24 to the case.  09:26:10
25 So I provided that documentation to counsel.  09:26:12

Page 16

1  Q. And where did you search for documents?  09:26:21
2  A. My -- my laptop and some Cloud-based  09:26:24
3  archives.  09:26:33
4  Q. Are there any potential sources of documents  09:26:35
5  that you did not search?  09:26:37
6  A. No.  09:26:38
7  Q. What documents did you find?  09:26:42
8  A. They are PowerPoint presentations, .pdfs,  09:26:46
9  perhaps some Excel spreadsheets relating to this --  09:26:55
10 the subject matter I was asked to collect  09:27:01
11 documentation on.  09:27:04
12 Q. And when was that?  09:27:05
13 A. Perhaps about two months ago.  09:27:11
14 Q. And you didn't review any of those documents  09:27:15
15 again in the recent past to prepare for this?  09:27:17
16 MR. REISNER: Same -- same instructions.  09:27:22
17 THE WITNESS: No.  09:27:24
18 MR. LENNING: Counsel, do you want to list  09:27:35
19 the topics that he has been designated on for  09:27:36
20 Charter?  09:27:40
21 MR. REISNER: Sure.  09:27:40
22 MR. LENNING: And we can introduce  09:27:42
23 Exhibit 1, if you open it, is the 30(b)(6) notice.  09:27:45
24 We can introduce that exhibit.  09:27:51
25 (Stafford Exhibit 1 was identified.)  09:28:08

Page 17

1  THE WITNESS: Okay. I can see this  09:28:08
2  document.  09:28:10
3  BY MR. LENNING:  09:28:10
4  Q. Are you able to open it?  09:28:11
5  A. I am able to open it, yes.  09:28:13
6  Q. Okay.  09:28:15
7  MR. REISNER: So we're designating as we  09:28:16
8  communicated with counsel yesterday, Mr. Stafford,  09:28:18
9  for every topic, to the extent interpreted to -- to  09:28:25
10 relate to PMA. In addition to, we're designating  09:28:31
11 Mr. Stafford on Topic 29 for access engineering, and  09:28:35
12 we're also designating him on topics 76, 90, 96, and  09:28:40
13 89 with respect to cable modems, CMTSs, set-top  09:28:48
14 boxes, and PMA, and 98 with respect to Mr. Stafford  09:28:53
15 himself.  09:28:58
16 BY MR. LENNING:  09:28:58
17 Q. Have you seen this document before?  09:28:59
18 A. No.  09:29:01
19 Q. The topics that he just listed, have you  09:29:04
20 read them?  09:29:06
21 A. I'm unable to map those numbers that he  09:29:10
22 listed to topics.  09:29:12
23 Q. What I'm asking you is -- so he just listed  09:29:16
24 different topics that are in that document, if you  09:29:19
25 scroll down, and the topics have subject matter.  09:29:22

Page 18

```
 1       I'm asking have you ever read those before?   09:29:25
 2       A.  Can you tell me where in the document?   09:29:29
 3       Q.  Yeah.  Sure.                              09:29:33
 4           If you roll down -- scroll down -- okay.  09:29:33
 5  Hold on.                                           09:29:36
 6           So if you scroll down to A8, it's actually 09:29:55
 7  Page 11 in the .pdf.                               09:30:00
 8       A.  A8, yes.                                  09:30:05
 9       Q.  Uh-huh.                                   09:30:08
10           Do you see there it says Topic 29?        09:30:09
11       A.  Yes.                                      09:30:12
12       Q.  I believe that's one of the ones your     09:30:12
13  counsel just listed that you were designated on.   09:30:14
14           Have you ever read that before?           09:30:16
15       A.  No, I've not.                             09:30:18
16       Q.  So I asked you earlier if you understood  09:30:24
17  that you're being designated on certain topics by  09:30:26
18  Charter.                                           09:30:29
19           Do you know what those topics are?        09:30:29
20           MR. REISNER:  Why don't you show the witness 09:30:48
21  the particular topic numbers instead of requiring the 09:30:49
22  witness to remember.                               09:30:52
23           THE WITNESS:  So I would say generally, no, 09:30:54
24  I do not know what the topics are.                 09:30:57
25  ///                                                09:30:57
```

