**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Civil Action No. 2:22-cv-00125-JRG<br><br>**JURY TRIAL DEMANDED** |

**CHARTER'S OBJECTION TO REPORT AND RECOMMENDATION (DKT. 349) GRANTING-IN-PART AND DENYING-IN-PART ENTROPIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT DEVICES WITH MAXLINEAR CHIPS ARE NOT NON-INFRINGING ALTERNATIVES AFFECTING THE REASONABLE ROYALTY (DKT. 179)**

I.     **INTRODUCTION**

On September 11, 2023, Entropic filed a Motion For Partial Summary Judgment That Devices With MaxLinear Chips Are Not Non-Infringing Alternatives Affecting The Reasonable Royalty Rate. Dkt. 179. The motion sought summary judgment on all patents under a novel legal theory, and on the '775 Patent and '682 Patents separately. *Id.* at 1; *see also* Dkt. 349 at 6 (noting that no case law provides a definitive answer). Magistrate Judge Payne's Report and Recommendation ("R&R) recommended denying the motion with regard to the '682 Patent as moot. *See* Dkt. 349 at 3 n.1. Charter does not object to this recommendation.

For the other patents, R&R largely did not discuss any underlying fact issues regarding the NIAs, instead deciding the motion as a matter of law. For the '775 Patent, the R&R determined that "the Book of Wisdom permits experts to consider post-negotiation information in reconstructing the market to determine how a negotiation might be conducted," but does not permit considering post-negotiation information regarding hypothetical alternatives. *Id.* at 4. As such, the R&R recommended granting the motion with respect to the '775 Patent. And, for all Asserted Patents, the R&R made the judgment that "when considering the hypothetical negotiation a licensor's products can only be considered to strengthen the licensor's position." *Id.* at 6. The R&R recommended granting the motion with respect to all remaining patents.[1] Charter respectfully objects to these recommendations.

---

[1] Based on these recommendations, and without additional analysis, Magistrate Judge Payne also issued memorandum orders striking, in relevant part, ¶¶ 100-144 of Dr. Kevin Almeroth's expert report, ¶¶ 234–240, 242–243, 250–251, 253–268, 649, 651, and 667 of Mr. Christopher Bakewell's expert report, and ¶¶151-208 of Mr. David Taylor. *See* Dkt. 358 at 4 ("The Court notes that it has recommended granting summary judgment that the MaxLinear Chips could not be non-infringing alternatives. Accordingly, these paragraphs are irrelevant and should be struck."); Dkt. 353 at 3 (same); Dkt. 366 at 4 (same). For the reasons set forth below, Charter also objects to the memorandum orders striking these paragraphs.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedures provide that, for dispositive motions, a party may serve and file specific written objections to the proposed findings and recommendations within 14 days. FED. R. CIV. P. 72(b)(2). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to[, and] may accept, reject, or modify the recommended disposition." *Id.* at 72(b)(3). Courts grant summary judgment only when, "drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012) (citing FED. R. CIV. P. 56 and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III. OBJECTIONS

### A. The Court Should Deny Entropic's Motion For Partial Summary Judgment Of No Non-Infringing Alternatives As To The '775 Patent

Regarding non-infringing alternatives for the '775 Patent from 2013 to 2015, the R&R correctly recognized that "the Book of Wisdom permits experts to consider post-negotiation information in reconstructing the market to determine how a negotiation might be conducted." Dkt. 349 at 4 (citing *Grain Processing v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1351-53 (Fed. Cir. 1999)). Yet, the R&R determined that a licensing deal for an Asserted Patent is irrelevant to "reconstructing the market to determine how a negotiation might be conducted." The R&R erred in this determination for two reasons.

First, the R&R used *Grain Processing* to draw an artificial distinction between non-infringing alternatives that were unavailable as not-yet licensed, versus those that were unavailable because they were simply not being produced. *Id.* at 4-5. In drawing this distinction, the R&R distinguished *Grain Processing* as relating to a non-infringing alternative that was originally not

produced due to economic reasons, but for which all of the materials could readily be obtained. *Id.* But there is no indication that *Grain Processing*'s reading did not apply to *other* economic shifts, such changes in competitors or in the licensing arrangements between them. *Contra. Grain Processing*, 185 F.3d at 1353 ("The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.,* the 'accounting period.'"). Indeed, although the R&R points to the context that *Grain Processing* was "require[ing] the patentee to project economic results that did not occur," the Federal Circuit never differentiated between the *types* of economic results. *See Grain Processing*, 185 F.3d at 1350. A licensing deal within the industry is an "economic result," and such licensing shifts should not be treated differently from non-infringing alternatives that simply were not being produced.

