# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Civil Action No. 2:22-cv-00125-JRG <br><br> **JURY TRIAL DEMANDED** |

**CHARTER'S OBJECTION TO REPORT AND RECOMMENDATION (DKT. 357) GRANTING-IN-PART AND DENYING-IN-PART ENTROPIC'S MOTION FOR SUMMARY JUDGMENT OF NO LICENSE DEFENSE BASED ON DOCSIS (DKT. 177)**

## I. INTRODUCTION

On September 11, 2023, Entropic filed a Motion For Summary Judgment Of No License Defense Based On DOCSIS. Dkt. 177. The motion sought summary judgment that the Data Over Cable Service Interface Specification ("DOCSIS") License does not entitle Charter to a license to any of the Asserted Patents because Charter's experts did not perform an "element-by-element comparison of any claim" of the Asserted Patents to the DOCSIS specifications. *Id.* at 1; *see also* Dkt. 177-2 (the "DOCSIS License"). Magistrate Judge Payne's Report and Recommendation ("R&R") granted the motion with respect to the '008, '682, and '826 Patents, and denied the motion as to the remaining Patents. Dkt. 357 at 9.

First, the R&R found that because Charter's experts do not opine on the essentiality of the '775 and '362 Patents to the DOCSIS specifications, Entropic's motion should be denied as moot as to these patents. Dkt. 357 at 6. Charter does not object to this recommendation.

Second, the R&R noted that, because "the DOCSIS license applies on a patent-by-patent basis," and Charter's expert Dr. Kevin Almeroth opined as to the essentiality of claim 1 of the '690 Patent, Entropic's motion as to this patent should be denied. *Id.* Charter also does not object to this recommendation.

As to the '008, '826, and '682 Patents, the R&R recommended granting Entropic's motion. *Id.* at 8-9. For the reasons stated below, Charter respectfully objects to these recommendations.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedures provide that, for dispositive motions, a party may serve and file specific written objections to the proposed findings and recommendations within 14 days. FED. R. CIV. P. 72(b)(2). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to[, and] may accept, reject, or modify the recommended disposition." *Id.* at 72(b)(3). Courts grant summary judgment only when,

"drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012) (citing FED. R. CIV. P. 56 and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**III.   OBJECTION: THE COURT SHOULD DENY ENTROPIC'S MOTION FOR SUMMARY JUDGMENT OF NO LICENSE DEFENSE BASED ON DOCSIS FOR THE '008, '826, AND '682 PATENTS**

As the R&R noted, the issue here is "the clause defining 'Licensed Technology'" in the DOCSIS License, which provides that Licensed Technology "means … patents, all issued patents, pending applications and subsequently filed applications essential for compliance with the Specifications and any patented inventions described in the Specifications." Dkt. 357 at 3 (quoting Dkt. 172-2 at § 1.2). Charter agrees that there are two ways to be licensed: under the "essentiality clause" and "patented invention" clause which refers to "any patented inventions described in the Specifications." *See id.* at 4-5. The R&R correctly found that, because the DOCSIS License is ruled by its contract terms and not by Federal Circuit precedent dealing with essentiality infringement analysis, the essentiality clause applies on a "patent-by-patent basis," (*id.* at 4), and does not require a claim-by-claim analysis (*id.* at 5). The R&R erred for two reasons, however, in recommending that the essentiality clause required an element-by-element analysis of at least one claim. *See id.* at 4. Charter respectfully objects to this recommendation.

First, the R&R erred in rejecting Charter's argument that by interpreting the essentiality clause to mean the same thing as the "patented invention" clause, the Court rendered the essentiality clause superfluous. The R&R correctly held that "[t]he phrase 'patented invention' itself mandates an element-by-element analysis of at least one claim," (*id.* at 5 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). The R&R erred, however, by recommending that "the essentiality clause," which does not use the "patented invention" term

2

upon which the Court relied for its interpretation of the second clause, also "require[es] an element-by-element analysis of at least one claim." Dkt. 357 at 4. The R&R's only reason for why the first clause is not superfluous is that the essentiality clause "relates to what is 'essential for compliance,'" while the second clause is what "is merely described by the [DOCSIS] Specifications." *Id.* at 6. But, respectfully, this does not explain what the difference in the clauses would actually be. Setting forth the same test under each clause would render the first clause superfluous.

