# Exhibit A

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE EASTERN DISTRICT OF TEXAS

 3                             MARSHALL DIVISION

 4

 5   ENTROPIC COMMUNICATIONS, LLC, )(

 6        PLAINTIFF,                )(   CIVIL ACTION NO.

 7                                  )(   2:22-CV-125-JRG-RSP

 8   VS.                            )(   MARSHALL, TEXAS

 9                                  )(

10   CHARTER COMMUNICATIONS, INC., )(

11   Et Al.,                        )(   DECEMBER 8, 2023

12        DEFENDANT.                )(   9:34 A.M.

13                          PRETRIAL HEARING

14                 BEFORE THE HONORABLE ROY S. PAYNE

15                 UNITED STATES MAGISTRATE JUDGE

16

17   FOR THE PLAINTIFF:       Mr. James A. Shimota
                              Ms. Katherine L. Allor
18                            K&L Gates LLP
                              70 West Madison Street
19                            Suite 3100
                              Chicago, IL 60602
20
                              Mr. Alan E. Littmann
21                            Mr. Shaun Zhang
                              Ms. Jennifer M. Hartjes
22                            Goldman Ismail Tomaselli Brennan &
                              Baum, LLP
23                            200 South Wacker Drive
                              22nd Floor
24                            Chicago, IL 60606

25
```

```
 1   FOR THE PLAINTIFF:        Mr. Connor J. Meggs
                               K&L Gates LLP
 2                             10100 Santa Monica Boulevard
                               8th Floor
 3                             Los Angeles, CA 90067

 4                             Ms. Courtney Neufeld
                               K&L Gates LLP
 5                             925 Fourth Avenue
                               Suite 2900
 6                             Seattle, WA 98104

 7                             Mr. Johnny Ward
                               Ward, Smith & Hill, PLLC
 8                             1507 Bill Owens Parkway
                               Longview, TX 75604

 9

10   FOR THE DEFENDANT:        Mr. Daniel Reisner
                               Ms. Elizabeth A. Long
11                             Arnold & Porter Kaye Scholer LLP
                               250 West 55th Street
12                             New York, NY 10019

13                             Mr. Deron R. Dacus
                               The Dacus Firm, PC
14                             821 ESE Loop 323
                               Suite 430
15                             Tyler, TX 75701

16
     COURT REPORTER:           Ms. Shelly Holmes, CSR, TCRR
17                             Official Court Reporter
                               Honorable Robert W. Schroeder III
18                             United States District Judge
                               Eastern District of Texas
19                             Texarkana Division
                               500 North State Line Avenue
20                             Texarkana, Texas 75501
                               shelly_holmes@txed.uscourts.gov
21
     (Proceedings recorded by mechanical stenography, transcript
22   produced on a CAT system.)

