IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 2:22-cv-00125-JRG |
| CHARTER COMMUNICATIONS, INC. | ) ) ) |
| Defendant. | ) ) ) ) |

**DECLARATION OF AARON MACKEY IN SUPPORT OF ELECTRONIC FRONTIER FOUNDATION'S MOTION TO INTERVENE AND TO UNSEAL COURT RECORDS**

I, Aaron Mackey, declare,

1. I am Free Speech and Transparency Litigation Director at the Electronic Frontier Foundation ("EFF"). I am admitted to practice in California, Washington DC, United States District Court for the Northern District of California, United States District Court for the District of Columbia, the Ninth Circuit Court of Appeals, the District of Columbia Court of Appeals, and the Federal Circuit Court of Appeals.

2. I submit this declaration in support of EFF's Motion To Intervene and To Unseal Court Records.

3. Unless otherwise noted, I have personal knowledge of all the matters stated in this declaration and if called upon to do so I am competent to testify to all matters set forth herein.

**The Electronic Frontier Foundation**

4. EFF is a nonprofit legal services organization that advocates for the rights of digital consumers and innovators. EFF is a donor-funded 501(c)(3) nonprofit organization with more than 30,000 due paying members.

1

5. EFF operates as a team of lawyers, activists, and technologists. EFF's lawyers are primarily called to bar in California and are admitted to various courts, including the United States Supreme Court. EFF is guided by a Board of Directors comprised of respected academics, lawyers, and technologists from across the United States. EFF also maintains an Advisory Board which includes representatives from around the world. EFF also regularly benefits from the expertise of fellows and student interns.

6. EFF represents the interests of technology users in litigation and in broader policy debates surrounding the application of law in the digital age. EFF's activities include impact litigation, public advocacy and education, and the design of new technologies to help individuals protect their privacy.

### EFF's History of Public Outreach on Topics in Patent Law and Policy Reform

7. A significant part of EFF's work involves public outreach on developments in patent law, policy, and potential reform in the field.

8. This work includes, but is not limited to, participating in industry panel discussions, maintaining an active blog which sheds light on issues implicating law and technology, and submitting op-eds to various publications.

9. Blog posts that EFF staff members have written on patent related issues in approximately the past year include:

- a. Joe Mullin, *How to Fight Bad Patents: 2023 Year in Review*, EFF Deeplinks (Dec. 31, 2023), https://www.eff.org/deeplinks/2023/12/how-fight-bad-patents-2023-year-review;

- b. Joe Mullin, *Congress Shouldn't Limit The Public's Right To Fight Bad Patents*, EFF Deeplinks (Nov. 6, 2023), https://www.eff.org/deeplinks/2023/11/publics-right-fight-bad-patents-must-be-protected;

- c. Joe Mullin, *Is Landmark Technology's Two-Decade Patent Assault On E-Commerce Finally Over?*, EFF Deeplinks (Oct. 13, 2023),

      https://www.eff.org/deeplinks/2023/10/landmark-technologys-two-decade-patent-assault-e-commerce-finally-over;

  d. Joe Mullin, *This Bill Would Revive The Worst Patents On Software—And Human Genes*, EFF Deeplinks (Sept. 21, 2023), https://www.eff.org/deeplinks/2023/09/bill-would-boost-worst-patents-software-and-human-genes;

  e. Joe Mullin, *The U.S. Patent Office Should Drop Proposed Rules That Favor Patent Trolls*, EFF Deeplinks (July 6, 2023), https://www.eff.org/deeplinks/2023/06/us-patent-office-should-drop-proposed-rules-favor-patent-trolls;

  f. Joe Mullin, *Two Ways The U.S. Patent Office Could Do Better At Examination*, EFF Deeplinks (Feb. 17, 2023), https://www.eff.org/deeplinks/2023/02/two-ways-us-patent-office-could-do-better-examination.

10. A core component of EFF's work seeks to expand public access to patent litigation dockets. On three previous occasions, EFF successfully moved to intervene in district court patent litigation cases to obtain access to improperly sealed material:

  a. *Uniloc 2017 LLC v. Apple Inc.*, No. 3:18-cv-00360 WHA, 2019 WL 2009318 (N.D. Cal. May 7, 2019), *aff'd in part, vacated in part*, 964 F.3d 1351 (Fed. Cir. 2020); *Uniloc 2017 LLC v. Apple Inc.*, No. 3:18-cv-00360 WHA, 508 F. Supp. 3d 550 (N.D. Cal. 2020), *vacated & remanded*, 25 F.4th 1018 (Fed. Cir. 2022).

  b. *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3870069 (E.D. Tex. Apr. 18, 2016).

  c. *Traffic Info., LLC v. Farmers Grp., Inc.*, No. 2:14-cv-713-RWS-RSP, 2016 WL 3460763 (E.D. Tex. Apr. 7, 2016).