Page 19

```
 1  BY MR. LENNING:                                    09:30:57
 2       Q.  Okay.  Okay.  Let's go to the next exhibit. 09:30:59
 3           Can we introduce Number 2.                09:31:15
 4           (Stafford Exhibit 2 was identified.)      09:31:29
 5           MR. REISNER:  Just let us know when it's up. 09:31:29
 6           MR. RICHEY:  It's up.                     09:31:30
 7  BY MR. LENNING:                                    09:31:30
 8       Q.  It should be up now.  You might have to   09:31:35
 9  refresh.                                           09:31:36
10           Oh, wait, no.  No.  I'm talking about the 09:31:46
11  LinkedIn profile.  Sorry.                          09:31:49
12           MR. REISNER:  Just so the record's clear, is 09:31:55
13  Exhibit 2 being marked and put in the record or not? 09:31:57
14           MR. LENNING:  Oh, sure.  We can, just so  09:32:00
15  it's in there.  Exhibit 2 is the -- just the       09:32:01
16  amended -- it's already on there anyway.  Is the   09:32:05
17  amended 30(b)(1) notice for Mr. Stafford.          09:32:08
18  BY MR. LENNING:                                    09:32:08
19       Q.  Have you seen that document?              09:32:12
20       A.  No, I've not.                             09:32:13
21       Q.  Okay.  You should be able to go now to    09:32:14
22  Exhibit 3 when it's loaded.                        09:32:17
23           (Stafford Exhibit 3 was identified.)      09:32:35
24  BY MR. LENNING:                                    09:32:35
25       Q.  There we go.  Let me know when you've got 09:32:35
```

Page 20

```
 1  that.                                              09:32:37
 2       A.  Yes, I see that document now.             09:32:37
 3       Q.  Is this a true and accurate copy of your  09:32:43
 4  LinkedIn profile?                                  09:32:44
 5       A.  Yes, it appears to be my LinkedIn profile. 09:33:04
 6       Q.  Is the information in here accurate?      09:33:07
 7       A.  Yes, I believe it is.                     09:33:22
 8       Q.  Your current position is Principal        09:33:25
 9  Architect III; correct?                            09:33:27
10       A.  That's correct.                           09:33:30
11       Q.  What is that?                             09:33:31
12       A.  It's a role at Charter, one of the standard 09:33:33
13  titles for an architect within the Network Technology 09:33:43
14  Group that focuses on product development and access 09:33:51
15  architecture, design, planning, and execution.     09:33:55
16       Q.  Is 3 the most senior?  Is there like      09:34:02
17  Principal Architect I?  Principal Architect II?    09:34:08
18       A.  That's correct.  In terms -- yes.         09:34:09
19           There's one other position above, which is 09:34:12
20  Distinguished Architect, but, yes, there's Principal 09:34:15
21  Architect I, II, and III.                          09:34:19
22       Q.  Okay.  So I is less senior than II than III? 09:34:20
23       A.  Correct.                                  09:34:23
24       Q.  What products do you directly work on?    09:34:26
25       A.  My role is the development of cable modems, 09:34:35
```

Page 21

```
 1  and some of the components around access architecture 09:34:46
 2  that is the physical layer, design of the physical 09:34:51
 3  layer between our infrastructure and copper        09:34:57
 4  infrastructure and customers' homes, known as access 09:35:00
 5  architecture.                                      09:35:04
 6           And I work on -- on some tools around     09:35:05
 7  access architecture to assist our operations team. 09:35:12
 8  Most of it is around technical design.             09:35:21
 9       Q.  Does that describe the Network Technology 09:35:25
10  Group generally, or are there other teams that are 09:35:28
11  working on different things than what you just     09:35:31
12  described?                                         09:35:33
13       A.  There are certainly many teams covering   09:35:33
14  different parts of the infrastructure, such as     09:35:36
15  optical, DOCSIS, wireless, different disciplines   09:35:38
16  within those groups.  There are many teams, yes.   09:35:46
17       Q.  Is that -- so my next question was going to 09:35:49
18  be if you can describe the structure of that       09:35:52
19  department, the network technology.  Is that what you 09:35:54
20  just gave, basically those different groups you just 09:35:58
21  gave?                                              09:36:01
22       A.  Uh-huh.  Yes.                             09:36:02
23       Q.  What is the group you're in called?       09:36:03
24       A.  I'm within what is just generally known as 09:36:04
25  Access Architecture.                               09:36:07
```

6 (Pages 18 - 21)