Second, the R&R dismisses Charter's Book of Wisdom case law as "too broad," relying on *Grain Processing* but without addressing the actual Book of Wisdom cases Charter cites. The fundamental purpose of the Book of Wisdom is to make "[e]xperience [] available to correct uncertain prophecy. [This] is a book of wisdom that courts may not neglect." *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). In *Sinclair*, the Supreme Court held that "[t]he use that has been made of the patented device is a legitimate aid to the appraisal of the value of the patent at the time of the breach." *Sinclair*, 289 U.S. at 967. Other events in the '775 patent's lifetime, including its inclusion in an asset purchase by MaxLinear and the non-infringing alternatives that resulted, are equally relevant to the reconstruction of the hypothetical negotiation at the time of beach. *Cf. id.* at 698 ("To correct uncertain prophecies in such circumstances is … to bring out and expose of light the elements of value that were there from the beginning."). Nor

3

is it unforeseeable that a company's assets may be acquired or the new patentee may commercialize that technology.

> B. The Court Should Deny Entropic's Motion For Partial Summary Judgment Of No Non-Infringing Alternatives As A Matter of Law As To All Patents

The R&R next found that, with respect to all patents, devices incorporating MaxLinear chips cannot be non-infringing alternatives as a matter of law. Dkt. 349 at 6, 8. In doing so, the R&R erred for a number of reasons.

First, although Charter agrees that case law does not provide a definitive answer, the R&R's characterization of Charter's reliance on *Pall Corp. v Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed. Cir. 1995) is incorrect. The R&R noted that *Pall Corp.* was about "apportion[ing lost profits] between all alleged infringers," and that "[t]he third party products were not considered as non-infringing alternatives" in that case. Dkt. 349 at 7. This is an incomplete reading of *Pall Corp.* The statement of *Pall Corp.* that, "after Pall settled with Cuno, the district court correctly held that Cuno's presence in the marketplace could not be ignored" was made in the context of discussing whether the Cuno alternatives were licensed, third-party, non-infringing alternatives:

> Pall states that this is incorrect, that the Cuno membranes were the subject of ongoing infringement litigation until May 1990, when they were licensed. The district court should have recognized the distinction between the legal and market situation before and after the licensing of the Cuno products. During the period before the Cuno products were licensed their presence in the marketplace did not defeat Pall's entitlement to lost profits damages for all of MSI's infringing sales, for the Cuno products were not noninfringing substitutes.

*Pall Corp.*, 66 F.3d at 1222 (discussing the arguments of the parties).

Multiple courts have since found that *Pall Corp.* stands for the proposition that "[d]evices produced by a third party licensee of the patentee, such as those produced by Cap & Seal, are

4

considered to be acceptable non-infringing substitutes." *Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94 C 2304, 1996 WL 114781, at *5 (N.D. Ill. Mar. 14, 1996), *aff'd*, 178 F.3d 1306 (Fed. Cir. 1998) (citing *Pall Corp.*, 66 F.3d at 1222.); *see also Broadcom Corp. v. Emulex Corp.*, No. CV-10-3963-JVS-ANX, 2011 WL 13133846, at *3 (C.D. Cal. Aug. 2, 2011) ("*Pall* indeed found that a former infringer turned licensee became a noninfringing substitute upon gaining permission from the patentee."). Thus, the R&R failed to properly recognize that Charter is relying ***not*** on MaxLinear chips, but on ***third party devices*** incorporating chips sold by MaxLinear, which can constitute non-infringing alternatives under *Pall Corp.*

Second, the R&R erred similarly in its reasoning from first principles. As the R&R recognized, "[t]he point of the hypothetical negotiation analysis is to reconstruct the relative position of each party at the time of first infringement." Dkt. 349 at 8 (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971)). And "a non-infringing alternative may cap reasonable royalties based on the costs involved for *the infringer* to switch from the infringing solution to the non-infringing solution." *Id.* at 7 (emphasis in original) (citing *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).