Second, even putting aside its contract interpretation that renders the first clause superfluous, the R&R erred by interpreting the "essentiality clause' as requiring an element-by-element test. The R&R cites language from *Philips* that requires an element-by-element analysis of at least one claim for the term "patented invention," (Dkt. 357 at 5), however it ignores the fact that even on this reading, **only** the second clause uses the term "patented invention." Dkt. 172-2 at §1.2 The ▇▇▇▇▇▇" asks only whether a ▇▇▇▇▇▇" with the DOCSIS specifications. *Id.* And, while a patent **might** be shown to be essential to comply with DOCSIS by comparing its claims to the DOCSIS specifications, a patent could **also** be essential for compliance if it is required in order to use any portion of a DOCSIS specification. In other words, if a patent is required to use a DOCSIS technology, and that technology is essential for

3

compliance with the DOCSIS specifications, then that patent must be essential for compliance with the DOCSIS specifications.[1] An element-by-element analysis is not required.[2]

This is precisely the case here, if Entropic's infringement allegations are proven correct. For each of the '008, '826, and '682 Patents, there is expert testimony showing that the technology at issue is essential for compliance with the DOCSIS specifications. *See* Dkt. 215 at 10–14; *see also id.*, Add. SOF ¶¶ 4–11. And Entropic's infringement contentions assert that their Patents are required to practice the technology in question. *See, e.g.*, Dkt 215-21 (Exhibit F from Entropic's 2nd Supplemental Infringement Contentions, dated June 23, 2023).

### A. The '008 And '826 Patents

The R&R, applying the element-by-element standard, found that Charter has not shown that either the '008 Patent or the '826 Patent are essential for compliance with the DOCSIS specifications. But in doing so, the R&R erred in rejecting Charter's argument that collecting full-band capture ("FBC") data is essential for compliance with the DOCSIS specifications under the DOCSIS License.

The R&R misunderstands Charter's position. It states that "showing [that] a common element is essential for both the patent and the [DOCSIS] standard" would be insufficient. Dkt.

---

[1] "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). The plain meaning of the word "essential" in the License Agreement requires a showing that there is no practical way to comply with the DOCSIS Specifications without infringing Entropic's patents. *See Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *1 (W.D. Wash. Apr. 25, 2013) (patents that "must be practiced to accomplish the standard[] are called standard essential patents").

[2] While Charter believes the meaning of "essential" is clear in not requiring an element-by-element analysis, if "ambiguity or equivocation exists and the extrinsic evidence presents a question of credibility or a choice among reasonable inferences, the case should not be resolved by way of summary judgment." *Mohawk Valley Water Auth. v. State*, 74 N.Y.S.3d 430, 432 (N.Y. App. Div. 2018) (quotation omitted). If this Court finds the term "essential" ambiguous, it should thus still deny Entropic's motion for summary judgment.

357 at 7. But Charter has not argued merely that FBC is an element in common; rather, Charter has said that if Entropic's infringement theory is correct, then without the right to collect FBC data covered by the '008 and '826 Patents, Charter could not comply with this portion of DOCSIS. *See* Dkt. 215 at 12. In other words, if the '008 and '826 Patents are essential to collecting FBC data, and collecting FBC data is essential to compliance with the DOCSIS specifications, then the '008 and '826 Patents are essential to compliance with the DOCSIS specifications.

As for evidence, there is sufficient evidence to show genuine dispute of material fact as to both parts of essentiality. First, Entropic's own infringement expert Dr. Souri has asserted that Charter infringed each asserted claim of the '008 and '826 Patents because its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 215-5 at ¶¶ 60, 77. And Dr. Souri has opined that he is "not aware of any alternatives" for FBC data collection that do not infringe the '008 Patent (*id.* at ¶ 72), nor has he identified any for the '826 Patent.

Second, both parties' experts have provided evidence relating to DOCSIS's requirements for FBC data collection. The DOCSIS 3.1 specifications, cited by Dr. Almeroth, state that cable modems should "provide the capability to capture and analyze the full downstream band of the cable plant" and report this "full band capture information," (Dkt. 215-18 at § 9.3.2), and Dr. Almeroth has explained that this technology has been included in the DOCSIS specifications (Dkt. 177-5 at ¶¶ 60-61). And, Dr. Souri admits that FBC is incorporated in DOCSIS: "the 'DOCSIS Best Practices and Guidelines' (DOCSIS 3.0) described how it was 'FBC [that] enabled operators to have spectrum analysis capabilities wherever modern DOCSIS 3.0 CMs have been deployed.'" Dkt. 215-5 at ¶¶ 61–62.

Accordingly, there is ample evidence that, if Entropic prevails on its infringement case, the '008 and '826 Patents are required to collect FBC data, and that FBC data collection is essential

5

for compliance with the DOCSIS specifications. Therefore, there is sufficient evidence for a jury to conclude that the '008 and '826 Patents are essential for compliance with DOCSIS, and thus, covered by the DOCSIS License.

### B. The '682 Patent

The R&R also erred in recommending the motion be granted as to the '682 Patent on the basis of an element-by-element analysis rule. However, here, the R&R has erred for two reasons.