23

24

25
```

09:25:18
09:25:18

| | | |
|---|---|---|
| 09:25:18 | 1 | COURT SECURITY OFFICER:  All rise. |
| 09:25:19 | 2 | THE COURT:  Good morning.  Please be seated. |
| 09:34:57 | 3 | For the record, we're here for the completion of |
| 09:35:04 | 4 | the final pretrial conference in Entropic Communications |
| 09:35:10 | 5 | versus Charter Communications, which is Case No. 2:22-125 |
| 09:35:14 | 6 | on our docket. |
| 09:35:15 | 7 | Would counsel state their appearances for the |
| 09:35:18 | 8 | record? |
| 09:35:18 | 9 | MR. WARD:  Good morning, Your Honor.  Johnny Ward, |
| 09:35:24 | 10 | along with Alan Littmann, Jim Shimota, Jenny Hartjes, |
| 09:35:30 | 11 | Shaun Zhang, Connor Meggs, Katie Allor, and Courtney |
| 09:35:37 | 12 | Neufeld.  I didn't mess that up. |
| 09:35:37 | 13 | THE COURT:  Thank you, Mr. Ward. |
| 09:35:37 | 14 | MR. WARD:  I think I got it.  All right. |
| 09:35:37 | 15 | THE COURT:  Thank you.  You've obviously had your |
| 09:35:39 | 16 | coffee already this morning. |
| 09:35:39 | 17 | MR. WARD:  Well, I mean, I had one job.  They said |
| 09:35:42 | 18 | if you mess it up, you won't get to speak again.  Despite |
| 09:35:43 | 19 | my efforts to mess it up, I apparently got it right. |
| 09:35:46 | 20 | THE COURT:  Well, congratulations. |
| 09:35:48 | 21 | Good morning, Mr. Dacus. |
| 09:35:49 | 22 | MR. DACUS:  Good morning, Your Honor.  Deron |
| 09:35:51 | 23 | Dacus, here with Betsy Long and Dan Reisner on behalf of |
| 09:35:55 | 24 | Charter, Your Honor, and we're ready to proceed. |
| 09:35:57 | 25 | THE COURT:  All right.  Thank you, Mr. Dacus. |

09:35:59  1          We've got a number of matters on the agenda today,

09:36:05  2     and a couple of them relate to motions filed since the last

09:36:10  3     time we gathered.  Why don't we go ahead and address those

09:36:16  4     first.  We can start with Charter's motion for protective

09:36:24  5     order, and let me hear first from -- actually, let me hear

09:36:29  6     from Plaintiff on that motion first.

09:36:43  7          Good morning, Mr. Littmann.

09:36:47  8          MR. LITTMANN:  Good morning, Your Honor.

09:36:50  9          Your Honor, as the briefing noted, this relates to

09:36:54  10    the order that you issued with respect to Dr. Almeroth's

09:37:00  11    opinion.  Entropic had moved to strike two paragraphs in

09:37:04  12    Dr. Almeroth's supplemental opinion, and those were

09:37:09  13    relating to newly produced evidence regarding Mr. Stafford

09:37:15  14    and what Mr. Stafford told Dr. Almeroth, as well as some

09:37:20  15    exhibits that were produced for the first time, along with

09:37:22  16    his report.

09:37:23  17         We had moved to strike those.  Your Honor denied

09:37:25  18    our motion to strike, but ordered that they produce two

09:37:31  19    witnesses for one hour each.  One was Mr. Stafford to

09:37:36  20    discuss what he had told Dr. Almeroth, and the other was a

09:37:39  21    corporate representative to discuss the exhibit that was

09:37:43  22    produced with Dr. Almeroth's report.

09:37:44  23         Your Honor noted that it would be prejudicial to

09:37:49  24    present the evidence to the jury without allowing

09:37:51  25    discovery.

09:37:51   1       THE COURT:  So why doesn't their withdrawal of

09:37:54   2 those paragraphs moot the need for the deposition?

09:37:58   3       MR. LITTMANN:  So we asked for clarification about

09:38:01   4 what that withdrawal actually entailed, and I think herein

09:38:05   5 lies the rub is that we don't actually believe what they're

09:38:08   6 really doing is withdrawing any reliance on those

09:38:11   7 paragraphs because what they're -- what they really want to

09:38:13   8 do, we believe, is to still bring Mr. Stafford to testify

09:38:18   9 about exactly what he was -- what's disclosed in

09:38:21 10 Dr. Almeroth's report.  He wasn't -- Mr. Stafford hasn't

09:38:25 11 been deposed since then.

09:38:27 12       And then they want their experts, and they

09:38:29 13 expressly said that, that they reserve the right to have

09:38:32 14 any witness discuss the substance of those paragraphs,

09:38:34 15 including experts, to the extent otherwise disclosed in

09:38:37 16 their report.

09:38:37 17       So we don't know what else those -- that's a

09:38:42 18 direct quote.  And so we don't know what else they are

09:38:44 19 going to be relying on if Mr. Stafford comes in here and

09:38:48 20 presents that evidence.  And that's the exact evidence, as

09:38:52 21 Your Honor noted, would be prejudicial without giving us an

09:38:54 22 opportunity to conduct discovery on it.

09:38:57 23       Furthermore, the screenshots, that DX-24

09:39:05 24 screenshot was something that only came in, and the only

09:39:08 25 witness that it was disclosed through is Dr. Almeroth.  And

09:39:11  1  they've refused to exclude that as well.  And so in that

09:39:16  2  situation, nobody else has indicated they can testify on it

09:39:16  3  or that they would be introducing that evidence through

09:39:19  4  anyone else.

09:39:19  5       And so by refusing to exclude that, I think what

09:39:23  6  it does is it gives us a pretty good indication that

09:39:26  7  actually they're not really withdrawing those paragraphs at

09:39:28  8  all.  What they're doing is they're trying to circumvent

09:39:31  9  this Court's order and just trying to get it in through

09:39:34  10  other means without giving us the opportunity to conduct

09:39:37  11  discovery on that.

09:39:37  12       And, obviously, as we come up to trial, I think

09:39:39  13  what -- you know, it's always dangerous in front of a jury

09:39:42  14  to be asking questions that we don't know the answers to.

09:39:45  15  And I think that's exactly what they're trying to do right

09:39:50  16  now is trying to say, you know, take your chances, but

09:39:51  17  we're not going to give you the discovery on the very

09:39:53  18  things that the Court ordered discovery to be provided on.

09:39:56  19       THE COURT:  To the extent that your concern deals

09:40:00  20  with what Dr. Almeroth might say, I think that's something

09:40:04  21  that I can address with the defense counsel in a moment.

09:40:09  22       But as long as Dr. Almeroth is not going to

09:40:17  23  express opinions related to those two paragraphs, how are

09:40:21  24  you not in the same position you would have been if we had

09:40:24  25  simply granted your motion to strike?

09:40:27    1          MR. LITTMANN:  Well, I think -- I think that
09:40:30    2   primarily revolves around the DX-24, that exhibit, because
09:40:36    3   if -- if Your Honor wants to revisit and grant the motion
09:40:39    4   to strike, I think that is one way of resolving it.
09:40:44    5   However, I still think that the DX-24 needs to be excluded
09:40:47    6   because our understanding was that came in solely through
09:40:49    7   Dr. Almeroth and those -- and those paragraphs.  And so we
09:40:55    8   understand that had that been granted, there was nobody
09:40:58    9   else to actually lay a foundation for that exhibit.  There
09:41:01   10   was nobody else that would have been able to testify about
09:41:03   11   it at all.  It wasn't related back to what Mr. Stafford
09:41:07   12   said.
09:41:07   13          And in that situation, Mr. Bakewell, their damages
09:41:09   14   expert, also doesn't rely on it.  He relies on other
09:41:13   15   conversations he had with Mr. Stafford, but he doesn't rely
09:41:17   16   on that exhibit.
09:41:18   17          So I think that's where -- that's where there
09:41:20   18   would still be a difference, and there would still be
09:41:23   19   something up for discussion.
09:41:24   20          And -- and I understand that certainly had
09:41:27   21   Your Honor granted that motion and been excluded or if --
09:41:31   22   you know, if it is, you know, hard and fast that they don't
09:41:33   23   simply get to introduce all of this information by other
09:41:37   24   means, at least through Dr. Almeroth through other means, I
09:41:41   25   think we're going to have a situation where we're in front

09:41:43  1   of a jury, Mr. Stafford is going to come in, he's going to

09:41:47  2   testify to this.  Dr. Almeroth is likely going to be

09:41:49  3   sitting there listening.  And whether the jury is going to

09:41:52  4   be able to understand what Dr. Almeroth is relying on and

09:41:55  5   whether he's going to be able to sort of put on blinders

09:41:58  6   and say, well, no, I'm not really -- I'm not really relying

09:42:00  7   on the things I just heard Mr. Stafford say, and he sort of

09:42:04  8   unlearned those things that he heard before or have the

09:42:07  9   jury conclude somehow that, you know, Dr. Almeroth isn't

09:42:10  10  actually listening to that portion but he's -- and not

09:42:13  11  really resting his opinion on that portion but on something

09:42:16  12  else, I think that's going to create quite a bit of

09:42:19  13  confusion at the trial.

09:42:20  14          And I think the easiest way to resolve that would

09:42:22  15  be to go with what your order originally said, which is

09:42:25  16  simply let's just conduct the depositions.  They're short.

09:42:28  17  We can still get them done.  We're prepared to do it

09:42:31  18  tomorrow.  And I think it avoids the surprise and the

09:42:36  19  complications of having everybody wonder kind of what

09:42:40  20  exactly is Dr. Almeroth relying on when he's sitting in the

09:42:45  21  court listening to these statements.

09:42:47  22          THE COURT:  All right.  Thank you, Mr. Littmann.

09:42:54  23          MR. LITTMANN:  Thank you.

09:42:56  24          MR. REISNER:  Your Honor, the -- the exhibit,

09:43:00  25  DTX-24, that Entropic is concerned about was already

09:43:03  1  pre-admitted, so I don't understand why we're here debating

09:43:07  2  that today.

09:43:07  3       Ms. -- Dr. Almeroth's not going to testify about

09:43:13  4  DTX-24.  That doesn't mean that Mr. Stafford can't testify

09:43:18  5  about that.  This -- this was disclosed in the September

09:43:22  6  7th interrogatory response, this -- these screenshots

09:43:27  7  showing them -- showing the ████████████.  If they

09:43:30  8  thought that they were entitled and needed a deposition of

09:43:34  9  Mr. Stafford, they should have raised it then, not on the

09:43:38  10 eve of trial.

09:43:39  11      It's going to be -- it would be highly prejudicial

09:43:42  12 to us to have to prepare and offer Mr. Stafford to testify

09:43:47  13 on Sunday, the day before trial begins while we have a lot

09:43:50  14 of other things that we have to do for something that they

09:43:56  15 have no excuse for not raising back in September or

09:44:02  16 earlier.  We disclosed the ███████████ in an earlier

09:44:06  17 interrogatory response on August 10th.

09:44:09  18      THE COURT:  Well, talk to me, Mr. Reisner, about

09:44:17  19 why shouldn't I, then, just take the path of simply

09:44:20  20 granting the motion to strike as to those two paragraphs

09:44:24  21 and there being, therefore, no ambiguity about

09:44:31  22 Dr. Almeroth's ability to testify about that.

09:44:35  23      MR. REISNER:  Yeah, we -- Your Honor, we -- we

09:44:36  24 think you should -- you should do that.  The only thing I

09:44:39  25 want to clarify, okay, is that Dr. Almeroth, in his earlier

| | | |
|---|---|---|
| 09:44:46 | 1 | expert report, already offered an opinion acknowledging |
| 09:44:52 | 2 | that ███████████████. He -- he didn't offer an opinion |
| 09:44:55 | 3 | on this exhibit. He's not going to testify that he thinks |
| 09:44:58 | 4 | this exhibit shows it was shut down or that he even thinks |
| 09:45:02 | 5 | it was shut down. |
| 09:45:03 | 6 | But -- but he does -- he should be able to offer |
| 09:45:07 | 7 | an opinion that you can't have infringement of method |
| 09:45:10 | 8 | claims if you're not practicing them. And that opinion was |
| 09:45:13 | 9 | disclosed previously. He won't -- he won't testify as to |
| 09:45:20 | 10 | anything that's in these paragraphs that are stricken that |
| 09:45:22 | 11 | wasn't disclosed earlier. |
| 09:45:26 | 12 | THE COURT: All right. Thank you, Mr. Reisner. |
| 09:45:34 | 13 | Mr. Littmann, I'll give you the last word on that. |
| 09:45:37 | 14 | MR. LITTMANN: Thank you, Your Honor. I'll make |
| 09:45:38 | 15 | it quick. |
| 09:45:39 | 16 | Just to clarify, Your Honor, what Dr. Almeroth |
| 09:45:47 | 17 | testified to before is that the project was -- or what he |
| 09:45:52 | 18 | wrote in his report was that the project was stalled. He |
| 09:45:55 | 19 | didn't describe any basis for why it was allegedly shut |
| 09:45:59 | 20 | down. And that's what Mr. Stafford's testimony and that's |
| 09:46:02 | 21 | what the exhibit elaborate upon. And so it's not the same |
| 09:46:09 | 22 | as what he had disclosed before at all. |
| 09:46:11 | 23 | I'm looking at Paragraph 183 of his report. He |
| 09:46:14 | 24 | says: Right now the project is stalled, and it did not get |