11. EFF also files amicus briefs at the Federal Circuit concerning substantive developments in patent law. For example, EFF recently filed amicus briefs in the following cases:

   a. *SAS Institute, Inc. v. World Programming Ltd.*, Case No. 2021-1542 (Fed. Cir. 2023).

   b. *Dragon Intellectual Property, LLC v. Dish Network LLC*, Case Nos. 2019-1283, 2019-1284 (Fed. Cir. 2020); and

12. EFF also files comments with the U.S. Patent & Trademark Office (USPTO) regarding patent matters. For example, EFF recently submitted comments in the following matters:

   a. Comments regarding Patent and Trademark Office Study on Future Strategies in Anticounterfeiting and Antipiracy, Docket No. 2023-10770 (Oct. 31, 2023), https://www.regulations.gov/comment/PTO-C-2023-0006-0062.

   b. Comments regarding USPTO Initiatives to Ensure the Robustness and Reliability of Patent Rights, Docket No. PTO-P-2022-0025 (Feb. 1, 2023), https://www.eff.org/files/2023/02/15/pto-p-2022-0025_comments_of_eff_2023-02-01.pdf; and

13. EFF also disseminates information to policymakers and members of the public regarding legislative reform of the patent system. For example, on June 4, 2019, EFF provided testimony before the U.S. Senate Committee on the Judiciary Subcommittee on Intellectual Property regarding patent reform. *See* Testimony of Alex H. Moss, https://www.judiciary.senate.gov/imo/media/doc/Moss%20Testimony.pdf. EFF also informs its supporters of opportunities to urge their congressional representatives to support or oppose certain proposed reforms of the patent system. *See, e.g.*, Joe Mullin, *Congress Shouldn't Limit The Public's Right To Fight Bad Patents*, EFF Deeplinks (Nov. 6, 2023), https://www.eff.org/deeplinks/2023/11/publics-right-fight-bad-patents-must-be-protected.

**EFF's Reliance on Access to Court Records and Interest in the Sealed Filings**

14. EFF relies on publicly accessible court documents to engage in its public service activities. Without ready access to intelligible court documents, EFF is hindered from participating in the patent law, policy, and reform debate in a meaningful way.

15. Without access to the Sealed Filings at issue (Dkts. 177, 215, 237, 267, 386, and their attachments), EFF is unable to access key evidence and legal argumentation underlying the asserted license defense of Charter Communications, Inc. and the response of Plaintiff Entropic Communications, LLC.

16. EFF is interested in the Sealed Filings for numerous reasons and is harmed by the ongoing sealing of the Sealed Filings. For one, EFF is a broad technology justice organization, interested in, *inter alia*, domestic and global access to cable broadband internet. EFF has reported on the accessibility and affordability of broadband internet across the United States and has advocated for broader, more equitable access. *See, e.g.*, Ernesto Falcon, *The FCC and States Must Ban Digital Redlining*, EFF (Jan. 11, 2021), https://www.eff.org/deeplinks/2021/01/fcc-and-states-must-ban-digital-redlining; Ernesto Falcon, *We Finally Have a Federal Fiber Broadband Plan*, EFF (May 18, 2022), https://www.eff.org/deeplinks/2022/05/we-finally-have-federal-fiber-broadband-plan; Christopher Vines, *New York City Is Dismantling Low-Cost Community Broadband*, EFF (Apr. 5, 2023), https://www.eff.org/deeplinks/2023/04/new-york-city-dismantling-low-cost-community-broadband-2. EFF is specifically interested in the Data Over Cable Service Interface Specification (DOCSIS) standard. For example, EFF has undertaken a detailed technical study of DOCSIS when comparing cable internet to fiber optic and other broadband options. *See* Bennett Ciphers, *The Case for Fiber to the Home, Today: Why Fiber is a Superior Medium for 21st Century Broadband*, EFF (Oct. 16, 2019), https://www.eff.org/wp/case-fiber-home-today-why-fiber-superior-medium-21st-century-broadband. EFF is also interested in the DOCSIS standard because it affects many millions of Americans. A recent study showed that >50% of Americans rely on cable internet and so likely rely on the DOCSIS standard. Kathryn de

Wit, *How Do Americans Connect to the Internet?*, Pew (Jul. 7, 2022), https://www.pewtrusts.org/en/research-and-analysis/fact-sheets/2022/07/how-do-americans-connect-to-the-internet. EFF is interested in understanding and reporting on the DOCSIS standard, and EFF is harmed by the sealing of the Sealed Filings because sealing of the Sealed Filings makes this understanding and reporting difficult or impossible.