Despite this, the R&R reasoned that if Charter chose to purchase third-party devices with MaxLinear chips, rather than a license, "this would increase demand and sales for such devices requiring the third parties to purchase more MaxLinear chips, [and, as such, this] would not diminish MaxLinear's negotiating position." *Id.* But this reasoning is flawed, because the same could be said of ***any*** third-party licensed non-infringing alternative: if the alleged infringer chose instead to purchase third-party licensed devices, this would drive up demand for those devices and, based on the royalty rate of the third-party license, would return profits to the patentee holder. And

5

yet, the Federal Circuit has held, for example in *Pall Corp.*, that third-party devices can be non-infringing alternatives. *Pall Corp.*, 66 F.3d at 1222. This is because "[t]he economic relationship between the patented [invention] and non-infringing alternative[s], of necessity, would limit the hypothetical negotiation." *Riles*, 298 F.3d at 1312. An alleged infringer has no reason to pay more for a license than it would cost to pursue a non-infringing alternative (*see Grain Processing*, 185 F.3d at 1347), so if Charter chose to purchase third-party devices with MaxLinear chips, the patent holder (whether Entropic or MaxLinear) could not force a direct license. And in any event, whether demand would drive up prices is a fact issue not to be resolved on summary judgment.

Third, and relatedly, the R&R erred by entering summary judgment (and, consequently, striking the expert opinions of Dr. Almeroth, Mr. Bakewell, and Mr. Taylor) without considering Charter's argument that this question of third-party devices is a factual despite, best left for the jury. As illustrated above, the question of how Charter purchasing third-party devices would affect a hypothetical negotiation between Entropic and Charter is a question of fact best left for the jury. *See, e.g.*, *ION, Inc. v. Sercel, Inc.*, No. 5:06-CV-236-DF, 2010 WL 3913596, at *9 (E.D. Tex. Sept. 16, 2010) ("[W]hether an acceptable non-infringing substitute exists for [an] accused device is a question of fact and within the province of the jury."); *accord Tubular Rollers*, 2021 WL 5987092, at *3–4 (finding that whether an alternative product was available raised a question of fact). The issues of whether increased demand for third-party products and MaxLinear chips would strengthen the licensor's leverage or whether Charter's viable alternative would instead strengthen its position are for the jury to determine with the aid of expert testimony.

## IV.  CONCLUSION

For the forgoing reasons, Charter respectfully objects to the R&R's decision and requests that the Court deny Entropic's Motion For Partial Summary Judgment That Devices With MaxLinear Chips Are Not Non-Infringing Alternatives Affecting The Reasonable Royalty Rate.

6

| | |
|---|---|
| Dated: December 7, 2023 | Respectfully submitted,<br><br>*/s/ Daniel Reisner by permission Elizabeth Long*<br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>Email: ddacus@dacusfirm.com<br><br>Daniel L. Reisner<br>David Benyacar<br>Elizabeth Long<br>Albert J. Boardman<br>Melissa Brown<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York, 10019-9710<br>Telephone: (212) 836-8000<br>Email: daniel.reisner@arnoldporter.com<br>Email: david.benyacar@arnoldporter.com<br>Email: elizabeth.long@arnoldporter.com<br>Email: albert.boardman@arnoldporter.com<br>Email: melissa.brown@arnoldporter.com<br><br>Marc A. Cohn<br>Amy L. DeWitt<br>William Louden<br>William O. Young<br>Thomas Carr<br>Natalie Steiert<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>Email: marc.cohn@arnoldporter.com<br>Email: amy.dewitt@arnoldporter.com<br>Email: william.louden@arnoldporter.com<br>Email: william.young@arnoldporter.com<br>Email: thomas.carr@arnoldporter.com<br>Email: natalie.steiert@arnoldporter.com<br><br>Zachary A. Nemirovsky<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>3000 El Camino Real, 5 Palo Alto Square, #500 |

Palo Alto, California, 94304
Telephone: (650) 319-4500
Email: zachary.nemirovsky@arnoldporter.com

***Attorneys for Defendant***
***Charter Communications, Inc.***

8

**CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served December 7, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

                */s/ Elizabeth Long*
                Elizabeth Long