<u>First</u>, the R&R's statement that "Charter's argument does not directly contest the elements Entropic claims are missing," (Dkt. 357 at 9), does not address what Charter *does* contest. Namely, similar to the analysis for FBC above, if Entropic's assertion that the use of PMA infringes the '682 Patent is correct, then the '682 Patent is required to use PMA. *See* Dkt. 215 at 14; Dkt. 267 at 4. And if PMA is in turn required for compliance with the DOCSIS specifications (*see* Dkt. 215 at 13-14), then the '682 Patent is essential for compliance with the DOCSIS specifications. Accordingly, the R&R should not have granted the motion as to the '682 Patent, because an element-by-element analysis is not required. *See* Section III, above.

And, as before, there is sufficient evidence to show genuine dispute of material fact as to both parts of essentiality. Entropic has relied on ▬ as its basis for infringement of the '682 Patent. *See* Dkt. 215 at Add. SOF ¶ 10 (citing Dkt. 215-5 at ¶¶ 338, 358, 364, 374, 397, 402, and 408). And Dr. Souri has explicitly said he is ▬▬▬▬▬ Dkt. 215-5 at ¶ 330. Finally, Dr. Almeroth has explained the DOCSIS 3.1 PMA Technical Report is "referenced in the DOCSIS License and thus should be considered a part of the DOCSIS specification," and that it "relies heavily on the DOCSIS specifications." Dkt. 177-5 at ¶ 73. Dr. Almeroth has explained that, in his opinion, PMA is essential for compliance with the DOCSIS specifications. *Id.* at ¶¶ 71-73. So, there is evidence

6

such that a reasonable jury could conclude that the '682 Patent is essential for compliance with DOCSIS, and thus, covered by the DOCSIS License.

<u>Second</u>, even if an element-by-element analysis were required, the R&R erred in determining that "[p]ointing to Entropic's infringement [opinions] does not rescue Charter's own showing." Dkt. 357 at 9. It is immaterial *which* party has supplied the evidence; all of the evidence in the record is considered. *See* FED. R. CIV. P. 56(c)(1)(a) (permitting citation to any materials in the record); *James v. State Farm Mut. Auto. Ins. Co.*, 719 F.3d 447, 466 (5th Cir. 2013) ("In determining whether a genuine dispute exists as to any material fact, the court must consider all of the evidence in the record[.]"), *opinion withdrawn and superseded on other grounds,* 743 F.3d 65 (5th Cir. 2014). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In this case, for *every element*, Entropic's own expert has relied on a ▓▓▓▓▓ that, according to Entropic, is ▓▓▓▓▓ ▓▓▓▓▓" *See* Dkt. 215 at Add. SOF ¶ 10 (citing Dkt. 215-5 at ¶¶ 338, 358, 364, 374, 397, 402, and 408). This is a sufficient element-by-element comparison of the '682 Patent to the CableLabs reference PMA system by Dr. Souri, which Dr. Almeroth opines is essential to the DOCSIS specifications. Dkt. 177-5 at ¶¶ 71-73. So, there is at least a genuine dispute of material fact as to whether the '682 Patent is covered by the DOCSIS License.

### IV.     CONCLUSION

For the forgoing reasons, Charter respectfully objects to the R&R's recommendation and requests that the Court deny Entropic's Motion For Summary Judgment Of No License Defense Based On DOCSIS in its entirety.

|  |  |
|---|---|
| Dated: December 7, 2023 | Respectfully submitted,<br><br>*/s/ Daniel Reisner by permission Elizabeth Long*<br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>Email: ddacus@dacusfirm.com<br><br>Daniel L. Reisner<br>David Benyacar<br>Elizabeth Long<br>Albert J. Boardman<br>Melissa Brown<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York, 10019-9710<br>Telephone: (212) 836-8000<br>Email: daniel.reisner@arnoldporter.com<br>Email: david.benyacar@arnoldporter.com<br>Email: elizabeth.long@arnoldporter.com<br>Email: albert.boardman@arnoldporter.com<br>Email: melissa.brown@arnoldporter.com<br><br>Marc A. Cohn<br>Amy L. DeWitt<br>William Louden<br>William O. Young<br>Thomas Carr<br>Natalie Steiert<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>Email: marc.cohn@arnoldporter.com<br>Email: amy.dewitt@arnoldporter.com<br>Email: william.louden@arnoldporter.com<br>Email: william.young@arnoldporter.com<br>Email: thomas.carr@arnoldporter.com<br>Email: natalie.steiert@arnoldporter.com<br><br>Zachary A. Nemirovsky<br>Arnold & Porter Kaye Scholer LLP<br>3000 El Camino Real, 5 Palo Alto Square, #500 |

██████████████████████████████████

Palo Alto, California, 94304
Telephone: (650) 319-4500
Email: zachary.nemirovsky@arnoldporter.com

***Attorneys for Defendant***
***Charter Communications, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served December 7, 2023, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Elizabeth Long*
Elizabeth Long