| 09:46:18 | 25 | the go-ahead -- he's quoting the Charter witness -- from |

09:46:21   1   our executive management to deploy on a larger scale.  So

09:46:24   2   he doesn't describe the mechanism or the basis on which

09:46:26   3   they claim they shut it down.

09:46:28   4        And so we still think that what -- what we need

09:46:32   5   here is a deposition to understand what exactly it is that

09:46:37   6   happened.  Their -- their witnesses are clearly going to

09:46:40   7   rely on it.  We don't know how Mr. Stafford could possibly

09:46:42   8   come in and testify to the late-produced exhibit that --

09:46:48   9   that was produced when Dr. Almeroth actually issued his

09:46:53  10   report when that was not produced through -- or we were not

09:46:56  11   given an opportunity to depose Mr. Stafford on it.  It was

09:47:00  12   given to us through Dr. Almeroth.

09:47:02  13        THE COURT:  Do you dispute that that exhibit has

09:47:04  14   been pre-admitted?

09:47:05  15        MR. LITTMANN:  We did not object to that.  We did

09:47:08  16   not object to that exhibit.  So, yes, I agree that we did

09:47:11  17   not object to that exhibit, however, we did not object to

09:47:13  18   it because we believed that it rose and fell with

09:47:17  19   Dr. Almeroth -- Almeroth's opinions on those particular

09:47:20  20   paragraphs which we moved to strike.

09:47:22  21        And so because he was the only witness that was --

09:47:27  22   that was there that had offered that evidence, that was --

09:47:31  23   that was our understanding.

09:47:32  24        So if -- if we're being told now that what

09:47:36  25   Mr. Stafford is going to do is he's going to testify about

09:47:38  1  that exhibit, then frankly we can cut this short, limit it

09:47:43  2  to one deposition, and just have Mr. Stafford testify about

09:47:44  3  that exhibit.  And that would be -- that would make it

09:47:48  4  easier for everybody.

09:47:49  5        THE COURT:  Well, to the extent, Mr. Littmann,

09:47:51  6  that you made these decisions based on strategic moves, I

09:48:00  7  think it's too late now to walk those back.

09:48:03  8        I'm going to amend the order on Dr. Almeroth's

09:48:13  9  opinions -- in other words, the order on your motion to

09:48:17  10  strike -- to grant it as to those two additional

09:48:23  11  paragraphs.  I do find that that moots the Court's order

09:48:29  12  regarding the additional depositions.  And whether or not

09:48:38  13  Mr. Stafford's testimony about that document is appropriate

09:48:47  14  as fact testimony is something that you can object to

09:48:50  15  contemporaneously if you think he's exceeded the scope of

09:48:54  16  what a fact witness can provide.

09:48:56  17        MR. LITTMANN:  Thank you, Your Honor.  Understood.

09:48:58  18        THE COURT:  All right.  So the Defendant's motion

09:49:05  19  for protective order is granted to that extent.

09:49:08  20        That takes us to the Plaintiff's motion to

09:49:14  21  dismiss, and I'd like to hear from the Plaintiff first on

09:49:21  22  that.

09:49:21  23        MR. ZHANG:  Good morning, Your Honor.  This is

09:49:28  24  Shaun Zhang on behalf of Entropic.

09:49:29  25        THE COURT:  Good morning.

09:49:29   1          MR. ZHANG:  In accordance with the Court's order

09:49:32   2   and the practice of this -- of this Court, we informed

09:49:36   3   Charter that we are not proceeding to trial on three of the

09:49:40   4   six asserted patents.  In response to that, Charter

09:49:43   5   requested that we dismiss those claims on those patents

09:49:46   6   with prejudice.

09:49:46   7          And we informed them, based on the precedent of

09:49:49   8   this Court, that the effect of withdrawing claims and

09:49:52   9   narrowing the issues before trial was a dismissal without

09:49:55   10  prejudice, and that's really the dispute before the Court.

09:49:58   11  It wouldn't be a dispute if Charter didn't insist that the

09:50:03   12  dismissal would be with prejudice.  Our motion memorializes

09:50:05   13  the effect -- and it's the norm in this Court that when

09:50:08   14  issues are narrowed and claims are withdrawn, that that is

09:50:10   15  done without prejudice.

09:50:11   16         THE COURT:  Do you intend to or does Entropic

09:50:14   17  intend to reassert these three patents against Charter in

09:50:20   18  some other proceeding?

09:50:21   19         MR. ZHANG:  Your Honor, I -- I can't speak to that

09:50:24   20  specific question.  The motion really is only filed because

09:50:29   21  this issue was raised by Charter.  This exact issue

09:50:34   22  was actually -- typically this issue doesn't get brought

09:50:37   23  up, so we don't have a lot of precedent on this, but this

09:50:38   24  exact issue was addressed in the Constellation case,

09:50:41   25  Constellation versus LG before Judge Gilstrap earlier this

09:50:44  1   year.

09:50:45  2          There, the Defendant also contested that the

09:50:47  3   dismissal should be with prejudice with -- of claims that

09:50:50  4   were withdrawn and narrowed before trial, same as that

09:50:54  5   issue went before Judge Gilstrap, and Judge Gilstrap

09:50:56  6   granted the motion without prejudice.  And I have copies of

09:51:00  7   that -- of that order, if that would be helpful, Your

09:51:02  8   Honor.

09:51:02  9          THE COURT:  You know, I'm -- I am familiar with

09:51:04  10  that issue.  It has a lot to do with the stage of the

09:51:08  11  proceedings and the purpose of the narrowing.  If it is

09:51:18  12  simply involving claims of a patent, we never have an issue

09:51:24  13  with that.  If it's the patent itself, that's a little

09:51:27  14  broader.

09:51:30  15         But the Defendant has a legitimate concern if the

09:51:34  16  Plaintiff is withdrawing those with the intent to reurge

09:51:38  17  them elsewhere.  And it's concerning to me if you're not in

09:51:44  18  a position to comment on that.

09:51:47  19         MR. ZHANG:  Your Honor, might I confer with

09:51:51  20  co-counsel on this?

09:51:52  21         THE COURT:  Yes.

09:52:28  22         MR. ZHANG:  Thank you, Your Honor.

09:52:29  23         After conferring with co-counsel, we can confirm

09:52:32  24  that these patents that were withdrawn as part of this

09:52:36  25  litigation, those three patents we don't intend to assert

09:52:40   1   again against Charter.  There are family members in one of

09:52:41   2   those patents that we reserve the right to assert against

09:52:43   3   Charter and other Defendants.

09:52:45   4        THE COURT:  Well, the way I would likely resolve

09:52:46   5   this, then, is to grant your request to dismiss without

09:52:53   6   prejudice, but to condition it upon the payment by Entropic

09:52:59   7   to Charter of Charter's fees in the event that you do

09:53:06   8   reurge these same patents against Charter in another forum.

09:53:11   9        I think -- I've always felt that addresses the

09:53:16   10  primary concern that the Defendants have in terms of being

09:53:20   11  put to the expense of recreating their defense in the event

09:53:27   12  they're reurged.

09:53:29   13        But let me hear from the Defendants on that point.

09:53:33   14  Thank you --

09:53:33   15        MR. ZHANG:  Thank you.

09:53:34   16        THE COURT:  -- Mr. Zhang.

09:53:37   17        MR. REISNER:  As Your Honor has already

09:53:43   18  recognized, that's -- you know, our concern is that

09:53:47   19  January, some time next year, sometime in the near future,

09:53:51   20  if these patents are dropped without prejudice, Entropic

09:53:54   21  will turn around and file a new lawsuit, we'll have new

09:53:59   22  discovery, new theories, and we'll be litigating the same

09:54:01   23  issues and new issues and a new trial at great expense and

09:54:05   24  inconvenience to our witnesses and disruption of our

09:54:10   25  business.

09:54:11  1          And the Fifth Circuit cases that we cited all

09:54:13  2     discuss how dismissing without prejudice on the eve of

09:54:17  3     trial, you know, is prejudicial.

09:54:19  4          THE COURT:  Well, Rule 41 specifically grants the

09:54:25  5     District Court the discretion to impose conditions, and the

09:54:32  6     condition that makes sense here would be the condition

09:54:34  7     regarding payment of fees in the event that they are

09:54:38  8     reurged.  Obviously, that is intended also to be a

09:54:45  9     disincentive to the Plaintiff to reurge those same patents

09:54:51  10    in another forum.

09:54:53  11         If you have any argument as to why that wouldn't

09:54:56  12    be a sufficient protection for Charter's interest in this

09:55:02  13    regard, tell me about it.

09:55:03  14         MR. REISNER:  Your Honor, we agree that it -- it

09:55:07  15    largely alleviates the prejudice.  We still think there's

09:55:13  16    prejudice to just disruption of the business, but -- but

09:55:16  17    certainly that goes a long way to protecting Charter

09:55:18  18    against another suit.

09:55:20  19         THE COURT:  All right.  Then, thank you,

09:55:23  20    Mr. Reisner.

09:55:24  21         I'll grant the Plaintiff's motion with the

09:55:28  22    condition just mentioned, that if these same patents are

09:55:32  23    reurged against Charter in other proceedings, that Entropic

09:55:39  24    will be ordered to pay to Charter the fees and costs that

09:55:47  25    Charter can show are attributable to its defense of those

09:55:53   1   patents in this action.

09:55:57   2              MR. ZHANG:   Thank you, Your Honor.

09:55:57   3              THE COURT:   All right.   Then I know we also have a

09:56:04   4   notice that the Plaintiff filed and that the Defendants

09:56:09   5   have responded to now about issues that remained.

09:56:17   6              Maybe I can hear from the Plaintiff about what --

09:56:21   7   what issues they think still remain outstanding after

09:56:26   8   viewing the Defendant's response.

09:56:29   9              MR. SHIMOTA:   Good morning, Your Honor.   Thank you

09:56:32  10   for your time.

09:56:33  11              We've talked this morning with counsel.   The only

09:56:38  12   issue that remains is Defendant's apparent intention to, I

09:56:43  13   guess in their view, possibly call Dr. Goldberg on issues

09:56:48  14   related to damages now which we think is improper.   And if

09:56:54  15   I may explain that to you further, I will.   Otherwise, we

09:56:58  16   believe that we have resolved all the issues that were --

09:57:03  17   remained to be discussed today, with the caveat that -- I

09:57:05  18   believe we had at the last pretrial conference raised the

09:57:08  19   possibility of extending the trial time in this matter.   So

09:57:11  20   we just would like to know if that were the case, and if

09:57:13  21   it's not, just so we can prepare for trial, but --

09:57:16  22              THE COURT:   I do intend to reach that.   And

09:57:19  23   frankly, some of these issues affect the time that the

09:57:24  24   Court thinks is appropriate.

09:57:26  25              So -- but that is on the agenda, as well.

09:57:30   1          MR. SHIMOTA:  Thank you, Your Honor.

09:57:32   2          THE COURT:  Talk to me about Dr. Goldberg.

09:57:34   3          MR. SHIMOTA:  Yes, sir.

09:57:36   4      So Dr. Goldberg in this case was disclosed as

09:57:41   5   Defendant's invalidity expert.  He provided opinions on

09:57:46   6   anticipation, obviousness, written description, enablement,

09:57:51   7   and Section 101 subject matter eligibility.

09:57:54   8          You granted summary judgment on some of those

09:57:57   9   issues, 101, for example.  You also struck some of

09:58:00  10   Dr. Goldberg's opinions.  And on Monday of this week,

09:58:03  11   pursuant to the DCO, Defendants notified us that they were

09:58:09  12   no longer going to pursue invalidity -- invalidity defenses

09:58:12  13   at trial.  We thought, great.

09:58:15  14          On Tuesday morning, just as a housekeeping matter,

09:58:18  15   we sent them an email, amongst other things, asking them to

09:58:22  16   confirm that Dr. Goldberg would no longer be coming to

09:58:24  17   testify at trial so that we could prepare.

09:58:28  18          Their response was surprising.  Their response was

09:58:31  19   that they now may, quote, unquote, may call Dr. Goldberg to

09:58:37  20   testify on patent damages.  This was surprising.  There's

09:58:43  21   nothing in Dr. Goldberg's report at all concerning patent

09:58:48  22   damages.

09:58:48  23          We had a meet and confer with them on Wednesday in

09:58:51  24   which we asked them to identify what paragraphs of

09:58:54  25   Dr. Goldberg's report pertain to patent damages.  They said

| | | |
|---|---|---|
| 09:59:00 | 1 | that the Georgia-Pacific factors do identify the old |