17. EFF is also interested in the Sealed Filings because the question of whether cable internet devices that meet the DOCSIS standard infringe Entropic's asserted patents may affect not just Charter but other cable internet providers and manufacturers of cable internet equipment that incorporate the DOCSIS standard. EFF is interested in understanding and reporting on the specific question of whether Entropic's asserted patents are essential to the DOCSIS standard, and EFF is harmed by the sealing of the Sealed Filings because sealing of the Sealed Filings make this understanding and reporting difficult or impossible.

18. EFF is also interested in the Sealed Filings because they implicate a fundamental, important, and recurring legal question throughout patent law: when is a specific patent "essential" to practice a given technical standard? EFF has a longstanding interest in standard-essential patents and an interest in ensuring that their owners do not misuse or abuse them. For example, in its January 2021 transition memo to President Biden, EFF wrote that the Biden Administration should "reduc[e] legal barriers to new products and services that seek to interoperate with incumbent platforms. Today's Internet giants misuse laws like the Computer Fraud and Abuse Act, section 1201 of the Digital Millennium Copyright Act, and the licensing of standards-essential patents to stop independent innovation. This Administration should help protect independent, good-faith innovators and entrepreneurs from the abuse of these laws, through revision of these laws, executive orders, merger conditions, consent decrees, procurement guidelines, and other forms of leverage over market conditions." India McKinney & Ernesto Falcon, *EFF Transition Memo to Incoming Biden Administration*, EFF (Jan. 21, 2021), https://www.eff.org/wp/eff-transition-memo-incoming-biden-administration. EFF has also encouraged the Federal Trade Commission

6

and other enforcers of antitrust law to investigate companies that may misuse or abuse standard-essential patents. *See, e.g.*, EFF Comments to FTC on Competition (Aug. 20, 2018), https://www.eff.org/document/eff-comments-ftc-competition-0. EFF is interested in understanding and reporting on the Court's analysis of the legal standard that governs whether a patent is essential to a given standard, and EFF is harmed by the sealing of the Sealed Filings because sealing of the Sealed Filings makes this understanding and reporting difficult or impossible.

19.  EFF is also interested in the Sealed Filings because it has a strong interest in patent license defenses, even beyond the standard-essential patent context. *See, e.g.*, Brief of Public Knowledge et al. as Amici Curiae in Support of Appellant Impression Products, *Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721 (Fed. Cir. 2016) (Nos. 14-1617, 14-1619) (discussing the defense in an amicus brief of EFF). License defenses are broadly and especially interesting to EFF because they emerge from voluntary tech-sharing agreements among competitor companies. EFF supports interoperability agreements, cross-licensing, technical standards, and other steps taken by competitors to lower barriers to entry, reduce litigation burden on small companies, and so on. EFF is interested in understanding and reporting on the Court's analysis of the "Data Over Cable Service Interface Specifications License Agreement" (the "DOCSIS License") because, among other things, EFF is interested in understanding how the Court construes the language of this and other patent license agreements. EFF is harmed by the sealing of the Sealed Filings because sealing of the Sealed Filings makes this understanding and reporting difficult or impossible.

20.  EFF is also interested in the Sealed Filings because EFF has an interest in protecting and expanding the public right of access to court records, in this District, in other federal courts, and in state courts. *See, e.g.*, two of EFF's past unsealing efforts in this District: *Blue Spike, L.L.C. v. Audible Magic Corp.*, No. 6:15-cv-00584 2016 WL 3870069, at *2 (E.D. Tex. Apr. 18, 2016); *Traffic Info., LLC v. Farmers Grp., Inc.*, No. 2:14-cv-00713, 2016 WL 3460763, at *1 (E.D. Tex.

Apr. 7, 2016). For examples of EFF's unsealing work in other courts, *see, e.g.*, *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351 (Fed. Cir. 2020); *Uniloc USA, Inc. v. Apple Inc.*, 25 F.4th 1018 (Fed. Cir. 2022); Aaron Mackey, *Victory: Federal Court in Seattle Will Begin Disclosing Surveillance Records*, EFF (Jan. 23, 2019), https://www.eff.org/deeplinks/2019/01/victory-federal-court-seattle-will-begin-disclosing-surveillance-records; Press Release, EFF, Police Can't Keep Records of Electronic Surveillance Secret Indefinitely, EFF Argues to California Supreme Court (Oct. 26, 2022), https://www.eff.org/press/releases/police-cant-keep-records-electronic-surveillance-secret-indefinitely-eff-argues.

21. Should EFF obtain access to the Sealed Filings, it intends to publicly disclose them on its website and comment on them, likely by publishing an accompanying blog post similar to the posts described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 19, 2024, at San Francisco, CA.

*/s/ Aaron Mackey*
Aaron Mackey

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). To ensure service on all counsel, I also emailed courtesy copies of this motion and associated filings to counsel of record for the parties on March 20, 2024.

*/s/ Christopher J. Morten*
Christopher J. Morten