| 09:59:05 | 2 | modes -- they talk about -- you know, a damages expert can |
| 09:59:08 | 3 | look at old modes that came before the invention, and |
| 09:59:12 | 4 | people can consider the incremental advance of the |
| 09:59:15 | 5 | invention over old modes. |
| 09:59:17 | 6 | But we -- again, we asked them:  Where does this |
| 09:59:19 | 7 | appear in Dr. Goldberg's report?  They didn't tell us.  We |
| 09:59:23 | 8 | asked them again yesterday in an email:  Please tell us |
| 09:59:26 | 9 | what paragraphs of Dr. Goldberg's report relate to patent |
| 09:59:32 | 10 | damages.  It's not there. |
| 09:59:33 | 11 | I was looking at Dr. Goldberg's expert opinion, |
| 09:59:37 | 12 | and I deposed him in this matter, and there's a section -- |
| 09:59:40 | 13 | the legal section.  And he was candid, like all experts, |
| 09:59:43 | 14 | and said, the lawyers helped me write this.  There's |
| 09:59:46 | 15 | nothing at all about damages there, zero, nothing.  There's |
| 09:59:50 | 16 | a legal description of the -- of anticipation, obviousness, |
| 09:59:55 | 17 | written description, enablement, level of skill in the art. |
| 09:59:59 | 18 | Indeed, they say that he's going to testify about the, |
| 10:00:02 | 19 | quote, unquote, state of the art. |
| 10:00:03 | 20 | Literally, literally, the only place in this |
| 10:00:07 | 21 | report that there's a -- the use of the words "state of the |
| 10:00:11 | 22 | art" is in the section on enablement where one of the |
| 10:00:13 | 23 | factors for enablement is the state of the art, and |
| 10:00:16 | 24 | Dr. Goldberg said the lawyers wrote this.  There's nothing |
| 10:00:19 | 25 | for him to testify about. |

| | | |
|---|---|---|
| 10:00:20 | 1 | I took his deposition, Your Honor.  If we had been |
| 10:00:23 | 2 | told at the time -- if we received fair disclosure, fair |
| 10:00:26 | 3 | notice under Rule 26 that he was going to be a damages |
| 10:00:30 | 4 | expert, I would have changed my deposition strategy.  I |
| 10:00:33 | 5 | would have asked him questions about that.  But we didn't |
| 10:00:36 | 6 | receive notice of that.  We're receiving notice of that |
| 10:00:38 | 7 | this week.  This is trial by ambush. |
| 10:00:41 | 8 | And to underscore the point that he is not and |
| 10:00:44 | 9 | never was a damages expert, Mr. Bakewell -- Mr. Bakewell |
| 10:00:46 | 10 | testifies regularly in this court.  There's nothing, |
| 10:00:49 | 11 | there's zero in Mr. Bakewell's expert report on patent |
| 10:00:53 | 12 | damages concerning discussions with Dr. Goldberg or his |
| 10:00:55 | 13 | reliance upon Dr. Goldberg's report, nothing. |
| 10:00:59 | 14 | And so -- and just even more so in -- in the |
| 10:01:03 | 15 | notice, the response to our notice they filed this morning, |
| 10:01:06 | 16 | they state that they're not -- Dr. Goldberg is not going to |
| 10:01:09 | 17 | testify about any of the prior art that's in his expert |
| 10:01:12 | 18 | report.  Well, then the question is what, then, is he going |
| 10:01:14 | 19 | to talk about?  Is he some kind of a fact witness who's |
| 10:01:18 | 20 | going to testify about what came in those time periods? |
| 10:01:20 | 21 | He didn't have any of that in his report, and, |
| 10:01:23 | 22 | indeed, I brought his deposition here.  I asked him |
| 10:01:25 | 23 | questions at the start of his deposition about his |
| 10:01:30 | 24 | experience -- |
| 10:01:30 | 25 | THE COURT:  Mr. Shimota, why don't we do it this |

| | | |
|---|---|---|
| 10:01:33 | 1 | way?  Rather than you rebutting everything they might |
| 10:01:37 | 2 | say -- |
| 10:01:38 | 3 | MR. SHIMOTA:  Okay. |
| 10:01:38 | 4 | THE COURT:  -- let me hear what they do say, and |
| 10:01:41 | 5 | then I'll give you a chance to respond. |
| 10:01:44 | 6 | MR. SHIMOTA:  Fair enough.  Sometimes I get wound |
| 10:01:47 | 7 | up, Your Honor.  Thank you. |
| 10:01:47 | 8 | THE COURT:  Not a problem, Mr. Shimota. |
| 10:01:48 | 9 | MR. SHIMOTA:  Thank you. |
| 10:01:48 | 10 | MR. DACUS:  I'll try to lower the emotions in the |
| 10:01:52 | 11 | room, Your Honor. |
| 10:01:52 | 12 | I do think this is -- this is simple, Your Honor. |
| 10:01:54 | 13 | Your Honor has had the privilege -- I'll put that in |
| 10:01:58 | 14 | quotes -- of reading the deeply interesting motions to |
| 10:02:01 | 15 | strike on the -- on the damages side of the case, and you |
| 10:02:04 | 16 | know that apportionment is a very big issue for all three |
| 10:02:08 | 17 | patents in the case and, specifically, our claim that the |
| 10:02:13 | 18 | Plaintiff's expert has not apportioned. |
| 10:02:16 | 19 | All we propose that Dr. Goldberg do is talk about |
| 10:02:20 | 20 | the existing prior art.  He will not -- he will not be |
| 10:02:26 | 21 | rendering any opinions as to invalidity.  He will just be |
| 10:02:29 | 22 | talking about the prior art that is in his report, and that |
| 10:02:32 | 23 | goes to the apportionment issue, Your Honor. |
| 10:02:36 | 24 | THE COURT:  So tell me what parts of his report |
| 10:02:39 | 25 | you would intend to have him testify about. |

| | | |
|---|---|---|
| 10:02:44 | 1 | MR. DACUS:  So it's -- it's difficult to point the |
| 10:02:47 | 2 | Court to the -- to the paragraphs, and I cannot do that |
| 10:02:49 | 3 | right now, but I'd be happy to do that.  But I will say |
| 10:02:52 | 4 | generally, of course, because he has an invalidity report, |
| 10:02:55 | 5 | his report is replete.  You know, dozens of paragraphs |
| 10:02:59 | 6 | related to the prior art that existed.  And that goes |
| 10:03:03 | 7 | directly to the apportionment issue and our claim that the |
| 10:03:07 | 8 | Plaintiff has completely failed to apportion here.  This |
| 10:03:10 | 9 | is -- this is not a -- you -- |
| 10:03:14 | 10 | THE COURT:  Who would opine, based on that prior |
| 10:03:17 | 11 | art, that the asserted patents are a small increment over |
| 10:03:24 | 12 | the prior art? |
| 10:03:25 | 13 | MR. DACUS:  In general, Mr. Bakewell does it.  He |
| 10:03:30 | 14 | does not do it relying on Dr. Goldberg.  I -- I agree with |
| 10:03:34 | 15 | counsel on that. |
| 10:03:35 | 16 | But throughout Mr. Bakewell's report, as the Court |
| 10:03:39 | 17 | knows because you've seen these motions, our contention is |
| 10:03:43 | 18 | that they completely failed to apportion for any of these |
| 10:03:47 | 19 | three patents. |
| 10:03:50 | 20 | THE COURT:  So I -- I understand that, you know, |
| 10:03:56 | 21 | Dr. Bakewell can say whatever he will that's in his report. |
| 10:03:59 | 22 | I'm just at this point focused on Dr. Goldberg and what |
| 10:04:08 | 23 | parts of his report you would contend he can testify to the |
| 10:04:15 | 24 | jury about since you have withdrawn the invalidity defense. |
| 10:04:21 | 25 | MR. DACUS:  It would be the paragraphs in general, |

10:04:25  1    Your Honor, and I'm not -- I'm not citing you to the

10:04:26  2    specific ones, and I can if the Court requests it.  We're

10:04:29  3    happy to do that.

10:04:30  4            But in general, it is the paragraphs where he

10:04:33  5    talks about the art that existed, the prior art, without

10:04:41  6    rendering an opinion on validity because we -- we believe

10:04:44  7    that prior art issue is directly relevant to the

10:04:47  8    apportionment issue.

10:04:52  9            THE COURT:  Well, I tell you what, I -- I have

10:04:56  10   come out here, I believe, without exhibits, which I want to

10:05:04  11   get to next, so I'm going to take a break at the moment to

10:05:10  12   go do that.

10:05:11  13           I'll also pull up what we have of Dr. Goldberg's

10:05:17  14   report, and I'd ask you to take a look, during the break,

10:05:21  15   at some representative examples of the way you would intend

10:05:28  16   to present this through Dr. Goldberg so that I can have a

10:05:32  17   little better understanding and so that Mr. Shimota can

10:05:36  18   have a target.

10:05:37  19           MR. DACUS:  Understood, Your Honor.  And I will

10:05:39  20   say with respect to the -- what the Court anticipates

10:05:42  21   doing, you said something about exhibits and maybe depo

10:05:46  22   designations.  I'm not -- I think we have resolved all of

10:05:47  23   those issues.

10:05:48  24           THE COURT:  All right.  There were -- the last

10:05:53  25   three buckets, I think, that were on the list from last

| | | |
|---|---|---|
| 10:05:56 | 1 | time we did not reach because they were assumed to rise and |
| 10:06:00 | 2 | fall with certain motions.  And I just need to get back to |
| 10:06:04 | 3 | those and confirm that they have risen or fallen. |
| 10:06:08 | 4 | MR. DACUS:  Understood, Your Honor.  My under -- |
| 10:06:10 | 5 | we'll talk over the break. |
| 10:06:10 | 6 | THE COURT:  Okay. |
| 10:06:11 | 7 | MR. DACUS:  My understanding is we've resolved it |
| 10:06:13 | 8 | all, but -- |
| 10:06:15 | 9 | THE COURT:  All right.  Well, that -- that would |
| 10:06:16 | 10 | be welcomed news. |
| 10:06:16 | 11 | MR. DACUS:  Yes, Your Honor. |
| 10:06:17 | 12 | THE COURT:  And we'll check on you in a minute and |
| 10:06:19 | 13 | give you what -- the time you need and then come back and |
| 10:06:23 | 14 | deal with Dr. Goldberg. |
| 10:06:23 | 15 | MR. DACUS:  Thank you, Your Honor. |
| 10:06:24 | 16 | THE COURT:  All right.  Thank you. |
| 10:06:25 | 17 | COURT SECURITY OFFICER:  All rise. |
| 10:06:25 | 18 | (Recess.) |
| 10:19:04 | 19 | COURT SECURITY OFFICER:  All rise. |
| 10:19:06 | 20 | THE COURT:  Good morning again.  Please be seated. |
| 10:19:33 | 21 | Except for you, Mr. Dacus. |
| 10:19:36 | 22 | MR. DACUS:  All right.  At least you said it with |
| 10:19:43 | 23 | a smile. |
| 10:19:46 | 24 | So, Your Honor, where -- I think -- is it okay to |
| 10:19:48 | 25 | proceed, Your Honor? |

| | | |
|---|---|---|
| 10:19:49 | 1 | THE COURT:  Yes. |
| 10:19:49 | 2 | MR. DACUS:  Thank you. |
| 10:19:51 | 3 | So consistent with what we were saying, Your |
| 10:19:55 | 4 | Honor, this is a situation where Dr. Goldberg would simply |
| 10:20:00 | 5 | be testifying to exactly what is in his report, not outside |
| 10:20:03 | 6 | of his report, and reciting to the jury what was in the |
| 10:20:09 | 7 | prior art. |
| 10:20:12 | 8 | As an example, we've referred counsel to Paragraph |
| 10:20:15 | 9 | 247 of his report.  Also Paragraph 270 does the same thing. |
| 10:20:21 | 10 | And there's a multitude -- |
| 10:20:23 | 11 | THE COURT:  Let me get to one of those paragraphs. |
| 10:20:25 | 12 | MR. DACUS:  Yes, sir.  247, Your Honor. |
| 10:20:36 | 13 | THE COURT:  All right.  I'm at that paragraph. |
| 10:20:38 | 14 | MR. DACUS:  So in 247, the reference that's cited |
| 10:20:43 | 15 | is this Caporizzo reference, and Dr. Goldberg has just a |
| 10:20:48 | 16 | recitation of what Caporizzo disclosed.  In other words, |
| 10:20:53 | 17 | that's what's old, that's what's not incremental and new in |
| 10:20:57 | 18 | this particular invention. |
| 10:20:59 | 19 | THE COURT:  So that's -- it's the -- in other |
| 10:21:02 | 20 | words, that could be the issue.  Is the "in other words" |
| 10:21:06 | 21 | that you're referring to in the Goldberg report? |
| 10:21:10 | 22 | MR. DACUS:  The fact that -- when I said, "in |
| 10:21:17 | 23 | other words," Your Honor, I'm trying to understand what |
| 10:21:19 | 24 | you're asking me. |
| 10:21:20 | 25 | THE COURT:  Oh, well, you said:  In other words, |

| | | |
|---|---|---|
| 10:21:22 | 1 | this is what is not -- this is what was in advance of the |
| 10:21:32 | 2 | current patent, and, therefore, is not, you know, novel. |
| 10:21:43 | 3 | And I'm just trying to figure out -- are you |
| 10:21:46 | 4 | really intending that Dr. Goldberg would simply say |
| 10:21:53 | 5 | Caporizzo teaches as follows, and then that would be the |
| 10:21:56 | 6 | end of that? |
| 10:21:57 | 7 | MR. DACUS:  That -- that's correct, Your Honor. |
| 10:21:58 | 8 | And not -- not limited to this paragraph, but as in the |
| 10:22:01 | 9 | general format, that's correct.  And I'll -- I'll put a |
| 10:22:04 | 10 | little finer point on this.  I mean, part of the fight |
| 10:22:07 | 11 | here, and Your Honor probably saw this from the briefing, |
| 10:22:10 | 12 | is not only are these incremental add-on inventions to what |
| 10:22:18 | 13 | already existed, what the Plaintiff's expert says, their |
| 10:22:23 | 14 | technical expert, is that these patents are fundamental to |
| 10:22:29 | 15 | the benefits that we receive.  And they have done, in some |
| 10:22:36 | 16 | instances, absolutely no apportionment for what did exist. |
| 10:22:39 | 17 | So you have the Plaintiff's technical expert on |
| 10:22:42 | 18 | the one hand saying I didn't apportion at all, nor should |
| 10:22:46 | 19 | you apportion at all because all of the benefit is derived |
| 10:22:49 | 20 | from this particular patent. |
| 10:22:51 | 21 | What we want to say and have Dr. Goldberg |
| 10:22:55 | 22 | contribute to that in part is to say:  A large portion of |
| 10:22:58 | 23 | this patent already existed in the prior art.  And |
| 10:23:03 | 24 | Dr. Goldberg would simply recite what did exist without any |
| 10:23:07 | 25 | further conclusion. |

```
10:23:08    1            THE COURT:  Who is going to provide the
10:23:11    2   conclusion?
10:23:11    3            MR. DACUS:  I don't -- I don't think that we
10:23:14    4   necessarily have someone to do -- to do that, nor do I
10:23:19    5   think it's necessary that we provide that conclusion.
10:23:22    6            I will say Dr. -- I mean, Mr. Bakewell will opine,
10:23:26    7   as he has, that the Plaintiff did no apportionment.  And
10:23:37    8   this all goes to that apportionment issue.
10:23:41    9            As the Court probably saw and remembers from the
10:23:43   10   briefing, Mr. Bakewell does not go through and do some sort
10:23:46   11   of detailed apportionment analysis where he says:  Well,
10:23:51   12   this -- this is new and this is old and this is how much I
10:23:54   13   value at.  It's simply a -- the law requires apportionment,
10:23:59   14   and the Plaintiff completely failed to do it.  And this is
10:24:03   15   evidence in support of that.
10:24:16   16            We would not be going outside of Dr. Goldberg's
10:24:19   17   report.
10:24:19   18            THE COURT:  And that means also that the question
10:24:23   19   to Dr. Goldberg wouldn't be something along the lines of:
10:24:30   20   Dr. Goldberg, you analyzed the prior art.  Can you tell us
10:24:36   21   what -- what prior art references reveal some of what is
10:24:49   22   claimed in the current patent?  And then have him say this.
10:24:55   23            MR. DACUS:  That's correct, Your Honor.
10:24:56   24            THE COURT:  You would not?
10:24:57   25            MR. DACUS:  No, we -- I think we would do that.  I
```

| | | |
|---|---|---|
| 10:25:01 | 1 | mean -- |
| 10:25:01 | 2 | THE COURT:  Well, aren't you then supplying |
| 10:25:03 | 3 | through him an opinion that is not in his report? |
| 10:25:06 | 4 | MR. DACUS:  I don't think so, Your Honor. |
| 10:25:08 | 5 | THE COURT:  Does his report say that Caporizzo |
| 10:25:18 | 6 | teaches what it teaches here, and that is also part of what |
| 10:25:21 | 7 | is claimed in the patent? |
| 10:25:24 | 8 | MR. DACUS:  He does, Your Honor.  Absolutely he |
| 10:25:26 | 9 | does. |
| 10:25:26 | 10 | THE COURT:  Where does he do that?  That's what I |
| 10:25:30 | 11 | guess I need to hear. |
| 10:25:31 | 12 | MR. DACUS:  Understood, Your Honor.  I may have to |
| 10:25:33 | 13 | get help. |
| 10:25:35 | 14 | He does do that because, as the Court can likely |
| 10:25:38 | 15 | appreciate -- I mean, this is an invalidity report.  So if |
| 10:25:40 | 16 | you just go to Paragraph 250, for example -- and I'm |
| 10:25:48 | 17 | confident there are numerous examples where he says the |
| 10:25:52 | 18 | particular piece of prior art discloses a limitation that |
| 10:25:56 | 19 | is disclosed in the patents-in-suit. |
| 10:26:11 | 20 | THE COURT:  Well, if what you're saying is that |
| 10:26:13 | 21 | Dr. Goldberg is not going to say anything that's not within |
| 10:26:16 | 22 | the four corners of this report -- |
| 10:26:19 | 23 | MR. DACUS:  That's absolutely true. |
| 10:26:21 | 24 | THE COURT:  -- you're just not going to be arguing |
| 10:26:24 | 25 | that that invalidates the patent? |

10:26:25  1        MR. DACUS:  That is likewise absolutely true, Your

10:26:28  2   Honor, and we're happy to make that clear.

10:26:30  3        THE COURT:  Okay.  Then let me hear back from

10:26:34  4   Plaintiff.

10:26:35  5        MR. SHIMOTA:  Your Honor, I think you've hit the

10:26:43  6   nail on the head here.  I mean, this is -- Mr. Dacus was

10:26:46  7   correct, this is an invalidity report.  That's what it's

10:26:49  8   titled.  And so, obviously, they do -- Dr. Goldberg

10:26:53  9   purported to do what is in an invalidity report, which is

10:26:58 10   go through it element-by-element, but they're not now

10:27:01 11   putting on an invalidity case.

10:27:04 12        And so, yes, they are going to ask him to reach

10:27:06 13   the ultimate conclusion, which is different.  The

10:27:08 14   incremental advance over what was old and what's new is

10:27:12 15   completely different from what is obvious.  And so if he

10:27:15 16   was going to offer an opinion about what was old and how

10:27:19 17   valuable or not valuable the advance over the art was, he

10:27:23 18   should have told us that.  That should have been --

10:27:25 19   Dr. Goldberg should have disclosed that in his report, and

10:27:27 20   I would have deposed him on it.

10:27:29 21        And if they were going to rely upon that,

10:27:31 22   Mr. Bakewell should have presented that in his report.  He

10:27:33 23   did not.  We, of course, disagree that Mr. Dell didn't

10:27:39 24   apportion, but Mr. Bakewell had a full and fair opportunity

10:27:42 25   to respond and rely upon Dr. Goldberg.  They didn't do it.

```
10:27:46   1   We didn't have a chance to look at this.
10:27:48   2          I want to put up on the ELMO something that we
10:27:51   3   prepared in advance.  Let's see here.
10:27:59   4          THE COURT:  Just rotate it one more time.  There
10:28:02   5   you go.
10:28:02   6          MR. SHIMOTA:  There we go.  Yeah.  So -- any
10:28:05   7   better there?
10:28:06   8          So these are the introductions of his first expert
10:28:09   9   report and his second expert report in which Dr. Goldberg
10:28:13  10   very plainly states that his report is solely related to
10:28:18  11   the invalidity of the claims.
10:28:21  12          And just to underscore the point, I took his
10:28:23  13   deposition, and I asked him:  What is your report about?
10:28:28  14          And he told me:  Let me be clear, Mr. Shimota, my
10:28:32  15   report is about invalidity.
10:28:34  16          If he'd told me at the time it was about damages,
10:28:37  17   I would have asked him questions about that.  We didn't.
10:28:40  18   We learned this week that suddenly Dr. Goldberg is a
10:28:43  19   damages expert.  That's unfair surprise.
10:28:45  20          And let me just add one more point, Your Honor.
10:28:50  21   Today is the first day where they started to identify
10:28:53  22   paragraphs that Dr. Goldberg would rely upon.  They
10:28:55  23   identified Paragraph 270 of the report, which pertains to
10:29:00  24   Claims 1 and 2 -- or Claim 1 of the '008 patent.  Guess
10:29:04  25   what, you granted summary judgment on that.  They lost on
```

10:29:07  1   invalidity for that patent.

10:29:08  2       They're going to try to smuggle in their failed

10:29:13  3   invalidity argument under the auspices of damages when you

10:29:16  4   granted summary judgment on that.  It can't possibly be.

10:29:19  5   You need to stop this.

10:29:20  6       THE COURT:  Well, as long as Dr. Goldberg's

10:29:24  7   testimony is held to the four corners of his report, how

10:29:30  8   are you worse off that they are now saying they're not

10:29:35  9   going to be seeking a finding of invalidity?

10:29:39  10      MR. SHIMOTA:  Well, it's unfair surprise.  The

10:29:43  11  whole point of Rule 26 is that you get disclosure of the

10:29:47  12  opinions that are going to be offered, and you're afforded

10:29:50  13  a full and fair opportunity to cross-examine an expert on

10:29:53  14  that.

10:29:53  15      If I -- if I -- as I said, if I had known -- if

10:29:57  16  his report had stated that I'm going to offer damages

10:30:00  17  opinions, we would have asked him questions about that.

10:30:02  18  The trial is not the time to develop cross-examination.

10:30:06  19  The federal rules are clear --

10:30:08  20      THE COURT:  These are not damages opinions that

10:30:11  21  he's offering.  These are opinions that may in some way

10:30:18  22  relate to the damages opinion that someone else is going to

10:30:22  23  offer.

10:30:23  24      But how does the use that the Defendant wants to

10:30:28  25  put to the opinion change it?

10:30:31   1          MR. SHIMOTA:  Well, what I would say first is

10:30:33   2   invalidity is not part of the case.  So now the evidence is

10:30:37   3   both irrelevant and highly confusing to the jury.  It

10:30:41   4   just -- it just comes out of nowhere.  So --

10:30:44   5          THE COURT:  How is it confusing?  They don't know

10:30:46   6   that there ever was an invalidity claim, and they're going

10:30:50   7   to hear that there is not one.  So I don't see how that

10:30:58   8   would confuse the jury.

10:31:00   9          MR. SHIMOTA:  Well, because there's no -- there's

10:31:02   10  no damages expert in this case who's going to testify.

10:31:05   11  And, indeed, Mr. Dacus conceded that, that no one is going

10:31:08   12  to testify, is going to make the critical linkage between

10:31:11   13  the prior art that -- that Mr. Goldberg apparently is going

10:31:14   14  to read -- Doctor, pardon me -- Dr. Goldberg apparently is

10:31:18   15  going to read in the record and damages.  So he apparently

10:31:22   16  is going to come there, take a patent, read passages from a

10:31:27   17  patent, and then sit down.  That will be confusing to a

10:31:29   18  jury.

10:31:30   19         And to the extent that he goes further than that,

10:31:32   20  I, again, say that we should have had the opportunity to

10:31:34   21  cross-examine him in a deposition.  I didn't --

10:31:37   22         THE COURT:  Does Mr. Bakewell offer the opinion

10:31:39   23  that this -- the patents make a limited contribution to the

10:31:48   24  prior art?

10:31:48   25         MR. SHIMOTA:  No, he does not.  All he does -- he

10:31:52  1   does not offer -- he -- in fact, Mr. Bakewell offers no

10:31:55  2   affirmative opinion on damages.  He doesn't have an opinion

10:31:57  3   as to what they are.  All he does is he -- is criticize

10:32:01  4   Mr. Dell.  He says Mr. Dell didn't apportion enough.  He

10:32:03  5   did a bad job.

10:32:05  6         He does not argue that, that there was some --

10:32:09  7   that the patents aren't as valuable as we say, and they're

10:32:11  8   only a small advance over the prior art.  That's nowhere in

10:32:15  9   the record.  That's not going to be presented to the jury

10:32:17 10   at this trial.

10:32:17 11         And so, again, I submit having Mr. -- Dr. Goldberg

10:32:21 12   show up to apparently -- I mean, we don't even know what

10:32:24 13   paragraphs he -- to this day, we've asked numerous times.

10:32:28 14   We have a few snippet of paragraphs.  We don't know what

10:32:31 15   he's going to do, but apparently he's going to sit on the

10:32:32 16   stand and take patents and read from them.  That has

10:32:36 17   nothing to do with any of the issues in the case, and

10:32:36 18   it's --

10:32:36 19         THE COURT:  You don't have that --

10:32:40 20         MR. SHIMOTA:  -- highly prejudicial.

10:32:41 21         THE COURT:  -- you don't have that information

10:32:44 22   about any expert, do you, about what paragraphs of your

10:32:47 23   report are you going to be relying upon in your testimony?

10:32:50 24         MR. SHIMOTA:  Well, but at least we have fair

10:32:52 25   notice for the other experts as to what might be in play.

```
10:32:54   1            I don't know what Dr. Goldberg -- what is
10:32:56   2   potentially in play for him.  We haven't -- I've learned
10:32:58   3   today that it might be Paragraphs 247 and Paragraph 270.
10:33:02   4   And as I identified for you, Paragraph 270 is one upon
10:33:06   5   which you granted summary judgment of no invalidity.  So on
10:33:09   6   that one, it would be prejudicial for Dr. Goldberg to show
10:33:12   7   up and say:  Well, that there's -- that there's some
10:33:15   8   difference between our claims -- or that the prior art
10:33:17   9   discloses everything.  So there's no real advance there
10:33:20  10   because he was wrong.  You ruled against him on that.
10:33:24  11            And so they shouldn't be able to do that.  And so
10:33:25  12   we don't -- we don't know.  I mean, I agree with you, Your
10:33:28  13   Honor, you never know precisely what a witness is going to
10:33:31  14   testify until they take the stand in the trial, but at
10:33:33  15   least you need to have some notice.  And we don't have
10:33:36  16   that.  We simply don't.
10:33:38  17            THE COURT:  Well, I guess -- frankly, I don't know
10:33:47  18   everything that he's going to be saying or what portions of
10:33:53  19   his report they can rely upon for the argument that they're
10:33:56  20   now making, but my primary concern about experts is that
10:34:02  21   they have fully disclosed their opinions and that they'll
10:34:06  22   be held to those opinions at trial.
10:34:09  23            And even though they no longer -- the Defendant no
10:34:16  24   longer has an invalidity defense, if there are opinions in
10:34:22  25   Dr. Goldberg's report that are relevant to the remaining
```

10:34:26  1  issues, I don't know a basis to exclude them.

10:34:33  2         MR. SHIMOTA:  Well, under -- as I said, under

10:34:35  3  Rule -- in my view, Your Honor, respectfully, I think

10:34:40  4  Rule 37 provides that there needs to be disclosure of

10:34:42  5  opinions in advance.  And these opinions -- 270, it's

10:34:45  6  talking about a -- it reads:  In my opinion, a POSITA would

10:34:47  7  be highly motivated to combine Coyne with Caporizzo.

10:34:52  8  That's the language of obviousness.  There's no language in

10:34:55  9  this report where there's a discussion of Caporizzo

10:34:58  10 discloses X, and the incremental advance over Caporizzo is

10:35:02  11 Y, and Y isn't particularly valuable.

10:35:04  12        If there was that, we would have been able to --

10:35:07  13 to ask questions about that and say, I think you're wrong

10:35:10  14 Dr. Goldberg.  Have you considered this and this?  That's

10:35:13  15 not there.  That's prejudicial.  And so under Rule 37, I

10:35:16  16 think you do have the authority to prevent Dr. Goldberg

10:35:18  17 from offering this testimony.  I mean, his opinions are --

10:35:22  18 this is an invalidity report.  He's -- he's speaking in the

10:35:25  19 language of obviousness.

10:35:26  20        The three patents that are asserted in this case

10:35:28  21 remaining, the only arguments that they -- that

10:35:31  22 Dr. Goldberg advanced were claims of obviousness.  He

10:35:34  23 wasn't arguing that the prior art completely anticipated.

10:35:37  24        So his opinions are tied specifically on those

10:35:41  25 elements to -- that's the language he's using.  That's what

10:35:45  1  his opinions are.  And that -- that is irrelevant, and it

10:35:48  2  would be prejudicial.  It has nothing to do with damages at

10:35:50  3  all.  It's different.

10:35:54  4      There's similarities in between Georgia-Pacific 9

10:35:56  5  and obviousness, but they're separate legal inquiries, and

10:36:00  6  that was not addressed by Dr. Goldberg in his report, and

10:36:03  7  that's prejudicial.

10:36:03  8      THE COURT:  All right.

10:36:04  9      MR. SHIMOTA:  Thank you, Your Honor.

10:36:05  10      THE COURT:  Thank you, Mr. Shimota.

10:36:07  11      Mr. Dacus, one more thing.  You have shown me the

10:36:10  12  paragraphs where Dr. Goldberg discusses the prior art.

10:36:18  13  What I really haven't seen is an opinion that Dr. Goldberg

10:36:25  14  offers that would be relevant for the reason you've set

10:36:29  15  out, that he shows that it's only a minor advance over the

10:36:34  16  prior art.

10:36:37  17      Can you point out an opinion that you think would

10:36:41  18  still be relevant?

10:36:42  19      MR. DACUS:  I may need to confer with my

10:36:47  20  co-counsel, Your Honor, but I don't think there's opinions

10:36:49  21  in there where he necessarily says that it is -- he doesn't

10:36:53  22  say that it is a minor improvement or any improvement over

10:36:57  23  the -- over the prior art, but --

10:37:00  24      THE COURT:  Well -- and that's fine.  I didn't

10:37:02  25  mean to cabin you to that opinion, but any opinion that you

| | | |
|---|---|---|
| 10:37:07 | 1 | contend is still relevant.  The paragraphs you pointed to |
| 10:37:13 | 2 | originally are just opinions where he's quoting the prior |
| 10:37:20 | 3 | art. |
| 10:37:20 | 4 | Where does he supply an opinion that relies upon |
| 10:37:24 | 5 | that in a relevant fashion?  And if you need to consult |
| 10:37:30 | 6 | with other counsel, if you need another short break, I'm |
| 10:37:34 | 7 | happy to give you that.  But I -- I am concerned about |
| 10:37:39 | 8 | saying that the witness can still go forward repurposed if |
| 10:37:47 | 9 | there's no relevant opinion disclosed in his report. |
| 10:37:51 | 10 | MR. DACUS:  And I think the -- the -- I'm not sure |
| 10:37:56 | 11 | if the Court is focusing in on the word "opinion," but |
| 10:38:01 | 12 | there are relevant facts in the report, Your Honor. |
| 10:38:03 | 13 | THE COURT:  Well, the facts are only relevant if |
| 10:38:06 | 14 | someone can show their relevance.  And what I'm afraid that |
| 10:38:11 | 15 | you want to do is have a lawyer be the one to show the |
| 10:38:16 | 16 | relevance of those facts by providing the opinion that |
| 10:38:21 | 17 | those facts show that it's only a minor advance.  And I |
| 10:38:26 | 18 | think that is inherently an opinion that needs to come from |
| 10:38:30 | 19 | an expert. |
| 10:38:30 | 20 | MR. DACUS:  And let me be clear.  I don't think we |
| 10:38:35 | 21 | intend on necessarily saying that it's a minor advance. |
| 10:38:38 | 22 | Our purpose in putting this evidence forward is what |
| 10:38:43 | 23 | Your Honor saw in the briefing, and that is to say for |
| 10:38:46 | 24 | certain patents, particularly ones that are now at issue, |
| 10:38:50 | 25 | Dr. -- Mr. Dell did no apportionment at all.  And the |

10:38:56   1  purpose of putting forth Dr. Goldberg is to say here

10:39:01   2  factually is what was in the prior art.

10:39:06   3          When the Plaintiffs stand up and say, as they

10:39:08   4  inevitably will, that this patent is fundamental to the

10:39:13   5  benefit that Charter receives for PMA, for example, for

10:39:17   6  that feature, and we did no apportionment at all, we

10:39:20   7  attributed 100 percent to this patent, Mr. Bakewell has

10:39:25   8  opined that apportionment was required.

10:39:29   9          And this is factual testimony in an expert

10:39:33  10  report -- facts from an expert report that provide evidence

10:39:37  11  of the fact that there -- there were elements or

10:39:40  12  limitations of these patents that existed in the prior art.

10:39:54  13          THE COURT:  And I guess what I am missing from

10:39:56  14  that is who is going to make the connection that this prior

10:40:01  15  art is talking about something that's within the scope of

10:40:05  16  the asserted claims?

10:40:06  17          MR. DACUS:  Oh, I think Mr. -- Dr. Goldberg does

10:40:08  18  that for sure.

10:40:09  19          THE COURT:  Well, and that's what I'm looking for

10:40:13  20  is where there is an opinion like that that is relevant.

10:40:18  21          MR. DACUS:  Understood, Your Honor.

10:41:12  22          So, Your Honor, if you look at Paragraph 271 --

10:41:15  23  and I'll say just as an overarching comment, as the Court

10:41:22  24  might expect, I mean, this does have invalidity opinions in

10:41:26  25  it, so you can imagine by necessity the expert has in here

10:41:31  1  recitations of the prior art in tying those to the

10:41:35  2  patents-in-suit, just as an overarching matter.

10:41:37  3          But specifically with respect to 271, Claim

10:41:42  4  Limitation 1[c], Dr. Goldberg says is in the prior art

10:41:47  5  reference Coyne.  And, of course, we're talking about the

10:42:01  6  '008 patent here, but it -- we have the same thing for all

10:42:04  7  of the patents.  We have Dr. Goldberg saying:  The claim

10:42:09  8  limitations at issue in this suit were in the prior art.

10:42:16  9          THE COURT:  All right.  And the '008 is still at

10:42:21  10  issue.  It's still asserted, right?

10:42:23  11          MR. DACUS:  Yes, Your Honor.

10:42:24  12          THE COURT:  So you're saying that in Paragraph

10:42:28  13  271, there would be a basis for Dr. Goldberg to testify

10:42:32  14  that part of what is claimed in the '008 patent is already

10:42:45  15  taught in this pre-existing Coyne reference?

10:42:48  16          MR. DACUS:  That's correct, Your Honor.

10:43:00  17          THE COURT:  All right.  Let me hear from

10:43:04  18  Mr. Shimota as to why that would not be a permissible use

10:43:07  19  of Paragraph 271.

10:43:08  20          MR. SHIMOTA:  Well, Your Honor, specifically with

10:43:13  21  respect to Paragraph 271, I want to reiterate for you, we

10:43:17  22  moved for summary judgment on Claim 1 of the '008 patent

10:43:21  23  that they had not shown obviousness.  You granted our

10:43:25  24  motion.  You stated that -- that they -- Dr. Goldberg was

10:43:29  25  wrong.  So now they're going to -- they're trying --

10:43:32  1  they're trying to have Dr. Goldberg testify about a theory

10:43:34  2  that they wouldn't have been able to present to the jury on

10:43:37  3  obviousness.  He's wrong.

10:43:38  4      Moreover, you asked Dr. -- Mr. Dacus the question:

10:43:44  5  Where in the report is there any discussion of an -- small

10:43:49  6  advance, incremental advance, et cetera?  There is none.

10:43:52  7      The language here is precisely in the context of

10:43:56  8  obviousness.  And so, again, this isn't a fair use of this.

10:44:00  9  If they had said -- if there was a sentence in here that

10:44:03  10  said, moreover, this is an incremental advance and it's not

10:44:06  11  particularly valuable -- you know, moreover, if I'm wrong

10:44:08  12  on obviousness, the differences between the claims and the

10:44:11  13  prior art were so small that it's not valuable, I could

10:44:15  14  asked him questions about that, but he didn't answer those

10:44:19  15  questions.

10:44:19  16      And you see, it's -- the bigger problem is that

10:44:21  17  this is -- right now they're literally on the fly finding

10:44:24  18  paragraphs that he's going to be testifying to.  And it

10:44:26  19  shows, right?  They're pointing you to paragraphs that you

10:44:31  20  granted summary judgment on.

10:44:32  21      THE COURT:  You know --

10:44:33  22      MR. SHIMOTA:  Mr. Bakewell -- I'm sorry.  I didn't

10:44:36  23  mean to cut you off, Your Honor.

10:44:36  24      THE COURT:  The summary judgment on obviousness

10:44:39  25  related to entire claims, not just limitations like this

10:44:40   1   paragraph.

10:44:41   2           MR. SHIMOTA:  Uh-huh.

10:44:45   3           THE COURT:  So --

10:44:47   4           MR. SHIMOTA:  Yeah, but -- I'm sorry.  I cut you

10:44:47   5   off.  Were you finished?

10:44:47   6           THE COURT:  No.  Go ahead.

10:44:48   7           MR. SHIMOTA:  That's the point.  If they just go

10:44:50   8   to Paragraph 271 in isolation and say this isn't there,

10:44:53   9   you're correct.  They're then going to ask the question of,

10:44:57   10  like, okay, well, how much of a difference is there?  And

10:45:01   11  if they don't ask that question, you're right.  Is someone

10:45:06   12  going to argue about this, because if someone is not even

10:45:07   13  going to argue this evidence, then how on earth is it

10:45:09   14  relevant?

10:45:09   15          And you're correct, if an attorney argues that the

10:45:12   16  advance of the art over the -- or the advance of the

10:45:15   17  invention over the art is, quote, unquote, incremental or

10:45:18   18  not valuable, that's for an expert.  That was for

10:45:21   19  Mr. Bakewell to do, and he didn't do it.

10:45:24   20          I want to be clear, Mr. Bakewell doesn't offer an

10:45:26   21  opinion that the advance over this art or Caporizzo or

10:45:32   22  Coyne or whatever was so small that it wasn't valuable.

10:45:35   23  All he does is he says:  Mr. Dell is wrong.  Mr. Dell did a

10:45:39   24  bad job.

10:45:40   25          It's fine for him to say that, but they can't

10:45:43  1  bring in this new theory the last week before trial.  It's

10:45:45  2  just not fair.  It's trial by surprise.  I mean, there's

10:45:48  3  not even time to do -- I mean, to depose Dr. Goldberg on

10:45:51  4  his repurposed opinion that isn't even in this report.  So

10:45:55  5  that's why you simply shouldn't do it.

10:45:58  6       And I -- again, for them to be able to try and put

10:46:00  7  on the theory that you granted summary judgment on for

10:46:03  8  obviousness under the guise of damages or some

10:46:08  9  Georgia-Pacific factor is not -- is not fair.  I mean, I

10:46:12  10  would just, again, submit to Your Honor they informed

10:46:15  11  Dr. Goldberg on the law.  There's nothing about the

10:46:18  12  Georgia-Pacific factors in his report, nothing, zero.  He

10:46:23  13  knew nothing about it.  There's no discussion of it.

10:46:26  14       They decided not to pursue an invalidity defense

10:46:29  15  in this case, and then they made the strategic choice to

10:46:32  16  try to repurpose it -- your language is right -- as a

10:46:32  17  damages opinion, it's too late.  It's unfair.  It shouldn't

10:46:35  18  be allowed.

10:46:36  19       THE COURT:  All right.

10:46:38  20       MR. SHIMOTA:  Thank you, Your Honor.

10:46:38  21       THE COURT:  Thank you, Mr. Shimota.

10:46:39  22       I am going to take a little bit of time and review

10:46:48  23  Dr. Goldberg's report further, and I'll issue something in

10:46:52  24  writing about whether or not the Court believes that the

10:47:00  25  proposed use of Dr. Goldberg is a fair use in light of the

10:47:05  1  disclosure of his opinions.

10:47:08  2        And if you want to say any last words on that,

10:47:11  3  Mr. Dacus, I'll be happy to give you that opportunity.

10:47:14  4        MR. DACUS:  Just one thing, Your Honor.  I mean,

10:47:17  5  we've got a lot of discussion about opinions and what

10:47:19  6  lawyers can say.  Lawyers can, of course, apply the facts

10:47:24  7  through the instructions that the Court gives.  The Court

10:47:26  8  is no doubt in this case going to give an instruction that

10:47:30  9  apportionment is required.  I'm confident -- I'm confident

10:47:33 10  of very little in this case, but I'm confident of that.

10:47:36 11        And this goes directly to that issue upon which --

10:47:42 12  as you know, Mr. Bakewell has said there is no

10:47:44 13  apportionment by the Plaintiff.  So the argument here,

10:47:48 14  applying the facts to the law, say these things existed in

10:47:52 15  the prior art previously.  Mr. Dell, the Plaintiff's

10:47:55 16  expert, did no apportionment with respect to them.  And the

10:47:57 17  Court's instructions say that he should have.  I don't

10:48:00 18  think it's any more complicated than that.

10:48:03 19        THE COURT:  And another issue that I'm going to

10:48:07 20  look at this report about is whether there was fair notice

10:48:12 21  that Dr. Goldberg would be testifying about anything other

10:48:17 22  than invalidity.

10:48:19 23        MR. DACUS:  He's testifying -- I mean, his report

10:48:26 24  is on matters that relate to what was in the prior art,

10:48:36 25  what the state of the art was.  As Mr. Shimota said, he

| | | |
|---|---|---|
| 10:48:41 | 1 | read a paragraph that said what the state of the art is. |
| 10:48:45 | 2 | In my experience, Your Honor, it is not |
| 10:48:46 | 3 | uncommon -- in fact, it occurs in almost every case -- that |
| 10:48:49 | 4 | you take what the invalidity expert said and you apply that |
| 10:48:53 | 5 | with respect to the apportionment issue.  And I don't think |
| 10:48:57 | 6 | it's any different here. |
| 10:48:59 | 7 | THE COURT:  Well, I guess in those cases, there is |
| 10:49:04 | 8 | an invalidity defense, and the expert is testifying about |
| 10:49:06 | 9 | that defense. |
| 10:49:07 | 10 | And I agree that that testimony can be relied upon |
| 10:49:11 | 11 | in different aspects of the case.  But what I'm |
| 10:49:16 | 12 | understanding is there will not be an invalidity defense in |
| 10:49:20 | 13 | this case. |
| 10:49:21 | 14 | MR. DACUS:  That's -- that's absolutely true, Your |
| 10:49:23 | 15 | Honor. |
| 10:49:23 | 16 | THE COURT:  All right.  Well, I -- I think I |
| 10:49:26 | 17 | understand the issue, and I'll try and -- and come to a |
| 10:49:31 | 18 | definitive -- |
| 10:49:33 | 19 | MR. DACUS:  Thank you. |
| 10:49:34 | 20 | THE COURT:  -- resolution of it. |
| 10:49:41 | 21 | MR. DACUS:  Thank you, Your Honor. |
| 10:49:42 | 22 | THE COURT:  Thank you. |
| 10:49:43 | 23 | As I understand it, that is the only issue that |
| 10:49:50 | 24 | remained from the notice that the Plaintiff filed, I guess, |
| 10:49:55 | 25 | the night before last. |

| | | |
|---|---|---|
| 10:49:57 | 1 | Is that right, Mr. Shimota? |
| 10:49:58 | 2 | MR. SHIMOTA:  That is correct, Your Honor.  Thank |
| 10:50:00 | 3 | you. |
| 10:50:00 | 4 | THE COURT:  Tell me about the agreements then that |
| 10:50:07 | 5 | have resolved the exhibit issues that were left unresolved |
| 10:50:11 | 6 | after the last pretrial.  And those are specifically, I |
| 10:50:20 | 7 | guess -- I'm looking at the email with the bucket list, and |
| 10:50:26 | 8 | Bucket 3 and then 6, 7, and 8 were -- |
| 10:50:33 | 9 | MR. SHIMOTA:  My understanding is Buckets 3, 7, |
| 10:50:36 | 10 | and 8, that we've agreed that those will not be admitted, |
| 10:50:39 | 11 | that's correct. |
| 10:50:40 | 12 | THE COURT:  All right.  Since they're Defendant's |
| 10:50:42 | 13 | exhibits, I guess I need to hear that from them. |
| 10:50:45 | 14 | MR. SHIMOTA:  Yes, sorry. |
| 10:50:47 | 15 | THE COURT:  All right.  Thank you. |
| 10:50:47 | 16 | MR. DACUS:  That's the first thing Mr. Shimota has |
| 10:50:49 | 17 | said today that's accurate, Your Honor. |
| 10:50:57 | 18 | THE COURT:  I would say -- |
| 10:50:57 | 19 | MR. SHIMOTA:  Hoping once a day, twice a day, I |
| 10:50:58 | 20 | believe so.  There you go. |
| 10:50:58 | 21 | THE COURT:  -- it's faint praise perhaps? |
| 10:51:03 | 22 | So do both sides then have a list of their |
| 10:51:11 | 23 | pre-admitted exhibits that we can get filed today that has |
| 10:51:17 | 24 | been agreed to by the other side? |
| 10:51:18 | 25 | MR. SHIMOTA:  Yeah, we'll get that to you this |

```
10:51:21    1   afternoon.

10:51:22    2          THE COURT:  All right.

10:51:22    3          MR. DACUS:  Yes, Your Honor.

10:51:24    4          THE COURT:  All right.  What about the email that

10:51:25    5   came in yesterday evening about deposition designations?

10:51:32    6   Have those been resolved, too?

10:51:34    7          MR. SHIMOTA:  Yes, Your Honor, that has been

10:51:35    8   resolved.

10:51:36    9          THE COURT:  All right.  And so those depositions

10:51:41   10   may be used on Monday?  Is that the understanding?

10:51:46   11          MR. SHIMOTA:  The designations.  The issue was

10:51:47   12   that we had an issue over the counter-designations for one

10:51:51   13   witness, Mr. Boglioli.  We're now no longer going to play

10:51:54   14   deposition testimony from Mr. Boglioli, so the

10:51:58   15   counter-designation issue is moot.

10:51:59   16          THE COURT:  All right.  So the -- perhaps the only

10:52:06   17   issue remaining is the trial time.

10:52:07   18          MR. SHIMOTA:  That's correct, Your Honor, I

10:52:10   19   believe.

10:52:10   20          THE COURT:  The case has been narrowed somewhat.

10:52:13   21   Certainly it went from six patents to three patents, and

10:52:18   22   some of the additional experts have been resolved.

10:52:22   23          What is the Plaintiff's position now on the trial

10:52:29   24   time that the Plaintiff needs?

10:52:31   25          MR. SHIMOTA:  Your Honor, still -- while the case
```

10:52:34   1   has been narrowed, there are -- remain three patents, and I

10:52:34   2   believe the issues are fairly complex.  So I believe that

10:52:38   3   an enlargement of two hours would still be our preference.

10:52:41   4   Obviously, we'll work with whatever time we are given, but

10:52:43   5   that remains our preference.

10:52:45   6          THE COURT:  So that would be 14 hours is what

10:52:47   7   you're telling me?

10:52:47   8          MR. SHIMOTA:  That's correct.  Yes, Your Honor.

10:52:49   9          THE COURT:  All right.  Thank you, Mr. Shimota.

10:52:50   10          MR. SHIMOTA:  Thank you, Your Honor.

10:52:51   11          THE COURT:  Mr. Dacus, what about your side?

10:52:53   12          MR. DACUS:  We think that's likely accurate, Your

10:52:56   13   Honor, 14 hours.  We don't request any more than 14 hours.

10:53:00   14          THE COURT:  All right.  Then 14 hours will be the

10:53:03   15   order as far as time for presentation of the evidence.

10:53:08   16          And I will dig into Dr. Goldberg's report and try

10:53:17   17   to get something out promptly on that.

10:53:21   18          I understand that the juror notebooks have been

10:53:24   19   delivered to chambers.  Are there any issues regarding

10:53:29   20   that?

10:53:30   21          MR. LITTMANN:  Sorry, I stood up for a different

10:53:33   22   reason, Your Honor, but I don't believe there are any

10:53:35   23   issues on that.

10:53:36   24          MR. DACUS:  There are no issues, Your Honor.

10:53:37   25          THE COURT:  All right.  Then for what reason are

10:53:41  1   you standing up?

10:53:43  2        MR. LITTMANN:  Just -- just to -- I believe we

10:53:45  3   have agreement with Defendant here that the testimony of --

10:53:50  4   that there will be no testimony from either Mr. Taylor or

10:53:52  5   Mr. Cary.  Those were two other issues that were there that

10:53:57  6   were outstanding, and so I just -- as we were talking about

10:53:58  7   the hours and everything else, I wanted to make sure the

10:54:01  8   Court had full information on that, as well.

10:54:03  9        THE COURT:  And I think that's in their written

10:54:05 10   response to your notice --

10:54:06 11        MR. LITTMANN:  Correct.

10:54:06 12        THE COURT:  -- right?

10:54:08 13        MR. LITTMANN:  Thank you.

10:54:08 14        MR. DACUS:  I guess the only asterisk or caveat on

10:54:12 15   that, Your Honor, is we have objected to some of the

10:54:14 16   rulings from Your Honor.  So if the Court were to --

10:54:18 17        THE COURT:  And I understand that.

10:54:19 18        MR. DACUS:  -- do something with respect to

10:54:21 19   licensing, for example, we might call those folks, but

10:54:24 20   counsel is correct, as of now, we are not calling those

10:54:27 21   folks.

10:54:27 22        THE COURT:  I do understand that, that certainly

10:54:31 23   those issues are ultimately pending before Judge Gilstrap.

10:54:36 24        All right.  Well, I don't think there's anything

10:54:42 25   else.  I'll let y'all get back to preparing for Monday.

10:54:45  1                MR. DACUS:  Thank you, Your Honor.

10:54:47  2                MR. REISNER:  Thank you, Your Honor.

10:54:48  3                MR. SHIMOTA:  Thank you, Your Honor.

10:54:50  4                COURT SECURITY OFFICER:  All rise.

10:54:53  5                (Hearing concluded 10:54 a.m.)

          6

          7

          8

          9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                         CERTIFICATION

2

3         I HEREBY CERTIFY that the foregoing is a true and

4   correct transcript from the stenographic notes of the

5   proceedings in the above-entitled matter to the best of my

6   ability.

7

8

9    /S/ Shelly Holmes                    12/8/2023
     SHELLY HOLMES, CSR, TCRR            Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25